## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| PLUMBERS, PIPEFITTERS AND APPRENTICES LOCAL NO. 112 PENSION FUND, individually and on behalf of all others similarly situated, | **CASE NO.:** |
| Plaintiff, | **DEMAND FOR A JURY TRIAL** |
| vs. | |
| VESTIS CORPORATION, KIMBERLY SCOTT, and RICK DILLON, | |
| Defendants. | |

## CLASS ACTION COMPLAINT
## FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Plumbers, Pipefitters and Apprentices Local No. 112 Pension Fund ("Local 112" or "Plaintiff"), by and through counsel, alleges the following upon information and belief, except as to allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, among other things, its counsel's investigation, which includes, without limitation: (a) review and analysis of public filings made by Vestis Corporation ("Vestis" or the "Company") with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants (defined below) and other parties; (c) review of news articles,

shareholder communications, and conference calls concerning Defendants' public statements; and (d) review of other publicly available information concerning the Company and the Individual Defendants (as defined herein).

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of all persons and entities who purchased Vestis common stock between October 2, 2023 and May 1, 2024, inclusive (the "Class Period"), against Vestis and certain officers and executives of Vestis, seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.

2.    Vestis, based in Roswell, Georgia, was created as the result of its September 2023 spinoff from food service and facilities services provider Aramark, in which Vestis became an independent publicly traded company (the "Spinoff"). Prior to the Spinoff, the company that was to become Vestis operated as the Aramark Uniform Services division of Aramark, providing rental uniforms and workplace supplies, including: uniform delivery; laundering for rental linens, floor mats, and towels; restroom services; and first-aid supplies.  Vestis began trading as a public company on October 2, 2023 (the first day of the Class Period) on the New York Stock Exchange (the "NYSE") under the ticker symbol "VSTS."  Vestis continues to provide rental uniforms and workplace supplies in the United States and Canada.

3.      Leading up to the Class Period, on September 13, 2023, the soon-to-be Vestis executives held "the very first Vestis Analyst Day."  Incoming Vestis Chief Executive Officer ("CEO") Kimberly Scott ("Scott") explained that she had "joined Aramark Uniform Services a couple of years ago with the intent of preparing the business for this exact moment."  CEO Scott proceeded to describe the to-be Vestis business as a growth business, informing investors they could expect "5% to 7% top line growth on" compound annual growth rate ("CAGR").

4.      During the same Analyst Day call, Defendants identified three areas of the business that would support growth, including: (1) high quality new customers; (2) retention of existing customers; and (3) the ability to increase pricing.  As to the "pricing" component, Defendants insisted to investors that "the 5% to 7% is not a pricing play [but still] we're acknowledging that we will take price."  Indeed, Chief Financial Officer ("CFO") Rick Dillon ("Dillon") stated plainly, "we've also demonstrated our ability to take price."

5.      Throughout the Analyst Day call, Defendants painted an overwhelmingly positive picture of the state of the business that would become Vestis, claiming to have: data analytics with a focus on its customer base; sales representatives who could cross-sell the existing customer base; and a sales force that was identifying and developing new customers.  For example, CEO Scott declared that "investments are in place, they've been made, they're in our run rate."

Defendants also crowed that the Company's sales force was "at the right team level," had "reached their stride," and were "now hitting productivity levels that we desire from them."

6.    Throughout the Class Period, Defendants praised the execution of their plan.  For example, during the Company's first earnings call with investors as a publicly traded company on November 29, 2023—to discuss its financial results for the fourth quarter of fiscal year ("FY")[1] 2023 ended September 29, 2023—CEO Scott highlighted the "service excellence culture" at the Company.  CEO Scott boasted about the Company's focus on "amazing customer experience" and pointed out the "really, really great feedback" Vestis had received from its customer service initiatives.

7.    The Company continued to tout its performance and prospects when reporting its financial results for the first quarter of FY2024, ended December 29, 2023.  In the Current Report on Form 8-K Vestis filed before the markets opened on February 7, 2024, the Company reported that it "continues to expect to deliver revenue growth in the range of 4.0 to 4.5% through our focus on providing service excellence to our customers and delivering high-quality growth" and that it "continue[s] to expect our adjusted [earnings before interest, taxes, depreciation, and

---

[1]  Vestis's fiscal year is the 52- or 53-week period that ends on the Friday nearest to September 30th.

amortization ("EBITDA")] margin to be approximately 14.3%." As CEO Scott explained during the accompanying call with analysts that day, "[W]e expect acceleration in our growth rates that will follow similar patterns from prior years," and "we are also seeing opportunity for additional pricing actions in the back half of the year."

8.      Unbeknownst to investors, however, Aramark had chronically underinvested in the Uniform Services division in the years leading up to the Spinoff, leaving the business with outdated facilities and an underperforming sales force. As a result, and as Defendants have now admitted, "service gaps" persisted within Vestis leading up to the Spinoff and throughout the Class Period that rendered Vestis unable to execute any of the levers of growth Defendants had touted.

9.      The truth was revealed to investors before markets opened on May 2, 2024, when Vestis issued a press release reporting its financial results for the second quarter of FY2024 ended March 29, 2024. The Company reported revenue of $705 million, a mere 0.9% year-over-year increase. CEO Scott was quoted in the press release, stating, "Our results in the quarter and our outlook for the year are not in line with expectations." Indeed, in the press release, Vestis also provided a "Revised Fiscal Year 2024 Outlook," reporting that it "now expect[ed] to deliver fiscal 2024 revenue growth in the range of [negative] (1)% to 0%."

10.     During the corresponding earnings call that day, CEO Scott explained the "challenges" facing the Company "related to sales productivity and deliberate moderated pricing actions."  CEO Scott went on to explain, "We also made the recent and deliberate decision to moderate pricing actions in the second quarter and the back half of the fiscal year in order to realize improved retention while we enhance our services processes."  The pricing decision, CEO Scott added, "is negatively impacting our revenue and EBITDA in the second half of the year."

11.     Later during the same call, CEO Scott revealed "service gaps" had "driven price sensitivity."  CEO Scott added that "we know that more than 70% of the [customer] cancellations are due to *causes that are within our control*."

12.     Analysts were incredulous.  For example, JP Morgan analyst Andrew Steinerman noted, "[a]s you had articulated, your plan had been just a couple of months ago for a targeted area price increase, and then you pivoted to a price decrease." Jefferies analyst Stephanie Moore echoed the sentiment, pointing out the "change in tone [] in the last 90 days since you reported [fiscal first-quarter results]" and the "reversal" in pricing capabilities.

13.     On this news, the price of Vestis stock plunged 45%—from a closing price of $18.47 per share on May 1, 2024, to a closing price of $10.16 per share on May 2, 2024—wiping out more than $1 billion in shareholder value.

## **JURISDICTION AND VENUE**

14.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

16.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).   Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.   Many of the acts and omissions charged herein, including the dissemination of materially false and misleading information to the investing public, and the omission of material information, occurred in substantial part in this Judicial District, as Vestis is headquartered in this Judicial District.

17.     In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the U.S. Mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

18.     Based in Binghamton, New York, Plaintiff Local 112 administers a retirement benefit plan of $80 million with 318 active members, 380 retired members receiving benefits, and another 138 members who are retired or separated with a right to future benefits.  As set forth in the accompanying certification, incorporated by reference herein, Local 112 purchased Vestis common stock during the Class Period and suffered damages as a result of the federal securities laws violations and false and/or misleading statements and/or material omissions alleged herein.

19.     Defendant Vestis Corporation is incorporated under the laws of Delaware with its principal executive offices located in Roswell, Georgia.  Vestis's common stock trades on the NYSE under the ticker symbol "VSTS."

20.     Defendant Kimberly Scott has served as Vestis's President and CEO since October 2023.  Prior to the Spinoff, Scott joined Aramark Uniform Services in October 2021 as its President and CEO.

21.     Defendant Rick Dillon has served as Vestis's Executive Vice President and CFO since October 2023.  Prior to the Spinoff, Dillon joined Aramark Uniform Services in May 2022 as its Executive Vice President and CFO.

22.     Defendants Scott and Dillon (collectively, the "Individual Defendants"), because of their positions with Vestis and/or Aramark Uniform

8

Services, possessed the power and authority to control the contents of, *inter alia*, Vestis's and/or Aramark Uniform Services' quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of Vestis's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false and misleading statements pleaded herein.

23.    Vestis and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

24.    Vestis is a uniform services and workplace supplies company that provides: uniform delivery; laundering for rental linens, floor mats, and towels; managed restroom services; and first-aid supplies.  Prior to the September 2023

Spinoff, Vestis was known as Aramark Uniform Services, a division of its parent, Aramark, which is a global company providing food service and facilities management.

25.     In order to complete the Spinoff of its uniform and workplace supplies business, Aramark participated in the preparation and filing of a Form 10 with the SEC, which contained a proposed separation and distribution agreement to separate Vestis.

26.     The distribution and separation became effective on Saturday, September 30, 2023, and on October 2, 2023, the first day of the Class Period, Vestis began trading as an independent public company.

**<u>Defendants' Materially False and Misleading Statements</u>**

27.     Just weeks before Vestis would begin trading as a public company, on September 13, 2023, the soon-to-be Vestis executives held "the very first Vestis Analyst Day."  Incoming Vestis CEO Scott explained to investors at the outset of the call that she had "joined Aramark Uniform Services a couple of years ago with the intent of preparing the business for this exact moment."  Scott then told investors they could expect "5% to 7% top line growth on CAGR," which included "2% to 3% from high quality new growth," "2% to 3% from retaining our existing customers," and "about a percent of pricing on average."  CFO Dillon claimed that

Vestis would operate with an "annual capital investment [that] will be about 3% of revenue."

28.     During the Analyst Day, CEO Scott described for investors the methodical strategy used to create growth opportunities for Vestis:

> We have been extremely prudent about the way that we built this plan, and we've been very measured about modest investments, leveraging the investments that Aramark already quite wisely made in this business, the ramping of the sales force, the investment of our operating system platform, those investments are in place. They've been made, they're in our run rate and we're going to take great advantage of those.

29.     Breaking down the growth, CFO Dillon explained the Company's 5% to 7% growth would come from (1) "2% to 3% from high quality new growth," (2) "2% to 3% from retaining our existing customers," and (3) "about a percent of pricing on average." With regard to pricing and inflationary concerns, CFO Dillon stated, "[W]e've also demonstrated our ability to take price and pass through inflation as one of the ways to deal with an inflationary environment."

30.     Defendants also highlighted the investments made in the Company's sales force. For example, during the Analyst Day, CFO Dillon highlighted how, "most importantly, the sales force numbers stay with us because we think we're at the right team level." CEO Scott added that sales force members "have reached their stride" and are "now hitting the productivity levels that we desire for them." Scott

further claimed, "[W]e're managing performance very effectively and we're making sure that we get the right revenue per head."

31.     Before markets opened on November 29, 2023, Vestis issued a press release announcing financial results for the fourth quarter of FY2023 ended September 29, 2023.  During the corresponding call with analysts that day, CEO Scott stated, "[W]e are pleased to share our outlook for fiscal year 2024, a revenue growth rate of 4% to 4.5%, which is well above our historical norms of approximately 2%."  CEO Scott explained that, "throughout 2023, we continued to establish a strong foundation for profitable growth[,]" and as a result, "we are well-positioned to deliver healthy revenue growth and margin expansion."  Later during the call, in response to an analyst request for comment "on recent trends in add/stop, net new, and of client retention," CEO Scott asserted: "[W]e continue to focus on creating an amazing customer experience[,]" and "we are seeing really, really great feedback from our customers around these initiatives, and so we feel very, very good about the establishment of a service excellence culture across our company."

32.     Before markets opened on February 7, 2024, Vestis issued a press release announcing its financial results for the first quarter of FY2024, ended December 29, 2023.  The press release reported revenue for the quarter of $717.9 million, a 1.3% shortfall compared to analyst consensus estimates.

33.     During the corresponding earnings call with analysts that day, Defendants assured investors that the revenue miss was not a concern.  Indeed, CEO Scott proclaimed that "as we move through the balance of the year, we expect acceleration of our growth rates that will follow similar patterns from prior years[,]" and as a result, "I remain confident in our ability to deliver our full[-]year guidance of 4% to 4.5% revenue growth."  CEO Scott stated, "We are also seeing opportunity for additional pricing actions in the back half of the year."  Asked by Wells Fargo analyst Seth Webert to "expand on that a bit," CEO Scott explained, "We've been very thoughtful and I would say somewhat moderated about pricing in the first quarter . . . .  [W]e've been managing that and monitoring it very closely just to see customer attrition and modeling and understanding how customers are responding."

34.     Later during the same February 7, 2024 earnings call, an analyst directly asked Defendants to "comment on retention, the trends and the drivers, whether it[']s service quality . . . ?"  CEO Scott responded that "to answer your question around why you see customers leave, we are seeing small to medium enterprise customers with an uptick in business closures."

35.     The above statements in paragraphs 27-34 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects to make the statements made, in light of the circumstances under which they were made, not false and misleading.  Specifically,

Defendants failed to disclose: (1) Aramark had historically underinvested in the business that became Vestis; (2) Vestis operated with outdated facilities and an underperforming sales force; (3) Vestis's outdated facilities and underperforming sales force led to "service gaps" that had impeded the Company's levers of growth and had resulted in customer attrition; and (4) as a result of the above, Defendants' statements about Vestis's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### The Truth Is Revealed

36.     The truth was revealed to the market before markets opened on May 2, 2024, when Defendants issued a press release and filed a Current Report on Form 8-K announcing financial results for the Company's second quarter of FY2024, ended March 29, 2024.  The Company announced another quarter of disappointing revenue results including, among other things, reported quarterly revenues of $705 million—just a 0.9% increase from the same fiscal quarter a year before. Moreover, Vestis reported a "Revised Fiscal Year 2024 Outlook," with the Company "now expect[ed] to deliver fiscal 2024 revenue growth in the range of [negative] (1)% to 0%."

37.     During the corresponding analyst call that day, CEO Scott attributed the underperformance to "short-term challenges related to sale productivity and deliberate moderated pricing actions."  CEO Scott then disclosed, "we are taking

actions to enhance our service," "which will allow us to revisit pricing."  As CEO Scott explained, "service gaps have driven price sensitivity."  And in stark contrast to her statements only one quarter before, CEO Scott revealed that "service gaps" had led to client retention issues and prevented Vestis from raising prices.  CEO Scott acknowledged that the problems with customer retention were ***not*** the result of "business closures" as she had stated just one quarter before: "[W]e know that ***more than 70% of the cancellations are due to causes that are within our control***."  Moreover, in further contrast to her own prior statements, CEO Scott admitted that Vestis "[had] been slow to gain traction with [its] sales force."

38.     Analysts focused on these discrepancies during the call.  JP Morgan analyst Andrew Steinerman pointed out that "your plan had been just a couple of months ago for a targeted area price increase, and then you pivoted to a price decrease."  Jefferies analyst Stephanie Moore directly highlighted the Vestis executives' "change in tone [] in the last 90 days," and the Company's "reversal in pricing capabilities."

39.     Following the call, analysts issued scathing reports.  For instance, JP Morgan downgraded the stock, citing "company specific challenges."  Barclays reported "the need for further investment is more apparent than ever."  Baird analysts reported on the same "structural issues [that] will take time to fix," and questioned management's reliability, noting "credibility is low."

40.     As investors digested these disclosures, the price of Vertis stock plummeted 45% in a single day, falling from a closing price of $18.47 per share on May 1, 2024, to a closing price of $10.16 per share on May 2, 2024 on extraordinary trading volume.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class, consisting of all persons and entities that purchased Vestis common stock between October 2, 2023 and May 1, 2024, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers, and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Throughout the Class Period, Vestis shares actively traded under the symbol "VSTS."  Millions of Vestis shares were traded publicly during the Class Period on the NYSE.  As of April 26, 2024, the Company had 131.4 million shares outstanding.

Record owners and other members of the Class may be identified from records maintained by Vestis or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

43.    Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests that conflict with those of the Class.

45.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

    a)    whether Defendants violated the Exchange Act by the acts and omissions as alleged herein;

    b)    whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

    c)    whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders misrepresented material facts about the business, operations, and prospects of Vestis;

d)     whether statements made by Defendants to the investing public misrepresented and/or omitted to disclose material facts about the business, operations, and prospects of Vestis;

e)     whether the market price of Vestis shares during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f)     the extent to which the members of the Class have sustained damages and the proper measure of damages.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

## **UNDISCLOSED ADVERSE INFORMATION**

47.     The market for Vestis shares was an open, well-developed, and efficient market at all relevant times.  As a result of the materially false and/or misleading statements and/or omissions particularized in this Complaint, Vestis's shares traded at artificially inflated prices during the Class Period. Plaintiff and the other members of the Class purchased Vestis's shares relying upon the integrity of the market price

of the Company's common stock and market information relating to Vestis and have been damaged thereby.

48.     Defendants materially misled the investing public, thereby inflating the price of Vestis shares, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.   The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Vestis's business, operations, and prospects as alleged herein.   These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its business, thus causing the Company's common stock to be overvalued and artificially inflated or maintained at all relevant times.   Defendants' materially false and/or misleading statements directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class who purchased the Company's common stock at artificially inflated prices and were harmed when the truth was revealed.

## SCIENTER ALLEGATIONS

49.     As alleged herein, Defendants acted with scienter in that Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company were materially false and misleading;

knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

50.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Vestis, their control over, receipt, and/or modification of Vestis's allegedly materially misleading statements and omissions, and/or their positions with the Company, which made them privy to confidential information concerning Vestis, participated in the fraudulent scheme alleged herein.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

51.     As a result of their purchases of Vestis's shares during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

52.     In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the

forward-looking statement was authorized or approved by an executive officer of Vestis who knew that the statement was false when made.

## LOSS CAUSATION

53.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

54.    As detailed herein, Defendants made materially false and misleading statements and omissions and engaged in a scheme to deceive the market.  This artificially inflated the prices of Vestis shares and operated as a fraud or deceit on the Class.  When Defendants' prior misrepresentations, information alleged to have been concealed, fraudulent conduct, and/or the effect thereof were disclosed to the market, the price of Vestis's shares fell precipitously, as the prior artificial inflation came out of the price.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

55.    The market for Vestis shares was open, well-developed, and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose particularized in this Complaint, Vestis shares traded at artificially inflated and/or maintained prices during the Class Period.  Plaintiff and other members of the Class purchased the Company's shares relying upon the

integrity of the market price of Vestis shares and market information relating to Vestis and have been damaged thereby.

56.    At all times relevant, the market for Vestis shares was an efficient market for the following reasons, among others:

a)    Vestis was listed and actively traded on the NYSE, a highly efficient and automated market;

b)    As a regulated issuer, Vestis filed periodic public reports with the SEC and/or the NYSE;

c)    Vestis regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d)    Vestis was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.    Each of these reports was publicly available and entered the public marketplace.

57.    As a result of the foregoing, the market for Vestis shares promptly digested current information regarding Vestis from all publicly available sources and

reflected such information in Vestis's share price.  Under these circumstances, all purchasers of Vestis shares during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices, and a presumption of reliance applies.

58.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded in Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business, operations, and prospects—information that Defendants were obligated to disclose but did not—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of investment decisions.   Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## COUNTS AGAINST DEFENDANTS

### COUNT I

#### For Violations of Section 10(b) of the Exchange Act and
#### Rule 10b-5 Promulgated Thereunder Against All Defendants

59.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60.     Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Vestis shares; and (iii) cause Plaintiff and other members of the Class to purchase Vestis shares at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

61.     Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct that operated as a fraud and deceit upon the purchasers of the Company's shares in an effort to maintain artificially high market prices for Vestis shares in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

62.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Vestis's business, operations, and prospects, as specified herein.

Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Vestis's business, operations, and prospects, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Vestis and its business, operations, and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of conduct of business that operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

63.     Each of the Individual Defendants' primary liability and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company and a member of the Company's management team or had control thereof; (ii) each of the Individual Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's business, operations, and prospects; (iii) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to, other members of the

Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) each of the Individual Defendants was aware of the Company's dissemination of information to the investing public, which they knew and/or recklessly disregarded was materially false and misleading.

64.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Vestis's operating condition, business practices, and prospects from the investing public and supporting the artificially inflated and/or maintained price of its common stock.  As demonstrated by Defendants' overstatements and misstatements of the Company's business, operations, and prospects, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

65.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Vestis shares was artificially inflated, and relying directly or

indirectly on the false and misleading statements made by Defendants or upon the integrity of the market in which the stock trades, and/or in the absence of material adverse information that was known or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants, Plaintiff and the other members of the Class purchased Vestis shares during the Class Period at artificially inflated prices and were damaged thereby.

66.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known of the truth regarding the problems that Vestis was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased their Vestis shares, or, if they had purchased such shares during the Class Period, they would not have done so at the artificially inflated prices that they paid.

67.    By virtue of the foregoing, Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

68.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against All Individual Defendants

69.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

70.    The Individual Defendants acted as controlling persons of Vestis within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in, and/or awareness of the Company's operations, and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

71.    In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the

power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

72.     As set forth above, Defendants each violated § 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to § 20(a) of the Exchange Act.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## **PRAYER FOR RELIEF**

73.     WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

a)     Declaring this action to be a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b)     Awarding Plaintiff and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

c)     Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

d)     Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

74.     Plaintiff demands a trial by jury.


Dated: May 17, 2024                    Respectfully submitted,

                                       By: */s/ W. Thomas Lacy, Jr.*
                                       **LINDSEY & LACY, PC**
                                       W. Thomas Lacy, Jr.
                                       Georgia Bar No. 431032
                                       200 Westpark Drive, Suite 280
                                       Peachtree City, GA 30269
                                       Telephone: (770) 486-8445
                                       Facsimile: (770) 486-8889
                                       tlacy@llptc.com

                                       *Local Counsel for Plaintiff Plumbers,*
                                       *Pipefitters and Apprentices Local No. 112*
                                       *Pension Fund*

                                       **SAXENA WHITE P.A.**
                                       Rachel A. Avan (*pro hac vice* forthcoming)
                                       Marco A. Dueñas (*pro hac vice* forthcoming)
                                       10 Bank Street, Suite 882
                                       White Plains, NY 10606
                                       Tel.: (914) 437-8551
                                       Fax: (888) 631-3611
                                       ravan@saxenawhite.com
                                       mduenas@saxenawhite.com

                                       *Counsel for Plaintiff Plumbers, Pipefitters*
                                       *and Apprentices Local No. 112 Pension*
                                       *Fund*