UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PLUMBERS, PIPEFITTERS AND APPRENTICES LOCAL NO. 112, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VESTIS CORPORATION, ARAMARK, KIMBERLY SCOTT, RICK DILLON, and JOHN J. ZILLMER,<br><br>Defendants. | Case No. 1:24-cv-02175-SDG |

**DEFENDANTS ARAMARK AND JOHN J. ZILLMER'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b), Defendants Aramark and John J. Zillmer will and hereby do move this Court, before the Honorable Steven D. Grimberg, at the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, SW, Courtroom 1706, Atlanta, GA 30303-3309, at a date and time to be determined by the Court, for an Order dismissing with prejudice the Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 55) against Aramark and Zillmer for failure to state a claim upon which relief can be granted. The basis for the Motion

is set forth in the accompanying Memorandum of Law in Support of Aramark and

Zillmer's Motion to Dismiss the Amended Complaint for Violations of the Federal

Securities Laws, the Request for Judicial Notice, and the exhibits thereto.

Dated: February 25, 2025                    Respectfully submitted,

                                            */s/ Christopher S. Turner*
                                            Christopher S. Turner
                                            GA Bar No. 719102
                                            LATHAM & WATKINS LLP
                                            555 Eleventh Street, N.W.,
                                            Suite 1000
                                            Washington, D.C. 20004
                                            Telephone: (202) 637-2200
                                            Facsimile: (202) 637-2201
                                            christopher.turner@lw.com

                                            *Attorney for Defendants Aramark and*
                                            *John J. Zillmer*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

| | |
|---|---|
| PLUMBERS, PIPEFITTERS AND APPRENTICES LOCAL NO. 112, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>VESTIS CORPORATION, ARAMARK, KIMBERLY SCOTT, RICK DILLON, and JOHN J. ZILLMER,<br><br>    Defendants. | Case No.: 1:24-cv-02175-SDG |

**DEFENDANTS ARAMARK AND JOHN J. ZILLMER'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND ....................................2

    A. Aramark and Its Business.............................................................................2

    B. The Vestis Spin .............................................................................................3

    C. Procedural History........................................................................................4

III. LEGAL STANDARD .......................................................................................4

IV. ARGUMENT .....................................................................................................5

    A. Plaintiffs Fail to Plead Material Falsity .....................................................5

        1. Plaintiffs Fail to Plead Material Falsity as to Any Pre-Spin Statement from the Information Statement ........................5

        2. Plaintiffs Fail to Plead Material Falsity as to Any Pre-Spin Statement from the Analyst Day Presentation .................13

    B. Plaintiffs Fail to Plead Scienter as to Aramark and Zillmer ...............16

        1. Plaintiffs' Allegations About "The Defendants" Fail to Plead Scienter as to Aramark and Zillmer ...............................17

        2. Plaintiffs Fail to Plead Scienter as to Pre-Spin Statements ......19

        3. Plaintiffs' "Motive Theory" Fails .............................................21

    C. Plaintiffs Fail to Plead Zillmer Made Any Pre-Spin Statement..........22

    D. Plaintiffs Lack Standing to Assert Claims Based on Pre-Spin Statements .................................................................................................24

    E. Plaintiffs Fail to Plead Scheme Liability ...........................................25

    F. Plaintiffs Fail to Plead Control Person Liability for Aramark and Zillmer .................................................................................................25

V. CONCLUSION.................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Amalgamated Bank v. Coca-Cola Co.*,
  2006 WL 2818973 (N.D. Ga. Sept. 29, 2006)........................................10, 13, 14

*Anastasio v. Internap Network Serv. Corp.*,
  2010 WL 11459838 (N.D. Ga. Sept. 15, 2010)...........................................18, 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................23

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975)..................................................................................24

*Brophy v. Jiangbo Pharms.*,
  781 F.3d 1296 (11th Cir. 2015) .................................................................22

*Bryant v. Avado Brands, Inc.*,
  187 F.3d 1271 (11th Cir. 1999) .................................................................21

*Butala v. Owlet, Inc.*,
  2024 WL 4560173 (C.D. Cal. Sept. 26, 2024) ...........................................24

*Carvelli v. Ocwen Fin. Corp.*,
  934 F.3d 1307 (11th Cir. 2019) .............................................................*passim*

*City of Hollywood Police Officers' Ret. Sys. v. Citrix Sys.*,
  649 F. Supp. 3d 1256 (S.D. Fla. 2023).......................................................19

*City of Southfield Gen. Emps. Ret. Sys. v. Nat'l Vision Holdings, Inc.*,
  2024 WL 1376016 (N.D. Ga. Mar. 30, 2024) ...........................................*passim*

*Dillard v. Platform Specialty Prods. Corp.*,
  2016 WL 10586301 (S.D. Fla. 2016).........................................................20

*Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*,
  595 F. Supp. 2d 1253 (M.D. Fla. 2009), *aff'd*, 594 F.3d 783 (11th
  Cir. 2010) ................................................................................................10

*Gallagher v. Abbott Labs.*,
   269 F.3d 806 (7th Cir. 2001) ...................................................................................9

*Gnanaraj v. Lilium N.V.*,
   2024 WL 3916758 (S.D. Fla. Aug. 23, 2024) ........................................................25

*Hattaway v. Apyx Med. Corp.*,
   2023 WL 4030465 (M.D. Fla. June 15, 2023) .......................................................12

*Henningsen v. ADT Corp.*,
   161 F. Supp. 3d 1161 (S.D. Fla. 2015) .............................................................6, 20

*IBEW Loc. 595 Pension & Money Purchase Pension Plans v. ADT Corp.*,
   660 F. App'x 850 (11th Cir. 2016) ........................................................................25

*In re CCIV/Lucid Motors Secs. Litig.*,
   110 F.4th 1181 (9th Cir. 2024) ..............................................................................24

*In re Galectin Therapeutics, Inc. Sec. Litig.*,
   843 F.3d 1257 (11th Cir. 2016) ...............................................................4, 5, 9, 25

*In re HomeBanc Corp. Sec. Litig.*,
   706 F. Supp. 2d 1336 (N.D. Ga. 2010)...................................................19, 20, 22

*In re Tupperware Brands Corp. Sec. Litig.*,
   2023 WL 5091802 (11th Cir. Aug. 8, 2023) ...................................................17, 19

*Janus Cap. Grp. v. First Derivative Traders*,
   564 U.S. 135 (2011)................................................................................................23

*MacPhee v. MiMedx Grp.*,
   73 F.4th 1220 (11th Cir. 2023) ................................................................................4

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
   601 U.S. 257 (2024)..................................................................................................7

*Menora Mivtachim Ins. v. Frutarom Indus. Ltd.*,
   54 F.4th 82 (2d Cir. 2022) .....................................................................................24

*Mich. Carpenters' Pension Fund v. Rayonier Advanced Materials, Inc.*,
   2019 WL 1429667 (M.D. Fla. Mar. 29, 2019) ..................................................7, 10

*Mizzaro v. Home Depot, Inc.*,
    544 F.3d 1230 (11th Cir. 2008) ..............................................................17, 18, 19

*Oxford Asset Mgmt. v. Jaharis*,
    297 F.3d 1182 (11th Cir. 2002) ..................................................................23

*Phila. Fin. Mgmt. of S.F., LLC v. DJSP Enter.*,
    572 F. App'x 713 (11th Cir. 2014) ........................................................7, 13, 15

*Rosenberg v. Gould*,
    554 F.3d 962 (11th Cir. 2009) ....................................................................20

*Stein v. Aaron's, Inc.*,
    2022 WL 4588410 (N.D. Ga. Sept. 29, 2022)..................................................22

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)..................................................................................17

*Urvan v. TVP Ventures, LLC*,
    2021 WL 8648896 (N.D. Ga. Mar. 25, 2021) ..................................................18

## STATUTES

15 U.S.C.
    § 78a-10(b).....................................................................................*passim*
    § 78a-20(a) ....................................................................................4, 25
    § 78u-4(b).........................................................................................1
    § 78u-4(b)(1).....................................................................................5
    § 78u-4(b)(2)..................................................................................4, 17

## RULES

Fed. R. Civ. P.
    9(b) ...........................................................................................1, 4
    12(b)(6) ..........................................................................................1

## REGULATIONS

17 C.F.R.
    § 10b-5(a)........................................................................................25
    § 10b-5(c)........................................................................................25

## I.    INTRODUCTION

This case arises out of the spin-off of Vestis as an independent public company from its former corporate parent Aramark.  Plaintiffs claim that Defendants made intentional false and misleading statements about Vestis's anticipated financial health to artificially inflate Vestis's stock price and allow Aramark to extract a payment from Vestis when it was spun off.  But Plaintiffs' only claims against Aramark and its CEO John J. Zillmer arise from phrases taken out of context from two sets of public statements made by Vestis and its CEO Kimberly Scott before the Spin: a September 11, 2023 Information Statement and a September 13, 2023 Analyst Day Presentation.  Because the Spin separated Vestis into an independent company on September 30, 2023, Aramark's and Zillmer's involvement in this lawsuit is necessarily limited to the statements made prior to the Spin.  Nearly all of these Pre-Spin Statements are inactionable as a matter of law because they are corporate puffery on which investors do not rely, or mere statements of opinion that Plaintiffs do not allege Aramark or Zillmer disbelieved.  And even if the statements were actionable, Plaintiffs' out-of-context citation to parts of post-Spin statements by Scott and Vestis CFO Rick Dillon fail to show that these Pre-Spin Statements were false or misleading when made.

Plaintiffs also fail to plead scienter as to Aramark or Zillmer.  Rather than allege the particularized facts necessary to establish a strong inference that Aramark

and Zillmer made the Pre-Spin Statements with intent to defraud, Plaintiffs make general allegations about "the Defendants" or "the Individual Defendants" that are legally improper and plainly inapplicable to Aramark and Zillmer.  As a result, Plaintiffs' claims against Aramark and Zillmer rise and fall with their alternative theory that the Pre-Spin Statements were made to advance a scheme to offload debt to Vestis through the Spin.  That theory is legally insufficient, unsupported by facts, and nonsensical.  What Plaintiffs characterize as a nefarious $1.5 billion "offload" was simply Vestis taking on its proportionate share of the combined entity's $6.2 billion in pre-Spin debt.  This is a standard term of any spin-off, not a "scheme." Plaintiffs' implied alternative—the parent company retaining 100% of the total debt—is economically irrational.  The stronger inference is against fraud.

Plaintiffs' claims against Aramark and Zillmer are fatally flawed and cannot be remedied through further amendment.  Therefore, the Court should dismiss the claims against Aramark and Zillmer with prejudice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Aramark and Its Business

Aramark provides food, hospitality, and facilities services to customers in a variety of industries including education, healthcare, and sports.  Ex. A, Aramark

---

[1] Aramark and Zillmer incorporate by reference the factual background in the Vestis Defendants' opening brief.  *See* Vestis Br. § II.  This section focuses on the facts and allegations most germane to the defective claims against Aramark and Zillmer.

Letter.  "Zillmer has served as the CEO of Aramark, and as a member of Aramark's Board of Directors, since October 2019."  AC ¶ 30.

Aramark Uniform Services ("AUS") designed, sourced, delivered, cleaned, and maintained employee uniforms and workplace supplies on a contracted basis. Ex. A at 9-10, 66.  Kimberly Scott joined Aramark in October 2021 to serve as the President and CEO of AUS.  AC ¶¶ 28, 44.  Rick Dillon joined Aramark in May 2022 to serve as CFO of AUS.  *Id.* ¶ 29.  They were tasked with preparing AUS to become a standalone, independent public company called Vestis.  *Id.* ¶¶ 29-30.

### B.    The Vestis Spin

On May 10, 2022, Aramark announced plans to spin off AUS (the "Spin") "by the end of its fiscal year 2023—*i.e.*, by September 30, 2023."  AC ¶ 47.  Through the Spin, Aramark investors would receive one share of Vestis stock for every two shares of Aramark stock.  *Id.*  The goal of the Spin was to create greater shareholder value for both Aramark and Vestis shareholders.  Ex. A at 44-45.  Separation of Aramark and Vestis allowed each to more effectively address its distinct needs and pursue the strategies that were right for its business.  *Id.* at 45.  In a spin, the spun-off subsidiary typically assumes its share of the company's assets and liabilities. Here, Aramark and Vestis collectively had approximately $6.2 billion of net debt pre-Spin (down from $7+ billion in 2021, AC ¶ 43).  Ex. B at 17.  Vestis paid Aramark $1.5 billion to retire its proportionate share—roughly 24%—of that total

3

debt.  As a result, the two companies exited the Spin with roughly equal leverage ratios; Aramark did not "offload" any debt.  The Spin was completed on September 30, 2023, and Vestis common stock began trading on October 2, 2023.  AC ¶¶ 4, 26.

## C.    Procedural History

Plaintiffs—Vestis shareholders who purchased stock between October 2, 2023 and May 1, 2024 (the "Class Period")—filed an initial complaint on May 17, 2024, against only the Vestis Defendants for alleged misstatements made on September 13, 2023, November 29, 2023, and February 7, 2024.  Plaintiffs filed an Amended Complaint on November 22, 2024, asserting new claims against Aramark and Zillmer under Sections 10(b) and 20(a) of the Exchange Act arising out of statements made on September 11 and 13, 2023—shortly before the Spin.

## III.    LEGAL STANDARD

To avoid dismissal, Plaintiffs must allege facts establishing, *inter alia*, "(1) a material misrepresentation or omission by the defendant [and] (2) scienter." *MacPhee v. MiMedx Grp.*, 73 F.4th 1220, 1241 (11th Cir. 2023).  In doing so, Plaintiffs must meet the heightened standard of Rule 9(b)—which requires Plaintiffs to plead each element "with particularity"—and the even more rigorous standard under the Private Securities Litigation Reform Act of 1995 (PSLRA), which requires Plaintiffs to allege facts giving rise to a "strong inference" that each defendant acted with scienter.  15 U.S.C. § 78u-4(b)(2); *In re Galectin Therapeutics, Inc. Sec. Litig.*,

843 F.3d 1257, 1269 (11th Cir. 2016); Vestis Br. § III.A.  Courts routinely dismiss securities fraud claims for failing to meet these rigorous pleading requirements.  *See, e.g.*, *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1318 (11th Cir. 2019); *Galectin Therapeutics*, 843 F.3d at 1276; *City of Southfield Gen. Emps. Ret. Sys. v. Nat'l Vision Holdings, Inc.*, 2024 WL 1376016, at *6 (N.D. Ga. Mar. 30, 2024).

## IV.    ARGUMENT

### A.    Plaintiffs Fail to Plead Material Falsity

Under the PSLRA's heightened standards, to plead falsity, Plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and . . . state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1); *Galectin Therapeutics*, 843 F.3d at 1269. Plaintiffs' claims against Aramark and Zillmer are limited to two sets of statements made before the Spin: (1) the Information Statement and (2) the Analyst Day Presentation.  As explained below and in the Vestis Defendants' brief, Vestis Br. § III.B, Plaintiffs' allegations do not nearly meet their burden under the PSLRA to plead material falsity for any of these statements (the "Pre-Spin Statements").

#### 1.    Plaintiffs Fail to Plead Material Falsity as to Any Pre-Spin Statement from the Information Statement

The first set of Pre-Spin Statements that Plaintiffs challenge are benign and immaterial statements from Vestis's Information Statement about its business.

5

***Statements 1 and 2.***[2] Plaintiffs summarily aver that the Information Statement overstated Vestis's "competitive advantage[s]," including its relationships.  AC ¶¶ 159-60.  This does not suffice to plead a materially false statement.  *First*, as courts in this Circuit have made clear, statements about a company's "'significant competitive advantage' [are] the type of corporate puffery that is not actionable." *Henningsen v. ADT Corp.*, 161 F. Supp. 3d 1161, 1195 (S.D. Fla. 2015); *see also* Vestis Br. § III.B.2.  *Second*, statements that the company "believe[d]" in its "competitive strengths" are statements of opinion, which cannot sustain claims absent allegations that "defendants didn't truly believe what they asserted." *Carvelli*, 934 F.3d at 1323; *see also* Vestis Br. § III.B.4.  This standard is not met here.  Plaintiffs' cherry-picked statements omit the key preface "We believe":

> We believe our size and scale provide a *competitive advantage* in purchasing power, route density, operating efficiencies and ability to attract and retain talent as compared to smaller local and regional competitors.

Ex. A at 10, 68 (emphasis added to indicate phrase in Amended Complaint).

> We believe we have *significant competitive advantages* including our full-service uniform solution offering, size and scale, extensive network footprint, *long-tenured customer relationships* and experienced leadership team.

*Id.* (emphasis added to indicate phrase in Amended Complaint).  And Plaintiffs

---

[2] Statement numbers correspond with the chart in Appendix A which lists each Pre-Spin Statement in bolded text or a red box and includes context from the original source that is not quoted within the Amended Complaint.

allege no facts suggesting Aramark or Zillmer believed that Vestis lacked these competitive advantages as of September 2023. *Third*, Plaintiffs do not meet their burden to plead "particularized, contemporaneous facts showing why a specific challenged statement was false" when made. *Nat'l Vision Holdings, Inc.*, 2024 WL 1376016, at *9; *see also* Vestis Br. § III.B.1(iii). *Compare* AC ¶ 160 (denying only the "quality of [Vestis's] services and products" and the Company's "ability to deliver on-time"), *with* Ex. A at 10, 68 (other bases for "competitive advantages").[3]

**Statement 3.**   Plaintiffs contend that while the Information Statement "emphasized that Vestis 'maintain[ed] long-term relationships with [its] customers due to the quality of [its] services and products' and the Company's 'ability to deliver on-time,'" the opposite was true. AC ¶¶ 159-60.  Here too, Plaintiffs fail to plead a materially false statement. *First*, statements like this one that "do not assert specific, verifiable facts that reasonable investors would rely on" are inactionable puffery. *Phila. Fin. Mgmt. of S.F., LLC v. DJSP Enter.*, 572 F. App'x 713, 716 (11th Cir. 2014); *see also* Vestis Br. § III.B.2.  Courts routinely reject claims based on a company's "generalized positive statements about its long-standing customers" as "immaterial puffery."  *Mich. Carpenters' Pension Fund v. Rayonier Advanced*

---

[3] To the extent Plaintiffs contend that Aramark and Zillmer omitted material information here or elsewhere, such omissions are not actionable because Plaintiffs fail to identify any specific, undisclosed facts known to Aramark or Zillmer that would have contradicted any Pre-Spin Statement.  *See Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 258-60 (2024); Vestis Br. § III.B.1(i).

*Materials, Inc.*, 2019 WL 1429667, at *21 (M.D. Fla. Mar. 29, 2019); *see also* Vestis Br. § III.B.2.  *Second*, this is a statement of opinion, and Plaintiffs do not allege that Aramark or Zillmer believed that Vestis did not maintain long-term relationships with its customers for the stated reasons.  *Carvelli*, 934 F.3d at 1322-23; *see also* Vestis Br. § III.B.4.  *Third*, Plaintiffs have not pled facts showing that this general statement about Vestis's relationships with its clients was false when made. Plaintiffs point only to Scott's Q2 2024 statements about potential "service gaps," issues with "on-time delivery," "incomplete loads," and Telematics.  AC ¶ 160.  But Statement 3 says nothing about these topics—and, even if it did, Scott's references to conditions present nine months later do not show that Statement 3 was false when made.  *Nat'l Vision*, 2024 WL 1376016, at *9 ("Plaintiffs cannot rely on an after-the-fact statement … to 'infer that [earlier statements] were false or misleading at the time they were made.'") [4]; Ex. C at 10, 12 (identifying service gaps post-Spin).

**Statement 4.**  Plaintiffs again cherry-pick one portion of a sentence—that Vestis's "customer retention rate was in excess of 90%"—claiming it was materially false when made.  AC ¶¶ 161-62.  *Compare id.* ¶ 161 ("the Company maintained a remarkably high 'customer retention rate [] in excess of 90%'"), *with* Ex. A at 10, 68 ("*We believe* our customer retention rate was in excess of 90% *in the five years ended September 30, 2022, according to internal estimates*." (emphasis added)).

---

[4] Internal citations are omitted throughout unless otherwise indicated.

*First*, it is a statement of opinion, as the "We believe…" Plaintiffs omit indicates. And Plaintiffs do not allege that Aramark and Zillmer believed Vestis's historical retention rate for the five years ended September 30, 2022, was below 90%. *Carvelli*, 934 F.3d at 1322-23; *see also* Vestis Br. § III.B.4. *Second*, the complete statement relays an accurate estimate over a five-year historical period. Plaintiffs cannot and do not allege otherwise. Plaintiffs' citation to the specific retention rate for Q4 2023, AC ¶ 162, does not render the historical five-year rate presented on September 11, 2023 false or misleading. This is especially true when Plaintiffs' selected quarter is the only one in which retention dropped below 90% and the annual retention rate for fiscal year 2023 also remained above 90%. *See* Vestis Br. § III.B.1(ii)-(iii). Nor do the individual losses of two national customers in Q4 2023 change the five-year historical rate for 2017-2022. *See id*. Further, Vestis had no obligation to disclose on September 11, 2023, a projected retention rate for a quarter (or fiscal year) that had yet to end. *Galectin Therapeutics*, 843 F.3d at 1274-75; *see also Gallagher v. Abbott Labs*., 269 F.3d 806, 809-10 (7th Cir. 2001) ("continuous disclosure" is not required); *see also* Vestis Br. § III.B.1(iii) (discussing *Rayonier*).

   ***Statements 5 and 6.*** Plaintiffs claim that Vestis falsely "touted" its "customer retention" when it "stated that Vestis 'serv[ed] an attractive, large and long-tenured customer base' and that the Company remained 'focused on retaining these customers . . . by ensuring we are delivering . . . new or updated services and

products.'"  AC ¶¶ 161-62.  But again, Plaintiffs have not met their burden to plead that this statement was false or misleading.  *First*, like Statement 3, this statement about "long-standing customers" is classic puffery.  *See supra* at 7-8; *Rayonier*, 2019 WL 1429667, at *21; Vestis Br. § III.B.2.  *Second*, Plaintiffs do not make particularized allegations demonstrating that this statement was false when made.  *See* AC ¶ 162.  Plaintiffs' vague assertion that "in the months leading up to the Spinoff, Vestis was 'bleeding' customers" is based on statements from a former employee who left Aramark in May 2023, *id.* ¶ 112—before those very "months leading up to" the Spin—and does not make statements during those months about Vestis's tenured customer base or focus on retaining that base false or misleading. *Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, 595 F. Supp. 2d 1253, 1268 (M.D. Fla. 2009) (no inference of falsity when former employee allegations have no specific "connection" to alleged wrongdoing), *aff'd*, 594 F.3d 783 (11th Cir. 2010). *Third*, Statement 6 is a classic forward-looking statement protected by the PSLRA safe harbor.  *Amalgamated Bank v. Coca-Cola Co.*, 2006 WL 2818973, at *7 (N.D. Ga. Sept. 29, 2006) (dismissing claims based on statements that are "only verifiable—if verifiable at all—in the future"); *see also* Vestis Br. § III.B.3.

**Statement 7.**  Plaintiffs next mischaracterize a benign statement about Vestis's environmental goals as a misrepresentation about Vestis's use of Telematics.  AC ¶¶ 163-64.  *First*, as a "present-tense commitment to a specific future goal," it is a

10

forward-looking statement protected by the PSLRA's safe harbor.  *Carvelli*, 934 F.3d at 1329; *see also* Vestis Br. § III.B.3.  *Second*, Plaintiffs have failed to plead with particularity any facts showing that this statement about fuel efficiency goals is false or misleading.  Instead, Plaintiffs misconstrue Scott's post-Spin "admissions" about an entirely different use of Telematics technology to gin up a claim.  Contrary to Plaintiffs' assertion, Scott did not say that during the Class Period "Vestis was not using [T]elematics."  *Compare* AC ¶ 164, *with* Ex. C at 16.[5]  Scott's May 2, 2024 remarks confirm that Vestis expected to use "*insights and . . . data from* [T]elematics."  Ex. C at 10, 16 (emphasis added); *see also* Vestis Br. § III.B.1(iv).  Indeed, these post-Spin statements support, rather than contradict, Vestis's stated goal of "increas[ing] route efficiency with technology."  AC ¶ 163; *see also Nat'l Vision Holdings, Inc.*, 2024 WL 1376016, at *15 ("Plaintiffs fail to plead how any statement was false when made, especially where the Company described remote medicine as a 'pilot' in 2021, stated it would 'accelerate' the rollout on May 10, 2022, and then achieved its stated goal of rolling out remote medicine . . . in 2022.").

*Statement 8.*  Plaintiffs contend that a disclosure expressly flagging the risk

---

[5] Rather, as Plaintiffs appear to allege elsewhere in the Amended Complaint, when Scott joined in 2021 Vestis began rolling out (new) Telematics.  *See* AC ¶ 96 ("[A]t the time that Scott 'c[a]me into this business' two years earlier, Defendants 'did not have [T]elematics in our fleet.'").  Scott's May 2, 2024 statements confirm Vestis completed the installation of a new version of Telematics technology, not that Vestis had waited several months to do so or had never used Telematics.  Ex. C at 10.

of customer non-renewals somehow concealed that risk. AC ¶¶ 165-66. Shining a light on a risk is a peculiar way to defraud investors. And Plaintiffs' allegations fall far short of pleading this risk disclosure was false or misleading when made. *First*, identifying a risk that ultimately materializes is not misleading; it is appropriate and responsible corporate disclosure. *Hattaway v. Apyx Med. Corp.*, 2023 WL 4030465, at *10 (M.D. Fla. June 15, 2023) ("Plaintiff cannot claim that Defendants' . . . disclosure was materially false and misleading simply because [the] risk later materialized."). *Second*, Plaintiffs allege no facts supporting their theory that this risk had already materialized in September 2023. *Nat'l Vision Holdings, Inc.*, 2024 WL 1376016, at *9. The two national accounts Plaintiffs allege Vestis had lost by that time, AC ¶ 166, were not "a significant number of Vestis' existing contracts" as Vestis warned may affect its business. *Id.* ¶ 165. Further, Plaintiffs ignore entirely that the risk factor acknowledges that non-renewals are balanced by new accounts— and Plaintiffs make no allegations about whether Vestis could or did secure new contracts pre-Spin to offset the loss of these two customers. *Id.* Rather, as Scott and Dillon explained on May 2, 2024, this risk ultimately materialized post-Spin, when Vestis "did not accelerate [its] ramp to the levels required to offset rollover losses from FY '23." Ex. C at 4. Plaintiffs do not and cannot allege that this information from May 2024 was available pre-Spin and thus fail to (and cannot) plead that Statement 8 was false or misleading when made.

12

### 2. Plaintiffs Fail to Plead Material Falsity as to Any Pre-Spin Statement from the Analyst Day Presentation

The second set of Pre-Spin Statements that Plaintiffs challenge were made by Scott and Dillon during their Analyst Day Presentation. Plaintiffs cannot allege that Zillmer had any involvement with these Pre-Spin Statements. *See infra* § IV.C.

**Statement 9.** Plaintiffs challenge a phrase on a slide stating that Vestis achieves retention "through service excellence," AC ¶ 167, but fail to plead with particularity that this statement was false or misleading when made. *First*, Statement 9 is inactionable corporate puffery. *DJSP Enter.*, 572 F. App'x at 716; *Amalgamated Bank*, 2006 WL 2818973, at *5 (dismissing company's "self-serving and unabashedly optimistic characterizations" of itself and its strategy as puffery); Vestis Br. § III.B.2. *Second*, Plaintiffs allege no facts showing that Statement 9 was false when made. *See* AC ¶¶ 167-68. Plaintiffs assert that later statements about improving deliveries belie this generic observation that good service helps retention. *Id.* They do not. Statement 9 says nothing about Vestis's ability to make timely or accurate deliveries. *Id.*; Ex. E at 17. Nor do Scott's later statements about Telematics speak to whether "service excellence" helped Vestis retain customers pre-Spin. *See supra* at 11 n.5; *Nat'l Vision Holdings, Inc.*, 2024 WL 1376016, at *9 (after-the-fact statements do not support falsity of earlier statements).

**Statements 10 and 11.** Plaintiffs summarily assert that various statements about Vestis's customer relationships were false or misleading. AC ¶¶ 168-70.

These allegations too fall short. *First,* these statements identifying "very loyal customers" and "very strong" relationships with "great partners" are corporate puffery and immaterial as a matter of law. *See supra* at 10; *Amalgamated Bank*, 2006 WL 2818973, at *5; Vestis Br. § III.B.2. *Second*, the only historical fact in these Pre-Spin Statements—that Vestis's national account customers had a tenure of approximately 26 years—is not alleged to be false. *See* AC ¶¶ 168-70. *Third*, Plaintiffs do not allege particularized facts showing that these Pre-Spin Statements were false or misleading when made. Plaintiffs cite select customer losses, *id.* ¶¶ 169-70, but those specific losses do not mean that it was untruthful to characterize the customers Vestis had retained—including national accounts—as "sticky," "[h]igh tenure," "very loyal," and "very strong relationships." *Id.* ¶ 167. Plaintiffs again cite Vestis's Q4 2023 retention rate, but a lower retention rate for a single quarter does not contradict the claim that Vestis had long-standing and loyal customers. *See supra* at 9-10; Vestis Br. § III.B.1(iii). Nor did these statements conceal customer losses; as Plaintiffs separately allege, Scott disclosed these losses. AC ¶ 173 ("Scott claimed that while the Company had lost some customers . . .").

**Statement 12.** Plaintiffs challenge Scott's oral statement that Vestis "is very focused on doing exactly what we say we're going to do, deliver on the promise, show up on time every week" and so on. *See* AC ¶¶ 167-70. This generic statement does not (and cannot) come close to meeting the requisite standard for pleading

14

falsity.  *First*, this statement is the archetype of inactionable corporate puffery that is immaterial as a matter of law.  *Carvelli*, 934 F.3d at 1319-20; *DJSP Enter.*, 572 F. App'x at 716; Vestis Br. § III.B.2.  *Second*, to the extent Scott's statement could be materially false, the after-the-fact statements Plaintiffs cite do not show it was false when made.  *Nat'l Vision*, 2024 WL 1376016, at *9.  For example, the later identification of "service gaps," including issues with "on-time delivery," in 2024 does not mean that Vestis did not focus on "show[ing] up on time" as of September 13, 2023.  *Compare* AC ¶¶ 167, 169, *with* Ex. C at 5, 10.  This is not fraud.

 ***Statements 13, 14, and 15***.  Plaintiffs challenge three statements about Vestis's implementation of ABS, Vestis's customer portal, and Vestis's use of data analytics—but have failed to allege any coherent theory of falsity as to these statements.  *See* AC ¶¶ 171-72.  *First*, the cherry-picked phrases Plaintiffs challenge—"excellent service," "incredibly positive feedback," and "interact more seamlessly and more efficiently with the customer"—are general optimistic statements about Vestis's business and therefore immaterial corporate puffery.  *See supra* at 13-14; *Carvelli*, 934 F.3d at 1318; Vestis Br. § III.B.2.  *Second*, none of Scott's later statements about the accuracy and timeliness of deliveries or Telematics contradict her statements about a new customer portal or her belief in the positive impact of ABS.  AC ¶¶ 171-72.  Plaintiffs allege no connection between these three technologies and Telematics, a separate technology, or the accuracy and timeliness

15

of deliveries. *Id.* Nor can they. *See* Ex. D at 11, 28 (discussing the technologies).

**Statement 16.** Plaintiffs cite Scott's long response to an analyst's question, but challenge only Scott's opinion that the lost accounts that she disclosed were "non-regrettable." AC ¶ 173. *First*, Statement 16 is another inactionable statement of opinion. Plaintiffs cannot and do not allege that Scott actually believed that losing these accounts was bad when she stated her opinion. *Carvelli*, 934 F.3d at 1323; *see also* Vestis Br. § III.B.4. *Second*, no facts alleged in the Amended Complaint demonstrate that losing these specific accounts was bad for Vestis—much less in September 2023, when this statement was made. *Nat'l Vision*, 2024 WL 1376016, at *9. Nor was it unreasonable for Scott to hold this opinion in September 2023, when Vestis anticipated it could offset lost accounts and focus on servicing and pricing for the renewed accounts. Ex. D at 33 ("[W]e are growing where we want to grow . . . in new customers that are uniform rental customers."). Indeed, the very discussion of "service gaps" Plaintiffs cite mentions efforts to "moderate pricing actions in the second quarter and the back half of the fiscal year [2024] in order to realize[] improved retention while we enhance our service processes." Ex. C at 4-5. These later determinations in fiscal year 2024 do not render Scott's opinion in September 2023 false when made. *Nat'l Vision*, 2024 WL 1376016, at *9.

### B.   Plaintiffs Fail to Plead Scienter as to Aramark and Zillmer

Plaintiffs' Section 10(b) claim also fails because Plaintiffs do not (and cannot)

16

plead facts establishing that Aramark and Zillmer acted with the requisite "strong inference" of scienter—*i.e.*, "intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319-20 (2007); 15 U.S.C. § 78u-4(b)(2). Pleading scienter for a securities fraud claim is a very high bar. *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008). Under the PSLRA, "a plaintiff, to proceed beyond the pleading stage, must allege facts sufficiently demonstrating *each defendant's* state of mind regarding his or her alleged violations." *Tellabs*, 551 U.S. at 326 n.6 (emphasis added). This requires Plaintiffs to state "with particularity facts giving rise to a strong inference" that each defendant "intended to defraud investors or were severely reckless when they made [each] allegedly materially false or incomplete statement[]." *Mizzaro*, 544 F.3d at 1239. Plaintiffs' allegations—focused principally on Vestis and its executives—do not remotely clear this high bar as to Aramark or Zillmer and the Pre-Spin Statements on which the claims against them are based.

### 1.    Plaintiffs' Allegations About "The Defendants" Fail to Plead Scienter as to Aramark and Zillmer

A central tenet of the PSLRA is that a plaintiff must allege facts establishing scienter as to each defendant individually. *Mizzaro*, 544 F.3d at 1238. Group pleading of scienter is not permitted, and courts routinely dismiss securities fraud claims on this basis. *Id.*; *In re Tupperware Brands Corp. Sec. Litig.*, 2023 WL 5091802, at *7 (11th Cir. Aug. 8, 2023) (dismissing 10(b) claim for failure to plead

17

scienter for each individual corporate defendant); *Urvan v. TVP Ventures, LLC*, 2021 WL 8648896, at *17 (N.D. Ga. Mar. 25, 2021) (same).  Yet Plaintiffs make generalized claims about "the Defendants" in the aggregate.  Their allegations lack any specific facts about Aramark's or Zillmer's knowledge of any alleged fraud and the scienter allegations do not even mention Aramark or Zillmer.  AC ¶¶ 197-210. This "group pleading" is improper and compels dismissal of the claims against Aramark and Zillmer as a matter of law.  *Mizzaro*, 544 F.3d at 1238; *Anastasio v. Internap Network Serv. Corp.*, 2010 WL 11459838, at *9 (N.D. Ga. Sept. 15, 2010) (no scienter pled where plaintiffs "generally allege that members of [the company]'s upper management were 'informed' of the problems" without specifying "facts that show what each Defendant knew at the time each false statement was made").

Dismissal on this ground is particularly appropriate here, as Plaintiffs' allegations regarding "the Defendants" or "the Individual Defendants" demonstrably do not apply to Aramark or Zillmer at all.  For example:

- Plaintiffs allege generally that "Defendants made a series of striking admissions at the end of the Class Period" (AC ¶¶ 198-201)—but cite no "admissions" or other statements by Aramark or Zillmer.

- Plaintiffs contend that "[t]he Individual Defendants themselves admitted that they were fully knowledgeable about these facts" (*id.* ¶¶ 205-06)—but quote no "admissions" or other statements by Zillmer.

- Plaintiffs emphasize "[t]he Individual Defendants' specific, regular public remarks to investors" as "demonstrative of their intimate knowledge" (*id.* ¶¶ 207-08)—but reference no remarks by Zillmer.

Plaintiffs cannot meet their burden to plead particularized facts showing scienter as to Aramark or Zillmer by simply referring to "the Defendants." *Tupperware*, 2023 WL 5091802, at \*7; *Anastasio*, 2010 WL 11459838, at \*9. This critical pleading failure alone compels dismissal of the claims against Aramark and Zillmer.

**2.     Plaintiffs Fail to Plead Scienter as to Pre-Spin Statements**

In addition to pleading scienter as to each defendant, Plaintiffs must plead scienter with respect to each statement they challenge. *Mizzaro*, 544 F.3d at 1238. This is to say, Plaintiffs must plead particularized facts showing that each defendant knew, or was severely reckless in not knowing, that *each challenged statement* they made was false or misleading *when that statement was made*. *Id.* Yet Plaintiffs' general allegations "reflecting Defendants' scienter" (AC ¶ 197) focus on statements made or events occurring months after the Spin—and do not show that Aramark or Zillmer knew that any of the Pre-Spin Statements were false or misleading when made. *See City of Hollywood Police Officers' Ret. Sys. v. Citrix Sys.*, 649 F. Supp. 3d 1256, 1273 (S.D. Fla. 2023) (later acknowledgement of underperformance did not support inference that defendants knew prior contrary statements were false); *In re HomeBanc Corp. Sec. Litig.*, 706 F. Supp. 2d 1336, 1360 (N.D. Ga. 2010) (dismissing 10(b) claim because "Plaintiff's reliance upon after-the-fact events" was insufficient to "support an inference that [. . .] earlier statements must have been intentionally misleading and made with scienter").

19

Here, Plaintiffs allege "admissions" by Scott and Dillon "at the end of the Class Period," AC ¶¶ 198-201, 204-05, that in no way "reflect," *id.* ¶ 197, what Aramark or Zillmer knew prior to the Spin when the Pre-Spin Statements were made. *HomeBanc*, 706 F. Supp. 2d at 1360. They assert that the short tenure of COO Chris Synek somehow "supports a strong inference of scienter." AC ¶¶ 210. But Synek's tenure did not begin until just before the Spin and cannot speak to Aramark's or Zillmer's scienter as to the Pre-Spin Statements. *Rosenberg v. Gould*, 554 F.3d 962, 966 (11th Cir. 2009) (rejecting defendant's resignation as a basis for scienter); *Dillard v. Platform Specialty Prods. Corp.*, 2016 WL 10586301, at *8 (S.D. Fla. 2016) (rejecting alleged "suspicious" resignations of high-ranking executives as basis for inferring scienter). And none of Plaintiffs' allegations by former employees ("FEs"), AC ¶¶ 109-55, support scienter as to any Defendant, *see* Vestis Br. § III.C.2, much less as to Aramark and Zillmer for any Pre-Spin Statements. *First*, not one FE mentions Zillmer; nor could they, as not one FE is alleged to have had any contact with Zillmer. AC ¶¶ 109-55. *Second*, no FE alleges any specific contradictory information that Zillmer or Aramark knew pre-Spin; many FEs focus on Vestis post-Spin. *See, e.g.*, *id.* ¶¶ 119, 123, 134. *Third,* to the extent FEs allege isolated episodes of poor service (*e.g.*, FE3's statements about Tyson's Chicken), Plaintiffs do not tie these to Aramark or Zillmer and thus cannot use them to support an inference of scienter as to either. *See, e.g.*, *ADT Corp.*, 161 F. Supp. 3d at 1200

20

(FE's assertions that customer attrition was issue regularly discussed at meetings defendants attended were too "conclusory" to plead scienter).

### 3.    Plaintiffs' "Motive Theory" Fails

Unable to plead facts showing that Aramark or Zillmer knew, or recklessly ignored, that any Pre-Spin Statements were false when made, Plaintiffs assert that Aramark and Zillmer were motivated by the Spin itself to make false statements regarding Vestis. AC ¶¶ 48, 211, 244. This "Hail Mary" finds no support in logic or law. This Circuit has "reject[ed] the notion that allegations of motive and opportunity to commit fraud, standing alone, are sufficient to establish scienter in this Circuit." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1285 (11th Cir. 1999). Even if facts showing a motive were adequate to plead scienter—and they are not— Plaintiffs' theory that Aramark and Zillmer lied to future Vestis investors to offload debt in the Spin is implausible. *First*, the Spin was a value-creating transaction. Aramark, predominantly a food services business, decided to spin off its uniforms business to allow each business—Aramark and Vestis—to better pursue its diverging corporate goals. AC ¶ 42. *Second*, Vestis's $1.5 billion payment to Aramark represented Vestis assuming only its proportionate share of the total pre-Spin company's debt of $6.2 billion. Ex. B at 17. The Spin resulted in Vestis having a leverage ratio roughly equal to Aramark's leverage ratio pre-Spin. Accepting Plaintiffs' "scheme" argument leads to the absurd conclusion that a "fair" deal would

21

have left Aramark responsible for all the pre-Spin entity's debt. *Third*, and most importantly, Aramark had no reason to make misstatements to investors about Vestis because there was no shareholder vote needed to approve the Spin. Ex. A at 37.

The more compelling inference is good faith. Aramark and Zillmer did not conceal anything from future Vestis investors—knowingly, recklessly, or otherwise. Plaintiffs do not and cannot allege that Aramark stood to gain from inflation of Vestis's stock price post-Spin. And, like all Aramark shareholders, Zillmer received Vestis stock in the Spin—which he is not alleged to have sold during the class period—aligning his interests with Plaintiffs and the putative class.[6] *In re HomeBanc*, 706 F. Supp. 2d at 1359 ("inference of scienter is particularly weak where . . . complaint fails to allege inside stock sales"); *see also* Vestis Br. § III.C.6. Plaintiffs' allegations of motive do not in any way suggest scienter, and do not support the requisite strong, cogent, and compelling inference to sustain their claims. *Brophy v. Jiangbo Pharms.*, 781 F.3d 1296, 1306 (11th Cir. 2015).

### C.    Plaintiffs Fail to Plead Zillmer Made Any Pre-Spin Statement

Plaintiffs' Section 10(b) claim against Zillmer also fails because Plaintiffs fail to plead that Zillmer made any of the Pre-Spin Statements. Section 10(b) liability

---

[6] Nor does the mere allegation that Zillmer was CEO of Aramark support an inference of scienter as to Zillmer—even if the Pre-Spin Statements involved Vestis's core operations. *See* Vestis Br. § III.C.1; *Stein v. Aaron's, Inc.*, 2022 WL 4588410, at *6 (N.D. Ga. Sept. 29, 2022).

22

can be imposed only on the person or entity who actually "makes" a misstatement—not on affiliated persons or entities. *Janus Cap. Grp. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). A party "makes" a statement only if he has "ultimate authority over the statement, including its content and whether and how to communicate it." *Id*. Plaintiffs do not make factual allegations sufficient to plead that Zillmer had such authority over the statements they challenge.

Plaintiffs do not assert a claim against Zillmer based on the Analyst Day Presentation. AC ¶ 30 (alleging only that "Zillmer made … statements and omissions in the Information Statement"). Nor can they, as Zillmer neither made statements at nor even attended Analyst Day. *Id.* ¶ 167 ("Scott and Dillon presented a slide presentation and held a conference call."); *id.* ¶¶ 169, 171, 173 (discussing Scott's oral statements); *Janus*, 564 U.S. at 142 ("One 'makes' a statement by stating it …. [I]t is the speaker who takes credit—or blame—for what is ultimately said.").

Nor can Plaintiffs support their conclusory assertion that Zillmer "made materially false and misleading statements and omissions in the Information Statement," AC ¶ 30, with any factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (conclusory statements cannot survive a motion to dismiss); *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (same). Plaintiffs allege only that Zillmer signed a cover letter that "'encourage[d]' investors to read the Information Statement." AC ¶ 30; *id.* ¶ 59. Yet Plaintiffs do not challenge any

23

statement from Zillmer's cover letter. *Compare* Ex. A at 1, *with* AC ¶¶ 158-159, 161, 163, 165. Plaintiffs' vague allegation that the letter "endors[ed]" the contents of Information Statement, AC ¶ 158, is supported by neither the text of the letter itself nor any facts alleged in the Amended Complaint. Ex. A, Aramark Letter.

Having failed to allege facts showing that Zillmer made Pre-Spin Statements, Plaintiffs fail to plead a Section 10(b) claim against Zillmer.

### D. Plaintiffs Lack Standing to Assert Claims Based on Pre-Spin Statements

To the extent Plaintiffs assert that Aramark and Zillmer made the Pre-Spin Statements, Plaintiffs lack standing to pursue claims against them. Plaintiffs must satisfy the "purchaser-seller" rule, which limits standing to purchasers and sellers of the specific security about which the challenged statements are made. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730-31 (1975); *In re CCIV/Lucid Motors Secs. Litig.*, 110 F.4th 1181, 1185 (9th Cir. 2024); *Menora Mivtachim Ins. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 88 (2d Cir. 2022). Courts have rejected the contention that investors in the post-transaction entity have standing to assert claims arising out of statements by or about the pre-transaction entity. *Lucid*, 110 F.4th at 1186 (investors in an acquirer lacked standing to sue based on target's pre-merger statements); *see also Butala v. Owlet, Inc.*, 2024 WL 4560173, at *3 (C.D. Cal. Sept. 26, 2024) (applying purchaser-seller rule to a deSPAC transaction). Here, the purchaser-seller rule precludes claims by Vestis investors arising out of Pre-Spin

Statements purportedly made by and about Aramark before the Spin.

### E.    Plaintiffs Fail to Plead Scheme Liability

Plaintiffs also purport to assert claims under SEC Rules 10b-5(a) and (c) for engaging in a scheme to defraud investors, but they allege only misrepresentations —and no other conduct by Aramark or Zillmer to further a scheme.  AC ¶ 244.  As such, these "scheme" claims fail because "[m]isleading statements and omissions only create scheme liability in conjunction with 'conduct beyond those misrepresentations or omissions.'"  *IBEW Loc. 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 F. App'x 850, 858 (11th Cir. 2016); *see also Gnanaraj v. Lilium N.V.*, 2024 WL 3916758, at *10 (S.D. Fla. Aug. 23, 2024).[7]

### F.    PLAINTIFFS FAIL TO PLEAD CONTROL PERSON LIABILITY FOR ARAMARK AND ZILLMER

"Control person" liability under Section 20(a) (15 U.S.C. § 78t-1(a)), requires "a primary violation of federal securities laws."  *Galectin Therapeutics*, 843 F.3d at 1276.  As Plaintiffs' Section 10(b) claim fails, so does their Section 20(a) claim.

## V.    CONCLUSION

Aramark and Zillmer respectfully request that the Court dismiss with prejudice the claims against them in Plaintiffs' Amended Complaint.

---

[7]"Regardless of the type of violation (scheme or misrepresentation), a plaintiff must plead scienter . . . to state a claim under § 10(b)."  *Lilium N.V.*, 2024 WL 3916758, at *7 (*citing Carvelli*, 934 F.3d at 1317).  Plaintiffs fail to do so. *See supra* § IV.B; Vestis Br. § III.C.

Dated:  February 25, 2025                Respectfully submitted,

/s/ Christopher S. Turner

Christopher S. Turner
GA Bar No. 719102
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.,
Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
christopher.turner@lw.com

*Attorney for Defendants Aramark and
John J. Zillmer*

## **CERTIFICATION OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned counsel hereby certifies that the foregoing document was prepared in 14-point Times New Roman font, pursuant to Local Rule 5.1(B).

Dated: February 25, 2025

*/s/ Christopher S. Turner*
Christopher S. Turner
GA Bar No. 719102
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.,
Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
christopher.turner@lw.com

*Attorney for Defendants Aramark and John J. Zillmer*

27

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2025, a copy of the foregoing was filed with the Clerk of Court using CM/ECF which will send electronic notification of such filing to all counsel of record.

/s/ Christopher S. Turner
Christopher S. Turner
GA Bar No. 719102
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.,
Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
christopher.turner@lw.com

*Attorney for Defendants Aramark and John J. Zillmer*

28

**APPENDIX A**

**_PLUMBERS LOCAL 112 v. VESTIS CORP._, NO. 1:24-CV-2175 (N.D. GA.) - CHART OF ALLEGED PRE-SPIN MISSTATEMENTS**

| | DATE & SOURCE | SPEAKER | CHALLENGED STATEMENT[1] | REASON(S) NOT ACTIONABLE |
|---|---|---|---|---|
| 1 | September 11, 2023 Information Statement<br><br>(AC ¶ 159) | Vestis | "We believe our size and scale provide a **competitive advantage** in purchasing power, route density, operating efficiencies and ability to attract and retain talent as compared to smaller local and regional competitors." | • Puffery<br>• Inactionable opinion<br>• Allegations do not show falsity |
| 2 | September 11, 2023 Information Statement<br><br>(AC ¶ 159) | Vestis | "We believe we have **significant competitive advantages** including our full-service uniform solution offering, size and scale, extensive network footprint, **long-tenured customer relationships** and experienced leadership team." | • Puffery<br>• Inactionable opinion<br>• Allegations do not show falsity |
| 3 | September 11, 2023 Information Statement<br><br>(AC ¶ 159) | Vestis | "We **maintain long-term relationships with our customers due to the quality of our services and products, our ability to deliver on-time** and our ability to provide workplace supplies and services that support our customers' individual strategies and needs." | • Puffery<br>• Inactionable opinion<br>• Allegations do not show falsity |

---

[1] Text from the original source that is not quoted within the Amended Complaint is included for context. The Aramark Defendants have identified the language Plaintiffs challenge using bold text or red boxes.

| | **DATE & SOURCE** | **SPEAKER** | **CHALLENGED STATEMENT**[1] | **REASON(S) NOT ACTIONABLE** |
|---|---|---|---|---|
| 4 | September 11, 2023 Information Statement<br><br>(AC ¶ 161) | Vestis | "We believe **our customer retention rate was in excess of 90%** in the five years ended September 30, 2022, according to internal estimates." | • Inactionable opinion<br>• Accurate historical fact<br>• No duty to update |
| 5 | September 11, 2023 Information Statement<br><br>(AC ¶ 161) | Vestis | "We **serve an attractive, large and long-tenured customer base** with services and products that generate recurring revenue streams that typically allow more predictability of revenue than non-recurring revenue business models. | • Puffery<br>• Allegations do not show falsity |
| 6 | September 11, 2023 Information Statement<br><br>(AC ¶ 161) | Vestis | We continue to remain focused on retaining these customers, including **by ensuring we are delivering** new value through **new or updated services and products**." | • Puffery<br>• FLS<br>• Allegations do not show falsity |
| 7 | September 11, 2023 Information Statement<br><br>(AC ¶ 163) | Vestis | "**We seek to increase route efficiency with technology and processes that reduce travel time, distance and fuel consumption. For example, our new telematics technology allows us to proactively reduce fuel usage by limiting idling through real-time in-cab driver alerts.**" | • FLS<br>• Allegations do not show falsity |
| 8 | September 11, 2023 Information Statement | Vestis | "**Vestis' failure to retain its current customers, renew its existing customer contracts on comparable terms and obtain new customer** | • Inactionable risk factor |

2

| | DATE & SOURCE | SPEAKER | CHALLENGED STATEMENT[1] | REASON(S) NOT ACTIONABLE |
|---|---|---|---|---|
| | (AC ¶ 165) | | **contracts could adversely affect Vestis' business, financial condition or results of operations.**<br><br>Vestis' success depends on its ability to retain its current customers, renew its existing customer contracts and obtain new business on commercially favorable terms. Vestis' ability to do so generally depends on a variety of factors, including the quality, price and responsiveness of its services, as well as Vestis' ability to market these services effectively and differentiate itself from its competitors. In addition, customers are increasingly focused on and requiring Vestis to set targets and meet standards related to environmental sustainability matters, such as greenhouse gas emissions, packaging, waste and wastewater. When Vestis renews existing customer contracts, it is often on terms that are less favorable or less profitable for Vestis than the then-current contract terms. In addition, Vestis typically incurs substantial start-up and operating costs and experiences lower profit margin and operating cash flows in connection with the establishment of new business, and in periods with higher rates of new business, Vestis has experienced and expects to continue to experience negative impact to Vestis' profit margin and its cash flows. There can be no assurance that Vestis will be able to obtain new business, renew existing customer contracts at the same or higher levels of pricing or that Vestis' current customers will not turn to competitors, cease operations, elect to in-source or terminate contracts with Vestis. These risks may be exacerbated by current economic conditions due to, among other things, increased cost pressure at Vestis' customers, tight labor markets and heightened competition in a contracted marketplace. | • Allegations do not show falsity |

3

| | DATE & SOURCE | SPEAKER | CHALLENGED STATEMENT[1] | REASON(S) NOT ACTIONABLE |
|---|---|---|---|---|
| | | | The failure to renew a significant number of Vestis' existing contracts, including on the same or more favorable terms, would have a material adverse effect on Vestis' business, financial condition or results of operations, and the failure to obtain new business could have an adverse impact on Vestis' growth and financial results." | |
| 9 | September 13, 2023 Analyst/Investor Day Presentation (AC ¶ 167) | Vestis | | • Puffery<br>• Allegations do not show falsity |

| | DATE & SOURCE | SPEAKER | CHALLENGED STATEMENT[1] | REASON(S) NOT ACTIONABLE |
|---|---|---|---|---|
| 10 | September 13, 2023 Analyst/Investor Day Presentation (AC ¶ 167) | Vestis | Footnote 2: "Represents average tenure of our national accounts, defined as customers with $25,000 average weekly revenue and served by more than 2 market centers." | • Puffery<br>• Accurate historical fact<br>• Allegations do not show falsity |
| 11 | September 13, 2023 Analyst/Investor Day Transcript (AC ¶ 167) | Scott | "It is a diversified customer base. I'll take you through our customer mix, and I'll share some about that, but our customers stay with us for a very long time. So if you look at our data, you'll see that our small-to-medium enterprise customers on average are with us for 11 years. **You'll also see that our national account customers are with us for 26 years. So these are very loyal customers, we have very strong relationships, and we are seen as great partners**, and I'll even share some stories from our own customers with you today so that you can hear directly from them." | • Puffery<br>• Accurate historical fact<br>• Allegations do not show falsity |

5

| | DATE & SOURCE | SPEAKER | CHALLENGED STATEMENT[1] | REASON(S) NOT ACTIONABLE |
|---|---|---|---|---|
| 12 | September 13, 2023 Analyst/Investor Day Transcript (AC ¶ 167) | Scott | "So let's start with retaining our customers. I talked already about the fact that this is all about taking great care of your customers so that you can retain them and cross-sell them. And **our team is very focused on doing exactly what we say we're going to do, deliver on the promise, show up on time every week, deliver the products and services that you provide promise to your customers and do that with consistency and excellence**." | • Puffery<br>• Allegations do not show falsity |
| 13 | September 13, 2023 Analyst/Investor Day Transcript (AC ¶ 171) | Scott | "So many of you have heard us talk about the **implementation of ABS**, which is a system that we **launched across our entire network**, both in Canada and the U.S. It is our operating system, and it has provided a standardized common platform for all of our facilities to operate off of. What that has **allowed us to** do is to **put a handheld in the hand of every route service representative who's in a customer location** and they're able to do things much more rapidly and efficiently with this handheld. Add a new customer wear, add a new product, look up information for the customer. And **so we've given them digital tools in their hands so that they can interact more seamlessly and more efficiently with the customer**." | • Puffery<br>• Allegations do not show falsity |
| 14 | September 13, 2023 Analyst/Investor Day Transcript (AC ¶ 171) | Scott | "So the customer portal **is digitizing the experience**. And as I've said, I've had the opportunity to meet with several customers myself, to talk about this portal and the functionality of the portal. The portal provides great benefits to our customers. They're giving us **incredibly positive feedback** and the portal was built through their voice." | • Puffery<br>• Allegations do not show falsity |

| | DATE & SOURCE | SPEAKER | CHALLENGED STATEMENT[1] | REASON(S) NOT ACTIONABLE |
|---|---|---|---|---|
| 15 | September 13, 2023 Analyst/Investor Day Transcript (AC ¶ 171) | Scott | "So the first part of the question was, in your growth strategy, Were you already doing some of those things? Or are those new things?<br><br>And so if you think about our growth strategy, it had three components. The first one is protect the base, to retain the customers that you have. Of course, our team has always been focused on that, and we care about our customers, and we want to take great care of them. But what's different is we brought them better tools, right? So they have **data analytics**, they can **really trend customer behaviors and understand what's happening with that customer so that we can provide excellent service to them**. So what's different are the tools that we're giving them." | • Puffery<br>• Allegations do not show falsity |
| 16 | September 13, 2023 Analyst/Investor Day Transcript (AC ¶ 173) | Scott | Shlomo H. Rosenbaum<br>Stifel, Nicolaus & Company, Incorporated, Research Division<br><br>"Shlomo Rosenbaum from Stifel. I want to ask you to address what you talked about a little bit in terms of purposeful growth and sometimes stepping back a little bit because if you go through the [Form 10-K] financials you see like the workplace supplies had very good growth, but the uniforms were kind of – were basically flat revenue year-over-year. Can you talk about the dynamics that were behind that and why we didn't see Uniform's growth? And then I have another question after that on costs."<br><br>Kimberly T. Scott<br>President, CEO & Director | • Inactionable opinion<br>• Allegations do not show falsity |

| | DATE & SOURCE | SPEAKER | CHALLENGED STATEMENT[1] | REASON(S) NOT ACTIONABLE |
|---|---|---|---|---|
| | | | "Yes, absolutely. So we've been very focused on workplace supplies. And we've been targeting that as our key growth lever for quite some time now. So the reason you see the acceleration in the workplace supplies is very purposeful. It's around the cross-sell strategy, it's engaging the RSRs. You also see the purposeful strategy, the ADS numbers, the direct sale numbers do hit uniforms. So you also see that step back of roughly 70 bps in the growth rate, very purposefully tied to throttling down ADS so that we can expand it more profitably. So you saw a step back, a scale back purposely. **And then you** also **have a couple of, quite frankly, nonregrettable losses around some accounts that just didn't make sense for our portfolio. So you've got a couple of accounts that have left the portfolio as well that are depressing that uniforms[2] number.** <br><br> So all in, we feel very confident that we are growing where we want to grow, not just in workplace supplies, but in new customers that are uniform rental customers as well, and we're very pleased with the mix that we're driving and the profitability that's coming from that mix. **So while you may see that as a depressed number or a flat number, it's very intentional.**" | |

[2] Note: The original transcript (likely incorrectly) quotes Scott saying "Uniform's."

8