# EXHIBIT 1

**LEAD PLAINTIFFS' EXHIBIT 1**
**RESPONSE TO DEFENDANTS' CHART OF ALLEGED MISSTATEMENTS[1]**

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| 1, 2 | We believe we have **significant competitive advantages** including our full-service uniform solution offering, size and scale, extensive network footprint, **long-tenured customer relationships** and experienced leadership team. | September 11, 2023 Information Statement (AC ¶ 159) | • No falsity<br>• Opinion<br>• Puffery<br>• No scienter<br>• Not material | • Statement is materially false and misleading; Vestis did not have a "significant competitive advantage" due to its "long-tenured customer relationships." In reality, and as Defendants would later admit, at the same time these statements were made, Vestis had suffered a "large amount" of customer losses prior to the Spinoff, including the loss of "two large national accounts"—and these "known customer losses as we exited FY 2023" were so material that they directly caused the vast majority of the Company's revenue shortfall in fiscal year 2024. *See* AC ¶¶98; 162; Opp. § III.B.2 and § III.B.5.<br><br>• Statement is not an opinion; even if it was opinion, it is actionable under *Omnicare*, as it did not "fairly align" with the facts Defendants later admitted they had about major customer losses at the time. Opp. § |

[1] For brevity, the contents of the columns "Alleged Misstatements," "Date & Source," and "Reason(s) Not Actionable" are taken from the Vestis Defendants' Chart of Alleged Misstatements. ECF 65-2. The statements are numbered to substantially match the numbering in the Vestis Defendants' chart.

[2] Citations to "AC ¶__" refer to the numbered paragraphs of Lead Plaintiffs' Amended Consolidated Complaint ("Complaint" or "AC").

[3] Citations to "Opp. § __" refer to each section in Lead Plaintiffs' accompanying Omnibus Opposition to Defendants' Motions to Dismiss the Amended Complaint ("Opp."). The responses in this column supplement and are intended to be read in conjunction with the arguments contained in the Opp.

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | | | | III.B.8.<br><br>• Statement is not puffery.  Vestis' ability to retain its customers was highly material to investors, as Defendants themselves described retention as "the single highest value growth lever" for Vestis. Opp. § III.B.2.<br><br>• Numerous facts indicate Defendants' scienter (*See, e.g.,* AC ¶¶198-212; Opp. § III.C), including:<br><br>**Defendants' Admissions (*See, e.g.*, AC ¶¶93-101, 198-201, 205-206):** Defendants' own shocking admissions at the end of the Class Period—representing a complete about-face from Defendants' earlier statements—confirm their scienter.  For example, Defendants confessed Vestis could not adequately perform even the most basic tasks required of a uniform services company: "delivering on time, delivering full loads." These significant "service gaps" resulted in serious customer retention problems, such that "more than 70% of the [client] cancellations are due to causes that are within our control."  Moreover, Defendants admitted they <u>knew</u> about these service and retention issues <u>long before the Spinoff</u> but concealed this highly material information from investors throughout the Class Period. Specifically, Defendants admitted these were significant, longstanding issues that had been |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | | | | "in our business for quite some time," and that they "knew the impact coming [into the Spinoff] of the lower retention rate," stating that these were "known customer losses as we exited fiscal 2023." Defendants Scott and Dillon also had joined AUS a full two years prior to the Spinoff, and their entire focus during that time was on improving Vestis' operations and logistics—it defies credulity that they could have been unaware of the serious service issues plaguing the Company's core services that were causing a mass customer exodus.<br><br>**Defendants' Repeated Misrepresentations and Assurances (_See, e.g._, AC ¶¶68, 207, 209):**<br>Defendants repeatedly assured investors that there were no issues with customer retention. On multiple occasions, in response to direct analyst inquiries, Scott falsely asserted that customer losses were "nonregrettable" strategic terminations of customer relationships that were "very intentional" and "very purposeful" because they "didn't make sense for our portfolio"—or said that they were due to "business closures" that were outside the Company's control. Given these statements and the stated importance of customer retention to Vestis' core business, Defendants knew or were severely reckless in |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | | | | not knowing about the fundamental service issues that had plagued the Company "for quite some time." <br><br>**Former Employees and Internal Documents Confirm Defendants' Complicity in the Fraud (*See, e.g.*, AC ¶¶13-15, 109-155, 202-203):** FEs of Vestis and Aramark uniformly confirmed that Defendants were well aware throughout the Class Period that Vestis was plagued by long-standing operational failures that were prevalent well before the Spinoff, resulting in consistently poor customer service—which resulted in significant customer departures leading up to and after the Spinoff. Indeed, the FEs described internal reports showing that because of Vestis' egregiously bad service, it was "bleeding" customers even before the Spinoff, including major national accounts. In addition, internal Vestis reports, which were provided to direct reports of Defendant Scott, showed that Vestis lost a massive $147 million in recurring weekly revenue due to customer losses between August 21, 2023 and April 19, 2024, with a staggering $55 million of that amount lost in the five weeks prior to the Spinoff alone. <br><br>**Analysts Excoriated Defendants (*See, e.g.*,** |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | | | | **AC ¶¶12, 103-108, 204):** Defendants' severe loss of credibility with the market as a result of their misrepresentations is further indicative of their scienter. For example, Jefferies emphasized that Vestis suffered from a "significant mgmt. credibility issue," as it was "troubling" that "mgmt. never fully disclosed the fall off in retention on recurring revenue it started experiencing 2H23 or the true magnitude of customer losses to be expected…in FY24." Baird also stressed that Vestis' management' "credibility is low." Analysts were also incredulous as to how Defendants could have been unaware of these longstanding and severe service issues considering Defendants Scott and Dillon joined AUS two years before the Spinoff. As Barclays noted: "[Y]ou were at the company for almost 2 years, while under Aramark. You guys presumably did all this work going through IR Day and your confidence the last 2 quarters was pretty solid as well." And as Wolfe Research bluntly asked Defendants: "why haven't you guys caught this before the separation?" |
| | | | | **Exodus of Vestis Senior Management (See e.g., AC ¶¶5, 79, 210):** Despite the fact that Vestis has only been a standalone company for 18 months, the Company has had a remarkably high level of |

5

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | | | | turnover at the top—with at least five confirmed C-suite departures in a year, including the suspicious departure of COO Chris Synek during the Class Period only five months after assuming his role, the termination of Defendant Dillon a few months after the Class Period in January 2025, and the termination of Defendant Scott shortly thereafter. The resignation of multiple key executives who were directly in charge of Vestis' core operations and who were responsible for Defendants' materially false and misleading statements supports scienter.<br><br>**Massive $1.5 Billion Payment To Aramark (AC ¶¶1, 47, 211):**<br>Defendants had strong motive to lie to justify the $1.5 billion cash payout to Aramark as part of the Spinoff, which Aramark desperately needed to pay down its over $7 billion in corporate debt. |
| 3 | **"We maintain long-term relationships with our customers due to the quality of our services and products, our ability to deliver on-time** and our ability to provide workplace supplies and services that support our customers' individual strategies and needs." | September 11, 2023 Information Statement<br><br>(AC ¶159) | • No falsity<br>• Opinion<br>• Puffery<br>• No scienter<br>• Not material | • Statement is materially false and misleading, and omitted highly material information needed to make the statements not misleading. As Defendants later admitted, Vestis suffered a "large amount" of customer losses prior to the Spinoff, including the loss of two major national accounts, due to severe "service gaps" in which the Company was unable to deliver on time and routinely delivered inaccurate and "incomplete loads" |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | | | | to its customers—indeed, Defendants admitted that Vestis did not even "have a process to verify that the truck has been loaded accurately and that all of the product that needs to go to our customer is, in fact, being delivered to our customer." *See* AC ¶¶95, 97-98, 160; Opp. § III.B.2 and § III.B.5.<br><br>• Statement is not an opinion; even if it was opinion, it is actionable under *Omnicare* because it does not "fairly align" with the facts Defendants later admitted they had at the time. Opp. § III.B.8.<br><br>• Statement is not puffery; per Defendants' own public statements, the quality of the services Vestis provided to its customers, and its "ability to deliver on time," were absolutely critical to Vestis' customer retention and thus highly material to investors. Opp. § III.B.2.<br><br>• *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2. |
| 4 | "We believe **our customer retention rate was in excess of 90%** in the five years ended September 30, 2022, according to internal estimates." | September 11, 2023 Information Statement<br><br>(AC ¶ 161) | • No falsity<br>• Opinion<br>• No scienter<br>• Not material | • Statement is materially false and misleading. In reality, at the same time this statement was made, Vestis was "bleeding" customers, including the loss of "two large national accounts," which caused Vestis' customer retention rate to drop well below the "in excess of 90%" rate that Defendants publicly touted, all the way to 85%. *See* AC ¶¶98-99, |

7

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | | | | 162; Opp. § III.B.5. |
| | | | | • Statement concerns Vestis' retention rate and is factual, not an opinion; even if it was opinion, it is actionable under *Omnicare* because it does not "fairly align" with the facts Defendants later admitted they had at the time. Opp. § III.B.8. |
| | | | | • *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2. |
| 5, 6 | We **serve an attractive, large and long-tenured customer base** with services and products that generate recurring revenue streams that typically allow more predictability of revenue than non-recurring revenue business models. We continue to remain **focused on retaining these customers,** including **by ensuring we are delivering new value through new or updated services and products.** | September 11, 2023 Information Statement (AC ¶ 161) | • No falsity<br>• Puffery<br>• No scienter<br>• Not material<br>• Forward Looking | • Statement is materially false and misleading, and omitted highly material information needed to make the statement not misleading. As Defendants later admitted, Vestis suffered a "large amount" of customer losses prior to the Spinoff, including the loss of "two large national accounts"—and these "known customer losses as we exited fiscal 2023" were so material that they directly caused the vast majority of the Company's revenue shortfall in fiscal year 2024. Moreover, these customer losses were directly attributable to Vestis' severe "service gaps" in which the Company was "not tight on our processes as it relates to disciplined loading of trucks, delivering on-time, delivering full loads." As Defendant Scott conceded, "more than 70% of the [client] cancellations are due to causes that are within our control"—meaning they were directly "related to how we are |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
|  | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | | | | delivering the load on time and incomplete loads." *See* AC ¶¶97-98; 162; Opp. § III.B.2 and § III.B.5. |
| | | | | • Statement is not puffery; per Defendants' own public statements, Vestis' ability to retain its customers through its quality service was critical to its business and thus highly material to investors. Opp. § III.B.2. |
| | | | | • Statement is not forward-looking but rather describes Vestis' present actions to retain customers; even if it was, it is actionable because Defendants admitted they knew throughout the Class Period that Vestis was plagued by severe "service gaps" in which the Company was widely unable to achieve "on-time delivery" and routinely delivered inaccurate and "incomplete loads" to its customers. Opp. § III.B.7. |
| | | | | • *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2. |
| 8 | **Vestis' failure to retain its current customers, renew its existing customer contracts on comparable terms and obtain new customer contracts could adversely affect Vestis' business, financial condition or results of operations.** | September 11, 2023 Information Statement (AC ¶ 165) | • No falsity<br>• Risk factor<br>• No scienter<br>• Not material | • Statement is materially false and misleading because the risks it warned of had already transpired. As Defendants admitted at the end of the Class Period, because of Vestis' longstanding operational deficiencies and the Company's inability to accurately and timely deliver its products and services, Vestis suffered a "large amount" of customer losses |

9

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | Vestis' success depends on its ability to retain its current customers, renew its existing customer contracts and obtain new business on commercially favorable terms. . . . There can be no assurance that Vestis will be able to obtain new business, renew existing customer contracts at the same or higher levels of pricing or that Vestis' current customers will not turn to competitors, cease operations, elect to in-source or terminate contracts with Vestis. These risks may be exacerbated by current economic conditions due to, among other things, increased cost pressure at Vestis' customers, tight labor markets and heightened competition in a contracted marketplace. **The failure to renew a significant number of Vestis' existing contracts, including on the same or more favorable terms, would have a material adverse effect on Vestis' business, financial condition or results of operations, and the failure to obtain new business could have an adverse impact on Vestis' growth and financial results.**" | | | in fiscal year 2023—*i.e.*, <u>prior to the Spinoff</u>—including "two large national accounts." *See* AC ¶166; Opp. § III.B.5 and § III.B.7.<br><br>• Statement was clearly material; Defendants themselves admitted that these "known customer losses as we exited fiscal 2023" caused the vast majority of the 2Q24 revenue shortfall. AC ¶166; Opp. § III.B.5.<br><br>• Statement is an actionable risk factor because the risk to Vestis' business concerning the Company's failure to retain current customers, renew existing customer contracts on comparable terms, and to obtain new customers, had already materialized. AC ¶166; Opp. § III.B.7.<br><br>• *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2. |
| 9, 10, 11 | "It is a diversified customer base. I'll take you through our customer mix, and I'll share some about that, but our customers stay with us for a very long time. So if you look at our data, you'll see that our small-to-medium enterprise customers on average are with us for 11 years. **You'll also see that our national account customers are with us for 26 years. So these are very loyal customers, we have very strong relationships, and we are seen as great partners**, and I'll even share some stories from our own customers with you today so that you can hear directly | September 13, 2023 Analyst/Investor Day Presentation<br><br>(AC ¶ 167) | • No falsity<br>• Puffery<br>• No scienter<br>Not material | • Statements that Company's purportedly "very loyal" customer base and strong retention were materially false and misleading, and omitted highly material information needed to make the statements not misleading. In reality, and as Defendants later admitted, Vestis suffered a "large amount" of customer losses, including "<u>two large national accounts</u>," that occurred at this exact same time before the Spinoff during 4Q23—and |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | from them." <br><br> These statements were accompanied by an Investor Day Presentation, which included slides similarly touting the Company's **"[s]ticky [c]ustomer [b]ase"** with **"[h]igh tenure[d]"** customers, including a **"national account tenure of ~26 years,"** and claiming that the Company's **"single highest value growth lever is [customer] retention,"** which is **"achiev[ed]"** through **"service excellence."** | | | these "known customer losses as we exited fiscal 2023" were so material that they represented the vast majority of the Company's revenue shortfall in fiscal year 2024. Moreover, rather than retaining national account customers due to Vestis' "service excellence," as Defendants would admit, these customer losses were directly attributable to severe "service gaps" in which the Company was unable to achieve "on-time delivery" and routinely delivered inaccurate and "incomplete loads" to its customers—*i.e.*, provide the core services Vestis offered. *See* AC ¶¶97, 169; Opp. § III.B.2 and § III.B.5. <br><br> • Statement is not puffery; Vestis' ability to retain its customers was critical to its business and thus highly material to investors. Opp. § III.B.2. <br><br> • *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2. |
| 12 | "So let's start with retaining our customers. I talked already about the fact that this is all about taking great care of your customers so that you can retain them and cross-sell them. And **our team is very focused on doing exactly what we say we're going to do, deliver on the promise, show up on time every week, deliver the products and services that you provide promise to your customers and do that with consistency and excellence**." | September 13, 2023 Analyst/Investor Day Presentation <br><br> (AC ¶ 167) | • No falsity <br> • Puffery <br> • No scienter <br> • Not material | • Statement is materially false and misleading. Far from "retaining our customers" by delivering "on time every week," and serving them with "consistency and excellence," Defendants later admitted that the exact opposite was true. In reality, at the same time this statement was made, Vestis was hemorrhaging huge customers, and the Company was plagued by severe "service |

11

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | | | | gaps" in which the Company was unable to achieve "on-time delivery" and routinely delivered inaccurate and "incomplete loads" to its customers—indeed, Defendants admitted that Vestis did not even "have a process to verify that the truck has been loaded accurately and that all of the product that needs to go to our customer is, in fact, being delivered to our customer." *See* AC ¶¶168-169; Opp. § III.B.2 and § III.B.5.<br><br>• Statement is not puffery; the quality of the services Vestis provided to customers was critical to customer retention, and thus highly material to investors. Opp. § III.B.2.<br><br>• *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2. |
| 16 | During the call, an analyst asked Defendant Scott why the growth in the uniforms business was "basically flat revenue year-over-year," and "why we didn't see Uniform's growth?"<br><br>Scott responded:  "Yes, absolutely . . . So you also see that step back of roughly 70 bps in the growth rate, very purposefully tied to throttling down ADS so that we can expand it more profitably. So you saw a step back, a scale back purposely. **And then you also have a couple of, quite frankly, nonregrettable losses around some accounts that just didn't make sense for our portfolio. So you've got a couple of accounts that have left the** | September 13, 2023 Analyst/Investor Day Presentation<br><br>(AC ¶ 173) | • No falsity<br>• Opinion<br>• No scienter<br>• Not material | • Statement is materially false and misleading. Far from being "nonregrettable" or "very intentional," Defendants later admitted that these pre-Spinoff losses—including the loss of two "large national accounts"—were in truth "unfortunate," "regrettable," and not "part of our strategy," and were directly attributable to Vestis' abysmal service issues rather than to Defendants' intentional decision to rid the Company of these customers because they purportedly "just didn't make sense for our portfolio." Moreover, as Defendants would be forced to |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | **portfolio as well that are depressing that uniforms[4] number.**<br><br>So all in, we feel very confident that we are growing where we want to grow, not just in workplace supplies, but in new customers that are uniform rental customers as well, and we're very pleased with the mix that we're driving and the profitability that's coming from that mix. **So while you may see that as a depressed number or a flat number, it's very intentional."** | | | reveal at the end of the Class Period, these "known customer losses as we exited fiscal 2023" were highly material, as they accounted for the vast majority of the Company's revenue shortfall in 2Q24. *See* AC ¶¶83, 174; Opp. § III.B.2 and § III.B.5.<br><br>• Statement concerns the reasons for Vestis' customer losses and is not an opinion; even if it was opinion, it is actionable under *Omnicare* because it does not "fairly align" with the facts Defendants later admitted they had at the time. Opp. § III.B.7.<br><br>• *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2. |
| 17, 18 | During the call, in response to other analysts' questions, Scott continued to make statements claiming that Vestis' business would not be impacted by any customer losses, because the loss of any customers was intentional and part of Vestis' business plan: **"We are just purposely at times exiting some business** and also overshadowing that with the workplace supplies. So **I would expect you should see a muted uniforms growth rate again in FY '24, but that is a very purposeful decision to grow very strategically under high-quality verticals and exiting some underperforming business."** | Q4 2023 Results Conference Call November 29, 2023<br><br>(AC ¶ 175) | • No falsity<br>• No scienter<br>• Not material<br>• Forward Looking | • Statement is materially false and misleading, as the exact opposite was true. Far from being "very purposeful" or "strategic," Defendants later admitted that Vestis suffered an extraordinary amount of customer losses prior to the Spinoff, and that these pre-Spinoff losses—including the loss of two "large national accounts"—were in truth "unfortunate, "regrettable," and not "part of our strategy," because these losses were directly attributable to Vestis' abysmal service rather than purportedly being due to these businesses being "underperforming." |

[4] Note: The original transcript (likely incorrectly) quotes Scott saying "Uniform's."

13

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | | | | Moreover, these "known customer losses as we exited fiscal 2023" were highly material, as they accounted for the vast majority of the Company's revenue shortfall in fiscal year 2024. AC ¶¶83, 177-179; *see* Opp. § III.B.4 and § III.B.5. |
| | | | | • Statement is not forward looking because Defendants attributed their expectation of a "muted uniforms growth rate [] in FY '24" to their <u>past</u> purported "very purposeful decision" to "exit[] some underperforming business" when the exact opposite was true— rather than the prior loss of these customers being "very purposeful," as Defendants would admit, these customers in truth represented highly "regrettable" and unintentional customer losses that were directly attributable to Vestis' abysmal service. AC ¶¶76, 83, 177-179. |
| | | | | • *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2. |
| 19 | During the call, an analyst asked Defendant Scott about the status of the Company's customer retention.<br><br>Scott responded: "So obviously, we continue to focus on creating an **amazing customer experience**, and we talked a lot about -- some of the things that we're doing to enhance that experience from training our frontline teammates and our territory managers with playbooks | Q4 2023 Results Conference Call November 29, 2023<br><br>(AC ¶ 176) | • No falsity<br>• Puffery<br>• No scienter<br>• Not material | • Statements are materially false and misleading, and omitted highly material information needed to make the statements not misleading. As Defendants would later admit, during 4Q23, Vestis' retention rate fell far below 90% due to a "large amount" of customer losses before the Spinoff, including two large national accounts. Nor had the |

14

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | around how to do a great job taking care of the customer to also providing our route drivers, our frontline teammates with tools to let them know when there's an opportunity to improve with the customer and then also to launching our customer portal, which we're getting great feedback on. **So we feel really good about the momentum around protecting and growing our customer base. We are seeing really, really great feedback from our customers around these initiatives. And so we feel very, very good about the establishment of a service excellence culture across the company. We also continue to deliver retention rates that are above 90% as we stated in our Form 10.** So we continue to emphasize that greatly." | | | Company "establish[ed] [] a service excellence culture across the company." In reality, and as Defendants admitted at the end of the Class Period, Vestis' customer losses were directly attributable to severe "service gaps" in which the Company was unable to achieve "on-time delivery" and routinely delivered inaccurate and "incomplete loads" to its customers—*i.e.*, the core services Vestis provided. Indeed, Defendants admitted that Vestis did not even "have a process to verify that the truck has been loaded accurately and that all of the product that needs to go to our customer is, in fact, being delivered to our customer." *See* AC ¶¶97, 177-79; Opp. § III.B.2, and § III.B.5.  • Statement is not puffery; Vestis' ability to retain its customers was critical to its business and thus highly material to investors. Opp. § III.B.2.  • *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2. |
| 20 | During the call, an analyst asked Scott about the "trends you've been seeing in [] medium-sized enterprises versus national accounts."  Scott responded: "So we are very focused on both groupings of customers. As we've talked about earlier, they [both] add great value. So our national account | Q4 2023 Results Conference Call November 29, 2023 | • No falsity<br>• Puffery<br>• No scienter<br>• Not material | • Statements touting long-term "national account" customer relationships of "more than 20 years," with "great" "lifetime value," were materially false and misleading, and omitted highly material information needed to make the statements not misleading. In reality, and as Defendants would later admit, |

15

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | customers can really form the backbone of your supply chain and create density. So we've got a team out there hunting and harvesting national account customers. **And those [national account] customers, as you know, stay more than 20 years with us. So they're very valuable customers and the lifetime value is great."** | (AC ¶ 176) | | Vestis suffered a "large amount" of customer losses prior to the Spinoff—including the loss of two major national accounts—due to severe "service gaps" in which the Company was unable to achieve "on-time delivery" and routinely delivered inaccurate and "incomplete loads" to its customers. Moreover, these "known customer losses as we exited fiscal 2023" were highly material, as they accounted for the vast majority of the Company's revenue shortfall in fiscal year 2024.  *See* AC¶¶ 97-99; Opp. § III.B.5.<br><br>• Statement is not puffery; Vestis' ability to retain its customers was critical to its business and thus highly material to investors. Opp. § III.B.2.<br>• *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2. |
| 21 | We believe we have **significant competitive advantages** including our full-service uniform solution offering, size and scale, extensive network footprint, **long-tenured customer relationships** and experienced leadership team. Given our robust capabilities, scale and talent, we are well positioned to partner with customers for their future needs across a range of services, use cases and business strategies. | 2023 10-K<br><br>(AC ¶ 180) | • No falsity<br>• Opinion<br>• Puffery<br>• No scienter<br>• Not material | • *See* Plaintiffs' Response to Statements No. 2, as Statement No. 21 repeats the same statements set forth in Statement No. 2. |
| 22 | **"We maintain long-term relationships with our customers due to the quality of our services and products, our ability to deliver on-time** and our ability | 2023 10-K<br><br>(AC ¶ 180) | • No falsity<br>• Puffery<br>• No scienter | • *See* Plaintiffs' Response to Statements No. 3, as Statement No. 22 repeats the same statements set forth in Statement No. 3. |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | to provide workplace supplies and services that support our customers' individual strategies and needs." | | • Not material | |
| 24 | **"Vestis' failure to retain its current customers, renew its existing customer contracts on comparable terms and obtain new customer contracts could adversely affect Vestis' business, financial condition or results of operations.**<br><br>Vestis' success depends on its ability to retain its current customers, renew its existing customer contracts and obtain new business on commercially favorable terms.<br>. . .<br>There can be no assurance that Vestis will be able to obtain new business, renew existing customer contracts at the same or higher levels of pricing or that Vestis' current customers will not turn to competitors, cease operations, elect to in-source or terminate contracts with Vestis. These risks may be exacerbated by current economic conditions due to, among other things, increased cost pressure at Vestis' customers, tight labor markets and heightened competition in a contracted marketplace. **The failure to renew a significant number of Vestis' existing contracts, including on the same or more favorable terms, would have a material adverse effect on Vestis' business, financial condition or results of operations, and the failure to obtain new business could have an adverse impact on Vestis' growth and financial results."** | 2023 10-K<br><br>(AC ¶ 182 ) | • No falsity<br>• Risk factor<br>• No scienter<br>• Not material | • *See* Plaintiffs' Response to Statement No. 8, as Statement No. 24 repeats the same statements set forth in Statement No. 8. |
| 36, 37 | During the call, an analyst asked Defendant Scott to "please comment on retention, the trends and the drivers, whether it's service quality, the predictive analytics, the | Q1 2024 Results Conference | • No falsity<br>• No scienter<br>• Not | • Statement is materially false and misleading, and omitted highly material information needed to make the statement not misleading. |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | digital tools," and also "conversely, what reasons for attrition would be outside of the delivery exits, say specifically within Uniform direct sales?"<br><br>Scott responded: "So we'll start with retention. So just to take you back, we have been talking about retention and using the stat **greater than 90%, which is what we filed in the Form-10, and we continue to maintain retention above that level.** So I'll start there, that **we have no real surprises, as it relates to retention and where we expected to be for the most part.**" | Call February 7, 2024<br><br>(AC ¶ 190) | material | As Defendants would admit just three months later, in reality, Vestis' severe "service gaps" had caused the Company to lose a "large amount" of customers beginning before the Spinoff, including "two large national accounts," which caused Vestis' customer retention rate to drop well below the critical "above 90%" retention rate that Defendants publicly touted—all the way to 85%. Moreover, these "known customer losses as we exited fiscal 2023" were so material that they directly caused the vast majority of the Company's revenue shortfall in 2Q24, as Vestis was "still currently absorbing" this "large amount of rollover losses" in FY 24. *See* AC ¶¶98-99, 191; Opp. § III.B.5.<br><br>• *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2. |
| 38, 39 | In response to the same analyst question set forth above in Statement No. 36 and Statement No. 37, Scott further responded regarding reasons for customer attrition, claiming they had nothing to do with any service issues at the Company but were rather attributable to an "uptick" in "business closures" among Vestis' customers caused by outside economic factors.<br><br>Specifically, Scott responded: "[G]enerally speaking, when you look at the rest of retention, and you look at recent codes to answer your question around why would | Q1 2024 Results Conference Call February 7, 2024<br><br>(AC ¶ 192) | • No falsity<br>• No scienter<br>• Not material | • Statement that customer losses were due to "a slight uptick in customers going out of business" is materially false and misleading. In reality, and as Defendants would later admit, the vast majority of the Company's customer losses had nothing to do with "business closures" but were instead directly attributable to Vestis' inability to deliver its products and services accurately and on time, *i.e.*, provide the core services the Company offered. As Defendants admitted, "more than |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | you see customers leave, **we are seeing small to medium enterprise customers with an uptick in business closures. And so just important to note, as we look at recent codes, we are monitoring that very closely.** And it's also when you try to drill it down a little bit further, you can see a trend. As an example, in Canada, there's a trend with restaurants. So when you look at what is happening around business closures, particularly with small to medium enterprise, **we're going pretty deep and granular to understand what are those patterns and trends around why customers leave. We're seeing a slight uptick in customers going out of business** in those small to medium enterprise verticals, particularly around restaurants, as an example. So we're managing that and monitoring that very closely . . . So we are very focused on doing that, but also at the same time understanding why customers might leave." | | | 70% of cancellations [were] due to causes that [were] within our control"—meaning they were directly "related to how we are delivering the load on time and incomplete loads." Indeed, Defendant Scott admitted that Vestis did not even "have a process to verify that the truck has been loaded accurately and that all of the product that needs to go to our customer is, in fact, being delivered to our customer." *See* AC ¶¶95, 97, 190-194; Opp. § III.B.4.<br><br>• *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2. |
| 40 | During the call, an analyst asked Defendant Scott to "discuss some of the factors you're seeing that may be causing Uniforms growth to come a bit below some of what your competitors are seeing, where growth is tracking somewhere north of 5%?"<br><br>Scott responded by again claiming the reason had nothing to due with any issues concerning Vestis' operations or service, but was instead attributable to an "uptick in business closures": **"I did mention that we do see an uptick in business closures, as it relates to our SMEs. So that also has an effect on the number, as it relates to the impact of retention on the Uniforms number, and** | Q1 2024 Results Conference Call February 7, 2024<br><br>(AC ¶ 193) | • No falsity<br>• No scienter<br>• Not material | • Statement is materially false and misleading, as Vestis' customer losses were not due to an "uptick in business closures." Rather, in reality and as Defendants later admitted, the vast majority of these losses were instead directly attributable to Vestis' inability to deliver its products and services accurately and on time. As Defendants admitted, "more than 70% of cancellations [were] due to causes that [were] within our control"—meaning they were directly "related to how we are delivering the load on time and incomplete loads." Indeed, Defendant Scott admitted that Vestis did not even "have a |

19

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | **we're very transparent about that, we're very aware of it, we're managing that very closely**." | | | process to verify that the truck has been loaded accurately and that all of the product that needs to go to our customer is, in fact, being delivered to our customer." *See* AC ¶¶95, 97, 194; Opp. § III.B.4.<br><br>• *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2. |
| 41 | In response to the same analyst question set forth in Statement No. 40 above, Scott admitted that Vestis had suffered a "regrettable" loss of <u>one</u> national account, misleadingly omitting that Vestis had in fact lost <u>two</u> major national accounts, and that these losses were not due to benign reasons but rather directly attributable to Vestis' severe service issues.<br><br>Specifically, Scott further responded:  "**[W]e also have a national account loss, but we haven't talked about it a lot because it wasn't a strategic loss. It was an unfortunate loss from our Clean Room business last year, and it was a loss that continues to flow through in the first two quarters of this year, which also affects that Uniforms number. And again, we haven't talked about it a lot because it's a regrettable loss. It wasn't part of our strategy**, but it's **just part of the nature of doing business.**  So we also had, towards that, impacting our growth rate in the Uniform sector in the period, and we will see that loss still impacting us in the second quarter of the year . . . So we feel very good about the | Q1 2024 Results Conference Call February 7, 2024<br><br>(AC ¶ 195) | • No falsity<br>• No scienter<br>• Not material | • Statement is materially false and misleading because Defendant Scott misleadingly omitted the highly material fact that—as Defendants would later admit—the Company had lost not one, but "<u>two large national accounts</u>" prior to the Spinoff.  Moreover, these "known customer losses as we exited fiscal 2023"—which were so material they accounted for the vast majority of the Company's revenue shortfall in 2Q24—were not "just part of the nature of doing business," but were instead directly attributable to Vestis' pervasive and severe "service gaps." *See* AC ¶¶84, 196; Opp. § III.B.4.<br><br>• *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2. |

20

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE[2] | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE[3] |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Customer Retention/Service** | | | |
| | underlying health of the business despite some of those factors that are muting the Uniforms growth rate." | | | |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Telematics and Technology** | | | |
| 7 | "We focus on the efficient use of fossil fuels to reduce related emissions. **We seek to increase route efficiency with technology and processes that reduce travel time, distance and fuel consumption. For example, our new telematics technology allows us to proactively reduce fuel usage by limiting idling through real-time in-cab driver alerts.**" | September 11, 2023 Information Statement<br><br>(AC ¶ 163) | • No falsity<br>• Forward looking<br>• No scienter<br>• Not material | • Statement is materially false and misleading. Rather than having implemented "new Telematics technology" that "increased route efficiency," in reality, and as Defendant Scott ultimately admitted, Vestis was not using Telematics technology at all during the Class Period—despite the fact that Telematics was the most basic, "very normal thing you would have in a B2B business," and was absolutely critical "to make sure that we are delivering to customers on time." Indeed, even at the end of the Class Period, Scott admitted that the Company had only "rolled out Telematics across our fleet <u>now</u>," that Telematics had only "<u>now</u> been installed in the trucks," such that Vestis only "<u>expect[ed]</u>" to "<u>begin</u>" using Telematics at some undetermined point in the future, and no benefits from Telematics could even be realized until 2025. *See* AC ¶164; Opp. § III.B.3.<br><br>• Statement is highly material. Indeed, Defendants repeatedly spoke about the |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Telematics and Technology** | | | |
| | | | | importance of Telematics for improving Vestis' logistics both before and during the Class Period, and how Vestis had purportedly been using it to do exactly that.  *See* Opp. § II.B, § II.D, and § III.C.2.<br><br>• Statement is not forward looking; Defendants were touting their <u>current</u> use of Telematics technology, and moreover Defendants knew throughout the Class Period that Vestis was not using any Telematics technology. Opp. § III.B.7.<br><br>• *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2. In addition, Defendants' admissions regarding Vestis' lack of having critical technology in place to provide its customers with on-time, accurate delivery support a finding of scienter.  At the end of the Class Period, Defendant Scott specifically admitted to the critical importance of Telematics, noting that it was a "very normal thing that you would have in a B2B route-based business," and that she had been aware since the time she "c[a]me into this business" over two years earlier that "we did not have Telematics in our fleet"—yet over two years later, Telematics was still not operational at Vestis. *See* AC ¶¶10, 94-96; Opp. § II.E and § III.C.1. |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Telematics and Technology** | | | |
| 13, 14 | And then lastly, digital tools. So our customers also want an easier interface with us. And I'm going to talk about the customer portal that we just launched a few weeks ago, that our customers are delighted about. And I've had the opportunity to meet with many of them and to talk in person about our portal. And I'll take you through the functionality of that portal and the value that, that portal is bringing to our customers, but also giving our frontline team tools. So many of you have heard us talk about **the implementation of ABS**, which is a system that **we launched across our entire network**, both in Canada and the U.S. It is our operating system, and it has provided a standardized common platform for all of our facilities to operate off of. What that has allowed us to do, **is to put a handheld in the hand of every route service representative who's in a customer location,** and they're able to do things much more rapidly and efficiently with this handheld; add a new customer where, add a new product, look up information for the customer. **And so we've given them digital tools in their hands, so that they can interact more seamlessly and more efficiently with the customer.** So the customer portal is **digitizing the experience.** And as I've said, I've had the opportunity to meet with several customers myself to talk about this portal and the functionality of the portal. The portal provides great benefits to our customers. **They are giving us incredibly positive feedback**, and the portal was built through their voice. | September 13, 2023 Analyst / Investor Day (AC ¶ 171) | • No falsity<br>• No scienter<br>• Puffery<br>• Not material | • Statement is materially false and misleading. Instead of having ABS technology in place to "interact more seamlessly and more efficiently" with customers; in reality, as Defendants admitted at the end of the Class Period, Vestis was unable to timely and accurately deliver its products and services to customers, resulting in severe "service gaps." Indeed, Defendant Scott starkly admitted that, despite Defendants' prior claims about having all the necessary technology and systems in place to ensure accurate, on-time deliveries, Vestis did not even "have a process to verify that the truck has been loaded accurately and that all of the product that needs to go to our customer is, in fact, being delivered to our customer"—*i.e.*, the proclaimed technology tools were not in use as claimed. *See* AC ¶172; Opp. § III.B.3.<br><br>• Statement is not puffery; whether or not Vestis had the requisite systems in place to ensure accurate, timely deliveries, was highly material to investors. *See* Opp. § I and III.B.2.<br><br>• *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2 and Statement No. 7. |
| 15 | And so if you think about our growth strategy, it had 3 components. **The first one is protect the base, so retain the customers that you have.** Of course, our team has | September 13, 2023 Analyst / | • No falsity<br>• Puffery<br>• No scienter | • Statement is materially false and misleading; despite Defendants' claims that they had implemented numerous systems, including |

23

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Telematics and Technology** | | | |
| | always been focused on that, and we care about our customers, and we want to take great care of them. But what's different is we brought them better tools, right? So they have **data analytics, they can really trend customer behaviors and understand what's happening with that customer so that we can provide excellent service to them.** So what's different are the tools that we're giving them. | Investor Day<br><br>(AC ¶ 171) | • Not material | "data analytics," to ensure Vestis provided "excellent service" to its customers, Defendant Scott admitted at the end of the Class Period that the exact opposite was true: Vestis had no "process to verify that the truck has been loaded accurately and that all of the product that needs to go to our customer is, in fact, being delivered to our customer." *See* AC ¶172; Opp. § III.B.3.<br><br>• Statement is not puffery; whether Vestis had the requisite systems in place to ensure accurate, on-time deliveries was highly material to investors. *See* Opp. § I and III.B.2.<br><br>• *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2 and Statement No. 7. |
| 23 | **"We seek to increase route efficiency with technology and processes that reduce travel time, distance and fuel consumption. For example, our new telematics technology allows us to proactively reduce fuel usage by limiting idling through real-time in-cab driver alerts."** | 2023 10-K<br><br>(AC ¶ 181) | • No falsity<br>• No scienter<br>• Not material | • *See* Plaintiffs' Response to Statement No. 7, as Statement No. 23 repeats the same statements set forth in Statement No. 7. |
| 34 | In parallel, we continue to execute against our efficient operations initiatives. We are delivering a step change improvement in the way we operate, optimizing our network, reducing empty miles and lowering fuel consumption across our system. In the first quarter, we have already completed another 13 route and network optimization events with many more planned for the balance of the year and beyond. This demonstrates great | Q1 2024 Results Conference Call February 7, 2024<br><br>(AC ¶ 188) | • No falsity<br>• No scienter<br>• Not material | • Statement is materially false and misleading, as Defendants had not "successfully deployed new [T]elematics technology across 89% of our fleet." To the contrary, as Defendants admitted at the end of the Class Period, Vestis had only "rolled out Telematics across our fleet <u>now</u>," and Telematics had only "<u>now</u> been installed in the trucks"—such that no |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Telematics and Technology** | | | |
| | momentum when compared to the 26 events we completed last year. **Year-to date, we've successfully deployed new telematics technology across 89% of our fleet and fully deployed new routing and scheduling technology and processes across North America, all a part of our strategy to establish the capability to continuously optimize our network and our routes.** | | | benefits from Telematics could even be realized until 2025.  Indeed, Defendant Scott conceded that Vestis was only "expecting" to be able to "begin" using Telematics at some undetermined point in the future: "we expect very quickly that we'll begin to use those insights and that data from Telematics to shore this up and make sure that we're delivering on time and that we're where we should be, when we should be." *See* AC ¶189; Opp. § III.B.3.<br><br>• *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2 and Statement No. 7. |
| 35 | During the call, an analyst asked Defendant Scott to talk about the Company's "optimization events" and "how we should think about these types of things unfolding through the course of the year and what they can mean to the profit margin profile."<br><br>In response, Scott again touted the Company's use of its new Telematics technology:  "So, when we are referencing the optimization events related to logistics and routing and scheduling, I take you back to our strategy. When we spoke a great deal about optimizing our routes and building our logistics muscle . . . And so, we're building momentum around that and when we first started, we had to build the muscle and teach the organization how to do this. I spoke a little bit about ensuring that we got the change management right, that we were engaging with customers, that we were doing the handoff and the change | Q1 2024 Results Conference Call February 7, 2024<br><br>(AC ¶ 188) | • No falsity<br>• No scienter<br>• Not material | • *See* Plaintiffs' Response to Statement No. 34. |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Telematics and Technology** | | | |
| | effectively, and creating no disruption for our teammates or for our customers. So we were kind of going slow in the beginning. Not slow, but in a moderated way to make sure we did this thoughtfully. **Now we're starting to ramp this thing up and we're gaining more traction . . at the same time, we're also institutionalizing these tools. So when I talk about adding the telematics across all of our fleet so we can ensure that we're running routes in compliance with** how we'd like to do that." | | | |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Financial Projections and Take Price** | | | |
| 25, 26 | "I'm incredibly proud of our team's performance as Vestis completed our first quarter as a standalone publicly traded company," said Vestis President and Chief Executive Officer Kim Scott. "We are demonstrating that **our high-quality growth strategy is effective** as we improve our revenue mix and deliver growth and margin expansion in tandem, while also absorbing incoming public company costs. **I remain confident in our ability to deliver on our full year financial outlook** and continue to be energized by the opportunities ahead for Vestis. | Q1 2024 Press Release February 7, 2024 (AC ¶ 183) | • No falsity<br>• Puffery<br>• No Scienter<br>• Not material<br>• Opinion<br>• Forward looking | • Statement is materially false and misleading; Defendants lacked any reasonable basis to reaffirm their financial outlook of 4% to 4.5% annual revenue growth at this time because the Company's "high-quality growth strategy" was decidedly <u>not</u> "effective." Indeed, as Defendants would later admit, at this time they already knew (i) of the severe service and customer retention issues at the Company that had "persisted in this business for some time"; and (ii) that those issues had caused a "large amount" of customer losses, including the loss of two major national accounts, beginning <u>before the Spinoff</u>—such that Defendants |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Financial Projections and Take Price** | | | |
| | | | | "knew the impact coming [into 2024] of the lower retention rate." Indeed, these "known customer losses as we exited fiscal 2023" were so material that they caused the vast majority of the Company's revenue shortfall in 2Q24—and forced the company to drastically <u>reduce</u> revenue growth guidance, from 4.5% growth to a <u>negative 1% decline in growth</u>. As Defendants admitted, Vestis was "still currently absorbing" this "large amount of rollover losses" from FY 23 in FY 24—*i.e.*, at the same time Defendants reaffirmed the Company's ability to achieve the 4.5% growth guidance. *See* AC ¶¶93, 98, 101; Opp. § III.B.7 and § III.B.8. <br><br>• Statement is not puffery; the "effectiveness" of the Company's growth strategy and its ability to deliver on its financial outlook as a newly spun off entity was highly material to investors. *See* Opp.§ III.B.2. <br><br>• Statement about "effectiveness" of Vestis' "high-quality growth strategy" in the quarter was not opinion; even if it was opinion, it is actionable under *Omnicare* because it did not "fairly align" with the facts Defendants later admitted they knew at the time. Opp. § III.B.8. <br><br>• Statement is not forward-looking, but rather a present-tense representation of the current "effectiveness" of Vestis' growth strategy and the Company's ability to achieve its guidance. |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Financial Projections and Take Price** | | | |
| | | | | To the extent that it is forward-looking, it is actionable because Defendants knew Vestis' growth strategy was <u>not</u> effective at this time—Vestis was "bleeding" customers due to its abysmal service—and it therefore could not support any reasonable belief that Vestis would achieve the 4.5% annual revenue growth guidance. Opp. § III.B.7. <br><br> • *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2. |
| 27, 28 | We are pleased to see the positive results of our strategy manifest as we deliver growth and margin expansion in tandem . . **As we move through the balance of the year, we expect acceleration in our growth rates** that will follow similar patterns from prior years and additionally, we will lap the temporary energy fee beginning in Q3. **We are also seeing opportunity for additional pricing actions in the back half of the year. As a result, I remain confident in our ability to deliver our full year guidance of 4% to 4.5% revenue growth and adjusted EBITDA margin of 14.3%,** which, as a reminder, equates to approximately 50 basis points to 60 basis points of margin expansion offset by the impact of new public company cost in the period. | Q1 2024 Results Conference Call February 7, 2024 <br><br> (AC ¶ 184) | • No falsity <br> • Opinion <br> • Forward looking <br> • Puffery <br> • No Scienter <br> • Not material | • Statement is materially false and misleading. Defendants did not "see[] opportunity for additional pricing actions" that could provide any reasonable basis for Defendants to "expect acceleration in our growth rates" or "remain confident" in its annual revenue growth guidance—rather, as Defendants admitted at the end of the Class Period, the exact opposite was true: Vestis was forced to dramatically <u>lower</u> prices, to the tune of "250 basis points," in a desperate effort to stem even more significant customer losses resulting from Vestis' severe "service gaps." As Defendant Scott admitted, Vestis had to "<u>deliberately moderate[] planned price increases…in order to reduce customer churn</u>." FEs further confirmed that, at this exact same time in February 2024, Defendant Scott held an internal town hall meeting during which she |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Financial Projections and Take Price** | | | |
| | | | | instructed employees that Vestis would have to drastically <u>cut</u> prices due to stem rapidly declining business. Defendants therefore had no reasonable basis to claim that Vestis' efforts to increase pricing—which they knew they were unable to actually implement—would help it achieve the 4% to 4.5% revenue growth guidance. *See* AC ¶¶100, 123, 187; Opp. § I, § III.B.6, § III.B.7, and § III.B.8.<br><br>• Statement concerns Vestis' specific pricing actions and pricing ability and is not an opinion; even if it was opinion, it is actionable under *Omnicare* because it does not "fairly align" with the facts Defendants would later admit they had at the time. Opp. § III.B.8.<br><br>• Statement is not puffery; the Company's ability to deliver on its financial outlook as a newly spun off entity using the pricing strategies Defendants described was highly material to investors. *See* Opp. § III.B.2.<br><br>• Statement is actionable as a forward-looking statement because, per Defendants' own admissions and multiple FE accounts, Defendants knew at this time that customers were leaving Vestis in droves due to its abysmal service issues that had not been cured, and that Vestis had to drastically <u>discount</u> its prices to prevent further significant customer losses as a result—meaning Defendants had no reasonable basis to "expect acceleration in our |

29

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Financial Projections and Take Price** | | | |
| | | | | growth rates" or achieve the Company's annual revenue growth guidance of 4.5%. *See* Opp. § III.B.6 and § III.B.7. |
| | | | | • *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2 and Statement No. 25. In addition, and as referenced above, multiple FEs recalled a February 2024 town hall meeting, hosted by Defendant Scott, during which Scott acknowledged the Company's poor results and stated that Vestis would be forced to dramatically lower its prices to retain whatever customers were left. AC ¶123. Defendants' admissions detailed above in the reasons why this statement is false also supports a finding of scienter. *See* Opp. § III B.6 and § III.C.3. |
| 29, 30 | During the call, an analyst asked Defendant Scott about the "opportunity" the Company saw "to get more pricing as we're going through the year." <br><br> Scott responded: "So **we do see the opportunity to take some incremental pricing in the back half of the year. We've been very thoughtful and I would say somewhat moderated about pricing in the first quarter**. . .What I mean by that is, looking at customer cohorts and identifying groups of customers that may be underpriced on specific products, as an example. So we segmented our customers. We identified customers who may have certain products or services that are below the average as it relates | Q1 2024 Results Conference Call February 7, 2024 <br><br> (AC ¶ 185) | • No falsity <br> • Opinion <br> • Forward looking <br> • Puffery <br> • No scienter <br> • Not material | • Statement is materially false and misleading for the reasons set forth in Statement No. 27 and Statement No. 28. <br><br> • Statement concerns Vestis' specific pricing actions and pricing ability and is not an opinion; even if it was opinion, it is actionable under *Omnicare*, as it did not "fairly align" with the facts Defendants later admitted they had at the time. *See* Opp. § III.B.8. <br><br> • Statement is actionable as a forward-looking statement because Defendants knew at this time that customers were already leaving |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Financial Projections and Take Price** | | | |
| | to price. So **we will be taking price** around certain specific kind of product lines with those customers. We've identified customers who may receive more than one stop in a week, but they're only being charged for one stop. And it's very appropriate that there would be incremental charges for multi-day service. So we've identified that cohort of customers and **we'll be taking price** to charge those customers accordingly for multi-day service. And then we'll also take some more general pricing, **but in a very surgical way with a lot of analysis around which customers will be impacted and what the current relationship and state and condition of the relationship is with that customer**. So we definitely see the opportunity. We will be doing that in the back half of the year, particularly towards kind of the end of the second quarter, quite frankly. And then you'll see some of that roll through in the third and fourth." | | | Vestis in droves due to its abysmal service issues that had not been cured, and that Vestis would have to drastically <u>discount</u> its prices to prevent further significant customer losses as a result. *See* Opp. § III.B.6 and § III.B.7.<br><br>• Statement is not puffery; Vestis' ability to deliver on its growth guidance as a newly spun off Company using the pricing strategies Defendants described was highly material to investors. *See* Opp. § III.B.2.<br><br>• *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2 and Statement No. 28. |
| 32, 33 | During the call, an analyst asked Defendant Scott about the Company's "opportunistic areas to take price," and whether it should "driv[e] incremental comfort in achieving the guidance for the year."<br><br>Scott responded:  Yeah. **I would think about it as additional comfort to give you confidence, the same confidence we have that we're going to ramp up the growth rates in the back half of the year and deliver against the 4% to 4.5%.** So -- and certainly, we're going to be opportunistic and take price whenever we can. But we do expect to also see our volumes ramping around our route sales average when we look at our route drivers and around our AE sales. We have initiatives in place to continue to ramp. **But yes, you should think about** | Q1 2024 Results Conference Call February 7, 2024<br><br>(AC ¶ 186) | • No falsity<br>• Forward looking<br>• No scienter<br>• Not material | • Statement is materially false and misleading for the same reasons set forth in Statement No. 26 and Statement No. 28.<br><br>• Statement is actionable as a forward-looking statement because, per Defendants' own admissions and multiple FE accounts, Defendants knew at this time that customers were leaving Vestis in droves due to its abysmal service issues that had not been cured, and that Vestis had to drastically <u>discount</u> its prices to prevent further significant customer losses as a result—meaning Defendants had no reasonable basis to instruct investors that they should consider Vestis' planned pricing |

| No. | ALLEGED MISSTATEMENTS | DATE & SOURCE | REASON(S) NOT ACTIONABLE | PLAINTIFFS' RESPONSE |
|---|---|---|---|---|
| | **Alleged Misstatements Regarding Financial Projections and Take Price** | | | |
| | **pricing as a -- providing a level of comfort**, but we have that lever as well, and we're being very thoughtful about how to use that lever." <br><br> Defendant Dillon further responded:  "Yeah. **And the surgical pricing was in our guidance.** And so, if you remember, **we talked at Analyst Day the disciplined pricing that Kim led with, but that there were opportunities for surgical pricing. And so, we're really just capitalizing on that.** We knew it was out there. And we're giving you the flavor of the timing, so that you can help understand the progression of revenue." | | | actions as offering "additional comfort" with respect to the Company's ability to achieve its 4% to 4.5% revenue growth guidance.  *See* Opp. § III.B.6 and § III.B.7. <br><br> • *See* summary of facts giving rise to a strong inference of Defendants' scienter for Statement No. 2 and Statement No. 28. |