# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| PLUMBERS, PIPEFITTERS AND APPRENTICES LOCAL NO. 112, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VESTIS CORPORATION, ARAMARK, KIMBERLY SCOTT, RICK DILLON, and JOHN J. ZILLMER,<br><br>Defendants. | Case No. 1:24-cv-02175-SDG |

# DEFENDANTS ARAMARK AND JOHN J. ZILLMER'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS <u>THE AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

I.    NORFOLK SOUTHERN FAVORS DISMISSAL OF THE
CLAIMS AGAINST ARAMARK AND ZILLMER............................1

II.   PLAINTIFFS FAIL TO PLEAD MATERIAL FALSITY AS
TO ANY PRE-SPIN STATEMENT.........................................................6

    A.   Plaintiffs Concede Statements 1, 3, 4, 6, 7, 10, 11, 13, 14,
and 15 Were Not False When Made ............................................6

    B.   Plaintiffs Fail to Plead Falsity For the Remaining
Statements .................................................................................7

III.  PLAINTIFFS FAIL TO PLEAD SCIENTER AS TO
ARAMARK AND ZILLMER ...............................................................15

IV.   PLAINTIFFS LACK STANDING TO BRING CLAIMS
BASED ON PRE-SPIN STATEMENTS AGAINST
ARAMARK AND ZILLMER ...............................................................19

V.    PLAINTIFFS FAIL TO PLEAD SCHEME LIABILITY .................20

VI.   PLAINTIFFS FAIL TO PLEAD CONTROL PERSON
LIABILITY .........................................................................................20

CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,
  416 F.3d 1242 (11th Cir. 2005) ...........................................................................18

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975)...........................................................................................19

*Bush v. Blink Charging Co.*,
  2023 WL 8263037 (S.D. Fla. Nov. 27, 2023) ......................................................9

*Carvelli v. Ocwen Fin. Corp.*,
  934 F.3d 1307 (11th Cir. 2019) .........................................................................10

*City of Southfield Gen. Emps.' Ret. Sys. v. Nat'l Vision Holdings, Inc.*,
  2024 WL 1376016 (N.D. Ga. Mar. 30, 2024) .......................................................8

*City of St. Clair Shores Police and Fire Ret. Sys. v. Nationstar Mortg.
  Holdings Inc.*,
  2016 WL 4705718 (S.D. Fla. June 21, 2016)........................................................8

*City of Warren General Employees' Ret. Sys. v. Teleperformance, SE*,
  2024 WL 2320209 (S.D. Fla. May 22, 2024)......................................................16

*Hattaway v. Apyx Med. Corp.*,
  2023 WL 4030465 (M.D. Fla. Jun. 15, 2023) ....................................................13

*In re Equifax Inc. Sec. Litig.*,
  357 F. Supp. 3d 1189 (N.D. Ga. 2019)..................................................................9

*In re Towne Services, Inc. Securities Litigation*,
  184 F. Supp. 2d 1308 (N.D. Ga. 2001)................................................................12

*In re Williams Sec. Litig.*,
  339 F. Supp. 2d 1206 (N.D. Okla. 2003).............................................................19

*In re Winn-Dixie Stores, Inc. Sec. Litig.*,
  531 F. Supp. 2d 1334 (M.D. Fla. 2007)...............................................................12

ii

*Levy v. Luo*,
2025 WL 437022 (D. Del. Feb. 7, 2025).................................................................20

*Lorenzo v. Sec. & Exch. Comm'n*,
587 U.S. 71 (2019)..................................................................................................20

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)....................................................................................................4

*Mich. Carpenters' Pension Fund v. Rayonier Advanced Materials, Inc.*,
2019 WL 1429667 (M.D. Fla. Mar 29, 2019) ........................................................4

*Phila. Fin. Mgmt. of S.F., LLC v. DJSP Enters., Inc.*,
572 F. App'x 713 (11th Cir. 2014) ..........................................................................4

*Plymouth Cnty. Ret. Sys. v. Carter's Inc.*,
2011 WL 13124501 (N.D. Ga. Mar. 17, 2011) .....................................................16

*S.E.C. v. Westhead*,
733 F. Supp. 3d 1284 (S.D. Fla. 2024)..................................................................20

*Smallwood v. Pearl Brewing Co.*,
489 F.2d 579 (5th Cir. 1974) .................................................................................19

*Spiegel v. Siegel*,
2008 WL 151951 (S.D. Fla. Jan. 15, 2008)...........................................................19

*Theodore v. Purecycle Techs. Inc.*,
2023 WL 4035880 (M.D. Fla. June 15, 2023) .......................................................19

*Wang v. Cloopen Grp. Holding Ltd.*
661 F. Supp. 3d 208 (S.D.N.Y. 2023) ...................................................................12

*Zwick Partners, LP v. Quorum Health Corp.*,
2018 WL 2933406 (M.D. Tenn. Apr. 19, 2018) ....................................................19

**STATUTES**

PSLRA .........................................................................................................................6

**RULES**

Rule 12(b)(6).............................................................................................................18

Rules 10b-5(a) and (c)........................................................................................20

Plaintiffs' Opposition does not cure or justify the defects in the Amended Complaint, but reinforces that their claims against Aramark and John Zillmer must be dismissed.  Plaintiffs spend most of their Opposition rehashing the Amended Complaint and addressing arguments by Vestis and its executives about ***post-Spin*** conduct that does not bear on Aramark and Zillmer.  There is no dispute that the claims against Aramark and Zillmer involve only the ***pre-Spin*** statements and ***pre-Spin*** conduct.  This positions Aramark and Zillmer differently from the Vestis Defendants:  to plead claims against Aramark and Zillmer arising out of those pre-Spin statements, Plaintiffs must allege particularized facts showing (1) that these statements were actionably false when made; (2) that Aramark and Zillmer—not "Defendants" or "Individual Defendants"—knew these statements were false; and (3) that Aramark and Zillmer knew the statements were false or misleading when they were made—before the Spin.  The Amended Complaint does not clear any of these hurdles, and the Opposition does not remedy these fatal defects.

## I.    NORFOLK SOUTHERN FAVORS DISMISSAL OF THE CLAIMS AGAINST ARAMARK AND ZILLMER

Plaintiffs argue that this Court's recent decision to deny motions to dismiss in *Norfolk Southern* compels the same result in this case because the "facts here are even more egregious."  Opp'n at 38.  *See also, e.g.*, *id.* at 7-8, 29-30, 36-38, 51, 55-56.  Not so.  Critical differences between this case and *Norfolk Southern* show why dismissal was improper there but is warranted here.

1

In *Norfolk Southern*, the defendant company extolled the virtues of its safety program while simultaneously and intentionally gutting that program and disregarding safety in favor of profits.  Slip op. at 2-9 (citing a pivot to longer trains with heavier loads and fewer workers with less training).  After the high-profile train wreck in Ohio, Plaintiffs further alleged that the defendant company intentionally disregarded the environmental harm caused by the wreckage and lied to public officials to resume service after the disaster.  *Id.* at 9-12.  Taking the allegations in the *Norfolk Southern* complaint as true, this tragedy was caused by a deliberate operational shift away from safety and toward risk in service of profits—directly contrary to Norfolk Southern's statements to investors about its safety programs.

The Court concluded that Norfolk Southern's statements about its safety programs were actionable based on allegations and findings not present here.

*First*, *Norfolk Southern* is a case about the safety of employees and the public in an industry fraught with peril.  "The heightened importance of safety in inherently dangerous industries can support an inference of materiality."  *Id*. at 22.  By contrast, this is a case about customer service and retention in the uniform rental business.  Plaintiffs argue that Vestis's alleged exaggeration of customer relationships is "even more egregious" than outright lying about train safety.  Defendants disagree, and this context is crucial to understanding why Statements 1-16 are not actionable.

*Second*, Norfolk Southern made statements about safety at the same time it

2

was pivoting to a less safe operating plan. *Id*. at 24. The *Norfolk Southern* plaintiffs alleged that the railroad was falsely assuring investors it could maximize profits with its new operating plan while maintaining the same level of safety. There is no similar "pivot" in this case. Plaintiffs here do not allege that Vestis decided to eschew customer service to drive profits in preparation for the Spin. Rather, they allege a continuation of the status quo: "longstanding, well-known problems . . . retaining customers" based on isolated "service gaps" and resulting in the loss of two accounts before the Spin. AC ¶ 109. Given that those two losses amounted to only a 0.6% decrease in FY24 revenue, *see* VSTS Reply § II.A, Plaintiffs' allegations amount to quibbling over the adjectives Vestis used to describe its customer service and relationships. Unlike Norfolk Southern's assurances that it could increase profits without compromising safety, Vestis's choice of adjectives could not have impacted a reasonable investor's risk-benefit analysis. *See infra* § II.B.1, 3.

*Third*, unlike Norfolk Southern's statements about safety, Vestis's general statements about customer tenure and relationships did not change the total mix of information available to investors when considered in light of the objective metrics Vestis shared. The train operators' statements about safety mattered to investors and were actionable precisely because Norfolk Southern did not quantify safety for investors. Slip op. at 20-21. By contrast, general statements and opinions about customer service and tenure did not add to the "total mix" of information available

to investors, as Vestis reported a client retention metric. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38-39 (2011); *Phila. Fin. Mgmt. of S.F., LLC v. DJSP Enters., Inc.*, 572 F. App'x 713, 716-17 (11th Cir. 2014) (challenged statements must "assert specific, verifiable facts that reasonable investors would rely on").[1]

To avoid this conclusion, Plaintiffs attempt to distort the metric that Vestis shared. Plaintiffs allege that "[w]e believe our customer retention rate was in excess of 90% in the five years ended September 30, 2022, according to internal estimates" is a misstatement. Opp'n at 35-44. Rather than challenge the statement in full, however, Plaintiffs pluck out the words "in excess of 90%," add bits and pieces of unrelated quotes, and then attack alleged misstatements that were never made:

- "Defendants repeatedly emphasized that Vestis had consistently maintained a "customer retention rate[] in excess of 90%," which Defendants highlighted as a "key competitive strength[]." *Id.* at 12.

- "Defendants repeatedly emphasized to the market that Vestis' 'long-term relationships with our customers'—including its 'national account customers' in particular, who were 'very loyal' and 'stay[ed] more than 20 years with us'—purportedly yielded a remarkably high 'customer retention rate [] in excess of 90%.'" *Id.* at 35.

In doing so, Plaintiffs omit and ignore language making clear that this statement is

---

[1] Plaintiffs make much of the Court's holding regarding "puffery" in *Norfolk Southern*, Opp'n at 28-31, but context is key. "[G]eneralized positive statements" about Vestis's customer base were not made actionably false by isolated service gaps or lost accounts, *Mich. Carpenters' Pension Fund v. Rayonier Advanced Materials, Inc.*, 2019 WL 1429667, at *21 (M.D. Fla. Mar 29, 2019)—particularly when accompanied by "specific, verifiable facts" regarding customer retention. *DJSP Enterprises*, 572 F. App'x at 716.

an opinion regarding a historically accurate rate—not a forward-looking guarantee. *See infra* § II.B.3. And Plaintiffs incorrectly contend that a later-reported dip in the rate for one quarter created a duty to disclose or otherwise made an accurate historical rate misleading—when the rate rebounded the very next quarter and the company's annual rate remained above 90% at year-end. ARMK Br. at 8-9; *see also* VSTS Reply § I.B.4.[2] Because Plaintiffs have not, and cannot, allege this metric was false or misleading when issued, Plaintiffs likewise have not, and cannot, allege other pre-Spin statements about Vestis's customer service or relations are actionable.

*Fourth*, while the facts in *Norfolk Southern* clear the high bar for pleading scienter, the allegations here do not. The Court identified a "smoking gun" allegation in *Norfolk Southern*—CEO Shaw's statement under oath that "Norfolk's pre-derailment operational posture was a 'near-term focus… *solely on profits*.'" Slip op. at 29. The Court properly held that this was a "concession of scienter" and an "admission that Norfolk's pre-derailment statements touting its focus on safety were knowingly false." *Id.* at 29-30. Plaintiffs contend that Kim Scott's statements during and about Vestis's post-Spin decline have the same effect. Opp'n at 50-52. They do not. Mr. Shaw admitted that Norfolk Southern was intentionally acting contrary to its statements about safety when they were made. Ms. Scott "admitted" only that

---

[2] In baseball terms, Plaintiffs essentially argue that it would be misleading to call a player a ".300 hitter"—even though he hit for a .300 batting average every season of his career—because he hit .290 in August.

Vestis had certain customer losses in FY 2023.  Opp'n at 50-51; *see infra* § III; *see also* VSTS Reply § II.A.  Thus, dismissal of Plaintiffs' claims against Aramark and Zillmer would be consistent with *Norfolk Southern*.

## II.    PLAINTIFFS FAIL TO PLEAD MATERIAL FALSITY AS TO ANY PRE-SPIN STATEMENT

Plaintiffs' claims against Aramark and Zillmer are limited to Statements 1-16, all of which were made ***before the Spin***.  As explained below and in the Vestis Defendants' reply brief, VSTS Reply § I, Plaintiffs' allegations fail to meet their burden under the PSLRA to plead material falsity for any of these statements.[3]  *See also* ARMK Br. at 5-16; VSTS Br. § III.B.

### A. Plaintiffs Concede Statements 1, 3, 4, 6, 7, 10, 11, 13, 14, and 15 Were Not False When Made[4]

The Opposition does not address—and concedes by its silence—many arguments for dismissing claims against Aramark and Zillmer.  There is no dispute that Statements 1, 3, and 4 are nonactionable opinion statements.  *Compare* ARMK Br. at 6-9, *with* Opp'n at 49 n.11 (arguing only that Statements 2 and 16 are actionable opinions).  There is also no dispute that Statements 4, 10, and 11 contain accurate statements of historical fact.  *Compare* ARMK Br. at 9, 14, *with* Opp'n at

---

[3] Plaintiffs contend they are not pursuing a pure omissions theory, Opp'n at 26-27. If the Court nevertheless concludes otherwise, such omissions are not actionable. *See* ARMK Br. at 7 n.3; VSTS Br. § III.B.1(i); VSTS Reply § I.A.

[4] *See also* VSTS Reply at 5 n.3 (explaining why Plaintiffs' Appendix is improper).

38 (claiming only *post*-Spin retention rate is not historically accurate); *see also* VSTS Reply § I.B.4.  Nor do the Parties dispute that Statements 6 and 7 are forward-looking statements protected by the PLSRA Safe Harbor.  *Compare* ARMK Br. at 10-11, *with* Opp'n at 45-48 (arguing only certain *post*-Spin statements are not protected by the Safe Harbor).  Similarly, there is no dispute that Statements 13-15 are inactionable puffery.  *Compare* ARMK Br. at 15, *with* Opp'n at 31-33.  And, although Plaintiffs' Opposition cites Statements 14 and 15, Opp'n at 31, Plaintiffs make no arguments that these statements about Vestis's customer portal and use of data analytics to trend customer behavior were false or misleading when made.  *Compare* ARMK Br. at 15-16, *with* Opp'n at 32.  Thus, the Court should dismiss Plaintiffs' claims premised on Statements 1, 3, 4, 6, 7, 10, 11, 13, 14, and 15.

### B. Plaintiffs Fail to Plead Falsity For the Remaining Statements

Plaintiffs do not cure their failure to plead facts showing that the remaining statements were false when made—before the Spin.  ARMK Br. at 6-7, 9-15.

#### 1. Plaintiffs Have Not Alleged Contemporaneous Falsity For Pre-Spin Statements Regarding Customer Service

None of Plaintiffs' allegations are enough to plead that any pre-Spin statement about service excellence or timely deliveries was false when made.  Opp'n at 27-31.  Scott and Dillon's ***post-Spin*** remarks from May 2024 provide no basis to infer that Statements 1-6 and 9-12 were false or misleading when made ***before the Spin*** in September 2023.  *See* ARMK Br. at 6-10, 13-15.  Plaintiffs selectively quote from

the May 2024 earnings call transcript to obfuscate *when* Scott and Dillon (and thus Vestis) learned that particular service gaps were driving customer losses. *See* Opp'n at 27-31, 28 n.3. Scott explained these were *post-Spin* realizations:

> *I have gone incredibly deep into this business over the last 6 months since we have spun out* . . . into evaluating these root causes at the grassroots level down to our market center.

ECF No. 67-4 at 16. And Scott's remarks did not admit to any *known* issues *before the Spin*. Opp'n at 28 n.3. To the contrary, Scott clarified that these issues "ha[d] persisted in this business for some time *and ha[d] not been realized or addressed*." ECF No. 67-4 at 12. *City of Southfield Gen. Emps.' Ret. Sys. v. Nat'l Vision Holdings, Inc.*, 2024 WL 1376016, at *9 (N.D. Ga. Mar. 30, 2024) (no falsity based on after-the-fact statements). Considering the full transcript, it is impossible to infer that Statements 1-6 and 9-12 were false when made before the Spin. *City of St. Clair Shores Police and Fire Ret. Sys. v. Nationstar Mortg. Holdings Inc.*, 2016 WL 4705718, at *7 (S.D. Fla. June 21, 2016) ("cherry-picked statements, read in isolation and then cobbled together while wholly ignoring all of the other coexistent statements providing additional pertinent information" are not false).

Moreover, Scott never said that Vestis had *no process* to ensure accurate and timely deliveries, but merely that, after the Spin, Vestis had identified truck loading processes as an opportunity for improvement. ECF No. 67-4 at 10. None of Vestis and Scott's pre-Spin statements about "achiev[ing] [retention] through service

8

excellence," "maintain[ing] long-term relationships with our customers due to the quality of our services and products, our ability to deliver on-time," and being "focused on doing exactly what we say we're going to do . . . with consistency and excellence" laud any particular system or process as perfect. This differs from the allegations of Plaintiffs' cited cases, Opp'n at 27-31, where defendants touted systems that were in disrepair as "highly sophisticated" and products that were not functional as available for customer use.[5] Plaintiffs' argument that certain pre-Spin statements are actionable because they "concern[] the very core of what Vestis offered," Opp'n at 29-31, also fails. As detailed *supra* § I, general statements about Vestis's customer service and relationships are puffery and distinct from the statements at issue in *Norfolk Southern* because these qualitative statements accompanied quantitative ones reflecting the actual business impact.[6] In fact, that business impact was year-over-year increases in revenue. *See* VSTS Reply at 3.

### 2. Statement 16 Is an Inactionable Opinion and Plaintiffs Fail to Plead Contemporaneous Falsity

Aramark and Zillmer addressed Statement No. 16 in their Motion, ARMK Br.

---

[5] *See In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1219-20 (N.D. Ga. 2019) (cybersecurity system touted as "highly sophisticated" was in fact "outdated, below industry standards, and vulnerable to cyber attack"); *Bush v. Blink Charging Co.*, 2023 WL 8263037, at *8 (S.D. Fla. Nov. 27, 2023) (statements implying that chargers worked required disclosure that a substantial number were not functional).
[6] *See also* VSTS Reply § I.B.1 (detailing how "courts routinely dismiss virtually identical statements as classic puffery" and further distinguishing *Norfolk Southern*).

at 16, and do not concede its falsity.  Statement 16 is Scott's response to an analyst's question about "flat revenue year-over-year" for the nine months ended June 30, 2023, disclosed in the Information Statement.  ECF No. 67-5 at 33.  Scott explained this was attributable to, *inter alia*, "nonregrettable losses around some accounts that just didn't make sense for our portfolio."  *Id.*  Plaintiffs posit that this is "concrete fact[]," not opinion.  Opp'n at 49 n.11.  But there is nothing objective or verifiable about whether a loss is regrettable or a customer "makes sense" for Vestis.  Thus, Statement 16 is Scott's opinion.  And Plaintiffs still must plead facts showing that Statement 16 was false when made, which they fail to do.

*First*, Plaintiffs do not plead any particularized facts showing that Scott did not believe her opinion that the losses were "non-regrettable" when she stated it. *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1323 (11th Cir. 2019).  Nor can they. Scott explained her opinion in Statement 16; the losses she described would permit Vestis to "grow[] where we want to grow, not just in workplace supplies, but in new customers," and Vestis was "pleased with the mix" that resulted.  *See* App'x A; AC ¶ 173.  Plaintiffs do not allege facts showing that Scott's opinion about Vestis's business strategy was unreasonable or that she did not genuinely hold that opinion when she made Statement 16.  Nor do Plaintiffs' allegations about Scott's ***post-Spin*** investigation into customer cancellations, Opp'n at 34-45, support contemporaneous falsity.  Plaintiffs do not and cannot allege that the "non-regrettable losses" Scott

10

referenced were caused by customer service issues, nor that the reason for a given client loss has any bearing on whether that loss was regrettable or non-regrettable.

*Second*, Plaintiffs' reliance on **post-Spin** statements does not plead contemporaneous falsity for Statement 16.  The losses that Scott identified as "non-regrettable" in Statement 16 and the losses she later identified as "regrettable" are **entirely different losses**.  Allegations about Scott's **post-Spin** characterization of one account loss as "unfortunate," not "part of our strategy" and "regrettable," Opp'n at 34-45 (quoting ECF No. 65-12 at 24), do not plausibly plead that Scott's **pre-Spin** statement characterizing **different losses** was false at the time it was made.  Plaintiffs do not, and cannot, allege Scott's remarks addressed the same set of losses.  *See also* VSTS Reply § I.B.3.

### 3.  Plaintiffs Fail to Plead Falsity for Pre-Spin Statements About Customer Relationships and Retention

Plaintiffs fail to allege any specific, contemporaneous facts showing any pre-Spin statement about Vestis's customer relationships and retention was false when made.  ARMK Br. at 6-15; VSTS Reply § I.B.4.  Plaintiffs do not dispute that Statement 4, describing Vestis's historical retention rate as "in excess of 90%," is an inactionable opinion ("We believe…") referencing a true fact (the five-year retention rate).  *Compare* ARMK Br. at 8-9, *with* Opp'n at 35-33, 48-49, 49 n.11.  For that reason alone, the Court can dismiss Plaintiffs' claims based on Statement 4.

As discussed in Sections I and II.A, Plaintiffs cannot gin up a claim by

rewriting Vestis's public statements and claiming that Vestis had an obligation to disclose specific customer losses or a projected retention rate for a quarter (or fiscal year) that had yet to end. *See* ARMK Br. at 8-9; VSTS Br. § III.B.1(iii) (discussing *Rayonier*). Plaintiffs' cited cases do not counsel otherwise. *See* VSTS Reply § I.B.4. Unlike the company in *Wang v. Cloopen Grp. Holding Ltd.*, Vestis made no assurances that its customer retention rate would not decline below 90%. 661 F. Supp. 3d 208, 227-28 (S.D.N.Y. 2023). A decline in retention rate of 4% for one quarter that rebounded the next quarter is of no moment. *In re Winn-Dixie Stores, Inc. Sec. Litig.*, 531 F. Supp. 2d 1334, 1348 (M.D. Fla. 2007) (no duty to disclose "bumps along the road"). Comparison to the *In re Towne Services, Inc. Securities Litigation* case Plaintiffs cite is instructive. 184 F. Supp. 2d 1308 (N.D. Ga. 2001). Unlike there, where a "discrete damaging event" "***coupled with*** higher-than ordinary customer cancellations" necessitated some disclosure, here, Plaintiffs make no allegations about a discrete event causing the customer losses that would obligate Vestis to disclose the ongoing quarter's customer retention rate. *Id*. at 1322-23. To the contrary, Plaintiffs assert "longstanding, well-known problems" with retention. AC ¶ 109. Vestis's historical retention rate of 90% disclosed in the Information Statement was indisputably accurate and ultimately on par with its reported 90.4% retention rate for fiscal year 2023. ECF No. 65-16 at 5; VSTS Reply at 2-3.

Because Vestis disclosed an accurate historical retention rate before the Spin,

the qualitative pre-Spin statements about customer relations and retention are not actionable.  *See supra* § I.  Further, no allegation supports an inference of contemporaneous falsity for any pre-Spin statement.  *See, e.g.*, ARMK Br. at 9-10. For example, Plaintiffs have not alleged that any internal report identified in the Amended Complaint existed before the Spin.  *See* AC ¶¶ 15, 114-116; *see also* ARMK Br. at 10 (addressing "bleeding" allegation).  Further, Scott and Dillon's post-Spin remarks clarify that Vestis's ***post-Spin*** revenue loss and revisions to guidance, Opp'n at 36-37, 39-42, were caused by a failure to win new business ***after the Spin***—something no Defendant could have known ***before the Spin***.  ECF No. 67-4 at 4.  For this same reason, Plaintiffs have not plausibly alleged that a risk factor related to customer retention materialized before the Spin.  Customer losses happen all the time.  The risk that Vestis described could only materialize if Vestis did not replace pre-Spin losses with new business.  ARMK Br. at 11-12.  Plaintiffs ignore and concede this by their silence.  Opp'n at 43-44, 46-47.  Plaintiffs thus fail to (and cannot) plead that Statement 8 was false or misleading when made.  *Hattaway v. Apyx Med. Corp.*, 2023 WL 4030465, at *10 (M.D. Fla. Jun. 15, 2023).

### 4.  Plaintiffs Fail To Plead That Pre-Spin Statements Regarding Telematics and ABS Were False When Made

The Opposition makes much of "telematics," but Plaintiffs challenge only one pre-Spin statement even mentioning telematics (Statement 7): "We seek to ***increase route efficiency with technology and processes that reduce*** travel time, distance

and ***fuel consumption***.  For example, ***our new telematics technology allows us to proactively reduce fuel usage*** by limiting idling through real-time in-cab driver alerts."  AC ¶ 163; *see* ECF No. 67-2 at 72.  Plaintiffs rewrite these two sentences about Vestis's environmental goals, alleging the "Information Statement stated that the 'new telematics technology' would 'increase route efficiency.'"  Opp'n at 32 n.4.  They assert, without citation or quotation, that this meant telematics would ensure accurate, on-time deliveries.  *Id.* at 2, 31-32.[7]  This forward-looking statement about the use of telematics for "Environmental, Social and Governance" efforts, ECF No. 67-2 at 72, does not affirm any use case, much less fleet-wide telematics.  Nothing Plaintiffs allege contradicts this statement—*i.e.*, no allegation shows that before the Spin Vestis was not seeking to use technology to increase route efficiency and reduce fuel usage as described.  *Compare* Opp'n at 31-33, *with* ECF No. 67-4 at 10, 16.

As for Statement 13, regarding Vestis's operating system called ABS, Plaintiffs have no allegations, ARMK Br. at 15-16, and make no arguments for contemporaneous falsity, *see* Opp'n at 31-33.  Plaintiffs have not alleged (and cannot allege) that Vestis did not "put a handheld in the hand of every route service representative who's in a customer location" or that ABS did not enable more

---

[7] Plaintiffs also rewrite Scott's post-Spin remarks to claim that Scott "admitted at the end of the Class Period, it was because of the Company's lack of a functioning Telematics system that Vestis was unable to ensure correct, on time deliveries."  Opp'n at 32 n.4.  Scott made no such admission.  *See* ECF No. 67-4 at 10.

14

"seamless[]" and "efficient[]" customer interactions.  ECF No. 67-5 at 11.

## III. PLAINTIFFS FAIL TO PLEAD SCIENTER AS TO ARAMARK AND ZILLMER

Plaintiffs bear the heavy burden of pleading particularized facts showing that *each* defendant knew or was reckless in not knowing that *each* statement was false or misleading when made.  This means that Plaintiffs must allege facts establishing a strong inference that, before the Spin, Aramark and Zillmer knew or recklessly disregarded that the pre-Spin statements were false or would mislead investors.

**Plaintiffs make allegations about "Defendants"—not Aramark and Zillmer.**  Rather than allege facts as to Aramark and Zillmer, the Opposition doubles down on nonspecific allegations about "Defendants" or "Individual Defendants," often as to post-Spin conduct, demonstrably inapplicable to Aramark and Zillmer[8]:

- Plaintiffs cite "Defendants' stark admissions at the end of the Class Period," Opp'n at 50, but these post-Spin statements were neither made by nor imputed to Aramark or Zillmer.

- Plaintiffs contend that the "Individual Defendants" or "Defendants made a multitude of public statements regarding Vestis'[s] service operations, customer relationships, and technology," Opp'n at 53-55, but Plaintiffs have never identified, much less alleged, any such statements by Zillmer.

- Plaintiffs aver "the FEs do establish Defendants' personal involvement," Opp'n at 58, but cite only meetings with Scott and post-Spin meetings that did not involve Aramark or Zillmer.  *Id.*; AC ¶¶ 118, 123.

---

[8] Indeed, the Opposition includes at least 100 references to "Defendants" or "Individual Defendants" that address only post-Spin conduct or other alleged actions that cannot be attributed to Aramark or Zillmer.  *See generally* Opp'n.

These broad assertions fail to plead fraud by Aramark and Zillmer.[9]

**Plaintiffs do not plead scienter as to pre-Spin statements.**  Plaintiffs must plead facts establishing a strong inference that Aramark and Zillmer knew or recklessly disregarded that each challenged statement was false ***when it was made— i.e., before the Spin and not months or years later***:

- Plaintiffs emphasize Scott's statement in February 2024 that certain lost accounts were "regrettable," Opp'n at 54, Plaintiffs do not and cannot allege these customer departures were the same losses that Scott referenced as "nonregrettable" before the Spin.  *See supra* § II.B.2.

- Plaintiffs also refer to "Weekly Install and Loss" reports to contend that customer losses were known to Aramark before the Spin, Opp'n at 66-67, but critically make no allegations that these reports were generated or made available to Aramark executives before the Spin.  *See* AC ¶¶ 15, 114-16.

Plaintiffs' reliance on post-Spin allegations reinforces that they fail to plead that Zillmer (or any Aramark executive) knew before the Spin how customer losses would ultimately impact Vestis.  *See supra* § II.B.3; *see also* VSTS Reply § II.A.

**The Opposition fails to manufacture allegations about Zillmer.**  Plaintiffs cite public statements Zillmer made and claim they "profess[] his deep knowledge of AUS's business and operations."  Opp'n at 67.[10]  But this only reinforces the

---

[9] *Plymouth Cnty. Ret. Sys. v. Carter's Inc.*, 2011 WL 13124501, at *18-20 (N.D. Ga. Mar. 17, 2011) (group pleading does not sufficiently allege that each defendant "had the requisite scienter and knowledge at the time the statements were made").

[10] Plaintiffs' cited case, *City of Warren General Employees' Retirement System v. Teleperformance, SE*, 2024 WL 2320209, at *19 (S.D. Fla. May 22, 2024), is inapplicable as it has to do with "repetition of misstatements support[ing] a finding of scienter."

dearth and insufficiency of their allegations about Zillmer:

- Plaintiffs cite dated and general statements from 2022 that do not provide a basis for the Court to plausibly infer that Zillmer had contemporaneous knowledge 15-16 months later of the issues Plaintiffs allege.

- Plaintiffs cite statements focused on "investments" and "strategic initiatives" Vestis undertook to prepare for the Spin, but do not and cannot speak to Zillmer's involvement in those initiatives, his understanding of the ultimate performance of those initiatives, or his knowledge of telematics and its connection to Vestis's fuel efficiency goals in September 2023, when the pre-Spin Statements were made.  AC ¶¶ 50, 52.

- Plaintiffs cite high-level statements in May 2023 about Vestis's "sales volumes, our net new business wins and our [customer] retention" being on par with its competitors, *id.* ¶ 55, but these assertions do not indicate that Zillmer was involved in Vestis's day-to-day business such that he would have known about the customer service gaps or retention issues that Plaintiffs claim existed pre-Spin.

- And Plaintiffs cite Zillmer's cover letter for the Information Statement, *id.* ¶ 59, but nothing therein gives rise to an inference that he had any knowledge contrary to Vestis's Information Statement.

Plaintiffs also have advanced no allegations from which it could plausibly be inferred that Zillmer recklessly disregarded issues with Vestis's business.[11]

**Plaintiffs' Hail-Mary motive theory fails.**  As the allegations about post-Spin conduct of Vestis, Scott, and Dillon do not support scienter pre-Spin for Aramark and Zillmer, Plaintiffs continue to advance the bizarre theory that Aramark and Zillmer had motive to make false statements and mislead investors to execute the Spin and offload debt to Vestis.  *See* Opp'n at 68-69.  But Plaintiffs do not, and

---

[11] Notably, not one of the 17 former employees (FEs) cited in the Amended Complaint makes any reference to Zillmer.  Not one.

cannot, make this argument make sense. No allegations or arguments explain *why* Aramark "desperately needed," *id.* at 68, to alleviate its debt. Without a shareholder vote, there was no need for Aramark to, as Plaintiffs claim, "artificially prop up Vestis'[s] stock price to convince investors that the Spin[] should occur and would be successful." *See id.* at 69 n.23. And there's a simple reason why. It would make zero economic sense for Aramark to spin off a segment of its business—giving up its income-generating, debt-servicing power— and retain all debt attributable to that business. *See* ARMK Br. at 21-22.

Unable to substantively refute this intuitive and indisputably true point, Plaintiffs seek to elide it by claiming that it goes "beyond the four corners of the pleading" and requires the Court to accept as true a statement that Aramark's pre-Spin debt was $6.2 billion. Opp'n at 68-69. Not so. The Court need only accept Plaintiffs' allegation that Aramark had more than $7 billion in debt before the Spin and that Vestis took on its proportionate share of the combined company's pre-Spin debt in the Spin—which Plaintiffs cannot dispute. *See Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248-49 (11th Cir. 2005) ("We must make reasonable inferences in Plaintiffs' favor, but we are not required to draw Plaintiffs' inference. 'Bald assertions' will not overcome a Rule 12(b)(6) motion. Likewise, 'unwarranted deductions of fact' are not admitted as true in a motion to dismiss.").

Critically, Plaintiffs fail to address the requirement that fraud is the "more

18

compelling inference." *Compare* ARMK at 22, *with* Opp'n at 66-69. It is not. The more compelling inference is that Aramark and Zillmer consistently acted in good faith for all the reasons stated above and in Defendants' opening briefs.

## IV.   PLAINTIFFS LACK STANDING TO BRING CLAIMS BASED ON PRE-SPIN STATEMENTS AGAINST ARAMARK AND ZILLMER

Plaintiffs seek to represent a putative class of shareholders who purchased shares in Vestis after the Spin. Because the Supreme Court has limited standing to actual purchasers and sellers of the actual securities about which the challenged statement were made, Plaintiffs have no standing to sue Aramark and Zillmer for challenged statements made before Vestis became a company and before Plaintiffs ever purchased shares in Vestis. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730-31 (1975); *see* ARMK Br. § IV.D (citing cases). The "binding precedent" cited by Plaintiffs is inapplicable.[12] Unlike in this action—where Plaintiffs who never owned Aramark shares are challenging pre-Spin statements they attribute to Aramark —Plaintiffs' cited cases involve plaintiffs who owned shares in the pre-transaction entity that were exchanged stock-for-stock in a merger transaction for shares in the post-transaction entity,[13] purchased shares of the pre-Spin entity,[14] or

---

[12] This argument was not before the court in *Zwick Partners, LP v. Quorum Health Corp.*, 2018 WL 2933406, at *6-7 (M.D. Tenn. Apr. 19, 2018), or *Theodore v. Purecycle Techs. Inc.*, 2023 WL 4035880 (M.D. Fla. June 15, 2023).

[13] *See Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 591 (5th Cir. 1974); *Spiegel v. Siegel*, 2008 WL 151951, at *5 (S.D. Fla. Jan. 15, 2008).

[14] *In re Williams Sec. Litig.*, 339 F. Supp. 2d 1206, 1215 (N.D. Okla. 2003).

bought into a de-SPAC transaction through a PIPE offering.[15]

## V.    PLAINTIFFS FAIL TO PLEAD SCHEME LIABILITY

Plaintiffs fail to plead a separate claim for scheme liability under Rules 10b-5(a) and (c).  They argue only that disseminating allegedly fraudulent statements can further a scheme.  *See* Opp'n at 73-74.  Plaintiffs miss the point.  Even under the authority cited by Plaintiffs, such a "scheme" requires a showing that false or misleading statements were disseminated "with the intent to defraud."  *Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 78 (2019); *S.E.C. v. Westhead*, 733 F. Supp. 3d 1284, 1303 (S.D. Fla. 2024) (same).  *First*, neither Aramark nor Zillmer is alleged to have "disseminated" any challenged statements after the Spin, and they cannot be held liable under "scheme liability" or otherwise for those statements.  *Second*, the "scheme" is predicated on "fraudulent statements," and Plaintiffs fail to plead falsity or scienter as to any pre-Spin Statement.  AMRK Br. at 25 n.7; *see supra* §§ II, III.

## VI.    PLAINTIFFS FAIL TO PLEAD CONTROL PERSON LIABILITY

As Plaintiffs' Section 10(b) claim based on pre-Spin Statements fails, so does their Section 20(a) claim against Aramark and Zillmer.  *See* ARMK Br. at 25.

### CONCLUSION

Aramark and Zillmer respectfully request that the Court dismiss with prejudice the claims against them in Plaintiffs' Amended Complaint.

---

[15] *Levy v. Luo*, 2025 WL 437022 (D. Del. Feb. 7, 2025).

Dated:  June 2, 2025                              Respectfully submitted,

                                                 */s/ Christopher S. Turner*
                                                 Christopher S. Turner
                                                 GA Bar No. 719102
                                                 LATHAM & WATKINS LLP
                                                 555 Eleventh Street, N.W.,
                                                 Suite 1000
                                                 Washington, D.C. 20004
                                                 Telephone: (202) 637-2200
                                                 Facsimile: (202) 637-2201
                                                 christopher.turner@lw.com

                                                 *Attorney for Defendants Aramark and
                                                 John J. Zillmer*

21

## <u>CERTIFICATION OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned counsel hereby certifies that the foregoing document was prepared in 14-point Times New Roman font, pursuant to Local Rule 5.1(B).

Dated: June 2, 2025

<div style="margin-left: 40%;">

*/s/ Christopher S. Turner*
Christopher S. Turner
GA Bar No. 719102
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.,
Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
christopher.turner@lw.com

*Attorney for Defendants Aramark and John J. Zillmer*

</div>

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 2, 2025, a copy of the foregoing was filed with the Clerk of Court using CM/ECF which will send electronic notification of such filing to all counsel of record.

> */s/ Christopher S. Turner*
> Christopher S. Turner
> GA Bar No. 719102
> LATHAM & WATKINS LLP
> 555 Eleventh Street, N.W.,
> Suite 1000
> Washington, D.C. 20004
> Telephone: (202) 637-2200
> Facsimile: (202) 637-2201
> christopher.turner@lw.com
>
> *Attorney for Defendants Aramark and John J. Zillmer*

23