**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

PLUMBERS, PIPEFITTERS AND
APPRENTICES LOCAL NO. 112,
Individually and on Behalf of All
Others Similarly Situated,

      Plaintiff,

    v.

VESTIS CORPORATION,
ARAMARK, KIMBERLY SCOTT,
RICK DILLON, and JOHN J.
ZILLMER,

      Defendants.

Case No. 1:24-cv-02175-SDG

## DEFENDANTS ARAMARK AND JOHN J. ZILLMER'S ANSWER TO LEAD PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT

Defendants Aramark and John J. Zillmer (collectively, "Aramark Defendants") submit this Answer and Affirmative Defenses to the Amended Class Action Complaint filed on November 22, 2024 (ECF No. 55 (the "Amended Complaint")) by Lead Plaintiffs the City of Atlanta General Employees' Pension Fund, the City of Atlanta Police Officers' Pension Fund, the City of Atlanta Firefighters' Pension Fund, the Employees' Retirement System of the City of Baltimore, and Norfolk County Retirement System (collectively, "Lead Plaintiffs").

Except as otherwise expressly stated herein, Aramark Defendants: (1) generally deny each and every allegation in the Amended Complaint, including,

without limitation, any allegations in the introduction, headings, subheadings, unnumbered Paragraphs, and footnotes; (2) specifically deny that they have caused Lead Plaintiffs to suffer any harm, losses, or damages; (3) deny any liability to Plaintiffs; and (4) decline to adopt or acknowledge as accurate any defined terms in the Amended Complaint to the extent they constitute allegations directed at Aramark Defendants.  By responding to any allegation in the Amended Complaint, Aramark Defendants do not admit that such allegation is relevant to Plaintiffs' claims or is an appropriate subject of discovery.  Aramark Defendants reserve the right to challenge the authenticity of all sources and documents referred to or purportedly quoted from in the Amended Complaint.  Aramark Defendants reserve the right to seek to amend or supplement this Answer as may be necessary or appropriate.

Paragraph numbers in this Answer correspond and respond to the allegations in the numbered paragraphs of the Amended Complaint.  To the extent allegations in a numbered paragraph of the Amended Complaint purport to cite to, refer to, or characterize allegations in other paragraphs of the Amended Complaint, Aramark Defendants incorporate and reassert their response to each such paragraph as if set forth fully therein.  The Amended Complaint includes prefatory materials, including a "Table of Contents" and headings and sub-headings.  Such information is not presented in the form of allegations that must be answered, and to the extent that such information may be interpreted as allegations, Aramark Defendants deny them.

With respect to specific paragraphs of the Amended Complaint, in accordance with Section II.a. of this Court's Standing Order Regarding Civil Litigation, Defendants recite the text of the Amended Complaint and then respond on information and belief as follows:

**Prologue:**   Lead Plaintiffs the City of Atlanta General Employees' Pension Fund, the City of Atlanta Police Officers' Pension Fund, the City of Atlanta Firefighters' Pension Fund, the Employees' Retirement System of the City of Baltimore, and Norfolk County Retirement System (collectively, "Lead Plaintiffs"), by and through the undersigned counsel, bring this securities class action against Vestis Corporation ("Vestis" or the "Company"), Vestis' Chief Executive Officer ("CEO") Kimberly Scott ("Scott"), Vestis' Chief Financial Officer ("CFO") Rick Dillon ("Dillon"), Aramark, and Aramark's CEO John J. Zillmer ("Zillmer," together with Scott and Dillon, the "Individual Defendants," and collectively, with Vestis and Aramark, "Defendants").  Lead Plaintiffs bring this action under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5, on behalf of themselves and all other persons and entities who purchased Vestis common stock between October 2, 2023 and May 1, 2024, inclusive (the "Class Period"), and were damaged thereby (collectively, the "Class").

3

Lead Plaintiffs allege the following upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters. Lead Plaintiffs' information and belief as to allegations concerning matters other than themselves and their own acts is based upon, among other things, the investigation of Lead Plaintiffs and their counsel, which includes, without limitation: (a) interviews with numerous, high-level former employees of Vestis and Aramark; (b) review and analysis of internal Company documents, including internal emails and widely circulated internal spreadsheets between high-level Vestis employees; (c) review and analysis of public filings made by Vestis and Aramark with the SEC; (d) review and analysis of press releases and other publications disseminated by Defendants and other parties; (e) review of shareholder communications, conference calls, news articles, and postings on Vestis' and Aramark's websites concerning Defendants' public statements; and (f) review of other publicly available information concerning Vestis, Aramark, and the Individual Defendants.

Lead Plaintiffs' investigation into the factual allegations contained in this complaint is continuing, and many of the relevant facts are known only by Defendants or are exclusively within their custody or control. Lead Plaintiffs believe that substantial additional evidentiary support will exist for the allegations in this complaint after a reasonable opportunity for discovery.

**Answer**: Aramark Defendants admit that this is an action that purports to assert claims under the federal securities laws on behalf of persons and entities who purchased or otherwise acquired Vestis common stock between October 2, 2023 and May 1, 2024.

Any remaining allegations in the unnumbered introductory paragraphs appear to describe and/or characterize the claims in the Complaint and do not require a response. To the extent Plaintiffs are deemed to have pled any purported facts in these unnumbered introductory paragraphs, Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thereby deny those allegations.

## I.    PRELIMINARY STATEMENT[1]

1.    In the years leading up to the Class Period, Aramark—a food service, uniform and facilities services provider—was saddled with massive debt of over $7.5 billion, which severely limited its ability to grow its business. To unload this significant debt and increase its free cash flow, on May 10, 2022, Aramark announced the spin off ("Spinoff") of its uniform and workplace supply business segment, Aramark Uniform Services ("AUS"). Notably, Aramark stood to profit

---

[1] The use of headings herein is only for ease of reference to the Amended Complaint and does not constitute admissions as to the accuracy of those headings. To the extent any heading is read to contain factual allegations, Aramark Defendants deny each of them unless expressly stated otherwise.

handsomely from the Spinoff: upon the transaction's expected completion in September 2023, the new publicly traded company—to be called Vestis—would fund a nearly $1.5 billion cash payment back to Aramark. However, for the Spinoff to be a success, Defendants needed to convince the market that Vestis could succeed as a standalone entity, which was particularly important given investor concerns as to whether Vestis had the technology and operating systems in place to allow it to effectively compete in the industry.

**Answer**: Aramark Defendants admit that Aramark provides food and facilities services to its customers and that, prior to the Spin-Off ("Spin"), it also offered uniform services through its uniform and workplace supply business segment, Aramark Uniform Services ("AUS").

Aramark Defendants admit that Aramark announced plans to spin off AUS on May 10, 2022, that the Spin was expected to be completed in September 2023, and that the post-Spin entity was named Vestis.

Aramark Defendants admit that Aramark reported Long-Term Borrowings of $7,535,750 as of June 30, 2023.

While Aramark Defendants admit that Aramark received approximately $1.457 billion from Vestis through the Spin, they deny Lead Plaintiffs' characterizations of this transaction, which misleadingly suggest that Aramark Defendants received a windfall when, in reality, Vestis simply paid Aramark its

proportionate share of pre-Spin company debt, as is the case in most spin-off transactions.

Aramark Defendants further categorically deny the premise and characterizations presented in this narrative, which misrepresent the intent and structure of the transaction. Specifically, Aramark Defendants deny that they pursued the Spin primarily to "unload significant debt" and that it was "severely limited in its ability to grow its business."

Aramark Defendants deny the remaining allegations in Paragraph 1.

2. Significantly, as a business-to-business ("B2B") provider of uniforms and other workplace supplies to corporations and national franchises in a variety of industries, it was absolutely critical for Vestis to be able to deliver its products and services to its customers on-time, consistently and accurately. To that end, both prior to the Spinoff and throughout the Class Period, Defendants repeatedly boasted that Vestis did just that. Indeed, according to Defendants, Vestis had a "significant competitive advantage" in the marketplace "due to the quality of our services and products" and "ability to deliver on-time"—qualities which allowed the Company to "maintain long-tenured customer relationships" with large national accounts that lasted for decades. Maintaining these customer relationships was so critical to the Company's business that Vestis repeatedly boasted that its "customer retention rate was in excess of 90%," and that the "Company's single highest value growth lever

7

[was] retention, which we achieve through service excellence." As Defendant Scott, Vestis' CEO, stressed to investors, Vestis and its most senior officers were at all times "very focused on doing exactly what we say we're going to do, deliver on the promise, show up on time every week, deliver the products and services that you promise to your customers and do that with consistency and excellence."

**Answer**: To the extent the allegations in Paragraph 2 pertain to Vestis pre-Spin, Aramark Defendants admit that Vestis was a provider of uniforms and other workplace supplies to corporations and national franchises in a variety of industries. To the extent the allegations in Paragraph 2 pertain to Vestis post-Spin, Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of those allegations and thereby deny those allegations.

The remaining allegations in Paragraph 2 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's Information Statement, Vestis's September 13, 2023 Analyst Day presentation, and the corresponding transcript. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials. The full documents speak for themselves and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials. Aramark Defendants deny the

8

characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 2.

3.    Defendants also made clear throughout the Class Period that Vestis had the operating systems and technology in place to ensure on-time, accurate deliveries to its customers, including "technology and processes that reduce travel time, distance and fuel consumption" and "increase route efficiency." Chief among these technologies was Telematics, a critically-important, industry-standard fleet management system that allowed B2B route-based providers like Vestis to efficiently monitor fleet data, track vehicles and deliveries, and provide timely delivery notifications. Indeed, Telematics was so material to investors that in Vestis' September 2023 registration materials and in the Company's 2023 Form 10-K, filed on December 31, 2023, the Company specifically touted its "new Telematics technology" as being key for "increas[ing] route efficiency," and as late as February 7, 2024—just three months before the end of the Class Period—Defendants assured the market that "we've successfully deployed new Telematics technology across 89% of our fleet and fully deploy[ed] new routing and scheduling processes across North America."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first two sentences of Paragraph 3, which pertain to Vestis post-Spin, and on that basis deny those allegations.

9

The remaining allegations in Paragraph 3 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's Information Statement, Vestis's 2023 Form 10-K, filed on December 21, 2023, and the transcript from Vestis's earnings call held on February 7, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials. The full documents speak for themselves and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 3.

4.      Fueled by these wholly positive statements, Defendants successfully completed the Spinoff on September 30, 2023; Aramark pocketed its $1.5 billion in cash; and Vestis stock soon reached a Class Period high of more than $22 per share by early February 2024.

**Answer**: Aramark Defendants admit that the Spin was completed on September 30, 2023.

Aramark Defendants deny the allegation that Aramark "pocketed its $1.5 billion in cash" from the Spin as it mischaracterizes the nature of the transaction and misleadingly suggests that Aramark received a windfall. Instead, as is the case in

most spin-off transactions, Vestis simply paid Aramark its proportionate share (roughly 24%, equaling $1.457 billion) of Aramark and Vestis's combined $6.2 billion of net debt.

Aramark Defendants admit that Vestis's closing price on February 6, 2024, was $22.30 per share.

Aramark Defendants deny any remaining allegations in Paragraph 4.

5.      However, as would soon be revealed, Defendants' statements about Vestis' technology and operating systems, its ability to provide accurate, on-time services to its customers, and its customer retention were all materially false and misleading. The truth began to be revealed on February 6, 2024—just four months after the Spinoff—when Vestis announced that its Chief Operating Officer ("COO"), Chris Synek, had suddenly resigned after only five months on the job. The following morning, Vestis reported disappointing financial results for the first quarter of 2024 that fell far short of analyst estimates, causing Vestis' stock price to fall 13% on February 7, 2024.

**Answer**: No response is required to the allegations in the first sentence of Paragraph 5 that state a legal conclusion. To the extent any response is required, Aramark Defendants categorically deny those allegations in Paragraph 5.

Aramark Defendants admit that on February 6, 2024, Vestis announced that its Chief Operating Officer ("COO"), Chris Synek, was leaving the company.

Aramark Defendants admit that on February 7, 2024, Vestis issued a press release reporting its financial results for the first quarter of 2024.

Aramark Defendants admit that Vestis's stock price was $22.30 per share at market close on February 6, 2024, and was $19.42 per share at market close on February 7, 2024.

Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 5, and on that basis deny those allegations.

6.     Significantly, however, Defendants stemmed any further decline in Vestis' stock price by insisting to investors that the poor results had nothing to do with the Company's underlying business.  Indeed, when analysts asked during Vestis' earnings call on February 7, 2024, if the Company's poor results were due to customer retention being impacted by "service quality," Defendant Scott emphatically denied that there were any service issues, stating that Vestis had "go[ne] pretty deep and granular to understand . . . why customers leave" and that the revenue miss was purportedly due to "an uptick in business closures."  To further assure investors that Vestis' business was strong and on track, Defendants reaffirmed their prior full-year revenue growth guidance of 4-4.5%—which they were "confident" they would "deliver"—and touted the fact that Vestis "continue[d] to maintain" customer retention rates "greater than 90%," while claiming that there

were "<u>no real surprises as it relates to retention</u>." As Scott staunchly declared: "<u>I can assure you that I have no concerns about our business, our business performance and how we're tracking against our strategy</u>."

**Answer**: Aramark Defendants deny the allegations in the first sentence of Paragraph 6 as to Aramark Defendants. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of such allegations as to the remaining Defendants, and on that basis deny those allegations.

The remaining allegations in Paragraph 6 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's earnings call held on February 7, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 6.

7.      Accordingly, the market was shocked when, just three months later, on May 2, 2024, Defendants made a series of disclosures that the market <u>immediately</u> recognized contradicted their prior representations about Vestis' business. On that

day, Vestis disclosed terrible results for the second quarter of 2024, and further revealed that its business, rather than growing, was in freefall. Indeed, rather than reporting yearly revenue growth of 4-4.5%, Defendants now disclosed that Vestis' business would actually shrink in 2024, with "growth" in the range of -1% to 0.

**Answer**: Aramark Defendants admit that Vestis disclosed its results for the second quarter of 2024 on May 2, 2024, including that Vestis expected to deliver fiscal 2024 revenue growth in the range of (1)% to 0%.

Aramark Defendants deny all remaining allegations in Paragraph 7.

8. Significantly, while Defendants had previously claimed that there were "no real surprises" regarding Vestis' customer base and that they had fully disclosed any customer retention issues, Defendants now admitted that, unbeknownst to investors, even before the Spinoff occurred, Vestis had been losing major clients who were dissatisfied with the Company's inadequate services. Defendants made clear that the principal reason for Vestis' poor financial results was a "large amount of rollover losses from FY '23"—*i.e.*, undisclosed customer losses that took place even before the Spinoff occurred. These large "rollover losses" included "two large national account customers" that accounted for a material portion of Vestis' revenue. Indeed, Defendants revealed that customer losses had reduced second quarter revenues by 9% year-over-year, and remarkably, two-thirds of this lost revenue, or over $40 million, was directly attributable to what Defendants themselves called

14

"<u>known customer losses as we exited fiscal 2023</u>"—*i.e.*, <u>customer losses that Defendants knew full well existed before the start of the Class Period</u>, and which would continue to impact Vestis throughout all of 2024.

**Answer**: The allegations in Paragraph 8 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's earnings calls held on February 7, 2024 and May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials. The full documents speak for themselves and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 8.

9.      Defendants also were forced to admit, under withering questions from financial analysts, that the customer exodus that led to Vestis' catastrophically poor results were not due to market factors or the economy, but to the fact that the Company could not adequately perform the most basic tasks required of a B2B route-based business—delivering proper, complete sets of uniforms to customers where they wanted, and when they wanted them. As Defendants conceded, the "root cause" for "customers [] choosing to leave Vestis" was "service experiences related

to our procedures." Indeed, while Vestis had previously boasted about its ability to provide its customers with on-time, accurate delivery, in reality, Vestis' services were so inadequate that they had resulted in severe "service gaps" in which the Company was "not tight on our processes as it relates to disciplined loading of trucks, delivering on-time, delivering full loads." As Scott conceded, "more than 70% of the [client] cancellations are due to causes that are within our control"—they were directly "related to how we are delivering the load on time and incomplete loads."

**Answer**: The allegations in Paragraph 9 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript from Vestis's earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 9.

10.    Furthermore, and in stark contrast to Defendants' statements touting that they had "fully deployed new routing and scheduling technology and scheduling

processes across North America," including Vestis' "new Telematics technology," Defendants now acknowledged that, during the Class Period, Vestis was wholly unable to utilize those systems. Indeed, as Defendant Scott explicitly admitted, Vestis did not even "have a process to verify that the truck has been loaded accurately and that all of the product that needs to go to our customer is, in fact, being delivered to our customer." Scott noted that, when she first joined Aramark, she was stunned to learn that "we were not using Telematics to make sure that we are delivering to customers on time and also that we are following routing efficiencies." Yet despite the critical importance of this technology and Scott's own prior statements averring the exact opposite, Scott now admitted that, over two years later, Defendants' Telematics system was still not operational and Vestis was still not utilizing Telematics to ensure accurate, on-time deliveries—such that the Company would only "begin" using Telematics at some undetermined point in the future: "we expect very quickly that we'll begin to use those insights and that data from Telematics to shore this up and to make sure that we're delivering on time and that we're where we should be, when we should be."

**Answer**: The allegations in Paragraph 10 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call held on February 7, 2024 and the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original

meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials. The full documents speak for themselves and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 10.

11.    Tellingly, when analysts incredulously questioned how Defendants could not have disclosed these problems during the Class Period, Defendants were forced to admit that they knew about these issues all along. Indeed, Defendant Scott admitted that Vestis' massive service problems were "not related to the spin" or any recent developments. To the contrary, they were significant, longstanding issues that had been "in our business for quite some time." Similarly, Defendant Dillon expressly confirmed that Defendants knew about these severe issues during the Class Period, stating that they "knew the impact coming in of the lower retention rate."

**Answer**: The allegations in Paragraph 11 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full

document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 11.

12.   These revelations had a catastrophic impact on the Company and its investors. Vestis' stock price fell more than 49% on extraordinarily heavy volume following the disclosures, from a price of $18.47 on May 1, 2024 to a price of $9.41 per share on May 3, 2024. Analysts uniformly reacted with astonishment, pointedly noting that the news completely contradicted what Defendants had been saying for months, and excoriating management for their lack of credibility in misrepresenting the true state of Vestis' business during the Class Period. For example, Jefferies emphasized that Defendants had failed to disclose highly material information to investors, stating that "this [was] the first time customer retention and service issues were made apparent publicly," and that as a result, there was now "**a significant mgmt. credibility issue**." Baird noted that management's "credibility is low." Barclays expressed disbelief as to how there could be "this big of a revision" "in the last 90 days or 60 days," particularly given Defendants' long tenures at Aramark before the Spinoff: "[Y]ou were at the company for almost 2 years, while under Aramark. You guys presumably did all this work going through IR Day and

your confidence the last 2 quarters was pretty solid as well." And Wolfe Research aptly wondered: "why [didn't] [management] [catch] this before the [Spinoff]?"

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 12, and on that basis deny those allegations.

Aramark Defendants admit that Vestis's stock price was at $18.47 at the close of May 1, 2024 and $9.41 at the close of May 3, 2024.

The remaining allegations in Paragraph 12 appear to selectively quote from and/or mischaracterize selected excerpts from a Jeffries analyst report dated May 3, 2024, a Baird Equity Research analyst report dated May 2, 2024, a Wolfe Research analyst report dated May 3, 2024, and the transcript from Vestis's earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials. The full documents speak for themselves and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 12.

13.    Significantly, Defendants' fraud has been independently corroborated

20

by numerous former high-ranking Vestis and Aramark employees ("FEs") who worked at Vestis facilities across North America, including locations as diverse as Dallas, Baton Rouge, Nashville, Toledo and San Diego. These FEs uniformly confirmed that Defendants were well aware throughout the Class Period that Vestis was plagued by long-standing operational failures that were prevalent well before the Spinoff, including consistently poor customer service, a severe lack of functioning technology, and unjustified pricing increases, all of which resulted in significant customer departures leading up to the Spinoff.

**Answer**: To the extent the allegations in Paragraph 13 state legal conclusions, they do not require a response. To the extent a response is required, Aramark Defendants deny that they engaged in fraud.

Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the FEs referenced in Paragraph 13 meet the descriptions in Paragraph 13 or made statements, as broadly described in Paragraph 13. Aramark Defendants deny the substantive allegations attributed to these FEs in Paragraph 13.

Aramark Defendants deny all remaining allegations in Paragraph 13.

14.    For example, these FEs recalled that Vestis' customer service was so deficient that the Company was "selling a nonexistent service," akin to "sell[ing] air," and that poor quality service was the "number one issue" that caused it to lose customers—"their services is what kills them." The FEs also recounted that Vestis'

21

"service was so bad that these clients left within the first 30 to 90 days," and that "it was tough to compete with other uniform companies that were doing a much better job." Indeed, the FEs described internal reports showing that because of Vestis' egregiously bad service, it was "bleeding" customers even before the Spinoff—including major national accounts such as Tyson Chicken and Whole Foods—and that there was no comparison between "the type of customers and businesses that were being lost versus the businesses that the sales team were signing up."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the FEs referenced in Paragraph 14 made statements attributed to them in Paragraph 14. Aramark Defendants deny the substantive allegations attributed to these FEs in Paragraph 14.

15.    Furthermore, and in a rarity for a securities class action pleading, Lead Plaintiffs obtained contemporaneous internal Vestis documents confirming that, as a result of Vestis' severe service issues, Defendants knew that the "in excess of 90%" customer retention rate that they repeatedly touted both prior to and after the Spinoff was materially false and misleading. These internal reports were provided to high level executives, including direct reports to Defendant Scott, and showed that Vestis lost a massive $147 million in recurring weekly revenue due to customer losses between August 21, 2023 and April 19, 2024, with a staggering $55 million of that amount lost in the five weeks prior to the Spinoff alone. These reports were entirely

22

consistent with Defendants' own admissions at the end of the Class Period that these customer losses had caused Vestis' customer retention rate to fall materially below 90% in the quarter before the Spinoff. Moreover, the FEs confirmed that Defendants were well aware of these developments, as a customer retention rate below 90% in the uniforms services business—which was heavily reliant on high customer retention, with top competitors consistently boasting a retention rate of over 95%— represented a "DEFCON One" situation for the Company.

**Answer**: To the extent the allegations in Paragraph 15 reference internal documents generated by Vestis following the Spin, Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15, and thereby deny these allegations.

Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the FEs referenced in Paragraph 15 made statements attributed to them in Paragraph 15. Aramark Defendants deny the substantive allegations attributed to these FEs in Paragraph 15 to the extent they relate to the Aramark Defendants.

16.    Investors who purchased Vestis common stock at artificially inflated prices during the Class Period have suffered substantial losses from Defendants' violations of the federal securities laws. This action seeks redress on behalf of these aggrieved shareholders.

23

**Answer**: Aramark Defendants admit that this is an action that purports to assert claims on behalf of persons and entities who purchased or otherwise acquired Vestis common stock during the Class Period.

No response is required as to the allegations in Paragraph 16 that state legal conclusions. To the extent any response is required, Aramark Defendants deny any remaining allegations in Paragraph 16.

## II.    JURISDICTION AND VENUE

17.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

**Answer**: No response is required as to the allegations in Paragraph 17 that state legal conclusions. To the extent any response is required, Aramark Defendants deny any remaining allegations in Paragraph 17.

18.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

**Answer**: No response is required as to the allegations in Paragraph 18 that state legal conclusions. To the extent any response is required, Aramark Defendants deny any remaining allegations in Paragraph 18.

19.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b),

Section 27 of the Exchange Act (15 U.S.C. § 78aa). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's headquarters is located within this Judicial District.

**Answer**: Aramark Defendants admit that Vestis is headquartered in Georgia. No response is required as to the remaining allegations in Paragraph 19 that state legal conclusions. To the extent any response is required, Aramark Defendants deny any remaining allegations in Paragraph 19.

20. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchanges.

**Answer**: No response is required as to the allegations in Paragraph 20 that state legal conclusions. To the extent any response is required, Aramark Defendants deny any remaining allegations in Paragraph 20.

## III.  PARTIES

### A.  Lead Plaintiffs

21. Lead Plaintiff the City of Atlanta General Employees' Pension Fund is a public pension system organized for the benefit of approximately 11,000 current

25

and retired employees of the City of Atlanta, Georgia and their beneficiaries. As reflected in its PSLRA certification (ECF No. 15-2), the City of Atlanta General Employees' Pension Fund purchased Vestis common stock during the Class Period and suffered damages as a result of the federal securities laws violations and false and/or misleading statements and/or material omissions alleged herein.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 21, and on that basis deny those allegations.

No response is required as to the remaining allegations in Paragraph 21 that state legal conclusions. To the extent any response is required, Aramark Defendants deny any remaining allegations in Paragraph 21.

22. Lead Plaintiff the City of Atlanta Police Officers' Pension Fund is a public pension system organized for the benefit of approximately 3,600 current and retired police officers of the City of Atlanta, Georgia and their beneficiaries. As reflected in its PSLRA certification (ECF No. 15-2), the City of Atlanta Police Officers' Pension Fund purchased Vestis common stock during the Class Period and suffered damages as a result of the federal securities laws violations and false and/or misleading statements and/or material omissions alleged herein.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 22, and on that basis deny those allegations.

No response is required as to the remaining allegations in Paragraph 22 that state legal conclusions. To the extent any response is required, Aramark Defendants deny any remaining allegations in Paragraph 22.

23. Lead Plaintiff the City of Atlanta Firefighters' Pension Fund is a public pension system organized for the benefit of approximately 2,000 current and retired firefighters of the City of Atlanta, Georgia and their beneficiaries. As reflected in its PSLRA certification (ECF No. 15-2), the City of Atlanta Firefighters' Pension Fund purchased Vestis common stock during the Class Period and suffered damages as a result of the federal securities laws violations and false and/or misleading statements and/or material omissions alleged herein.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 23, and on that basis deny those allegations.

No response is required as to the remaining allegations in Paragraph 23 that state legal conclusions. To the extent any response is required, Aramark Defendants deny any remaining allegations in Paragraph 23.

24. Lead Plaintiff the Employees' Retirement System of the City of

Baltimore is a defined-benefit public pension fund organized for the benefit of more than 18,000 city employees of the City of Baltimore, Maryland and their beneficiaries. As reflected in its PSLRA certification (ECF No. 15-2), the Employees' Retirement System of the City of Baltimore purchased Vestis common stock during the Class Period and suffered damages as a result of the federal securities laws violations and false and/or misleading statements and/or material omissions alleged herein.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 24, and on that basis deny those allegations.

No response is required as to the remaining allegations in Paragraph 24 that state legal conclusions. To the extent any response is required, Aramark Defendants deny any remaining allegations in Paragraph 24.

25. Lead Plaintiff Norfolk County Retirement System is a defined-benefit public pension fund that provides pension and other benefits for approximately 9,500 employees working within Norfolk County, Massachusetts and their beneficiaries. As reflected in its PSLRA certification (ECF No. 15-2), Norfolk County Retirement System purchased Vestis common stock during the Class Period and suffered damages as a result of the federal securities laws violations and false and/or misleading statements and/or material omissions alleged herein.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 25, and on that basis deny those allegations.

No response is required as to the remaining allegations in Paragraph 25 that state legal conclusions. To the extent any response is required, Aramark Defendants deny any remaining allegations in Paragraph 25.

**B.    Corporate Defendants**

26.    Defendant Vestis is incorporated under the laws of Delaware with its principal executive offices located in Roswell, Georgia. Following the Spinoff, on October 2, 2023, Vestis common stock began trading on the New York Stock Exchange ("NYSE") under the ticker symbol "VSTS."

**Answer**: Aramark Defendants admit the allegations in Paragraph 26.

27.    Defendant Aramark is incorporated under the laws of Delaware with its principal executive offices located in Philadelphia, Pennsylvania. Aramark common stock trades on the NYSE under the ticker symbol "ARMK." As a result of the Spinoff, Aramark's uniform segment, AUS, became the independent publicly traded company, Vestis.

**Answer**: Aramark Defendants admit the allegations in Paragraph 27.

**C.    Individual Defendants**

28.    Defendant Scott is the President and CEO of Vestis and a member of

the Company's Board of Directors. According to the Company, Scott joined Aramark in October 2021—two full years before the Spinoff was completed—to serve as AUS' President and CEO and "to develop and launch an accelerated growth and value creation strategy for the company, while also preparing Vestis to be a standalone, independent public company." Per the Company's Registration Statement filed in connection with the Spinoff, Scott "has deep and relevant expertise with recurring revenue models having led and operated multiple businesses of this nature over the past 16 years," "extensive experience in logistics, route-based distribution and complex rental or subscription-based programs," and "a broad operating background that includes plant management, logistics, procurement, engineering, acquisitions and large-scale integrations."

**Answer**: Aramark Defendants admit that Defendant Scott served as Vestis's President and CEO and a member of Vestis's Board of Directors during the Class Period in this Action. Aramark Defendants also admit that Scott joined Aramark in October 2021.

The remaining allegations in Paragraph 28 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's Information Statement, filed as Exhibit 99.1 to a Form 8-K on September 11, 2023. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.

30

The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 28.

29.    Defendant Dillon is the EVP and CFO of Vestis. According to the Company, Dillon joined Aramark in May 2022 to serve as CFO of AUS and "to prepare Vestis to be a standalone, independent public company."

**Answer**: Aramark Defendants admit that Defendant Dillon served as the EVP and CFO of Vestis during the Class Period in this Action. Aramark Defendants also admit that Defendant Dillon was announced to be joining Aramark to serve as CFO of AUS in May 2022.

The remaining allegations in Paragraph 29 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's Information Statement, filed as Exhibit 99.1 to a Form 8-K on September 11, 2023. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark

Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 29.

30.    Defendant Zillmer has served as the CEO of Aramark, and as a member of Aramark's Board of Directors, since October 2019. Vestis' Information Statement included a cover letter dated September 11, 2023 that was signed by Zillmer. Zillmer's cover letter "encourage[d]" investors to read the Information Statement as it "describe[d] the [Spinoff] in detail and contain[ed] important business and financial information about Vestis." As discussed herein, Zillmer made materially false and misleading statements and omissions in the Information Statement.

**Answer**: Aramark Defendants admit that John Zillmer has served as the CEO of Aramark, and as a member of Aramark's Board of Directors, since October 2019.

Aramark Defendants admit that Mr. Zillmer signed a letter dated September 11, 2023 that was attached to Vestis's Information Statement.

The allegations in Paragraph 30 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's Information Statement, filed as Exhibit 99.1 to a Form 8-K on September 11, 2023. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that

32

the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 30.

No response is required as to the allegations in the last sentence of Paragraph 30 that state legal conclusions. To the extent any response is required, Aramark Defendants deny any remaining allegations in Paragraph 30.

31. The Individual Defendants, as senior executive officers and/or directors of Vestis and/or Aramark, were privy to confidential, proprietary and material adverse non-public information concerning Vestis and/or Aramark, their operations, finances, financial condition and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being actively concealed from, the investing public.

**Answer**: Aramark Defendants deny the allegations contained in the first sentence of Paragraph 31.

33

No response is required as to the allegations in the last sentence of Paragraph 31 that state legal conclusions.  To the extent any response is required, Aramark Defendants deny any remaining allegations in Paragraph 31.

32.    Defendants Aramark and Zillmer are liable as direct participants in the wrongs complained of herein for their conduct and misstatements made about Vestis in connection with the Spinoff.  In addition, Defendants Aramark and Zillmer were "controlling persons" within the meaning of Section 20(a) of the Exchange Act over Vestis and its officers and directors, including Defendants Scott and Dillon, prior to the Spinoff.  Defendants Aramark and Zillmer had the power and influence to cause Vestis and its officers and directors to engage in the unlawful conduct complained of herein prior to the Spinoff, including with regard to the statements made in the Information Statement filed in connection with the Spinoff.  Because of their positions of control, Defendants Aramark and Zillmer were able to and did, directly or indirectly, control the conduct of Vestis' business prior to the Spinoff, including through the actions of its officers and directors, including Defendants Scott and Dillon.

**Answer**: No response is required as to the allegations in Paragraph 32 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny the allegations in Paragraph 32.

33.    Defendants Aramark and Zillmer, because of their control over Vestis

prior to the Spinoff, controlled and/or possessed the authority to control the contents of Vestis' Information Statement, SEC filings, press releases, and presentations to securities analysts, and through them, to the investing public.  Defendants Aramark and Zillmer were provided with copies of Vestis' reports and publicly disseminated documents filed prior to the Spinoff alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Thus, Defendants Aramark and Zillmer had the opportunity to commit the fraudulent acts alleged herein.

**Answer**: Aramark Defendants admit only that certain Aramark officers, including Mr. Zillmer, were provided with copies of Vestis's Information Statement prior to the Spin.

No response is required as to the remaining allegations in Paragraph 33 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any remaining allegations in Paragraph 33.

34.    As controlling persons of Vestis prior to the Spinoff, whose securities were registered with the SEC pursuant to the Exchange Act and governed by the federal securities laws, Defendants Aramark and Zillmer had a duty to disseminate promptly accurate and truthful information with respect to Vestis' financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, to correct

any previously issued statements that had become materially misleading or untrue, so the market price of the Vestis' common stock would be based on truthful and accurate information once its trading began after the Spinoff. Defendants Aramark and Zillmer's misrepresentations and omissions prior to the Spinoff violated these specific requirements and obligations.

**Answer**: No response is required as to the allegations in Paragraph 34 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 34.

35.   Defendants Scott and Dillon are liable as direct participants in the wrongs complained of herein. In addition, Defendants Scott and Dillon, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of Section 20(a) of the Exchange Act and had the power and influence to cause Vestis to engage in the unlawful conduct complained of herein. Because of their positions of control, Defendants Scott and Dillon were able to and did, directly or indirectly, control the conduct of Vestis' business.

**Answer**: No response is required as to the allegations in Paragraph 35 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 35.

36.   Defendants Scott and Dillon, because of their positions within Vestis, controlled and/or possessed the authority to control the contents of Vestis'

Information Statement, reports, SEC filings, press releases, and presentations to securities analysts, and through them, to the investing public. Defendants Scott and Dillon were provided with copies of Vestis' reports and publicly disseminated documents alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, Defendants Scott and Dillon had the opportunity to commit the fraudulent acts alleged herein.

**Answer**: No response is required as to the allegations in Paragraph 36 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 36.

37. As senior executive officers and/or directors and as controlling persons of a publicly traded company whose securities were registered with the SEC pursuant to the Exchange Act and governed by the federal securities laws, Defendants Scott and Dillon had a duty to disseminate promptly accurate and truthful information with respect to Vestis' financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, to correct any previously issued statements that had become materially misleading or untrue, so the market price of Vestis' common stock would be based on truthful and accurate information. Defendants Scott's and Dillon's misrepresentations and omissions during the Class

37

Period violated these specific requirements and obligations.

**Answer**: No response is required as to the allegations in Paragraph 37 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 37.

## IV.    OVERVIEW OF THE FRAUD

### A.    Background of the Spinoff

38.    Aramark, Vestis' former parent, provides food service, facilities and uniform services to hospitals, universities, school districts, stadiums and other businesses around the world.  Aramark entered the uniform services industry in 1977.  Prior to the Spinoff, Aramark consisted of three segments: Food and Support Services United States, Food and Support Services International, and the Uniform and Career Apparel segment ("AUS").

**Answer**: Aramark Defendants admit that Aramark was Vestis's parent company prior to the Spin and that Aramark entered the work uniform rental and career apparel industry in 1977.  Aramark Defendants also admit that Aramark provides food and facilities services to its customers and that, prior to the Spin, consisted of three segments: Food and Support Services United States, Food and Support Services International, and the Uniform and Career Apparel segment ("AUS").

39.    AUS's business—which ultimately became Vestis—entails providing

uniforms, mats, towels, linens, restroom supplies, first-aid and safety products, and other workplace supplies to a diverse customer base. The Company serves large corporations and national franchises with multiple locations to small, family-owned customers with a single location. AUS had 20,000 employees who operated over 350 sites including laundry plants, satellite plants, distribution centers and manufacturing plants, along with a fleet of service vehicles that supported over 3,400 pick-up and delivery routes.

**Answer**: Aramark Defendants admit the allegations in Paragraph 39.

40.     AUS was known as a B2B "route-based business," as its services and products were delivered to customers by delivery drivers ("route service representatives" or "RSRs") via delivery routes that originated from one of the Company's laundry plants or "market centers." AUS serviced customers on a recurring rental basis, typically weekly, delivering clean uniforms while, during the same visit, picking up worn uniforms for inspection, cleaning, replacement, or repair. Similarly, used towels, linens and floor mats were picked up regularly by AUS employees and replaced with fresh, clean products. AUS also offered regular restocking of safety products, first aid supplies, and restroom supplies as needed.

**Answer**: Aramark Defendants admit that AUS delivered its services and products to customers by route service representatives via delivery routes that originated from one of its laundry plants or satellite sites.

39

Aramark Defendants admit that AUS serviced customers on a recurring basis, typically weekly, delivering clean uniforms, and, in the same visit, picking up worn uniforms for inspection, cleaning, replacement, or repair.

Aramark Defendants also admit that AUS picked up used and soiled floor mats, towels and linens and replaced them with clean products.

Aramark Defendants also admit that AUS restocked restroom supplies, first-aid supplies and safety products as needed.

41.    Significantly, the ability to make on-time, correct deliveries to customers was critical to AUS. As one former Regional VP of AUS explained, "inventory management" was the "biggest" issue for a uniforms program, because if the right number of uniforms were not timely delivered, customers were left with insufficient uniforms for their employees and were often significantly impacted— completely defeating the value of the program:

> I'll give you an example of what can go bad. You have a company's inventory management, one of the biggest things. That's a big issue in the industry. If you're an employer and you have let's say 20 employees and you're paying for a program, then I come and deliver your garments, pick them up, deliver them every week, and every week, you're missing two shirts, a pair of pants, that causes a strain on your business. Now your employees don't have uniforms to work their complete workweek. They either have to wear a garment twice or they have to go ahead and wear their own garments. That puts a big strain. When I say service, when I say the inventory management piece, that's critical when it comes to a uniform program. A lot of companies buy into it, and then they see that it's not working because they're not getting the garments back.

**Answer**: Aramark Defendants deny the allegations in the first sentence of Paragraph 41.

Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former AUS employee referenced made the statement quoted in Paragraph 41, and deny the allegation on that basis. Aramark Defendants deny the substantive allegations attributed to this former AUS employee in Paragraph 41.

42.     Prior to the Spinoff, AUS was the smallest segment of Aramark, and was in substantial need of capital investment and focus. On an absolute dollar basis, the Company had generally trailed its principal competitors, Cintas and UniFirst, with respect to capital investment over the last decade. AUS also averaged a much lower compound annual revenue growth rate ("CAGR") than its competitors, 1-2% per year, as compared to Cintas, which averaged 6.3% per year. Indeed, from 2012 to 2022, AUS' growth lagged Cintas' by a significant margin for all eleven years and UniFirst's growth for nine of those eleven years. AUS struggled given its lack of synergies with Aramark's main food service business, causing Aramark to not invest in the growth of the business. Moreover, historically, high levels of debt at Aramark led to periods where the AUS business was effectively run as a source of cash flow for Aramark's predominantly food services business.

**Answer**: Aramark Defendants admit that prior to the Spin, AUS was the smallest segment of Aramark.

41

Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations related to Cintas and UniFirst's compound annual revenue growth rates in the second, third, and fourth sentences of Paragraph 42.

Aramark Defendants deny all remaining allegations in Paragraph 42.

43.    Additionally, as a food services company, Aramark was hard hit by COVID-19, as the pandemic had a material impact on the customer segments it serviced (*e.g.* sports & leisure, education, restaurant, onsite business & industry). As a result, Aramark became weighed down with astronomically high debt: $9.2 billion in 2020 and $7.4 billion in 2021, with its leverage above 7x EBITDA in late 2021. In light of growing market concern over its balance sheet, at Aramark's Analyst Day held on December 9, 2021, Aramark announced that it would decrease its leverage significantly, to 3x-3.5x by fiscal year 2025. While not yet known to the market, part of Aramark's deleveraging plan was to conduct a Spinoff of AUS, which would come with an associated hefty cash payment back to Aramark.

**Answer**: Aramark Defendants admit that the COVID-19 pandemic had a material impact on customer segments it serviced.

Aramark Defendants admit that during an Analyst Day held on December 9, 2021, Aramark's Thomas G. Ondrof (Executive VP and CFO) stated that Aramark was "committed to move into [its] targeted range of 3.0 to 3.5x [leverage ratios] by fiscal [year] '25."

Aramark Defendants admit that Aramark reported long-term borrowings of $9,178,508 as of October 2, 2020, and $7,393,417 as of October 1, 2021, and that its Net Debt/Covenant Adjusted EBITDA as of October 1, 2021 was 7.4x.

Aramark Defendants deny all remaining allegations in Paragraph 43.

44. In preparation for the Spinoff, on October 10, 2021, Aramark retained Defendant Scott as the new CEO of AUS, specifically to begin working towards a Spinoff, which would be publicly announced a few months later. To lay the groundwork that AUS was a strong, standalone operating business—a theme Defendants would repeatedly push in connection with the Spinoff—even before the Spinoff was announced, Scott began publicly touting the "great amazing investments" Aramark had recently made in AUS.

**Answer**: Aramark Defendants admit that on October 10, 2021, Aramark announced Kim Scott as the new CEO of AUS.

The allegations in the second sentence of Paragraph 44 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Aramark's Analyst/Investor Day held on December 9, 2021. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit

only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 44.

Aramark Defendants deny all remaining allegations in Paragraph 44.

45.     Indeed, at Aramark's December 9, 2021 Investor Day, Defendant Scott praised how Aramark had increased the AUS sales force and had invested in "a new" customer relationship management system, "ABS," which, as she described, was "the enabler for many things that we want to do across this business. It is one place to house all of our data and information about our customers to see the movement of our routes so that we can understand how efficient we're being to allow us to have very ease of doing business activities with our customers." Scott proclaimed that, with the new ABS system in place—which was "already more than 70% implemented"—AUS would be able to run efficiently and generate growth, putting it on track to catch up to top competitor Cintas. In Scott's words, "now that we have [ABS] in place" and "now that we have our sales team in place" the "building blocks [for growth] are now in place."

**Answer**: The allegations in Paragraph 45 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript from Aramark's December 9, 2021 Analyst/Investor Day.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable

alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 45.

46. Moreover, market commentators had long recognized that having technologically-advanced management systems was the key to AUS becoming more competitive with Cintas. Cintas had long ago implemented its own technological infrastructure investments that had significantly improved its customer retention rate to over 95%, and helped Cintas to realize several benefits, including "real-time inventory tracking of stockrooms (better use of garments), management of high input costs, and increased employee efficiency by getting more stops per mile." The new ABS system was thought to have similar benefits for AUS, helping it to improve customer service and thus overall customer retention.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 and on that basis deny the allegations.

> **B.    In The Wake Of Announcing The Spinoff, Defendants Tout Their Investments In Vestis To Assure Investors That Vestis Had Improved Logistics And Operating Systems In Place To Thrive**

47.     On May 10, 2022, Aramark publicly announced that it would spin off AUS by the end of its fiscal year 2023—*i.e.*, by September 30, 2023. The Spinoff would therefore occur a full two years after Defendant Scott was first brought in as CEO of AUS—giving her ample time to prepare AUS to succeed as an independent entity. The new company would be called Vestis. The Spinoff would be tax-free and Aramark stockholders would receive one share of Vestis common stock for every two shares of Aramark common stock they held as of the record date of the distribution. Significantly, as part of the Spinoff—and to help relieve Aramark's over $7.5 billion in debt—Aramark would receive an enormous cash payout from the transaction: specifically, Vestis would be required to pay nearly $1.5 billion in cash back to Aramark.

**Answer**: Aramark Defendants admit that Aramark announced plans to spin off AUS on May 10, 2022, that the Spin was expected to be completed in September 2023, around two years after Kim Scott was announced as CEO of AUS.

Aramark Defendants admit that the post-Spin entity was named Vestis.

Aramark Defendants admit that the Spin was intended to be a tax-free transaction to Aramark and its stockholders and that Aramark stockholders would receive one share of Vestis common stock for every two shares of Aramark common stock that they held as of the record date of the distribution.

46

While Aramark Defendants admit that Aramark received approximately $1.457 billion from Vestis through the Spin, they deny Lead Plaintiffs' characterizations of this transaction, which misleadingly suggest that Aramark Defendants received a windfall when, in reality, Vestis simply paid Aramark its proportionate share of pre-Spin company debt, as is the case in most spin-off transactions.

Aramark Defendants deny any remaining allegations in Paragraph 47.

48.    To justify the Spinoff and its nearly $1.5 billion payout to Aramark, Defendants needed to convince the market that Vestis was a strong operating business that was poised to succeed as an independent entity after the Spinoff was completed.  Thus, in Aramark's May 10, 2022 press release announcing the Spinoff, it strongly emphasized that its "recent investments" in Vestis—including investments in "an operating platform [ABS] that is anticipated to enable efficiencies across all customer touchpoints including supply chain logistics, inventory management, and back office support" and a "stronger salesforce"—had already resulted in "new client wins" and an "improved" customer retention rate of more than 150 basis points.  As a result, Vestis was purportedly "well-positioned to succeed independently."

**Answer**: Aramark Defendants deny the allegations in the first sentence of Paragraph 48.

The remaining allegations in Paragraph 48 appear to selectively quote from and/or mischaracterize selected excerpts from Aramark's May 10, 2022 press release announcing the Spin. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 48.

49.    Defendant Scott likewise emphasized Aramark's "recent investments," touting that Vestis' new team would "capitaliz[e] on [the] investments, and moderniz[e] [the Company's] approach to customer relationship management" "to substantially increase the performance of our business." Scott also represented that "[s]ince October [2021]," when she first joined AUS, "a plan" had been "developed" "to deliver a step change increase in organic revenue growth and margin."

**Answer**: The allegations in Paragraph 49 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript from Aramark's May 10, 2022 press release announcing the Spin. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes

notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 49.

50.    During Aramark's conference call held that day, Zillmer specifically highlighted that Vestis was ready for the Spinoff because Aramark's investments in the Company were already accomplished, and Scott would have over a year to shore up operations before the Spinoff occurred. Indeed, Zillmer explained that Aramark specifically delayed pulling the trigger on the Spinoff until after these key investments had been fully implemented to ensure Vestis' success. According to Zillmer, in the past, "the company had work to do with respect to fixing the business, to getting the systems right [and] the infrastructure right" but now, "the investments we've made over the last couple of years, in both sales infrastructure, growth infrastructure, the route accounting systems, are largely behind us. And we are now well positioned to accelerate the growth and improve the margins in the business."

**Answer**: Aramark Defendants admit that Aramark held an earnings call on May 10, 2022.

The remaining allegations in Paragraph 50 appear to selectively quote from

49

and/or mischaracterize selected excerpts from the transcript of Aramark's earnings call on May 10, 2022. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 50.

51. Analysts reacted favorably to the news of the Spinoff. For example, analysts at Oppenheimer called it "a long anticipated move, and one we view as highly positive . . . The move will create two industry-leading, independent public companies with strong growth and profitability strategies." Those analysts concluded their report, saying, "we believe the Uniforms spin-off is the right step that creates long-term shareholder value and an optimal capital structure." Analysts at Baird credited Defendants' statements, noting "ARMK sees AUS well positioned for growth after investments including a new CRM."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 51, and on that basis deny those allegations.

The remaining allegations in Paragraph 51 appear to quote from and/or characterize selected excerpts from analyst reports, albeit with the noted alterations. The full documents speak for themselves and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit that the allegations quote excerpts from the documents, but otherwise deny all allegations.

52. Throughout the rest of 2022, Defendants kept stressing that the Company was thriving operationally and would only continue to succeed. For example, Zillmer again drove home that Vestis was ready to grow at a June 2, 2022 Bernstein Strategic Decisions Conference, where he explained that Aramark's investments in Vestis' "route accounting system," ABS, and its "implementation," were now complete—such that AUS was "beginning to drive the benefits of that system throughout the enterprise." Zillmer added that AUS was "well ahead" of the investment in "sales infrastructure and leadership development and training," and with "those 2 big strategic initiatives behind us," the Spinoff was happening at the exact right time, as the new Company would benefit immediately from its now strong operations.

**Answer**: Aramark Defendants deny the allegations in the first sentence of Paragraph 52.

The remaining allegations in Paragraph 52 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Aramark's

51

presentation at a June 2, 2022 Bernstein Strategic Decisions Conference. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 52.

53. Significantly, Scott—who was slated to become CEO of Vestis—further reassured investors by repeatedly emphasizing her intimate role in ensuring the business was running efficiently and effectively long before the Spinoff. For example, at a June 8, 2022 Baird Consumer, Technology & Services Conference, Scott noted that she had "an affinity for the recurring revenue model" and an "understanding [of] how important protecting that base is and really building customer loyalty, so that you can then drive retention, which, as you all know, is a great way to grow your business in a recurring revenue model, but also this huge opportunity to cross-sell the base." Scott specifically noted that her "tremendous amount of experience really running these recurring revenue models and running them very well" would help the Company succeed.

52

**Answer**: Aramark Defendants deny the allegations in the first sentence of Paragraph 53.

The remaining allegations in Paragraph 53 appear to quote from and/or characterize selected excerpts from the transcript of Aramark's presentation at a June 8, 2022 Baird Consumer, Technology & Services Conference, albeit with the noted alterations. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit that the allegations quote excerpts from the documents, but otherwise deny all allegations.

54.    Defendant Scott also again made clear that the Company's operating systems and investments were already in place and providing strong customer services. Indeed, Scott highlighted the fact that, while the Company previously was not "as focused as we should have been" on making sure it had a "proper logistics function," the "first thing" Scott did upon assuming her position as CEO was to "install a proper logistics function":

> So the first thing that we've done around operations, candidly, is to install a proper logistics function. And so there is a massive opportunity in this model, of course, to leverage logistics know-how to drive efficiencies. So efficient routes, really driving density across those routes so that you can leverage your footprint and lower your cost to serve. And so we're very, very focused on logistics. And I think that's been an area that we have not been as focused as we should have been in the past. And so that's really not related to what you do when you spin out, it's just really related to what do you do to really run this business really well. Whether we're inside Aramark or outside of

53

Aramark, <u>we should be really, really expert at logistics because we're running a route-based business</u>. And going back to your question of kind of what surprised you, I mean, candidly, I love our team and I think we're doing amazing work, but <u>I was surprised that we weren't doing more sophisticated</u> things around routing and scheduling and logistics.

**Answer**: The allegations in Paragraph 54 appear to quote from and/or characterize selected excerpts from the transcript of Aramark's presentation at a June 8, 2022 Baird Consumer, Technology & Services Conference, albeit with the noted alterations. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required: Aramark Defendants admit that the allegations quote excerpts from the document, but otherwise deny all allegations.

55.    In 2023, as the Spinoff grew closer, Defendants continued to strongly assure investors that they had "<u>position[ed] the Uniform Services Spinoff for success</u>." For example, at a May 31, 2023 Bernstein Conference, Aramark boasted that Vestis' customers were pleased with the Company's services, as they were renewing their contracts, and Vestis was ready for independent status. When an analyst pointed out that the Company had seemingly "exited the pandemic a little behind some of the larger listed peers" in terms of its organic growth, Zillmer dismissed any concerns, claiming that this was due to a one-off "fuel recovery fee" that purportedly did not affect Vestis' competitors. Indeed, Zillmer strongly asserted that the Company was now apace with its competitors, stating "<u>if you look at our</u>

54

<u>sales volumes, our net new business wins and our [customer] retention[,] we're right there with our competitors</u>."

**Answer**: The allegations in the first sentence of Paragraph 55 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Aramark's Q2 2023 earnings call, dated May 9, 2023.  The remaining allegations in Paragraph 55 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Aramark's presentation at a May 31, 2023 Bernstein Strategic Decisions Conference.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials.  The full documents speak for themselves and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 55.

Aramark Defendants deny any remaining allegations in Paragraph 55.

56.    Then, just before the Spinoff, at a June 8, 2023 Baird conference, Vestis' management, including Defendants Scott and Dillon, depicted Vestis as a "wonderful hidden jewel" that served "customers with excellence" and had "outstanding customer relationships." Scott stressed that customer retention was

especially critical to the Company's success, stating that retention was "one of the most important levers in this model," and that "the best thing you can do is protect it, so it keeps giving week-over-week and month-over-month and quarter-over-quarter . . . and so we hold on to every customer that we worked so hard to acquire." Scott explained that "high-quality revenue growth is the #1 component in our strategic plan" and that revenue growth "starts with retaining the amazing customers that you already have." Scott further averred that Vestis was able to retain and grow its customer base because "the investments [Aramark] already made in [the Company's] infrastructure" had paid off.

Answer: The allegations in Paragraph 56 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Aramark's presentation at a June 8, 2023 Baird Consumer, Technology & Services Conference, albeit with the noted alterations. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 56.

56

Aramark Defendants deny any remaining allegations in Paragraph 56.

57.    Indeed, Scott again stressed that a "portfolio of logistics initiatives" was now in place, emphasizing that she "c[a]me from a route-based business previously so I'm familiar with these tools," and further stated that she personally had "spent time in the field riding along with [employees] and meeting our customers" to ensure the systems were working—and it was "very clear over the last 18 months that with a new strategic plan, which we have now put in place and with the establishment of some new functional capabilities, we can take this business to a new level." Scott proclaimed that, as a result, Vestis was a "really, really wonderful business with this fantastic recurring revenue. And what's so amazing about this business is the opportunity to expand with our existing customers."

**Answer**: The allegations in Paragraph 57 appear to quote from and/or characterize selected excerpts from the transcript of Aramark's presentation at a June 8, 2023 Baird Consumer, Technology & Services Conference, albeit with the noted alterations.  The full document speaks for itself and therefore the allegations do not require a response.  To the extent a response is required: Aramark Defendants admit that the allegations quote excerpts from the documents, but otherwise deny all allegations.

  C.    **In Preparation For The Spinoff, Defendants Tout The Company's "Long-Term Relationships With [] Customers Due To The Quality Of [Its] Services And Products [And] [] Ability To Deliver On Time" And Its High Retention Rate "In Excess Of 90%"**

58.    On August 15, 2023, Vestis filed with the SEC a registration statement on Form 10 (as amended, the "Registration Statement"), which became effective on September 8, 2023, and included a preliminary information statement ("Information Statement") that was executed on September 11, 2023.

**Answer**: Aramark Defendants admit the allegations in Paragraph 58.

59.    The Information Statement included cover letters from both Defendants Zillmer and Scott, which "encourag[ed]    [investors]    to    read    the    attached [I]nformation [S]tatement." The Information Statement continued to convey that the successful investments in Vestis' business were a *fait accompli*, promoting Vestis' operational excellence as a key value driver that ensured the Company would retain customers and grow revenue.  Indeed, the Information Statement repeatedly boasted of the Company's "[l]ong tenured [c]ustomer relationships" and "recurring revenue streams," which Defendants claimed were made possible precisely "due to the quality of [Vestis'] services and products" and its "ability to deliver on-time."

**Answer**: Aramark Defendants admit that Vestis's Information Statement filed on September 11, 2023 included a cover letter from John Zillmer "encourag[ing]" Aramark stockholders "to read the attached information statement."

Aramark Defendants admit that Vestis's Information Statement also included a cover letter from Kim Scott addressed to future Vestis stockholders "invit[ing]" them "to learn more about Vestis by reviewing the enclosed information statement."

The remaining allegations in Paragraph 59 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's Information Statement filed on September 11, 2023. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 59.

60.     Defendants also made sure to emphasize in the Information Statement and throughout the Class Period that Vestis consistently maintained a "customer retention rate [] in excess of 90%," which was absolutely critical in the uniforms services industry, as any retention rate that fell below 90% would signal to the market that the Company had serious issues with customer retention. Indeed, as set forth above, Vestis' top competitor Cintas typically maintained a retention above 95%, and according to the Company's own former employees, any retention rate that fell below 90% was internally considered to be a dire "DEFCON One" situation.

**Answer**: The allegations in the first sentence of Paragraph 60 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's

59

Information Statement filed on September 11, 2023. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 60.

Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 60, and on that basis deny those allegations.

61.    For example, the Information Statement boasted that Vestis' exemplary service kept customers happy and loyal such that, over the prior five years, Vestis had consistently maintained a "customer retention rate [] in excess of 90%," which provided Vestis with a "significant competitive advantage[]" and was a "key competitive strength[]." The Information Statement made clear that this strong "Customer Retention" would deliver "High Quality Revenue Growth" for the Company and create "recurring revenue streams" that allowed for "predictability of revenue."

**Answer**: The allegations in Paragraph 61 appear to selectively quote from

and/or mischaracterize selected excerpts from Vestis's Information Statement filed on September 11, 2023. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 61.

62. The Information Statement also highlighted the fact that the Company had successfully implemented, and was using, a critically important fleet management technology called "Telematics." Telematics combines telecommunications and GPS technology to help route-based companies receive, view and track real-time data about delivery vehicles, delivery schedules, and the status of deliveries. In the uniform service industry, Telematics is an essential management tool for commercial fleets that is standard for B2B route-based services businesses like Vestis, as it is absolutely critical for ensuring efficient routes and correct, on-time deliveries.

**Answer**: The allegations in the first sentence of Paragraph 62 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's

61

Information Statement filed on September 11, 2023.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 62.

Aramark Defendants admit that telematics technology allowed Vestis to reduce fuel usage by providing real-time in-cab driver alerts.

Aramark Defendants deny any remaining allegations in Paragraph 62.

63.    Indeed, in the Information Statement, Defendants specifically touted Vestis' use of "our new telematics technology," stating: "We seek to increase route efficiency with technology and processes that reduce travel time, distance and fuel consumption.  For example, our new telematics technology allows us to proactively reduce fuel usage by limiting idling through real-time, in-cab driver alerts."

**Answer**: The allegations in Paragraph 63 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's Information Statement filed on September 11, 2023.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further

misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 63.

64.    Two days later, on September 13, 2023, Aramark and Defendants Scott and Dillon hosted "the very first Vestis Analyst Day," which was specifically designed to inform investors about the soon-to-be public independent company. At that conference, Defendants left no doubt that Vestis already had in place all of the operating systems and processes it needed to succeed. Indeed, incoming Vestis CEO Defendant Scott explained at the outset that she had "joined [AUS] a couple of years ago with the <u>intent of preparing this business for this exact moment</u>." Defendants crowed that as a result of these years of preparation and "<u>the investments that Aramark already quite wisely made in this business, the ramping of the sales force, the investment of our operating system platform</u>"—investments that were "<u>in place</u>," "<u>in our run rate</u>" and had "<u>been made</u>"—Vestis was "<u>primed and ready to go</u>.

**Answer**: Aramark Defendants admit that there was a Vestis Analyst Day held on September 13, 2023.

The remaining allegations in Paragraph 64 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's September 13, 2023 Analyst Day. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 64.

65.    As in the Information Statement, Defendants further touted at Analyst Day that Vestis' services were already "excellent," which allowed the Company to "retain[] the base" and grow revenue. Indeed, Defendants repeatedly assured the market that Vestis' stellar service was what allowed the Company to retain customers. For example, the Company's accompanying investor presentation highlighted that "the single highest value growth lever is retention, which we achieve through service excellence." Defendants emphasized that not only did the Company have "very loyal customers," it was specifically the large "national account customers"— which had been "with us for 26 years"—that formed the "very strong relationships" that would propel growth. According to Scott, these "amazing relationships" were borne out in the strong customer "retention metrics," and were

a testament to Vestis' ability to "service [the customers] with excellence every single day."  Defendant Dillon similarly confirmed that "retaining our existing customers [was] the single most profitable thing" underlying Vestis' business model.

**Answer**: The allegations in Paragraph 65 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript from Vestis's September 13, 2023 Analyst Day and the presentation from that Analyst Day.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials.  The full documents speak for themselves and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 65.

Aramark Defendants deny any remaining allegations in Paragraph 65.

66.    Defendant Scott also averred that Vestis employees were keenly "focused" on service and "taking care of [the] customers," which meant they were "doing exactly what we say we're going to do, deliver on the promise, show up on time every week, deliver the products and services that you . . . promise to your customers and do that with consistency and excellence."

**Answer**: The allegations in Paragraph 66 appear to selectively quote from

and/or mischaracterize selected excerpts from the transcript from Vestis's September 13, 2023 Analyst Day. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 66.

67. Indeed, Scott strongly highlighted the fact that Vestis had in place the systems it needed to effectively service its customers, and to ensure accurate, on-time delivery. For example, Scott attributed Vestis' retention success to the "implementation of [the] ABS" system, which had been "<u>launched across our entire network</u>," and gave team members the "digital tools in their hands so that they can interact more seamlessly and more efficiently with the customer." Scott directly credited Vestis' ability to "<u>protect the base</u>" and "<u>retain the customers</u>" to these "better tools" and "data analytics" that could "really trend customer behaviors" and cause Vestis to provide "excellent service."

**Answer**: The allegations in Paragraph 67 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript from Vestis's

September 13, 2023 Analyst Day.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 67.

Aramark Defendants deny any remaining allegations in Paragraph 67.

68.    Significantly, when analysts questioned Defendants about customer retention in light of the fact that the Company had reported flat revenue year-over-year growth in Vestis' core uniforms business, Scott claimed that the flatness was of no moment and in fact "very intentional," as it was purportedly due to "nonregrettable losses around some accounts that just didn't make sense for our portfolio."  Scott thus strongly assured investors that any customer losses that were weighing on the uniforms revenue were strategic and had nothing to do with any problems in Vestis' business: "So you've got a couple of accounts that have left the portfolio as well that are depressing that uniforms number . . . So while you may see that as a depressed number or a flat number, it's very intentional."

**Answer**: The allegations in Paragraph 68 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript from Vestis's September 13, 2023 Analyst Day. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 68.

69.    Based on these proclamations, Defendants confirmed their "<u>commitment</u>" to growing the Company's CAGR—a critical metric in the uniform services business on which the market heavily focused—by stating that "we're going to grow our top line revenue CAGR on an organic basis, 5% to 7%," and "deliver 18% to 20% adjusted EBITDA margin," by fiscal year 2028. This was significantly above AUS' historical CAGR of only 1-2% annually, and effectively matched top competitor Cintas' CAGR and profit margins. Defendants claimed that the key tenets underpinning this guidance was the Company's strategy to "retain[] the customers that you have, cross-sell the customers that you have"—with cross-selling similarly being dependent on customer retention— "and gain new customers."

68

**Answer**: The allegations in Paragraph 69 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript from Vestis's September 13, 2023 Analyst Day.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 69.

70.    Additionally, Defendant Dillon announced that Vestis was able to increase prices as needed because of its strong customer retention, assuring investors that "<u>we will take price</u>" and "we will price different going forward."  To provide extra assurance, Dillon emphasized how Vestis had already "<u>demonstrated [its] ability to take price and pass through inflation</u>."

**Answer**: The allegations in Paragraph 70 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's September 13, 2023 Analyst Day.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore

the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 70.

71. Analysts were highly encouraged by Vestis' Analyst Day, and in particular noted how the Company's "logistics muscle" and "data-driven" systems had set the Company up for success. For example, an October 16, 2023 J.P. Morgan report stated that it was "encouraged by the company's recent business improvements under a new Vestis management team," and found management's plans "for driving growth-oriented operational improvements to be detailed, data-driven, and supported by recent concrete proof points and action items around each retention, cross-sell, and new account wins." A November 21, 2023 Jefferies report similarly lauded that "management has spent the last two years building its logistics muscle (CEO Kim Scott's specialty) to drive more efficiency gains." The report also celebrated Vestis' implementation of ABS as being key to improving customer retention, as "improving the overall customer experience is paramount" and ABS would "improve the customer experience by providing a higher quality of services through a better understanding of customer needs / behaviors."

**Answer**: The allegations in the first sentence of Paragraph 71 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript

70

from Vestis's September 13, 2023 Analyst Day. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 71.

The remaining allegations in Paragraph 71 appear to quote from and/or characterize selected excerpts from a J.P. Morgan analyst report dated October 16, 2023 and a Jeffries analyst report dated November 21, 2023. The full documents speak for themselves and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit that the allegations quote excerpts from the documents, but otherwise lack knowledge and deny all remaining allegations on that basis.

### D. Post-Spin, Defendants Repeatedly Tout Vestis' "Service Excellence" That Purportedly "Continue[d] To Deliver Retention Rates That Are Above 90%"

72. The Spinoff was accomplished on Saturday, September 30, 2023, and Vestis began regular trading on October 2, 2023 at a price of $19.20 per share. As prescribed by the Spinoff terms with Aramark, Vestis entered into financing with

lenders to the tune of $1.8 billion in order to fund the nearly $1.5 billion in cash that was due to Aramark under the terms of the Spinoff.

**Answer**: Aramark Defendants admit that the Spin was completed on September 30, 2023, and Vestis common stock began trading on October 2, 2023 at a price of $19.20 per share.

While Aramark Defendants admit that Aramark received approximately $1.457 billion from Vestis through the Spin, they deny Lead Plaintiffs' characterizations of this transaction, which misleadingly suggest that Aramark Defendants received a windfall when, in reality, Vestis simply paid Aramark its proportionate share of pre-Spin company debt, as is the case in most spin-off transactions.

Aramark Defendants also admit that Vestis entered into senior secured financing with a syndicate of banks, financial institutions and/or other institutional lenders, with JPMorgan Chase Bank, N.A. acting as the administrative agent and the collateral agent, in an aggregate amount of $1,800 million, consisting of the Term Loan Facilities and the Revolving Credit Facility.

73.    Significantly, even after Vestis became a separate, independent entity, Defendants Scott and Dillon continued to make the same false statements touting Vestis' customer retention, the investments that Aramark had made in the Company, and Vestis' supposed service excellence that Defendants had purportedly

successfully accomplished in the years prior to the Spinoff.

**Answer**: No response is required as to the allegations in Paragraph 73 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 73.

74.    For example, during the Company's November 29, 2023 earnings call, Defendants proclaimed that, given Vestis' "efficient operations," "we are well positioned to deliver healthy revenue growth and margin expansion" that was "already within the long-term target range that we provided at Analyst Day." Defendants also again stressed that Vestis had successfully maintained a customer retention rate that exceeded the critical threshold of 90%, with Scott proudly reporting that Vestis "continue[d] to deliver retention rates that are above 90%," just as Defendants had "stated in our Form 10." Scott thus assured investors that there were no issues with customers leaving Vestis—in fact, rather than any dissatisfied clients, Defendants claimed Vestis was "seeing really, really great feedback from our customers," such that "we feel very, very good about the establishment of a service excellence culture across the company." Scott also reminded investors that Vestis' "national account customers" in particular remained highly loyal and were a vital part of Vestis' business, as they "stay more than 20 years with us. So they're very valuable customers and the lifetime value is great."

**Answer**: The allegations in Paragraph 74 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Fiscal Fourth Quarter and Full Year 2023 Earnings Conference Call held on November 29, 2023. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 74.

The allegations in Paragraph 74 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74, and on that basis deny those allegations.

75. In light of the Company's purported strong positioning for future growth, including its excellent operations and strong customer retention, Defendants also announced during the call that they were "pleased to share our outlook for fiscal year 2024, a revenue growth rate of 4% to 4.5%" (when normalized for a temporary energy fee, a 5% to 5.5% rate), "which is well above our historical norms of approximately 2%." Scott confirmed that the projected 4% to 4.5% of revenue

74

growth was based on Vestis' results to date, as the Company was "<u>seeing great results well above our historical norms</u>."

**Answer**: The allegations in Paragraph 75 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Fiscal Fourth Quarter and Full Year 2023 Earnings Conference Call held on November 29, 2023. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 75.

The allegations in Paragraph 75 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of such allegations in Paragraph 75, and on that basis deny those allegations.

76. Moreover, when analysts raised questions about the performance of the Company's business, Defendants emphatically denied there were any issues. For example, when Defendants were again directly asked why the uniform business' revenue continued to be flat and not grow commensurate with Defendants' glowing

statements about their successful growth initiatives, Defendant Scott again claimed this was because of Vestis' "purposeful" efforts to strategically and intentionally "exit[] some businesses" that did not fit with its business. Specifically, as she did at Analyst Day, Scott assured investors that "[w]e are just purposely at times exiting some business . . . So I would expect you should see a muted uniforms growth rate again in FY '24, but that is a very purposeful decision to grow very strategically under high-quality verticals and exiting some underperforming businesses."

**Answer**: The allegations in Paragraph 76 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Fiscal Fourth Quarter and Full Year 2023 Earnings Conference Call held on November 29, 2023. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 76.

The allegations in Paragraph 76 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.

76

Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76, and on that basis deny those allegations.

77.     Defendants' messaging worked. On November 29, 2023, Baird analysts reported that "[g]uidance matters most, and it looked good," and "VSTS isn't seeing elevated customer churn." Jefferies' November 30, 2023 report was pleased with the Company's "first quarter out as a public company" calling it a "strong" "good start," and reiterating their Buy rating. The Jefferies analysts added, "[o]ur sense is management set conservative guidance on revenue growth" and "we have confidence they are taking the right actions to achieve the organic growth and margin targets outlined at their analyst day." J.P. Morgan reported, "[o]ver the last two-plus years, Vestis' new leadership team has been building out credible proof points that the firm's growth transformation is progressing well." A January 11, 2024 Wolfe research report stated that it was "pleased to see that management completed its ABS system integration," which "we view as an encouraging sign of management's ability to deliver on its promise."

**Answer**: The allegations in Paragraph 77 appear to selectively quote from and/or mischaracterize selected excerpts from a Baird analyst report dated November 29, 2023, a Jeffries analyst report dated November 30, 2023, a J.P. Morgan analyst report dated November 30, 2023, and a Wolfe Research analyst report dated January 11, 2024. These excerpts are presented in a manner that distorts

their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials. The full documents speak for themselves and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 77.

The allegations in Paragraph 77 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77, and on that basis deny those allegations.

78.    On the backs of these representations, Vestis' stock price surged by 16%, from $19.20 per share when the Company first began publicly trading to a Class Period high of $22.30 per share on February 6, 2024.

**Answer**: Aramark Defendants admit that Vestis's stock price opened at $19.20 per share on October 2, 2023, and that its stock price was trading at $22.30 per share at the close of February 6, 2024.

Aramark Defendants deny any remaining allegations in Paragraph 78.

E.    **Defendants Report Disappointing Results But Maintain Full-year Guidance, "Comfort[ing]" Investors That Vestis Would Be "Taking Price," With Scott "Assur[ng]" There Were "No Concerns"**

79. Defendants' scheme began to unravel before markets opened on February 7, 2024. First, on the evening of February 6, 2024, the Company announced that its COO Chris Synek ("Synek") had suddenly resigned for "personal reasons," effective immediately. Synek had been appointed COO on September 11, 2023—mere days before Vestis held its Analyst Day prior to the Spinoff—and had been with the Company for only five months.

**Answer**: Aramark Defendants deny the allegations in the first sentence of Paragraph 79.

Aramark Defendants admit that on February 6, 2024, Vestis disclosed that COO Chris Synek resigned on February 6, 2024 for personal reasons, effective immediately.

Aramark Defendants also admit that Synek's appointment as AUS COO was effective on September 11, 2023.

Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from the allegations in Paragraph 79.

80. Second, before trading commenced on February 7, 2024, Vestis issued a press release disclosing disappointing results for Q1 2024 (which ended December 31, 2023)—Vestis' first full quarter as a standalone entity—including revenue growth of just 2.5%, a far cry from the projected 2024 revenue growth of 4 to 4.5%. Despite this underperformance, the press release made clear that Vestis "reaffirm[ed]

<u>Fiscal 2024 guidance</u>" and therefore purportedly still "<u>expect[ed] to deliver revenue growth in the range of 4.0 to 4.5%</u>" for the year.

**Answer**: Aramark Defendants admit that Vestis issued a press release on February 7, 2024 reporting its Q1 2024 results for the quarter ended December 29, 2023, including revenue of $718 million increased 2.5% year-over-year.

The remaining allegations in Paragraph 80 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's February 7, 2024 press release reporting its Q1 2024 results. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 80.

The allegations in Paragraph 80 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80, and on that basis deny those allegations.

81.    On the earnings call held that day, Scott sought to quash investor

80

concerns by explaining that the revenue miss had nothing to do with Vestis' operations or customer retention, but was instead purportedly a result of economic factors completely outside of the Company's control. Indeed, Scott claimed that Vestis had seen a "trend" of "small to medium enterprise customers with an uptick in business closures," and that this was the reason for the revenue shortfall.

**Answer**: The allegations in Paragraph 81 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q1 2024 earnings call held on February 7, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 81.

The allegations in Paragraph 81 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81, and on that basis deny those allegations.

82. To underscore this point, Defendant Scott strongly assured investors

81

that she had personally "monitor[ed] [customer departures] very closely" and had undertaken extensive efforts to "go[] pretty deep and granular to understand what are those patterns and trends around why customers leave"—including the close evaluation of "reason codes," or internally-applied codes that denoted the reason for each customer departure.  According to Scott, her detailed analysis had confirmed that the reason for customer departures was that there was "a slight uptick in customers going out of business in all those medium and enterprise verticals."  When an analyst directly asked Scott why the uniforms business in particular had growth "com[ing] in a bit below" Vestis' competitors, Scott responded by stating that the Company had been "very transparent" that it was due to "an uptick in business closures as it relates to our SMEs" that "ha[d] an effect on the number as it relates to the impact of retention on the Uniforms number."  Thus, according to Scott, the shortfall was not attributable to any problems with the Company's operations, but to Vestis' clients' own bad business results.

**Answer**: The allegations in Paragraph 82 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q1 2024 earnings call held on February 7, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response.

82

To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 82.

The allegations in Paragraph 82 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82, and on that basis deny those allegations.

83.    Notably, Scott revealed for the first time that, contrary to her prior statements about Vestis' loss of certain customers being "purposeful" and "very intentional," Vestis had in fact suffered what she now called an "unfortunate loss" of a "national account" prior to the Spinoff. Specifically, Scott explained that an "unfortunate loss from [Vestis'] Clean Room business" had occurred "last year," and the loss was so significant that it had "continue[d] to flow through" the Company's revenue streams in 2024. Remarkably, in making this disclosure, Scott starkly admitted that the Company had deliberately concealed this loss despite its obvious materiality to investors. Specifically, Scott confessed that Defendants "ha[dn]'t talked about [this loss] a lot because it wasn't a strategic loss" and that it was "regrettable":

> And then we also have a national account loss, but <u>we haven't talked about it</u> <u>a lot because it wasn't a strategic loss</u>. It was an unfortunate

loss from our Clean Room business last year, and it was a loss that continues to flow through in the first 2 quarters of this year, which also affects that Uniforms number. And again, <u>we haven't talked about it a lot because it's a regrettable loss, It</u> <u>wasn't part of our strategy</u> . . .

**Answer**: The allegations in Paragraph 83 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q1 2024 earnings call held on February 7, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 83.

The allegations in Paragraph 83 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83, and on that basis deny those allegations.

84. Significantly, however, Scott did not reveal that the Company had in fact lost not one, but <u>two</u> major national accounts prior to the Spinoff—and also falsely assured investors that this loss was not representative of any service issues at Vestis, but just "<u>the nature of doing business</u>." As Scott stated, "while we regret

losses like that, <u>the underlying health of the business is tracking exactly like we want it to track</u> . . . <u>So we feel very good about the underlying health of the business despite some of those factors that are muting [the] Uniforms growth rate</u>.”

**Answer**: The allegations in Paragraph 84 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q1 2024 earnings call held on February 7, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 84.

The allegations in Paragraph 84 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84, and on that basis deny those allegations.

85.    Scott also sought to quell analysts' uneasiness about COO Synek's sudden departure.  Indeed, Scott "reassur[ed] everyone that [Synek's] departure does not impact our strategy or our ability to deliver against our strategy," and emphasized

that Vestis' strategic plan "<u>ha[d] been in motion for a very long time, for the 2.5 or</u> <u>2-plus years that I've been here</u>," so "<u>we feel really confident that we will continue</u> <u>down the path that we are down</u>."  Scott also reminded investors that the team was "essentially reporting to [her] before [Vestis] created the COO role," that she "was an operator" who had previously "been a COO," and that the team is "back reporting to me" just as they had been for the "2-plus years that [she had] been [t]here."

**Answer**: The allegations in Paragraph 85 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q1 2024 earnings call held on February 7, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 85.

The allegations in Paragraph 85 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85, and on that basis deny those allegations.

86

86.    To reassure investors that Vestis would achieve its reaffirmed revenue guidance despite these setbacks, Defendants also announced that they would implement off-cycle price increases that would allow Vestis to "take price" in the second half of the year. Specifically, Scott explained that Vestis had "been surgically analyzing opportunities to take price more strategically," and confirmed that that "we will be taking price around certain specific kind of product lines" with certain customers, in addition to "tak[ing] some more general pricing" in the near future. Dillon similarly confirmed there were "opportunities for surgical pricing," and that the Company was "really just capitalizing on [them]."

**Answer**: The allegations in Paragraph 86 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q1 2024 earnings call held on February 7, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 86.

The allegations in Paragraph 86 address conduct or events occurring after the

Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86, and on that basis deny those allegations.

87.    In addition, Scott specifically reassured investors that these pricing actions were not necessary to reach Vestis' guidance.  Rather, they were purportedly just "additional comfort to give [investors] confidence" that the Company would achieve its growth guidance—"the same confidence we have that we're going to ramp up the growth rates in the back half of the year, and deliver against the 4% to 4.5%" due to the Company's main growth initiatives.

**Answer**: The allegations in Paragraph 87 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q1 2024 earnings call held on February 7, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 87.

The allegations in Paragraph 87 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87, and on that basis deny those allegations.

88.    Significantly, Defendants again emphasized that Vestis had already implemented and was utilizing all of the necessary systems and processes to ensure accurate, on-time deliveries and excellent customer service. In particular, Defendants again highlighted the fact that the Company had successfully implemented, and was using, Telematics to ensure correct, on-time deliveries. Indeed, in the Company's 2023 Form 10-K (filed on December 21, 2023), Defendants touted Vestis' use of "our new telematics technology" just as they had in the Information Statement, stating: "We seek to increase route efficiency with technology and processes that reduce travel time, distance and fuel consumption. For example, our new telematics technology allows us to proactively reduce fuel usage by limiting idling through real-time, in-cab driver alerts."

**Answer**: The allegations in Paragraph 88 appear to selectively quote from and/or mischaracterize selected excerpts from the Vestis's 2023 Form 10-K filed on December 21, 2023. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for

89

itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 88.

The allegations in Paragraph 88 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88, and on that basis deny those allegations.

89.     Now during the February 7, 2024 call, Defendants amplified and further detailed their extensive use of Telematics. Indeed, Defendant Scott proclaimed that, "[y]ear-to-date," Vestis had "successfully deployed new [T]elematics technology across 89% of our fleet and fully deploy[ed] new routing and scheduling technology and processes across North America," which was "all a part of our strategy to establish the capability to continuously optimize our network and our routes." Defendant Scott further emphasized that the Company's use of Telematics would "ensure that we're running routes in compliance with how we'd like to do that." Furthermore, Defendants touted that Vestis had successfully flexed its "logistics muscle," as it had "already completed" multiple "network optimization events," delivering a "step change improvement in the way we operate." And in terms of

90

sales, Scott reported that Vestis was "<u>seeing really good progress with our frontline account executives, driving revenue per head</u>."

**Answer**: The remaining allegations in Paragraph 89 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q1 2024 earnings call held on February 7, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 89.

The allegations in Paragraph 89 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89, and on that basis deny those allegations.

90.    Defendants further took pains during the February 7 call to make crystal clear that the Company's customer retention rate remained strong by highlighting again that it had consistently been and continued to be "greater than 90%." For example, when an analyst directly asked Defendant Scott if she could "please

91

comment on retention, the trends and the drivers, whether it's service quality, the predictive analytics, the digital tools"—and "what reasons for attrition would be"—Scott responded by strongly averring that the Company's retention rate remained consistently high.  Indeed, despite having just disclosed the loss of one national account, Scott strongly assured investors that Vestis' had maintained a retention rate "<u>greater than 90%</u>," just as had been "filed in the Form 10."  Thus, the Company had not suffered any massive customer churn and there were "<u>no real surprises as it relates to retention and where we expected to be</u>."

**Answer**: The allegations in Paragraph 90 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q1 2024 earnings call held on February 7, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 90.

The allegations in Paragraph 90 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.

Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90, and on that basis deny those allegations.

91.     Despite Defendants' rosy picture, Vestis' stock price fell approximately 13% following these disclosures, from the Class Period high of $22.30 per share on February 6, 2024, to close at $19.42 on February 7, 2024.  Analysts at Baird reported "[s]hares were off materially with today's earnings on concerns over revenue guidance achievement and implications from its newly hired COO abruptly leaving" and explained that the revenue "shortfall" was "one of the primary reasons for the selloff."  A J.P. Morgan report commented that "moving pieces in the F2024 revenue guide" and "the COO departure" explained "why the VSTS stock fell" and Wells Fargo similarly found that "[g]iven his experience (Cintas, etc.), we view the [COO] loss as a negative."  Barclays pointed to "the new commentary around a lost clean room national account that wasn't a strategic exit" to explain the drop.

**Answer**: Aramark Defendants admit that Vestis's stock was trading at $22.30 per share at the close of February 6, 2024 and $19.42 at the close of February 7, 2024.  Aramark Defendants deny any other allegations in the first sentence of Paragraph 91.

The remaining allegations in Paragraph 91 appear to quote from and/or characterize selected excerpts from a Baird Equity Research analyst report dated February 7, 2024, a J.P. Morgan analyst report dated  February 7, 2024, and a

Barclays analyst report dated February 7, 2024, albeit with the noted alterations. The full documents speak for themselves and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit that the allegations quote excerpts from the documents, but otherwise deny all allegations.

The allegations in Paragraph 91 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91, and on that basis deny those allegations.

92.    Defendants' reassurances, however, prevented an even more significant decline in the stock price. Indeed, Jefferies "contend[ed] there was nothing out of today's print that calls into question our thesis that VSTS should achieve its revenue growth target," and "expect[ed] revenue growth to accelerate in the 2H24 given surgical price actions and company specific initiatives." Jefferies also believed that "Real Change Is Happening" and "the right investment and actions have been put into place and the success can be witnessed this year." J.P. Morgan commented that "the Vestis client base is healthy overall," and Wolfe Research reiterated its outperform rating given that Vestis had "limited contract renewal disruption." Wells Fargo similarly highlighted that Vestis' "[r]etention [was] stable" at 90%, and was impressed with the Company's "deploying [T]elematics across 89% of its fleet and fully deploying new route/scheduling tech as it continues logistics optimization.

**Answer**: The allegations in Paragraph 92 appear to quote from and/or characterize selected excerpts from a Jeffries analyst report dated February 7, 2024, a J.P. Morgan analyst report dated  February 7, 2024, a Wolfe Research analyst report dated February 8, 2024, and a Wells Fargo analyst report dated February 7, 2024, albeit with the noted alterations.  The full documents speak for themselves and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit that the allegations quote excerpts from the documents, but otherwise deny any characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 92.

The allegations in Paragraph 92 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92, and on that basis deny those allegations.

F.    **The Truth Is Fully Revealed: Defendants Make A Host Of Shocking Admissions, Including Massive Customer Losses Even Before The Spinoff Due To Vestis' Inadequate Service And Systems**

93.    On the morning of May 2, 2024, Vestis shocked the market by disclosing terrible financial results for the second quarter of 2024 that were far below analysts' quarterly revenue consensus of $718 million, including revenue of $705 million—a mere 0.9% year-over-year increase—and an Adjusted EBITDA margin of just 12.4%.  Given these poor results, Defendants announced that instead of

anticipating 4% to 4.5% revenue growth for the year as they had consistently touted to investors, the Company would come nowhere near that amount and now expected its business to shrink, with "growth" in the range of negative 1% to 0%.

**Answer**: Aramark Defendants admit that Vestis reported its second quarter 2024 results in a press release on May 2, 2024, and that these results included revenue of $705 million increased 0.9% year-over-year, and an adjusted EBITDA of $87 million, or 12.4% of revenue.  The press release also disclosed that Vestis expected to deliver fiscal 2024 revenue growth in the range of (1)% to 0%.

The allegations in the second sentence of Paragraph 93 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's press release dated May 2, 2024, reporting its second quarter 2024 results.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 93.

The allegations in Paragraph 93 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.

96

Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93, and on that basis deny those allegations.

94.    On the ensuing earnings call, Defendants made a series of extraordinary admissions that directly contradicted their prior statements, including that: (i) despite Defendants' claims that they had implemented numerous systems to ensure Vestis provided on-time and accurate delivery of its products, Vestis did not even "have a process to verify that the truck has been loaded accurately and that all of the product that needs to go to our customer is, in fact, being delivered to our customer"; (ii) Defendants had not "successfully deployed" Telematics across Vestis' fleet at all, as they were only "expecting" to be able to "begin" using the technology at some undetermined point in the future; (iii) as a result, Vestis was plagued by severe "service gaps" that rendered it unable to adequately provide the most basic services expected of a uniforms services company—*i.e.*, correct and on-time deliveries— which directly led to a "large amount" of lost customers; (iv) the majority of these customer losses had occurred before the Spinoff, and included two major national account customers representing a significant portion of Vestis' revenue; (v) given this customer exodus, prior to the Spinoff, Vestis' customer retention rate had fallen materially below the 90% mark that Defendants had repeatedly boasted it was "in excess of"; (vi) given these service issues, Vestis was unable to increase pricing and had instead resorted to significant discounting to retain customers; and (vii)

97

Defendants had known about these service and retention issues long before the Spinoff, but concealed this highly material information throughout the Class Period.

**Answer**: The allegations in Paragraph 94 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 94.

The allegations in Paragraph 94 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94, and on that basis deny those allegations.

95.    First, contrary to Defendants' statements touting that they had "fully deploy[ed] new routing and scheduling technology and processes across North America" to ensure on-time, accurate deliveries, Defendants now acknowledged on the May 2, 2024 earnings call that the exact opposite was true. Indeed, emblematic

of Vestis' abject failure in this regard, Defendant Scott explicitly admitted that Vestis did not even "have a process to verify that the truck has been loaded accurately and that all of the product that needs to go to our customer is, in fact, being delivered to our customer." Scott went on to further disclose that "we [were] not tight on our processes as it relates to disciplined loading of trucks, delivering on time, delivering full loads" and thus Vestis needed to "do a better job on being on time, being complete, being fully loaded and putting metrics around that, so that we can ensure that we're delivering consistently the expectations that our customers have for us."

**Answer**: The allegations in Paragraph 95 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call held on February 7, 2024 and the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials. The full documents speak for themselves and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 95.

The allegations in Paragraph 95 address conduct or events occurring after the

Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95, and on that basis deny those allegations.

96.     Second, and directly contradicting Defendants' claim from just three months prior that Vestis had "successfully deployed new [T]elematics technology across 89% of our fleet," Defendant Scott now admitted that no such thing had ever occurred.  Specifically, Scott conceded that despite Telematics being the most basic, "very normal thing that you would have in a B2B [business-to-business] route-based business" to ensure correct, on-time delivery, at the time that Scott "c[a]me into this business" two years earlier, Defendants "did not have [T]elematics in our fleet" and "we were not using [T]elematics to make sure that we are delivering to customers on time and also that we are following routing efficiencies."  Remarkably, Scott made crystal clear that, despite her prior statements to the contrary and the fact that over two years had passed since she joined Vestis, Telematics was still not operational at the Company and Defendants were not in fact utilizing the technology to ensure accurate, on-time deliveries.  Indeed, Scott admitted that Defendants were only "expect[ing]"—at some point in the future—to be able to "begin to use those insights and that data from [T]elematics to shore this up and to make sure that we're delivering on time and that we're where we should be, when we should be":

> And so as I come into the business and evaluate how we're measuring service efficacy, I found it very odd that we did not have [T]elematics

100

<u>in our fleet.  That's a very normal thing that you would have in a B2B route-based business.  But we were not using [T]elematics to make sure that we are delivering to customers on time</u> and also that we are following routing efficiencies.  So we've put that [T]elematics in our trucks, and we expect very quickly that we'll begin to use those insights and that data from [T]elematics to shore this up and to make sure that we're delivering on time and that we're where we should be, when we should be.

**Answer**: The allegations in Paragraph 96 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call held on February 7, 2024 and the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials.  The full documents speak for themselves and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 96.

The allegations in Paragraph 96 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96, and on that basis deny those allegations.

97.    Third, while Defendants had claimed the prior quarter that they had

gone "deep and granular" to determine that Vestis' revenue shortfall and customer losses were not attributable to any service issues at the Company, Defendants now admitted the opposite: Vestis' severe "service gaps" had caused customers to leave the Company in droves. Indeed, according to Defendant Scott, the "root causes" of why "customers [are] choosing to leave Vestis" were due to "service experiences related to our procedures" that were specifically "related to how we are delivering the load on time and incomplete loads." Thus, Scott was forced to concede that Vestis' poor results were not due to an external "uptick in business closures" that was beyond Defendants' control. To the contrary, Scott confirmed: "we know that more than 70% of cancellations [were] due to causes that are within our control."

**Answer**: The allegations in Paragraph 97 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call held on February 7, 2024 and the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials. The full documents speak for themselves and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials. Aramark Defendants deny the

characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 97.

The allegations in Paragraph 97 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 97, and on that basis deny those allegations.

98.     Fourth, Defendants shocked investors by admitting that the critical customer losses that materially affected Vestis' business occurred before the Spinoff was complete.  Indeed, Defendants admitted during the call that the principal reason for Vestis' poor results was a "large amount of rollover losses from FY 2023," including the loss of two large national account customers, all of which materially impacted Vestis in the current fiscal year.  Significantly, Defendant Dillon expressly acknowledged that "[c]ustomer losses reduced second quarter revenues by 9% year-over-year, more than offsetting our new business growth," and that no less than two-thirds of that lost revenue, or $40.8 million, was attributable to customer losses that Defendants knew about, but failed to disclose to investors, at the time of the Spinoff. In fact, Dillon explicitly acknowledged that 6% of the 9% in lost revenue came from what he called "known customer losses as we exited fiscal 2023"—i.e., pre-Spinoff—"and 3% from customer losses during this fiscal year"—i.e., during the Class Period.     Moreover, Dillon further admitted that Vestis was still

103

"currently absorbing [the] losses incurred in FY 23."

**Answer**: The allegations in Paragraph 98 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call held on February 7, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 98.

The allegations in Paragraph 98 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98, and on that basis deny those allegations.

99.   Fifth, during the fourth quarter of 2023—*i.e.*, the last quarter before the Spinoff—Vestis' abysmal service issues had led to an enormous exodus of customers, and the Company experienced a sharp drop-off in its vaunted customer retention rate. Specifically, while Defendants had repeatedly boasted that Vestis had consistently maintained a customer retention rate "in excess of 90%," Defendants

104

were now forced to admit that the Company's customer retention rate in Q4 2023—

*i.e.*, the last quarter before the Spinoff—had fallen to only 85%, a highly material

decline far below the 90% threshold and the Company's top competitors' typical

retention rate of over 95%:



**RECURRING REVENUE CUSTOMER RETENTION**

| 1Q23 | 2Q23 | 3Q23 | 4Q23 |
|------|------|------|------|
| 94.3% | 90.3% | 91.3% | 85.8% |

**Answer**: Aramark Defendants deny the allegations in the first sentence of

Paragraph 99.

The allegations in the second sentence of Paragraph 99 appear to selectively

quote from and/or mischaracterize selected excerpts from Vestis's Information

Statement, filed as Exhibit 99.1 to a Form 8-K on September 11, 2023. These

excerpts are presented in a manner that distorts their original meaning, omits critical

context, and includes notable alterations that further misrepresent the substance of

the source material. The full document speaks for itself and therefore the allegations

do not require a response. To the extent a response is required, Aramark Defendants

admit only that the allegations contain cherry-picked phrases from the source material.   Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 99.

100.   Sixth, while Defendants had previously assured the market that they would "take price" in the second quarter—and stated that this effort was simply to give investors extra "comfort" and was not at all important to Vestis achieving its guidance—in truth, the Company's service was so deficient that Defendants could not increase pricing at all, but had to resort to dramatic discounting in order to stem even greater customer losses.   As Defendants admitted, Vestis had "deliberately moderated" pricing because "service efficacy and price sensitivity go hand-in-hand"—such that Vestis' severe "service gaps ha[d] driven price sensitivity, as fully satisfied customers typically don't leave because they've received a price increase." Thus, as Scott admitted, Vestis had been forced to significantly reduce pricing just to keep current customers on board, as "the need to enhance our service . . . resulted in pricing and volume erosion during the renewal process."

**Answer**: The allegations in Paragraph 100 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call held on February 7, 2024, and the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further

misrepresent the substance of the source materials.  The full documents speak for themselves and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 100.

The allegations in Paragraph 100 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100, and on that basis deny those allegations.

101.    Seventh, Defendants starkly admitted that throughout the Class Period, they had been fully aware of these significant issues in Vestis' business, which had been prevalent "for quite some time."  Specifically, during the call, analysts were incredulous that Defendants had not disclosed these severe service and customer retention issues earlier given that Defendants Scott and Dillon had overseen the legacy AUS business at Aramark for years prior to the Spinoff.  Significantly, in response, Scott admitted: "these challenges have been in our business for quite some time" and were "not related to the spin [] I'll be clear about that."  Scott further made clear that these deficiencies were very well known and "ha[d] persisted in this

107

business for some time," and that the Company was losing customers due to "<u>very specific delivery matters related to on time delivery</u>" and "<u>shortages on loads</u>." Similarly, Defendant Dillon confirmed that, throughout the Class Period, Defendants were aware that these issues significantly impacted the Company's ability to retain its customers, stating that they "<u>knew the impact coming in of the lower retention rate</u>."

**Answer**: The allegations in Paragraph 101 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 101.

The allegations in Paragraph 101 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a

belief as to the truth of the allegations in Paragraph 101, and on that basis deny those allegations.

### G. The Market Excoriates Defendants For Their Material Misrepresentations And "Troubling" Lack Of Credibility

102. In direct response to Defendants' stark admissions, Vestis' share price plummeted in half, from a closing price of $18.47 per share on May 1, 2024, to a closing price of just $9.41 per share on May 3, 2024—representing an over $1 billion decline in market capitalization on extraordinarily high trading volume.

**Answer**: Aramark Defendants admit that Vestis's stock price was $18.47 per share at the close of May 1, 2024, and $9.41 per share at the close of May 3, 2024.

Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 102, and on that basis deny those allegations.

103. Analysts were utterly stunned at Defendants' revelations, excoriating management for not revealing these severe service and customer retention issues earlier, with numerous analysts concluding that management's credibility had been crushed given their failure to disclose highly material information to the market.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 103, and on that basis deny those allegations.

104. For example, Jefferies made clear that Defendants had misrepresented

the true state of Vestis' business during the Class Period, specifically noting that the Company's senior management had failed to disclose highly material information to investors, as "<u>this [was] the first time customer retention and service issues were made apparent publicly</u>"—and that as a result, there was now "**a significant mgmt. credibility issue**" (emphasis in original):

> **<u>More troubling, mgmt. never fully disclosed the fall off in retention on recurring revenue it started experiencing 2H23 or the true</u> <u>magnitude of customer losses to be expected and overcome in FY24</u> (we had modeled ~MSD % customer losses, not 9%+). For a newly public company, there is now a significant mgmt. credibility issue and the tone yesterday lacked a mea culpa, In our opinion.**

**Answer**: The allegations in Paragraph 104 appear to selectively quote from and/or mischaracterize selected excerpts from a Jeffries analyst report dated May 3, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 104.

The allegations in Paragraph 104 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a

110

belief as to the truth of the allegations in Paragraph 104, and on that basis deny those allegations.

105.    Jefferies further highlighted Vestis executives' "<u>change in tone [] in the last 90 days</u>. . .  including in the short period of time an erosion in national account business and now a reversal in pricing capabilities."

**Answer**: The allegations in Paragraph 105 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 105.

The allegations in Paragraph 105 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 105, and on that basis deny those allegations.

106.   Other analysts corroborated Jefferies, similarly noting that Defendants had failed to disclose the severe service and customer retention issues that were plaguing the Company.  For example, Wolfe Research emphasized that they were "surprised by the sudden [guidance] cut," while particularly highlighting the fact that Vestis' "service shortfalls were not discussed during the Company's previous analyst day," and the Company had just "provided its original FY24 guidance last quarter." Baird also declared that the Company's "baseline earnings reset" involved "structural issues which take time to fix"; that Vestis' management's "credibility [was] low" given the "depths of the challenges inside VSTS [that] were born out on the call"; and that Vestis had to "clear the decks and earn back credibility."

**Answer**: The allegations in Paragraph 106 appear to selectively quote from and/or mischaracterize selected excerpts from a Wolfe Research analyst report dated May 3, 2024 and a Baird Equity Research analyst report dated May 2, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials.  The full documents speak for themselves and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials.  Aramark Defendants deny the characterizations and inferences Plaintiffs seek to draw from these phrases in Paragraph 106.

112

The allegations in Paragraph 106 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 106, and on that basis deny those allegations.

107. Analysts were also incredulous as to how Defendants could possibly have been unaware of these longstanding and severe service issues considering the fact that Defendant Scott had been hired a full two years before the Spinoff for the purpose of preparing Vestis to be successful as an independent entity. For example, Barclays noted: "[Y]ou were at the company for almost 2 years, while under Aramark. You guys presumably did all this work going through IR Day and your confidence the last 2 quarters was pretty solid as well." Thus, Barclays wondered in disbelief how there could be "this big of a revision," "in the last 90 days or 60 days or whatever," since Defendants last spoke to the market. As Wolfe Research bluntly put it: "why haven't you guys caught this before the separation?"

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 107, and on that basis deny those allegations.

The allegations in Paragraph 107 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q2 2024 earnings

113

call held on May 2, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 107.

108.  Moreover, multiple analysts specifically called out the fact that Defendants' admissions completely contradicted Defendants' earlier representations, including as recently as the prior quarter.  For example, Goldman Sachs emphasized how "the revenue guide that you issued just a quarter ago was brought down quite a significant amount."  J.P. Morgan pointed out that "[a]s you articulated, your plan had been just a couple of months ago for a targeted in-year price increase and then you pivoted to a price decrease."

**Answer**: The allegations in Paragraph 108 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full

document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 108.

The allegations in Paragraph 108 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108, and on that basis deny those allegations.

**H.    Scores Of Former Employees Confirm Vestis' Longstanding Service Issues And Poor Customer Retention That Continued Throughout the Class Period**

109. Lead Plaintiffs' investigation included interviews with 17 former employees[2] of Aramark, Vestis, or both entities. The former employees spanned every level of the Company—including former Vice Presidents, General Managers, and Account Executives—and came from multiple locations throughout the United States. The investigation also included former employees from the Company's main competitor, Cintas. These former employees uniformly confirmed that both

---

[2] Former employees are referred to herein as "FE#" and are all referenced using masculine pronouns to maintain their confidentiality.

Aramark and Vestis had longstanding, well-known problems with servicing and retaining customers due to a myriad of issues, which Defendants hid from investors.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 109, and on that basis deny those allegations. Aramark Defendants also deny the substantive allegations regarding Aramark Defendants attributed to the former employees in Paragraph 109.

110. Significantly, these high-level former employees confirmed that, both before and during the Class Period, Vestis had: (i) suffered immense customer losses prior to and throughout the Class Period; (ii) had a reputation for providing poor services, such as late and incorrect deliveries; (iii) routinely delivered poor quality products to its customers; (iv) had old, outdated cleaning facilities and plants that were unable to process the amount of items needed to be cleaned; and (v) did not respond to customer complaints about any of these issues.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 110, and on that basis deny those allegations. Aramark Defendants also deny the substantive allegations regarding Aramark Defendants attributed to the former employees in Paragraph 110.

### 1.  Former Employees Confirmed That Vestis Lost Significant Customers Before the Spinoff due to Poor Service And Unsupportable Price Increases

111. Numerous former employees confirmed that, both prior to and after the

116

Spinoff, customers left Vestis in droves because of the Company's abysmally sub-par service.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 111, and on that basis deny those allegations. Aramark Defendants also deny the substantive allegations regarding Aramark Defendants attributed to the former employees in Paragraph 111.

112. For example, FE 1[3], a former Vice President of Operations at AUS until 2022 who then served as a consultant for the President of AUS from 2022 until May 2023, stated that before the Spinoff in 2023, he saw internal reports on a global scale that showed Aramark was experiencing serious retention issues within the uniform business, commenting that "[customer] losses there during my time consulting certainly outweighed the gains." With access to certain retention reports for the entire country, FE 1 could clearly "see the bleeding of the customers and the type of customers and businesses that were being lost versus the businesses that the sales teams were signing up." Indeed, FE 1 recalled how a "giant" and long-term customer, Pape Material Handling, left Aramark for a competitor, Cintas, just

---

[3] FE 1 was first interviewed by AlphaSense Expert Insights on December 8, 2023, and his interview was published on the AlphaSense platform on December 14, 2023. AlphaSense is a prominent, subscription-based professional market intelligence platform used principally by hedge funds, market research firms and financial institutions that provides, among other things, exclusive access to a proprietary database of one-on-one interviews with experts and former employees of publicly traded companies across various industries.

before the Spinoff due to "repetitive failures," noting that Vestis "losing large industrial customers has continued."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced meets the description or made the statements quoted in Paragraph 112, and deny the allegations on that basis. Aramark Defendants also deny the substantive allegations regarding Aramark Defendants attributed to this former employee in Paragraph 112.

113. Significantly, FE 1 emphasized that these customer departures were hugely significant to Vestis' business, as customer retention levels were absolutely critical for a uniforms services company like Vestis that was dependent on a recurring revenue model. Specifically, FE 1 stated that if retention rates fell below 90%, it was considered to be a dire "DEFCON One" situation for the Company.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced made the statements referenced in Paragraph 113, and deny the allegations on that basis. Aramark Defendants also deny the substantive allegations regarding Aramark Defendants attributed to this former employee in Paragraph 113.

114. Indeed, according to internal Vestis reports Lead Plaintiffs obtained during the course of their investigation, Vestis lost recurring revenue of over $147 million between August 21, 2023 and April 19, 2024, with approximately $55

118

million of that amount lost during the five weeks prior to the Spinoff, or nearly 8% of the Company's reported first quarter revenue of $718 million.

**Answer**: To the extent the allegations in Paragraph 114 reference internal documents generated by Vestis following the Spin, Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 114, and thereby deny these allegations.

115. Specifically, the Company generated internal "Weekly Install and Loss" reports that depicted how much new business was added in a particular week and the amount of business lost that same week due to customers leaving Vestis. The latest report available to Plaintiffs includes data through the week ending April 19, 2024, and shows a running tally of losses dating back to the week ending August 25, 2023—five weeks before the Spinoff. The report makes clear that the Company lost millions of dollars in recurring business every week between late August 2023 and April 2024, with an average weekly loss of $4.2 million during that time period.

**Answer**: To the extent the allegations in Paragraph 115 reference internal documents generated by Vestis following the Spin, Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115, and thereby deny these allegations.

116. Moreover, the pre-Spinoff losses from late August and September 2023—*i.e.*, in Q4 2023, right before the Spinoff—were even more significant, as the

Company lost recurring revenue of over <u>$9 million per week</u>, on average. Importantly, due to how critical customer retention was to the Company, these internal reports were circulated on a weekly basis to numerous high-level Vestis executives, including Andy Panos, the Senior Vice President of Sales at Vestis who reported directly to Defendant Scott, and Matt Cornelius, the Company's Vice President of Sales.

**Answer**: To the extent the allegations in Paragraph 116 reference internal documents generated by Vestis following the Spin, Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 116, and thereby deny these allegations.

117.   FE 2, a former Account Executive at Aramark and then Vestis in Pine Bluff, Arkansas from September 2017 until April 2024, similarly recalled losing several significant customers during his tenure with Vestis, including large national accounts like Tyson's Chicken, in addition to "medium-sized" customers, like Twin River Foods, who had left Vestis in January 2024.  FE 2 attributed these customer losses to the poor quality of services that Vestis was providing them, as he recalled conversations with route drivers who said they were routinely delivering rugs with holes in them and uniforms that were not cleaned.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced meets the description or

120

made the statements quoted in Paragraph 117, and deny the allegations on that basis. Aramark Defendants also deny the substantive allegations attributed to this former employee in Paragraph 117.

118. FE 3, who was a National Sales Trainer and Compliance Manager for Aramark and Vestis in Baton Rouge, Louisiana from October 2004 until April 2024—a unique role within the Company's corporate office—confirmed that at least two large national accounts left Vestis due to its poor service, with one being Tyson's Chicken and the other being Whole Foods. Specifically, FE 3 stated that "I know that we lost a big part of Tyson because that was a big conversation every week," and AUS thus "had a lot of knowledge that there were a lot of service issues that were not being corrected [for Tyson's Chicken] at least since 2022"—adding that Regional Vice President Jim McLaughlin was let go because of Tyson's Chicken. In fact, FE 3 reported that Defendant Scott had met directly with Tyson Chicken's leadership to attempt to dissuade the large customer from leaving. When asked why large national accounts like Tyson's Chicken and Whole Foods would leave the Company, FE 3 emphasized that "[a]nytime you lose a customer in the uniform business it usually boils down to one of two things: you either lose it because someone else undercut your price or you have so many service issues that cannot be overcome."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced meets the description or made the statements quoted in Paragraph 118, and deny the allegations on that basis.

Aramark Defendants also deny the substantive allegations attributed to this former employee in Paragraph 118.

119.    FE 4[4], who worked as an Account Executive for Aramark in Wixom, Michigan from February 2023 until October 2023, and as an Account Executive for Vestis in Toledo, Ohio from October 2023 until March 2024,  reported that several of his customers signed up with Vestis for three-to-five-year contracts, but left after a short time, explaining that "[s]ervice was so bad that these clients left within the first 30 to 90 days.  I promised these customers all of this stuff and they immediately left." FE 4 explained that several of the customers he signed up for long-term contracts left after a short time because of subpar and "trash" products.  FE 4 stated that the product quality issues continued to get worse after the Spinoff because Vestis kept delivering dirty, worn, and ripped floor mats to FE 4's high-end customers, and "[i]t was very clear to us and the clients that Vestis stopped investing in new products." FE 4 stated that, as a result, Vestis had a very high customer turnover or "churn" rate, noting that "[t]he more we signed up the more we were leaving on the backend.  It was tough to compete with other uniform companies that were doing a

---

[4] FE 4 reported to Thomas Mueller, a Sales Manager for the Company.

much better job."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced meets the description or made the statements quoted in Paragraph 119, and deny the allegations on that basis.

Aramark Defendants also deny the substantive allegations attributed to this former employee in the first two sentences of Paragraph 119.

120.   Additionally, despite the Company's assertion that the reason why "customers leave" is because "[w]e are seeing small to medium enterprise customers with an uptick in business closures," FE 5—a former Regional Account Executive for Aramark and then Vestis in Nashville, Tennessee and Baton Rouge, Louisiana from November 2020 until April 2024—said that was not true at all.  FE 5 stated that in the 4 years he was at Aramark and Vestis, he never once had a medium enterprise customer leave because they went out of business, and instead confirmed that customers left for competitors specifically because of the poor service they received from Vestis.  In fact, FE 5 explained that his customers' uniforms were constantly misplaced, and they just received whatever was on the truck, because within his territory of Louisiana and Mississippi, the Company did not have the proper infrastructure in either state to handle the demands of both states.

**Answer**: The allegations in the first sentence of Paragraph 120 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript

123

of Vestis's Q1 2024 earnings call held on February 7, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 120.

The allegations in Paragraph 120 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 120, and on that basis deny those allegations.

Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced in Paragraph 120 meets the description in Paragraph 120 or made statements, as broadly described in Paragraph 120.  Aramark Defendants deny the substantive allegations attributed to this former employee in Paragraph 120.

121.  FE 6, a Facility Sales Representative for Aramark and Vestis in Toledo, Ohio from February 2023 until February 2024, similarly stated that the quality of

Vestis' products resulted in the loss of significant customers. FE 6 described, for example, how Vestis delivered floor mats to customers that no longer had rubber edges to them, had holes in them, or turned black from being stained. Because of these quality issues, FE 6 highlighted that he lost a $3,000 per week customer to Cintas because Vestis kept delivering linens that had stains and holes in them.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced in Paragraph 121 meets the description in Paragraph 121 or made statements, as broadly described in Paragraph 121. Aramark Defendants deny the substantive allegations attributed to this former employee in Paragraph 121.

122. Tellingly, FE 1 explained how CEO Scott was "absolutely" aware of the quality issues at Vestis that were causing customers to leave, stating that the "reports were very clear" and there were "not a lot of ways to hide quality and service problems" in the Company. FE 7, a former Regional Account Executive at Aramark and then Vestis from November 2019 until May 2024 in San Diego, California, similarly confirmed that "Kim Scott and the C-Suite executives all had to see the cancellations of contracts."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employees referenced meet the descriptions or made the statements quoted in Paragraph 122, and deny the allegations on that

125

basis.

123.   Indeed, as a result of the high customer losses, and in line with Defendants' admissions at the end of the Class Period, former employees reported that Defendants were ultimately forced to dramatically lower Vestis' prices to retain whatever customers were left.  For example, FE 8, a Sales Account Executive for Aramark and then Vestis in Nashville, Tennessee from December 2019 until April 2024, and FE 2 both recalled a February 2024 town hall meeting hosted by CEO Scott, during which Scott acknowledged the poor results, stating that Vestis would now have to cut prices dramatically, as the same towels that were previously increased to $0.07-$0.08 per towel were now being sold for $0.02 per towel.

**Answer**: The allegations in Paragraph 123 also address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employees referenced meet the descriptions or made the statements broadly described in Paragraph 123, and deny the allegations on that basis.

### 2.   Former Employees Confirmed that The Service and Quality Issues Were Caused By Defendants' Lack of Investment to Upgrade Old and Outdated Cleaning Facilities

124.   Numerous former employees described how, despite Defendants' repeated public averments regarding their significant investments in Vestis' business,

126

in reality Vestis' severe service and quality issues were due in large part to the Company's utter lack of investment in and failure to upgrade old and outdated cleaning facilities that resulted in woefully sub-par products and services.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employees referenced made the statements broadly described in Paragraph 124, and deny the allegations on that basis. Aramark Defendants also deny the substantive allegations regarding Aramark Defendants attributed to this former employee in Paragraph 124.

125.    Aramark had built its uniform services company through a series of acquisitions, which included acquiring huge plants to clean uniforms. Because the acquired plants were old, with some even dating back to the 1980s, FE 1 explained that Aramark had "a lot of big plants that were running a lot of product through them and were badly in need of upgrade or replacement." FE 1 added that "[i]f you have old plants and you are not willing to invest in them then you have a disaster on your hands."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced meets the description or made the statements quoted in Paragraph 125, and deny the allegations on that basis. Aramark Defendants also deny the substantive allegations attributed to this former employee in Paragraph 125.

Aramark Defendants further deny the characterization that AUS "built its business" through acquiring large, "old" plants. While acquisitions were a component of AUS's growth strategy, they were not the exclusive means through which the business was built. Aramark Defendants lack sufficient information to confirm the age or condition of the acquired facilities, including whether any date back to the 1980s, and on that basis deny the remaining allegations.

126.    FE 9[5], a former President at Aramark Refreshment Services from January 2015 until January 2022, similarly stated that for decades, Aramark, and now Vestis, did not spend enough money on capital improvements, and now "their plants are older," and "outdated." As FE 9 put it, the Company's facilities "are just a hodgepodge of acquired plants," so "[t]here's just no efficiency." As FE 1 summed up, "there was a failure to invest in their facilities which are now a detriment to providing quality service."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced meets the description or made the statements quoted in Paragraph 126, and deny the allegations on that basis. Aramark Defendants also deny the substantive allegations attributed to this former

---

[5] FE 9 was a President at Aramark Refreshment Services, responsible for overseeing full profits and losses for the refreshment line of Aramark's business. FE 9 previously held the positions of Regional Vice President and Vice President at Aramark. FE 9 reported directly to Aramark's C-suite. FE 9 was interviewed by AlphaSense Expert Insights on May 20, 2024, and his interview was published on the AlphaSense platform on May 28, 2024.

128

employee in Paragraph 126.

127.   FE 10[6], a former Regional Sales VP at AUS from August 2018 until July 2022, noted that because "Aramark has not invested into their processing facilities," they "lag substantially behind on processing capabilities and new state-of-the-art equipment" compared to competitors. With older machines, FE 10 explained that "[y]ou know the quality is not going to be good. It's going to take longer to clean. The machine is going to break down often"—all of which led to service problems for the Company.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced meets the description or made the statements quoted in Paragraph 127, and deny the allegations on that basis. Aramark Defendants also deny the substantive allegations attributed to this former employee in Paragraph 127.

128.   Indeed, FE 10 confirmed that Aramark's and Vestis' outdated cleaning facilities caused uniforms to "look terrible," as they were delivered to customers "wrinkled," shrunk to the wrong sizes, and otherwise "fade out really quickly." FE

---

[6] FE 10 previously held the positions of Regional Sales Director and Sales Manager. FE 10 reported to a Regional President.  As Regional Sales VP, FE 10 was responsible for sales strategy, go-to-market strategy and overseeing over 200 sales representatives and managers throughout his region.  FE 10 was interviewed by AlphaSense Expert Insights on three different occasions: on September 21, 2023, with his interview published on the AlphaSense platform on October 5, 2023; on April 5, 2024, with his interview published on the AlphaSense platform on April 19, 2024; and on May 18, 2024, with his interview published on the AlphaSense platform on May 28, 2024.

5 likewise confirmed Aramark did nothing to improve operations or invest in their infrastructure, noting that, after the Spinoff, Vestis continued to have quality control issues such as delivering towels to customers that were stained, had holes in them, and smelled of moldy food.  FE 11[7], a former Direct Sales Executive for Aramark and then Vestis from December 2021 until May 2024 in New England, recalled how uniforms and floor mats were sent to Vestis' outdated facilities to be cleaned but they were returned to customers still smelling even after being washed.  Tellingly, FE 2 specifically noted that "Senior Management was aware of the plant and uniform problems."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employees referenced meet the descriptions or made the statements quoted in Paragraph 128, and deny the allegations on that basis.  Aramark Defendants also deny the substantive allegations relating to the pre-Spin period attributed to these former employees in Paragraph 128.

129.   Some of the facilities were so bad that in markets like Portland, Oregon and Memphis, Tennessee—two locations that "really desperately needed new plants"—FE 1 said it felt like "any day, the city or some government entity would come in and just put a red tag on the building and say, 'You can't operate that here

---

[7] FE 11 was responsible for selling Vestis products directly to businesses, such as hospitals, in the New England region. FE 11 reported to Sheri Pelish, a Regional Vice President for the Company.

anymore.'" Similarly, Vestis' cleaning facility in Tyler, Texas was the oldest facility in Texas that needed to undergo a complete overhaul, and FE 12[8], a former Regional Account Executive for Aramark and then Vestis from November 2020 until January 2024 in the Dallas/Fort Worth region of Texas, highlighted that all his problematic products sent to customers were washed at that Tyler plant.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employees referenced meet the descriptions or made the statements quoted and/or broadly described in Paragraph 129, and deny the allegations on that basis. Aramark Defendants also deny the substantive allegations relating to the pre-Spin period attributed to these former employees in Paragraph 129.

130. Other former employees dealt with the same issues at the Company's plants throughout North America. For example, FE 4, who worked at the Company's Toledo, Ohio plant, said that his facility was at least 20 years outdated, adding that Vestis "rode that equipment until the very last bit of it worked." FE 4 stated that the Company's lack of investment in upgrading the Toledo plant led to many of the quality issues customers complained about before opting to leave Vestis. Indeed,

---

[8] FE 12 also previously held the position of Facility Sales Specialist at Aramark. FE 12 reported to Samantha Hardway, a Sales Manger for the Company. FE 12 was responsible for selling uniforms, first aid items, restaurant products, and facility supplies, such as floormats, to small and mid-size companies.

because products coming out of the Toledo plant were stained, discolored, and damaged, FE 6 explained how he lost a $1,000 per week customer because the new bar towels they ordered were delivered by Vestis shredded and "with holes so large that you could put your fist through the hole."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employees referenced meet the descriptions or made the statements quoted and/or broadly described in Paragraph 130, and deny the allegations on that basis. Aramark Defendants also deny the substantive allegations relating to the pre-Spin period attributed to these former employees in Paragraph 130.

131. Despite these longstanding issues with their plants, Aramark, and later, Vestis, did nothing to improve upon the situation. Indeed, FE 12 stated that the main issue plaguing Vestis was these aging cleaning facilities. Yet, as FE 12 confirmed, after escalating complaints from customers about the quality of the napkins, rags, and towels, Vestis never adequality fixed the plant facility issues causing these problems.

**Answer**: Aramark Defendants deny the allegations in the first sentence of Paragraph 131.

Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced meets the description or made the

statements quoted and/or broadly described in Paragraph 131, and deny the allegations on that basis. Aramark Defendants also deny the substantive allegations relating to the pre-Spin period attributed to the former employee in Paragraph 131.

132. In fact, according to multiple former employees, the true reason COO Synek left the Company was not because of personal reasons, but was rather due to the outdated facilities and Defendants' refusal to make the necessary investments to fix them.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employees referenced made the statements broadly described in Paragraph 132, and deny the allegations on that basis.

133. As FE 1 explained, COO Synek abruptly left the Company due to the amount of work that needed to be done to improve Vestis' cleaning facilities. Indeed, FE 1 believed that COO Synek felt like he was "misled" as to "commitments to quality, commitments to resources, commitments to capital," because he recalled hearing that COO Synek made comments about "housekeeping" and "facility maintenance" after he visited some of Vestis' plants.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced made the statements quoted and/or broadly described in Paragraph 133, and deny the allegations on that basis.

134. Similarly, FE 3 noted that there was a fundamental disagreement between COO Synek and CEO Scott, commenting that Synek "was trying to make changes, and they were not being received." FE 3 stated that, both prior to and following the Spinoff, "[t]here were [] not enough investments in keeping the plants up to par, cleanliness, lighting, and even safety. There was always an issue with trying to find the money to improve the plants." FE 3, who worked with the VP of Plant Operations, James Baltzegar, on recommendations for plant investments to avoid compliance issues and fines, stated that these improvements never happened, noting that he and Baltzegar got fired because "we were pushing the whole agenda of improvement."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced meets the description or made the statements quoted and/or broadly described in Paragraph 134, and deny the allegations on that basis. Aramark Defendants also deny the substantive allegations relating to the pre-Spin period attributed to this former employee in Paragraph 134.

135. Like FE 10 summed up, "Vestis' struggle is that the service is subpar. The quality of product is subpar. They haven't invested in facilities in 10+ years."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced made the statements

quoted in Paragraph 135, and deny the allegations on that basis. Aramark Defendants also deny the substantive allegations relating to the pre-Spin period attributed to this former employee in Paragraph 135.

### 3. Numerous Former Employees from Different Locations and Roles Within the Company all Painted the Same Picture: Both Before and During the Class Period, Vestis' Service Functions Were So Bad Its Service Was "Nonexistent"

136. As numerous former Aramark and Vestis employees confirmed, both prior to and after the Spinoff, rather than "providing excellent service," Defendants instead had longstanding issues with providing even the most basic aspects of a uniforms services company: namely, providing on-time and correct deliveries.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employees referenced made the statements broadly described in Paragraph 136, and deny the allegations on that basis. Aramark Defendants also deny the substantive allegations relating to the pre-Spin period in Paragraph 136.

137. For example, FE 10 stated that the "[n]umber one" issue Vestis needed to focus on to prevent losing customers was to "improv[e] the level of service," because "their service is what kills them." FE 10 explained that frustration grew among customers not wanting to receive "garments [that] look like crap," as FE 10 was eventually told by customers that—instead of receiving uniforms that were "wrinkled," "still dirty," and not "cleaned right"—they could just clean uniforms

"better just doing it myself."   FE 10 explained that Aramark struggled with its services, "whether it be product shortages or product quality or not having a good customer management program."   FE 10 stated that customers not getting the correct items back was "one of the biggest pain points" for customers when they would choose to leave Vestis, pointing out that no matter how cheap your prices are compared to competitors, customers will "leave you when you[r] service is bad."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced made the statements quoted in Paragraph 137, and deny the allegations on that basis.   Aramark Defendants also deny the substantive allegations relating to the pre-Spin period attributed to this former employee in Paragraph 135.

138.   Similarly, FE 13[9], a former Account Executive at AUS from April 2022 until May 2023, stated that Aramark's service was sub-par because it had an insufficient number of "installers," or employees who would initially set up a customer's account and order the uniforms, causing unwarranted delays in service and resulting in AUS losing business.  As FE 13 stated:  "[t]he number [of installers] that we had wasn't enough to cover the amount of business that we were bringing

---

[9] As an Account Executive, FE 13 responsible for managing accounts, cold calling, presentations, contract negotiations, and acquisitions. FE 13 was interviewed by AlphaSense Expert Insights on February 23, 2024, and his interview was published on the AlphaSense platform on February 28, 2024.

in," and as a result there were "delays on getting people's product in"—"then you're telling a customer or an account that it's going to be done by this day,  but <u>we're not able to get it done in an adequate time frame, then they just move on to the next provider</u>."  FE 13 stated that, as a result of these service issues, Vestis had a "<u>bad reputation</u>" in the industry as having poor services and things not running "smoothly."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced meets the description or made the statements quoted and/or broadly described in Paragraph 138, and deny the allegations on that basis.  Aramark Defendants also deny the substantive allegations relating to the pre-Spin period attributed to this former employee in Paragraph 138.

139.   FE 14, who worked as a Facility Sales Specialist for Aramark and then as an Account Executive for Vestis from December 2021 until July 2024 in Springfield, Illinois, described how the Company's severe service issues led to customer departures. FE 14 explained that Vestis experienced service issues with soiled products and not having enough inventory, stating that "[w]e couldn't get product, and we were constantly shorting our customers."  For example, FE 14 stated that it was like "pulling teeth" to get an extra bag of microfiber towels to be used as samples.  FE 14 confirmed that the Company lost customers as a result:  "[O]nce [a

137

customer] relationship was tarnished, those customers were gone and that spreads like wildfire with your customers."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced meets the description or made the statements quoted and/or broadly described in Paragraph 139, and deny the allegations on that basis.  Aramark Defendants also deny any substantive allegations relating to the pre-Spin period in Paragraph 139.

140.   FE 12 also stated that his customers' products were routinely getting lost after they were picked up for servicing.  For example, FE 12's customers would have ten pants and ten shirts ready to be picked up and cleaned, but when returned by Vestis, the customers would get a mismatched amount of seven pants and nine shirts.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced made the statements broadly described in Paragraph 140, and deny the allegations on that basis.

141.   FE 12 explained that while Vestis used barcodes for tracking their products, the barcodes were unreadable due to the very low quality of the uniforms. FE 10 similarly stated that, while barcodes were put on items, there "was no scanning going on."  As a result, FE 10's customers would get frustrated with Vestis' lack of "inventory management," when every week they "turn[ed] in five shirts and five

138

pants" and received "back three shirts, two pants, four shirts, [and] one pant." This was corroborated by FE 1, a former Vice President of Operations for AUS who worked at AUS from December 2006 until 2022, and then served as a consultant for Aramark's President of AUS, Art Wake, from 2022 to May 2023. FE 1 stated that the Company did not enforce that any of its employees actually scanned the barcodes on items in the plants, noting that "in many parts of the country, they just view scanning as an optional sort of event that they can choose not to do."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employees referenced meet the descriptions or made the statements quoted and/or broadly described in Paragraph 141, and deny the allegations on that basis. Aramark Defendants also deny the substantive allegations relating to the pre-Spin period attributed to these former employees in Paragraph 141.

142. Aside from the poor services, customers were also unhappy with the Company's low-quality offerings that quickly deteriorated and became unusable. FE 15[10], a former Service Account Manager at Cintas from August 2016 until January 2022, explained that Aramark's uniforms were lower quality compared to Cintas, as

---

[10] FE 15 reported to a Manager at Cintas. As a Service Account Manager, FE 15 was responsible for contract negotiations, customer satisfaction, revenue management, and employee operations. FE 15 was interviewed by AlphaSense Expert Insights on October 11, 2023, and his interview was published on the AlphaSense platform on October 16, 2023.

customers commonly complained that they were itchy or used materials that were not fit to wear in a hot industrial factory. FE 15 heard from customers that the uniforms Aramark manufactured were "uncomfortable," "weren't fitted," "oversize[d]," and "didn't offer a women's line." FE 11 similarly recalled that the Company "didn't spend any money to upgrade anything," and as a result, "[t]he uniforms were ragged." As FE 11 recalled, Cintas was very good at stealing Vestis' business because "[w]e had a very antiquated system, and we sold inferior products."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employees referenced meet the descriptions or made the statements quoted and/or broadly described in Paragraph 142, and deny the allegations on that basis. Aramark Defendants also deny the substantive allegations relating to the pre-Spin period attributed to these former employees in Paragraph 142.

143. Numerous other former employees also specifically confirmed that the same service and quality issues that were prevalent at Aramark continued through the Spinoff at Vestis. For example, FE 8 noted that following the Spinoff, "only the rugs at the front door and the name on the building changed," but the quality of the service at Vestis "still sucked." FE 8 recalled that clients came to him complaining about the quality of the uniforms and other items delivered from Vestis, most commonly that "linen was disgusting and dirty, uniform names were falling off, there

140

were stains in the pants, and the towels smelled like fish." Importantly, FE 8 stated if Vestis were to not deliver what the customer expected on the first delivery, the customer was able to break its contract with the Company and move on to a competitor.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employees referenced made the statements broadly described in the first sentence of Paragraph 143, and deny the allegations on that basis. Aramark Defendants also deny the substantive allegations attributed to these former employees in the first sentence of Paragraph 143.

Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced made the statements quoted in the remainder of Paragraph 143, and deny the allegations on that basis.

144.   FE 2 similarly explained how there was little change between Aramark and Vestis following the Spinoff, noting that the quality of service was already deteriorating under Aramark around December 2022, and rather than improve, it in fact got significantly worse for Vestis after the Spinoff.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced made the statements broadly described in Paragraph 144, and deny the allegations on that basis.

Aramark Defendants also deny any substantive allegations relating to the pre-

141

Spin period attributed to this former employee in Paragraph 144.

146. FE 4 stated that the main complaint he received from his customers was that Vestis was not switching out older floor mats with new ones, *i.e.*, what the customers expected and had paid for, and instead customers received mats that were dirty and worn out. While these issues existed under Aramark, FE 4 confirmed that they continued at Vestis and in fact got worse because Vestis stopped investing in new materials.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced made the statements broadly described in Paragraph 145, and deny the allegations on that basis.

Aramark Defendants also deny any substantive allegations relating to the pre-Spin period attributed to this former employee in Paragraph 145.

146. FE 1 stated that Aramark had a grading system that was used to monitor product quality, noting that towels with holes in them should be thrown out and not sent to the customer. After the Spinoff, however, FE 1 stated that the quality issues actually worsened at Vestis rather than improving, concluding that the Company either changed its product grading standards or was trying to extend the useful life of its products to improve short term profits. FE 2 similarly described how the quality of the Vestis' uniform product was poor, old, and that even as of April 2024, "85% of the rugs we were delivering still had the Aramark logo on it."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employees referenced made the statements quoted and/or broadly described in Paragraph 146, and deny the allegations on that basis.

147. FE 12 also stated that while Aramark had quality issues with certain products, such as napkins, rags, and towels, these issues continued at Vestis after the Spinoff, as customers continued to complain about the same issues they dealt with at Aramark. FE 12 recalled losing several customers to Cintas because of these quality issues, including a new account that FE 12 had just signed up with Vestis who complained that their first shipment of rags was delivered with holes in them. Calling it a "bad situation," FE 12 explained that he "could see that it was not going to get any better," noting that he left the Company because "it was very embarrassing to deliver such poor-quality products." Tellingly, even after he left Vestis, FE 12 still received text messages from several customers complaining about quality issues that had still not been fixed.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced made the statements quoted and/or broadly described in Paragraph 147, and deny the allegations on that basis

Aramark Defendants also deny any substantive allegations relating to the pre-

143

Spin period attributed to this former employee in the first sentence of Paragraph 147.

148.   Similarly, FE 16[11], an Account Executive for Aramark and then Vestis in Mississippi from September 2022 until July 2024, stated that he lost many of his customers before and after the Spinoff due to significant issues with the linens and uniforms they received.  For example, FE 16 explained how the Company constantly misplaced aprons and towels or returned items to the customer with holes in them and dirty.  Uniforms were also routinely misplaced, as FE 16's customers would not receive the right number of uniforms back.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced meets the description or made the statements broadly described in Paragraph 148, and deny the allegations on that basis.

Aramark Defendants also deny any substantive allegations relating to the pre-Spin period attributed to this former employee in Paragraph 148.

149.   As for new customers who ordered uniforms, FE 16 said that instead of the 4-to-6-week timeline given for initial delivery, customers typically had an "outrageous" wait time of more than 5 months. By the time he left Vestis in July 2024, one of FE 16's national accounts, Fairbanks Scales, had been waiting for over

---

[11] FE 16 reported to Jay Naron, a Regional Account Executive for the Company who reported directly to Regional Manager, Brian Morgan. FE 16 was responsible for selling and servicing accounts within his territory in Mississippi.

four months for their uniforms and still did not receive them. Not surprisingly, Fairbanks Scales was frustrated with Vestis, and questioned FE 16 about the delay. Likewise, many of FE 16's customers who wanted their floor mats changed every week complained that they had to wait up to four weeks to receive a new floor mat. As an Account Executive dealing with customers directly, FE 16 was "embarrass[ed]" because he "sold to these accounts and the Company could not service them right."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced meets the description or made the statements quoted and/or broadly described in Paragraph 149, and deny the allegations on that basis.

150.   Along the same lines, FE 17[12], who worked as an Account Executive at Aramark and then Vestis from March 2023 until April 2024 in Maryland, stated that Vestis' service was so bad that it was "selling a nonexistent service," adding that the Company's Account Executives "were expected to sell 'air' because we knew for a fact that it was not going to happen, and it was a complete misrepresentation of the facts." FE 17 explained that "it was a game of getting customers locked into a five-year contract where the account is barely set up and once set up, they receive[d] zero

---

[12] FE 17 reported to James Crowder, a Sales Manager for the Company. FE 17 was responsible for calling businesses within Maryland to offer them uniform services.

service."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced meets the description or made the statements quoted and/or broadly described in Paragraph 150, and deny the allegations on that basis. Aramark Defendants also deny the substantive allegations regarding Aramark attributed to this former employee in Paragraph 150.

> ## 4. Despite Increasing Customer Complaints, Former Employees Confirmed that Vestis Instructed Sales Representatives to Ignore Customers

151. As numerous former employees described, Vestis not only provided poor service, it maintained bad customer relationships. Indeed, when customers started to complain about quality of products and services they received from Aramark, and later Vestis, both FE 4 and FE 6 stated that they were told not to take the customer's calls. FE 4 was specifically told by "management" to "gloss" over customer complaints and was even instructed to block their customers from calling, explaining that his "job was to go out there, sign them up, promise them everything and then don't talk to them anymore." And FE 6 noted that while he was told the Territory Managers and Delivery Managers were supposedly handling these customer complaints, they were never addressed, resulting in a high customer turnover rate for the Company.

**Answer**: Aramark Defendants lack knowledge or information sufficient to

form a belief as to whether the former employees referenced made the statements quoted and/or broadly described in Paragraph 151, and deny the allegations on that basis. Aramark Defendants also deny the substantive allegations relating to the pre-Spin period attributed to these former employees in Paragraph 151.

152. Furthermore, FE 14 stated that Vestis had issues with billing new customers, noting that if the customers did not pay within the first 30 days of initial service, that account would be dropped. FE 14 confirmed that the Company "had brand new customers being dropped because of our billing issues."

**Answer**: The allegations attributed to former employees in Paragraph 152 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employee referenced made the statements quoted and/or broadly described in Paragraph 152, and deny the allegations on that basis.

153. FE 5, FE 8, and FE 12 all recalled receiving many customer complaints that their bills received were wrong or even higher than the agreed upon service fees. FE 8 clearly saw "fees that had been tacked on to the client's bill" when examining differences between the contracts negotiated and the bills received by his customers. However, when FE 8 told his supervisor, Alex Karpin, that "adding these unexpected fees" would adversely affect future sales, FE 8 was directed to tell his customers

147

call a 1-800 number, which FE 8 said was just a "run around" for the clients.  FE 7 similarly described a "run around" for customer service issues, explaining how the customers would call the route drivers, the service representatives, the district managers and finally the customer service helpline—all without receiving a response.  Notably, FE 7 emphasized that the Company "wore people down and ignored their calls. It wasn't until they threatened to cancel their contracts or stopped paying that we would answer them and try to address their service issue."

**Answer**: The allegations attributed to former employees in Paragraph 153 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employees referenced made the statements quoted and/or broadly described in Paragraph 153, and deny the allegations on that basis.

154.   Consequently, FE 12 said that customers always complained about their invoices being wrong or that they were being overcharged.  FE 5 added that account executives were also trained to "not explain the contract with the customers" unless they asked.

**Answer**: The allegations attributed to former employees in Paragraph 154 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge

148

or information sufficient to form a belief as to whether the former employees referenced made the statements quoted and/or broadly described in Paragraph 154, and deny the allegations on that basis.

155.    Furthermore, because most of the Company's customers were signed to five-year contracts, there was a culture at Vestis that the Company could get away with ignoring the increasing number of customer complaints.  For example, FE 5 recalled a conversation with a head customer service representative at Vestis who was laughing about the number of complaints they received from Cracker Barrel, a national account for Vestis, adding that because Cracker Barrel had 2 years left on their contract, because the Company "know[s] Cracker Barrel, and other national accounts are stuck with them."  As FE 11 explained, it was thought to be essentially impossible for a customer to get out of their contracts even if Vestis did not meet their standards, leaving customers feeling like they "were locked in a bad deal and that left a bad taste in their mouth."  FE 5 stated that Vestis went so far as to misrepresent its retention rate to other customers in an effort to hook new business and cover up the Company's poor customer service, noting that he was instructed to tell potential customers the retention rate at Vestis was 95%, while in his territory of Louisiana and Mississippi, the retention rate was much, much lower, only between 10% to 15%.

149

**Answer**: The allegations attributed to former employees in Paragraph 155 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 155, and on that basis deny those allegations.

Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employees referenced made the statements quoted and/or broadly described in the remainder of Paragraph 155, and deny the allegations on that basis.

## V.     DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS

156. During the Class Period, Defendants made materially false and misleading statements and omitted material facts, in violation of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. Throughout the Class Period, Defendants' SEC filings, press releases, and analyst and investor presentations included material misstatements and omissions concerning Vestis' financial and operational condition, which included, among other misrepresentations, statements concerning the Company's customer service and product quality, implementation of new initiatives and investments, technological, operational and logistical processes, and customer retention.

**Answer**: No response is required as to the allegations in Paragraph 156 as

150

they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 156.

157.  As discussed above and further below, Defendants' representations were materially false and misleading when made, and omitted material facts either required to be disclosed or necessary to make the statements not misleading.  These material misstatements and omissions had the effect of creating an unrealistically positive assessment of Vestis' business and operational status.  In truth, Defendants had falsely presented to investors a materially misleading portrayal of the Company.

**Answer**: No response is required as to the allegations in Paragraph 157 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 157.

### A.  August 15, 2023 Registration Statement and September 11, 2023 Information Statement

158.  To complete the Spinoff, on August 15, 2023, Defendants participated in the preparation and filing of the Form 10 with the SEC, which registered Vestis' shares.[13]  On or about September 8, 2023, the Registration Statement was declared effective by the SEC. The Registration Statement included a preliminary information statement and provided information regarding Vestis' business and

---

[13] Defendants filed with the SEC a registration statement on Form 10 on August 15, 2023, and Amendment No. 1 on September 6, 2023.  Defendants' "Registration Statement" refers to the registration statement on Form 10 on August 15, 2023, as amended.

management.  On or about September 11, 2023, Defendants caused the Company to file the final information statement (the "Information Statement") with the SEC on Form 8-K, which was signed by Defendants Zillmer and Scott endorsing its contents.

**Answer**: Aramark Defendants admit that a Form 10 registering Vestis's shares was filed with the SEC on August 15, 2023 and that this Form 10 included a preliminary Information Statement dated August 15, 2023 as Exhibit 99.1.

Aramark Defendants also admit that on September 8, 2023, the SEC issued an order declaring Vestis's registration effective.

Aramark Defendants also admit that Vestis's final Information Statement was filed with the SEC as Exhibit 99.1 to a Form 8-K on September 11, 2023, and that it included a cover letter from John Zillmer addressing Aramark stockholders and a cover letter from Kim Scott addressing future Vestis stockholders.

Aramark Defendants deny any remaining allegations in Paragraph 158.

159.  In the Information Statement, Defendants made a series of specific, positive statements touting Vestis' ability to provide customers with products and services on a timely basis—an ability which was so profound that it gave Vestis a "competitive advantage" in the marketplace and ensured remarkably high customer retention rates. Indeed, Defendants specifically touted that Vestis enjoyed a "significant competitive advantage[]" because of its "long-tenured customer relationships."    Further, the Information Statement emphasized that Vestis

152

"maintain[ed] long-term relationships with our customers due to the quality of our services and products" and the Company's "ability to deliver on-time."

**Answer**: The allegations in Paragraph 159 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's Information Statement, filed as Exhibit 99.1 to a Form 8-K on September 11, 2023. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 159.

160. The statements in paragraph 159 were materially false and misleading and omitted material facts when made. Contrary to Defendants' statements touting the quality of Vestis' services and products and the Company's "ability to deliver on-time," the exact opposite was true. As Defendants were ultimately forced to admit, throughout the Class Period, Vestis was plagued by severe "service gaps" in which the Company was widely unable to achieve "on-time delivery" and routinely delivered inaccurate and "incomplete loads" to its customers. Indeed, these issues were so profound and intractable that, in Defendant Scott's own words, the Company

153

had no "process to verify that the truck has been loaded accurately and that all of the product that needs to go to our customer is, in fact, being delivered to our customer." Underscoring this failure, Defendants admitted that, during the Class Period, Vestis did not utilize even the most basic tools a B2B uniforms service business would use—including Telematics, which Scott described as a "very normal thing that you would have in a B2B route-based business." Even though Telematics was absolutely essential to ensuring that the Company could deliver its products and services on-time and accurately, Scott admitted at the end of the Class Period that Vestis was not utilizing Telematics during the Class Period to ensure accurate, on-time deliveries, and that it was only at some undetermined point in the future that the Company would "begin to use those insights and that data from Telematics to shore this up and to make sure that we're delivering on time and that we're where we should be, when we should be."

**Answer**: No response is required as to the allegations in the first sentence of Paragraph 160 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 160.

The remaining allegations in Paragraph 160 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's Information Statement, filed as Exhibit 99.1 to a Form 8-K on September 11, 2023, and the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024. These excerpts are presented in a

manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials. The full documents speak for themselves and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 160.

161. The Information Statement also represented that, as a result of Vestis' consistent on-time delivery and high-quality services and products, the Company maintained a remarkably high "customer retention rate [] in excess of 90%." Defendants also touted the Company's customer retention under the Information Statement's heading "High-Quality Revenue Growth," where they stated that Vestis "serv[ed] an attractive, large and long-tenured customer base" and that the Company remained "focused on retaining these customers . . . by ensuring we are delivering new or updated services and products."

**Answer**: The allegations in Paragraph 161 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's Information Statement, filed as Exhibit 99.1 to a Form 8-K on September 11, 2023. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.

155

The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 161.

162. The statements in paragraph 161 were materially false and misleading and omitted material facts when made. Contrary to Defendants' statements touting the Company's "long-tenured customer relationships" and its customer retention rate "in excess of 90%," in reality, and unbeknownst to investors, the Company was losing customers in droves even prior to the Spinoff. Indeed, as Defendants admitted at the end of the Class Period, and as the FEs confirmed, in the months leading up to the Spinoff, Vestis was "bleeding" customers, including "two large national accounts," which directly caused the Company's customer retention rate to drop well below the "in excess of 90%" rate that Defendants publicly touted—all the way to 85%. As the FEs confirmed, this represented a highly material decline of which Defendants were well aware, as a retention rate below 90% in the uniforms services business—which was heavily reliant on high customer retention, with top competitors consistently boasting a retention rate of over 95%—represented a "DEFCON One" situation for the Company.

156

**Answer**: No response is required as to the allegations in the first sentence of Paragraph 162 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 162.

The allegations in the second sentence of Paragraph 162 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's Information Statement, filed as Exhibit 99.1 to a Form 8-K on September 11, 2023. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 162.

Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 162, and on that basis deny those allegations.

163. The Information Statement also touted the Company's "new [T]elematics technology" that "increase[ed] route efficiency": "<u>We seek to increase route efficiency with technology and processes that reduce travel time, distance and fuel consumption. For example, our new [T]elematics technology allows us to</u>

proactively reduce fuel usage by limiting idling through real-time, in-cab driver alerts."

**Answer**: The allegations in Paragraph 163 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's Information Statement, filed as Exhibit 99.1 to a Form 8-K on September 11, 2023. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 163.

164. The statements in paragraph 163 were materially false and misleading and omitted material facts when made. As Defendant Scott admitted at the end of the Class Period, rather than having implemented "new Telematics technology" that "increased route efficiency," in reality, Defendants "were not using Telematics to make sure that we are delivering to customers on time and also that we are following routing efficiencies." Scott admitted that Vestis was not using Telematics technology during the Class Period despite the fact that Telematics was "a very normal thing that you would have in a B2B route-based business" and was absolutely critical to

providing on-time, accurate uniforms services.  Indeed, even at the end of the Class Period, Scott admitted that the Company had only "rolled out Telematics across our fleet <u>now</u>," and that Telematics had only "<u>now</u> been installed in the trucks," such that no benefits from Telematics could even be realized until 2025.  Thus, as Scott was forced to concede, Defendants were only "expecting" to be able to "begin" using Telematics at some undisclosed point in the future: "we expect very quickly that we'll <u>begin to use those insights and that data from Telematics to shore this up and to make sure that we're delivering on time and that we're where we should be, when we should be</u>."

Answer: No response is required as to the allegations in the first sentence of Paragraph 164 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 164.

The remaining allegations in Paragraph 164 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark

Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 164.

The allegations in Paragraph 164 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 164, and on that basis deny those allegations.

165. Further, the Information Statement included purported "**RISK FACTORS**" under "**Operational Risks**" that discussed hypothetical future risks regarding the Company's customer retention:

> Vestis' failure to retain its current customers, renew its existing customer contracts on comparable terms and obtain new customer contracts could adversely affect Vestis' business, financial condition or results of operations.
> . . .
> The failure to renew a significant number of Vestis' existing contracts, including on the same or more favorable terms, would have a material adverse effect on Vestis' business, financial condition or results of operations, and the failure to obtain new business could have an adverse impact on Vestis' growth and financial results.

**Answer**: The allegations in Paragraph 165 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's Information Statement, filed as Exhibit 99.1 to a Form 8-K on September 11, 2023. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.

160

The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 165.

166.   The above purported "risk factor" was materially false and misleading and omitted material facts when made. As Defendants admitted at the end of the Class Period, the risk to Vestis' business concerning the Company's failure to retain current customers, renew existing customer contracts on comparable terms, and to obtain new customers had already materialized. Indeed, Defendants admitted that because of Vestis' longstanding operational deficiencies and the Company's inability to accurately and timely deliver its products and services, Vestis had lost a "<u>large amount</u>" of customer revenue in fiscal year 2023—*i.e.*, prior to the Spinoff— including "two large national accounts" that represented a significant portion of the Company's revenue. Moreover, Defendants admitted that they knew full well about these "large" customer losses during the Class Period—they expressly admitted that these were "<u>known customer losses as we exited fiscal 2023</u>." Furthermore, as Defendants revealed at the end of the Class Period, because of these customer losses, the Company's customer retention rate dropped sharply in the quarter before the Spinoff all the way <u>to 85%</u>—a highly material decline that stood in stark contrast to

161

the Company's competitors, who regularly boasted customer retention rates as high as 95%.

**Answer**: No response is required as to the allegations in the first sentence of Paragraph 166 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 166.

Allegations in Paragraph 166 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 166, and on that basis deny those allegations.

The allegations in the third and fourth sentences of Paragraph 166 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 166.

Aramark Defendants deny the allegations in the last sentence of Paragraph

166 that the customer retention rate in the quarter prior to the Spin represented "a highly material decline[.]"

**B.  September 13, 2023 Statements Regarding Analyst/Investor Day**

167.  On September 13, 2023, two days after the Information Statement was filed, Defendants held an "Analyst/Investor Day" where Vestis was formally 'unveiled' to the public.  Defendants Scott and Dillon presented a slide presentation and held a conference call.  On the slide presentation, Defendants stated that the Company's "<u>single highest value growth lever is retention, which we achieve through service excellence</u>," and touted the Company's "[s]ticky [c]ustomer [b]ase" with "[h]igh tenure[d]" customers, including a "<u>national account tenure of ~26 years</u>."  During the accompanying conference call, Scott yet again emphasized the Company's excellent customer retention, and especially pointed to the Company's large national accounts as proof of this, stating: "<u>our national account customers are with us for 26 years.   So these are very loyal customers, we have very strong relationships, and we are seen as great partners</u>."  Scott further stated that "<u>our team is very focused on doing exactly what we say we're going to do, deliver on the promise, show up on time every week, deliver the products and services that you promise to your customers and do that with consistency and excellence</u>."

**Answer**: Aramark Defendants admit that an Analyst/Investor Day introducing Vestis was held on September 13, 2023, during which Kim Scott and Rick Dillon presented a slide presentation and held a conference call.

The remaining allegations in Paragraph 167 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's September 13, 2023 Analyst Day and the presentation from that Analyst Day. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials. The full documents speak for themselves and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 167.

168. The statements in paragraph 167 were materially false and misleading and omitted material facts when made. First, Defendants' statements touting the Company's "service excellence" and its ability to deliver its products and services "on time every week," with "consistency and excellence," were materially false because Vestis was unable to timely and accurately deliver its products and services to customers during the Class Period. Indeed, as Defendant Scott admitted at the end of the Class Period, Vestis had no "process to verify that the truck has been loaded

accurately and that all of the product that needs to go to our customer is, in fact, being delivered to our customer." Demonstrating the Company's abject failure in this regard is the fact that, during the Class Period, Vestis did not utilize even the most basic tools a B2B uniforms service business would use—including Telematics, which Scott described as a "very normal thing that you would have in a B2B route-based business." Even though Telematics was critical to ensuring that Vestis could deliver its products and services on-time and accurately, Scott admitted at the end of the Class Period that Vestis was not utilizing Telematics during the Class Period to ensure accurate, on-time deliveries, and that it was only at some undetermined point in the future that the Company would "begin to use those insights and that data from Telematics to shore this up and to make sure that we're delivering on time and that we're where we should be, when we should be."

**Answer**: No response is required as to the allegations in the first and second sentences of Paragraph 168 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 168.

The remaining allegations in Paragraph 168 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 168, and on that basis deny those allegations.

165

These allegations also appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 168.

169. Second, Defendants' statements touting the Company's customer retention, and its purportedly "very loyal" and "sticky customer base," including its long-tenured national account customers, were also materially false and misleading. Indeed, as Defendants admitted at the end of the Class Period, and as the FEs independently confirmed, by this point, the Company was "bleeding" customers because of these severe "service gaps." In fact, Defendants admitted that Vestis had lost a "large amount" of customer revenue in fiscal year 2023—*i.e.*, prior to the Spinoff—including from "<u>two large national account customers</u>" that represented a significant portion of the Company's revenue. Moreover, Defendants admitted that they knew full well about these "large" customer losses during the Class Period—

166

they expressly admitted that these were "<u>known customer losses as we exited fiscal 2023</u>."

**Answer**: No response is required as to the allegations in the first sentence of Paragraph 169 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in the first sentence of Paragraph 169.

The remaining allegations in Paragraph 169 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 169, and on that basis deny those allegations.  These allegations also appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 169.

170.   Furthermore, internal Vestis reports confirmed, at the same time that Defendants were making these representations, the Company was in the midst of a mass exodus of customers, <u>with a staggering $55 million in recurring weekly revenue lost in the five weeks prior to the Spinoff</u>.  As a result, Vestis' much-touted customer retention rate was not "in excess of 90%," as Defendants had repeatedly boasted, but had dropped <u>to 85%</u>.  As the FEs confirmed, this represented a highly material decline of which Defendants were well aware, as a retention rate below 90% in the uniforms services business—which was heavily reliant on high customer retention, with top competitors consistently boasting a retention rate of over 95%— represented a "<u>DEFCON One</u>" situation for Vestis.

**Answer**: The allegations in Paragraph 170 purport to reference internal documents generated by Vestis following the Spin, and Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 170, and on that basis deny those allegations.  Aramark Defendants further deny the characterizations and inferences Plaintiffs seek to draw from the allegations in Paragraph 170.

171.   Significantly, also on Analyst Day, Defendants emphatically touted the Company's operating systems and technological advancements, which supposedly ensured that the Company could provide on-time, accurate deliveries to its customers.  Indeed, Defendants emphasized the "<u>implementation of ABS</u>," Vestis'

new operating system that it "<u>launched across [Vestis'] entire network</u>," and stated that this system "<u>allowed us to [] put a handheld in the hand of every route service representative who's in a customer location . . . so we've given them digital tools in their hands so that they can interact more seamlessly and more efficiently with the customer</u>."  Defendant Scott further stated that the Company had "<u>digitize[ed] the experience</u>" for its RSRs (drivers), sales team, and customers, and that customers had purportedly given "<u>incredibly positive feedback</u>" about these technological improvements, as the resulting "<u>data analytics</u>" allowed employees to "<u>really trend customer behaviors and understand what's happening with that customer so that we can provide excellent service to them</u>."

**Answer**: Defendant deny the allegations in the first sentence of Paragraph 171.

The remaining allegations in Paragraph 171 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript from Vestis's September 13, 2023 Analyst Day.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark

Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 171.

172.   The statements in paragraph 171 were materially false and misleading and omitted material facts when made.  Contrary to Defendants' statements touting the Company's purported technological advancements and "excellent service," its ability to "interact more seamlessly and more efficiently with the customer," and the "incredibly positive feedback" Defendants had supposedly received from customers, the exact opposite was true.  As Defendants admitted at the end of the Class Period, Vestis was unable to timely and accurately deliver its products and services to customers.  In Defendant Scott's own words, Vestis had no "process to verify that the truck has been loaded accurately and that all of the product that needs to go to our customer is, in fact, being delivered to our customer."  In fact, Vestis did not utilize even the most basic tools a B2B uniforms service business would use— including Telematics—which Scott described as a "very normal thing that you would have in a B2B route-based business" and was critical to ensuring that Vestis could deliver its products and services on-time and accurately.  As Scott admitted at the end of the Class Period, Vestis was not utilizing Telematics during the Class Period to ensure accurate, on-time deliveries, and that it was only at some undetermined point in the future that the Company would "begin to use those insights and that data from Telematics to shore this up and to make sure that we're delivering on time and

170

that we're where we should be, when we should be."

**Answer**: No response is required as to the allegations in the first sentence of Paragraph 172 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in the first sentence of Paragraph 172.

The allegations in the third and fifth sentences of Paragraph 172 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the third and fifth sentences of Paragraph 172, and on that basis deny those allegations.

The remaining allegations in Paragraph 172 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript from Vestis's September 13, 2023 Analyst Day and the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials. The full documents speak for themselves and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials. Aramark Defendants deny the

characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 172.

173.   Later on the Company's Analyst Day conference call, an analyst asked about "what you talked about a little bit in terms of purposeful growth and sometimes stepping back a little bit because if you go through the [Form 10-K] financials you see like the workplace supplies had very good growth, but the uniforms were kind of—were basically flat revenue year-over-year.   Can you talk about the dynamics that were behind that and why we didn't see Uniforms growth?" In response, Scott claimed that while the Company had lost some customers, these losses were "very intentional" and strategic, and therefore "non-regrettable." As Scott stated:  "And then you have, quite frankly, non-regrettable losses around some accounts that just didn't make sense for our portfolio.   So you've got a couple of accounts that have left the portfolio as well that are depressing that uniforms number .  .  .  So while you may see that as a depressed number or a flat number, it's very intentional."

**Answer**: The allegations in Paragraph 173 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript from Vestis's September 13, 2023 Analyst Day.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response.

172

To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 173.

174. The statements in paragraph 173 were materially false and misleading and omitted material facts when made. As Defendants admitted at the end of the Class Period, Vestis' severe "service gaps" resulted in the Company having lost "a large amount" of customers even prior to the Spinoff in 2023, including the loss of "two large national account customers" in the months leading up to the Spinoff. Moreover, Defendants made clear that they knew full well about these customer losses—they expressly referred to them as "known customer losses as we exited fiscal 2023"—and that they resulted in a "large amount of rollover losses from FY '23" that the Company was still absorbing. Rather than these customer losses being in any way "intentional," as Defendants later admitted, "more than 70% of cancellations [were] due to causes that [were] within our control"—namely, Vestis' failure to provide on-time delivery and complete, accurate uniform loads.

**Answer**: No response is required as to the allegations in the first sentence of Paragraph 174 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in the first sentence of Paragraph 174.

The remaining allegations in Paragraph 174 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 174, and on that basis deny those allegations. These allegations also appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 174.

**C.    November 29, 2023 Statements Regarding 2024 First Quarter Results**

175. On November 29, 2023, Defendants caused the Company to issue a press release announcing financial results for the first quarter and full year ended September 30, 2023. That same day, Vestis held a conference call with analysts and investors to discuss the Company's results. During the call, an analyst noted the Company's continued muted growth performance in its uniforms business and

174

queried: "As you execute your strategy that you outlined at the Analyst Day [ ] should we expect to see the uniforms business maybe accelerate a bit versus what we saw in fiscal 2023?  Clearly, we're making really nice progress on the workplace supplies, but in uniforms [growth is] lighter."  In response, Defendant Scott again claimed that Vestis' Uniforms business growth was not due to any underlying problems in the Company's business, but rather was "very purposeful": "We are just purposely at times exiting some business[es] . . . So I would expect you should see a muted uniforms growth rate again in FY '24, but that is a very purposeful decision to grow very strategically . . . and exiting some underperforming businesses."

**Answer**: Aramark Defendants admit that on November 29, 2023, Vestis issued a press release reporting its fourth quarter and fiscal year 2023 results and held an earnings call on the same day.

The remaining allegations in Paragraph 175 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call held on November 29, 2023.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the

175

characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 175.

The allegations in Paragraph 175 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 175, and on that basis deny those allegations.

176.   This exchange prompted another analyst to ask about the Company's customer retention.  In response, Defendant Scott again touted, as Defendants had done in their Information Statement and at Analyst Day, the Company's "amazing customer experience," "above 90%" "retention rates," and the "service excellence culture across the [C]ompany."  As Scott stated: "We are seeing really, really great feedback from our customers around these initiatives.  And so we feel very, very good about the establishment of a service excellence culture across the company. We also continue to deliver retention rates that are above 90% as we stated in our Form 10."  Scott also again highlighted the long tenure of Vestis' national accounts in particular, stating that "those [national accounts], as you know, stay more than 20 years with us.  So they're very valuable customers and the lifetime value is great."

**Answer**: The allegations in Paragraph 176 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call

176

held on November 29, 2023. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 176.

The allegations in Paragraph 176 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 176, and on that basis deny those allegations.

177. The statements in paragraphs 175 and 176 were materially false and misleading and omitted material facts when made. First, Defendants' statements touting the Company's purported "service excellence" and its ability to deliver an "amazing customer experience" were materially false and misleading because Vestis was unable to timely and accurately deliver its products and services to customers during the Class Period. Indeed, as Defendant Scott admitted at the end of the Class Period, Vestis had no "process to verify that the truck has been loaded accurately and

that all of the product that needs to go to our customer is, in fact, being delivered to our customer." Emblematic of the Company's service failures was the fact that, during the Class Period, Vestis did not utilize even the most basic tools a B2B uniforms service business would use—including Telematics—which Scott admitted was a "very normal thing that you would have in a B2B route-based business." Even though Telematics was critical to ensuring that Vestis could deliver its products and services on-time and accurately, Scott admitted at the end of the Class Period that Vestis was not utilizing Telematics during the Class Period to ensure accurate, on-time deliveries, and that it was only at some undetermined point in the future that the Company would "begin to use those insights and that data from Telematics to shore this up and to make sure that we're delivering on time and that we're where we should be, when we should be."

**Answer**: No response is required as to the allegations in the first and second sentences of Paragraph 177 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in the first and second sentences of Paragraph 177.

The remaining allegations in Paragraph 177 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable

178

alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 177.

The allegations in Paragraph 177 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 177, and on that basis deny those allegations.

178. Second, Defendants' statements touting the Company's purportedly "strategic" and "very purposeful" exiting of underperforming businesses; Vestis' "retention rates that are above 90% as we stated in our Form 10"; and the strength of the Company's national accounts, were also materially false and misleading. As Defendants admitted at the end of the Class Period, Vestis' customer losses were not "strategic" or "purposeful" at all, but were instead the result of severe "service gaps" that caused the Company to lose customers in droves in 2023, including the loss of "two large national accounts" in the months leading up to the Spinoff. Furthermore, Defendants later admitted that "more than 70% of cancellations [were] due to causes

179

that [were] within our control"—namely, Vestis' utter failure to provide on-time delivery and complete, accurate uniform loads.

**Answer**: No response is required as to the allegations in the first sentence of Paragraph 178 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in the first sentence of Paragraph 178.

The allegations in the second and third sentences of Paragraph 178 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of Paragraph 178, and on that basis deny those allegations.

The remaining allegations in Paragraph 178 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript from Vestis's September 13, 2023 Analyst Day and the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials.  The full documents speak for themselves and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials.  Aramark Defendants deny the

characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 178.

179.   Moreover, as internal Vestis reports confirmed, at the same time that Defendants were making positive representations concerning the Company's customer retention, Vestis was in the midst of a mass exodus of customers, with a staggering $55 million in recurring weekly revenue lost in the five weeks prior to the Spinoff.  Moreover, Defendants made clear that they knew full well about these customer losses—they expressly referred to them as "known customer losses as we exited fiscal 2023"—and as a result, Vestis experienced a "large amount of rollover losses from FY '23," which it was still absorbing.  Thus, Vestis' customer retention rate was not "in excess of 90%," as Defendants had boasted, but had dropped to 85% even before the Spinoff was completed.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 179.

The allegations in the second sentence of Paragraph 179 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in second sentence of Paragraph 179, and on that basis deny those allegations.

The remaining allegations in Paragraph 179 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024 and Vestis's Information Statement, filed as Exhibit 99.1 to a Form 8-K on September 11, 2023. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials. The full documents speak for themselves and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 179.

**D.      Statements in Form 10-K Filed on December 21, 2023**

180.    On December 21, 2023, Vestis filed its annual report on Form 10-K ("2023 10-K"), which was signed by Scott and Dillon, endorsing its contents. The 2023 10-K repeated statements from the Information Statement regarding the Company's customer retention set forth in ¶159, which were materially false and misleading for the same reasons alleged in ¶160.

**Answer**: Aramark Defendants admit that Vestis filed its annual report on Form 10-K on December 21, 2023.

No response is required as to the remaining allegations in Paragraph 180 as

they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any remaining allegations in Paragraph 180.

The allegations in Paragraph 180 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 180 and on that basis deny those allegations.

181.  The 2023 10-K also repeated statements from the Information Statement regarding Vestis' "new [T]elematics technology" set forth in ¶163, which were materially false and misleading for the same reasons alleged in ¶164.

**Answer**: No response is required as to the remaining allegations in Paragraph 181 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any remaining allegations in Paragraph 181.

The allegations in Paragraph 181 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 181, and on that basis deny those allegations.

182.  Additionally, the 2023 10-K repeated the same "Risk Factors" as the Information Statement as to customer retention set forth in ¶165, listed as

"Operational Risk[]," which where materially false and misleading for the same reasons alleged in ¶166.

**Answer**: No response is required as to the remaining allegations in Paragraph 182 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any remaining allegations in Paragraph 182.

The allegations in Paragraph 182 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 182, and on that basis deny those allegations.

### E.    February 7, 2024 Statements Regarding Second Quarter 2024 Results

183.    On February 7, 2024, Defendants caused the Company to issue a press release announcing financial results for the second quarter ended December 21, 2023, along with full-year 2024 guidance. The press release included a statement by Scott that "our high-quality growth strategy is effective" and "I remain confident in our ability to deliver on our full year financial outlook."

**Answer**: Aramark Defendants admit that Vestis issued a press release reporting its first quarter 2024 results on February 7, 2024.

The remaining allegations in Paragraph 183 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's press release reporting its

first quarter 2024 results on February 7, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 183.

The allegations in Paragraph 183 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 183, and on that basis deny those allegations.

184.   Also on February 7, 2024, Vestis held a conference call with analysts and investors to discuss the Company's financial results for the second quarter ended December 21, 2023, along with full-year 2024 guidance. On the conference call, Defendants stated "[a]s we move through the balance of the year, we expect acceleration in our growth rates." Scott further stated that "[w]e are also seeing opportunity for additional pricing actions in the back half of the year.  As a result, I remain confident in our ability to deliver our full year guidance of 4% to 4.5%

185

revenue growth and adjusted EBITDA margin of 14.3%."

**Answer**: Aramark Defendants admit that Vestis held an earnings call on February 7, 2024.

The remaining allegations in Paragraph 184 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call on February 7, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 184.

The allegations in Paragraph 184 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 184, and on that basis deny those allegations.

185. Later on during the earnings call, Scott confirmed that the Company would "take price," stating: "So we do see the opportunity to take some incremental

186

pricing in the back half of the year.  We've been very thoughtful and I would say, somewhat moderated about pricing."  Scott further stated, "we will be taking price" with the Company's customers and that Defendants would be doing so "in a very surgical way with a lot of analysis around which customers will be impacted and what the current relationship and state and condition of the relationship is with that customer."  Scott also stated that "we're also seeing really good progress with our frontline account executives, driving revenue per head."

**Answer**: The allegations in Paragraph 185 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call on February 7, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 185.

The allegations in Paragraph 185 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge or information sufficient to form a

187

belief as to the truth of the allegations in Paragraph 185, and on that basis deny those allegations.

186. Then, an analyst asked Scott whether the Company's ability to take price should give investors "comfort" that the Company would achieve its 2024 guidance: "Now it sounds like you do have some opportunistic areas to take price, which I think you explained, is very clear and exciting. So does this more so give us – when we think about it as driving incremental comfort in achieving the guidance for the year?" In response, Scott stated: "Yes. I would think about [pricing] as additional comfort to give you confidence, the same confidence we have that we're going to ramp up the growth rates in the back half of the year, and deliver against the 4% to 4.5% . . . yes, you should think about pricing as a -- providing a level of comfort." Dillon added, "[t]he surgical pricing was in our guidance . . . we talked at Analyst Day [about] the disciplined pricing . . . that there were opportunities for surgical pricing. And so we're really just capitalizing on that."

**Answer**: The allegations in Paragraph 186 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call on February 7, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a

188

response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 186.

The allegations in Paragraph 186 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 186, and on that basis deny those allegations.

187.   The statements in paragraphs 183 through 186 were materially false and misleading and omitted material facts when made.  In reality, Defendants were not able to "take price" or implement "surgical" price increases.  To the contrary, and as Defendants admitted at the end of the Class Period, Defendants were forced to do the exact opposite:  <u>dramatically lower prices</u>, to the tune of "250 basis points," in order to stem a mass customer exodus resulting from Vestis' abysmally bad and uncured "service gaps."  As Scott admitted only three months later, Defendants were forced to "<u>deliberately moderate[] planned price increases</u> . . . <u>in order to reduce customer churn</u>" because customers were unwilling to accept any price increases— and in fact demanded substantial discounts—as a result of Vestis being unable to render even the most basic services that were expected of a uniforms program.  As

189

Defendant Scott admitted: "<u>We believe service gaps have driven price sensitivity as fully satisfied customers typically don't leave because they've received a price increase</u>."  Defendant Dillon similarly admitted that "<u>our service efficacy and price sensitivity go hand-in-hand</u>," and due to customers' "reason[s] for quits" pertaining to Vestis' poor services—"and the magnitude of the carryover losses" from the customers who had already departed—the Company was forced to "<u>moderate the pricing</u>" in order to keep more customers from leaving.

**Answer**: No response is required as to the allegations in the first sentence of Paragraph 187 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 187.

The remaining allegations in Paragraph 187 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 187.

The allegations in Paragraph 187 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 187, and on that basis deny those allegations.

188.   Additionally, during the February 7, 2024 earnings call, Scott stated that "[y]ear-to-date, we've successfully deployed new [T]elematics technology across 89% of our fleet and fully deploy[ed] new routing and scheduling technology and processes across North America, all a part of our strategy to establish the capability to continuously optimize our network and our routes." Scott further emphasized that the Company's use of Telematics would "ensure that we're running routes in compliance with how we'd like to do that."

**Answer**: The allegations in Paragraph 188 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call on February 7, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the

191

characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 188.

The allegations in Paragraph 188 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 188, and on that basis deny those allegations.

189. The statements in paragraph 188 were materially false and misleading and omitted material facts when made. As Defendant Scott admitted at the end of the Class Period, Defendants had in no way "successfully deployed new Telematics technology across 89% of our fleet" or "fully delploy[ed] new routing and scheduling technology and processes across North America." Scott's admission was striking given that she also admitted that Telematics was "a very normal thing that you would have in a B2B route-based business" and was absolutely critical to providing on-time, accurate uniforms services. In fact, Scott admitted that even at the end of the Class Period, Vestis had only "rolled out Telematics across our fleet now," and that Telematics had only "now been installed in the trucks," such that no benefits from Telematics could even be realized until 2025. As Scott conceded, Defendants were only "expecting" to be able to "begin" using Telematics at some undisclosed point in the future: "we expect very quickly that we'll begin to use those

192

insights and that data from Telematics to shore this up and make sure that we're

delivering on time and that we're where we should be, when we should be."

**Answer**: No response is required as to the allegations in the first sentence of

Paragraph 189 as they state legal conclusions.  To the extent any response is

required, Aramark Defendants deny any allegations in the first sentence of Paragraph

189.

The remaining allegations in Paragraph 189 appear to selectively quote from

and/or mischaracterize selected excerpts from the transcript from Vestis's earnings

call held on February 7, 2024, and the transcript of Vestis's Q2 2024 earnings call

held on May 2, 2024.  These excerpts are presented in a manner that distorts their

original meaning, omits critical context, and includes notable alterations that further

misrepresent the substance of the source materials.  The full documents speak for

themselves and therefore the allegations do not require a response.  To the extent a

response is required, Aramark Defendants admit only that the allegations contain

cherry-picked phrases from the source material.  Aramark Defendants deny the

characterizations and inferences Lead Plaintiffs seek to draw from these phrases in

Paragraph 189.

The allegations in Paragraph 189 address conduct or events occurring after

the Spin, and Aramark Defendants were in no way involved in such conduct or

events.  Aramark Defendants lack knowledge or information sufficient to form a

193

belief as to the truth of the allegations in Paragraph 189, and on that basis deny those allegations.

190.   Additionally on the February 7, 2024 conference call, one analyst asked: "I was hoping that you could please comment on retention, the trends and the drivers, whether it's service quality, the predictive analytics, the digital tools.  And conversely, what reasons for attrition would be outside of the delivery exits, say specifically within Uniform direct sales?"  In response, Scott continued to tout the Company's customer retention of "greater than 90%, which is what we filed in the Form 10 and we continue to maintain retention above that," adding that "we have no real surprises as it relates to retention and where we expected to be for the most part."

**Answer**: The allegations in Paragraph 190 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript from Vestis's earnings call held on February 7, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 190.

194

The allegations in Paragraph 190 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 190, and on that basis deny those allegations.

191. The statements in paragraph 190 were materially false and misleading and omitted material facts when made. As Defendants admitted just three months later at the end of the Class Period, by this point, Vestis' severe "service gaps" had caused the Company to lose a "large amount" of customers in 2023, including "two large national accounts" just prior to the Spinoff. Moreover, as internal Vestis reports confirmed, at the same time that Defendants were making positive representations concerning the Company's customer retention, Vestis was in the midst of a mass exodus of customers. Indeed, these reports showed that Vestis lost a massive $147 million in recurring weekly revenue due to customer losses between August 21, 2023 and April 19, 2024, with a staggering $55 million in recurring weekly revenue lost in the five weeks prior to the Spinoff. As Defendants made clear at the end of the Class Period, they knew full well about these customer losses—they called them "known customer losses as we exited fiscal 2023"—and that as a result, Vestis experienced a "large amount of rollover losses from FY '23," which it was still absorbing. Thus, Defendants had no basis to boast about a customer retention rate

195

"in excess of 90%," without disclosing this highly material adverse information to investors.

**Answer**: No response is required as to the allegations in the first sentence of Paragraph 191 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in the first sentence of Paragraph 191.

Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations relating to the "internal [] reports" referenced in the third and fourth sentences of Paragraph 191, and on that basis deny those allegations.

The remaining allegations in Paragraph 191 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call held on February 7, 2024 and the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials. The full documents speak for themselves and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 191.

196

The allegations in Paragraph 191 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 191, and on that basis deny those allegations.

192.  In response to the same analyst question, and specifically the portion relating to the reasons the Company had seen for customer "attrition," Defendant Scott also claimed that the Company had "gone pretty deep and granular" to investigate the issue and had observed some smaller customers leaving due to issues that were completely outside of Vestis' control. Specifically, Scott claimed that those customer losses were due to a purported "uptick in business closures" that had nothing to do with any deficiencies in Vestis' business:

> [G]enerally speaking, when you look at the rest of retention and you look at recent codes to answer your question around why would you see customers leave. <u>We are seeing small to medium enterprise customers with an uptick in business closures, we are monitoring that very closely.</u> And so just important to note as we look at recent codes. And it's also <u>when you try to drill it down a little bit further. You can see a trend</u> . . . So when you look at what is happening around business closures, particularly with small to medium enterprise, <u>we're going pretty deep and granular to understand what are those patterns and</u> <u>trends around</u> <u>why customers leave. We're seeing a slight uptick in customers going out of business in those all those medium and enterprise verticals</u> . . .

**Answer**: The allegations in Paragraph 192 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call

197

held on February 7, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 192.

The allegations in Paragraph 192 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 192, and on that basis deny those allegations.

193.  After another analyst asked Defendant Scott to "discuss some of the factors you're seeing that may be causing Uniforms business growth to come a bit below some of what your competitors are seeing where growth is tracking somewhere north of 5%," Scott again claimed that there was "an uptick in business closures" that had nothing to do with shortfalls in Vestis' business.  Specifically, Scott stated:  "I did mention that we do see an uptick in business closures as it relates to our SMEs.  So that also has an effect on the number as it relates to the impact of

retention on the Uniforms number, and we're very transparent about that, we're very aware of it, we're managing that very closely."

**Answer**: The allegations in Paragraph 193 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call held on February 7, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 193.

The allegations in Paragraph 193 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 193, and on that basis deny those allegations.

194. The statements in paragraphs 192 and 193 were materially false and misleading and omitted material facts when made. As Defendants disclosed at the end of the Class Period, rather than customer losses being due to an "uptick in

business closers" that had nothing to do with deficiencies in Vestis' service performance, the exact opposite was true. In reality, the vast majority of the Company's customer losses had nothing to do with "business closures" and were instead attributable to Vestis' inability to provide its products and services to customers accurately and on-time. Indeed, as Defendant Scott was forced to admit just three months later, "we know that more than 70% of the cancellations are due to causes that are within our control."

**Answer**: No response is required as to the allegations in the first sentence of Paragraph 194 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in the first sentence of Paragraph 194.

The remaining allegations in Paragraph 194 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call held on February 7, 2024 and the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials. The full documents speak for themselves and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials. Aramark Defendants deny the

200

characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 194.

The allegations in Paragraph 194 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 194, and on that basis deny those allegations.

195.   Also on the Company's February 7, 2024 earnings call, Scott belatedly acknowledged that the Company had suffered a "a national account loss" which was "[not] a strategic loss" but rather "a regrettable loss" that "wasn't part of our strategy." As Scott revealed: "[W]e also have a national account loss, but we haven't talked about it a lot because it wasn't a strategic loss.  It was an unfortunate loss from our Clean Room business last year, and it was a loss that continues to flow through in the first 2 quarters of this year, which also affects that Uniforms number."

**Answer**: The allegations in Paragraph 195 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call held on February 7, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response.  To the extent a

201

response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 195.

The allegations in Paragraph 195 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 195, and on that basis deny those allegations.

196. The statements in paragraph 195 were materially false and misleading and omitted material facts when made. While Scott belatedly admitted that the Company's lack of uniforms business growth was not "purposeful" or "strategic" but instead due in part to the "regrettable" loss of a major national account customer, Scott materially omitted the fact that the Company had lost not one but "two large national accounts" prior to the Spinoff, in addition to additional significant losses from numerous other customer departures during the Class Period. In addition, Defendants knew full well about these customer losses, as they specifically referred to them as "known customer losses as we exited fiscal 2023"—and that Vestis "was still absorbing" those losses. Moreover, Scott also omitted that these customer losses were directly attributable to Vestis' pervasive "service gaps" pertaining to "on-time

delivery" and "shortages on loads"—*i.e.*, fundamental failures in the core offerings of the Company's uniforms business.

**Answer**: No response is required as to the allegations in the first sentence of Paragraph 196 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in the first sentence of Paragraph 196.

Allegations in Paragraph 196 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call held on February 7, 2024 and the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials. The full documents speak for themselves and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 196.

The allegations in Paragraph 196 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a

belief as to the truth of the allegations in Paragraph 196, and on that basis deny those allegations.

Aramark Defendants deny the remaining allegations in Paragraph 196.

## VI.    ADDITIONAL ALLEGATIONS OF SCIENTER

197.   Numerous facts including those detailed above, considered collectively, demonstrate that Defendants knew they were making the above-detailed materially false and misleading statements and omissions of material fact, or, at minimum, acted recklessly in making those statements and omissions. Certain allegations reflecting Defendants' scienter are summarized below.

**Answer**: No response is required as to the allegations in Paragraph 197 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 197.

198.   *Defendants made a series of striking admissions at the end of the Class Period that directly contradicted their prior public representations*. While Defendants repeatedly emphasized that Vestis' "service excellence," the "quality of our services and products," and "our ability to deliver on-time" resulted in the Company's high customer retention rate "in excess of 90%," at the end of the Class Period, Defendants admitted that the exact opposite was true.  Indeed, Vestis could not adequately perform even the most basic task required of a uniform services company: namely, "delivering on time, delivering full loads."

**Answer**: No response is required as to the allegations in the first sentence of Paragraph 198 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in the first sentence of Paragraph 198.

The allegations in the second and third sentences of Paragraph 198 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of Paragraph 198, and on that basis deny those allegations.

The allegations in Paragraph 198 appear to selectively quote from and/or mischaracterize selected excerpts from Vestis's Information Statement, filed as Exhibit 99.1 to a Form 8-K on September 11, 2023, and the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials.  The full documents speak for themselves and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 198.

Aramark Defendants deny the remaining allegations in Paragraph 198.

199.  Furthermore, Defendants confirmed that Vestis had lost a substantial number of customers both before the Spinoff and during the Class Period, including "two large national accounts" that accounted for a significant portion of the Company's revenue, because of these severe "service gaps."  Indeed, Defendants expressly conceded that they were aware of these customer losses even prior to the start of the Class Period, as they specifically noted that they were "known customer losses as we exited fiscal 2023," and that they resulted in "a large amount of rollover losses from FY '23 that [were] impacting our volume in FY '24."  Furthermore, Defendants made clear that these customer losses were due to Vestis' abysmal service, stating that "customers [were] choosing to leave Vestis" specifically because of "service experiences related to our procedures," and those customer losses were "related to how we are delivering the load on time and incomplete loads."

**Answer**: Allegations in Paragraph 199 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain

cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 199.

The allegations in Paragraph 199 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 199, and on that basis deny those allegations.

Aramark Defendants deny the remaining allegations in Paragraph 199.

200. Similarly, while Defendants regularly boasted to investors that Vestis had "fully deploy[ed]" advanced technological systems such as ABS, and had "successfully deployed across 89% of our fleet" the critically-important fleet management technology called Telematics, at the end of the Class Period, Defendants again admitted that this was not true. Indeed, Defendant Scott specifically admitted that the Company did not "have a process to verify that the truck has been loaded accurately and that all of the product that needs to go to our customer is, in fact, being delivered to our customer." And even though Scott conceded that Telematics was a "very normal thing that you would have in a B2B route-based business," and that she had been aware since the time she "c[a]me into this business" that "we did not have Telematics in our fleet," Scott admitted that even

207

at the end of the Class Period, Vestis' Telematics system was still not operational, such that Defendants were only "expecting" to be able to "begin" using Telematics at some undisclosed point in the future: "we expect very quickly that we'll <u>begin to use those insights and that data from Telematics to shore this up and make sure that we're delivering on time and that we're where we should be, when we should be</u>."

**Answer**: The allegations in Paragraph 200 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call held on February 7, 2024 and the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials. The full documents speak for themselves and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 200.

The allegations in Paragraph 200 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a

belief as to the truth of the allegations in Paragraph 200, and on that basis deny those allegations.

201. Finally, Defendants also expressly admitted that they were well aware of these issues throughout the Class Period. Indeed, Defendant Scott acknowledged that the Company's severe service problems were not a new development and were not "related to the" Spinoff, but were longstanding issues that had been "in our business for quite some time." Likewise, Defendant Dillon confirmed that, throughout the Class Period, Defendants were aware that these issues significantly impacted the Company's ability to retain its customers, stating that they "knew the impact coming in of the lower retention rate." Indeed, Defendants confirmed that he "root cause[]" for "more than 70% of cancellations [was] due to causes that [were] within our control": Vestis' utter failure to provide the basic uniforms services customers were paying for, including "very specific delivery matters related to [on] time delivery, shortages on loads." Defendants' stark admissions flatly contradicting their prior Class Period statements demonstrate their scienter.

**Answer**: The allegations in Paragraph 201 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full

document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 201.

The allegations in Paragraph 201 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 201, and on that basis deny those allegations.

No response is required as to the allegations in the last sentence of Paragraph 201 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in the last sentence of Paragraph 201.

202. *The detailed accounts from numerous former high-ranking Vestis and Aramark employees from across North America, as well as internal Company reports, confirm that Defendants were aware of the Company's long-standing service and customer retention issues throughout the Class Period*. ¶¶109-155. For example, FE 3 explained that major account Tyson Chicken left due to Vestis' significant and persistent service problems, and the Company "had a lot of knowledge that there were a lot of service issues that were not being corrected at

least since 2022"—and further described how Defendant Scott had personally met with Tyson Chicken in an effort to attempt to stop it from leaving the Company. FE 1, a former Vice President of Operations at AUS until 2022 who then served as a consultant for the President of AUS from 2022 until May 2023, similarly stated that before the Spinoff in 2023, he saw internal reports on a global scale that showed AUS was "bleeding customers," such that AUS' customer losses "certainly outweighed the gains."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former employees referenced meet the descriptions or made the statements quoted and/or broadly described in Paragraph 202, and deny the allegations on that basis. Aramark Defendants also deny the substantive allegations relating to the pre-Spin period attributed to these former employees in Paragraph 202.

203. In addition to these FE accounts, contemporaneous internal Vestis documents Lead Plaintiffs obtained as part of their investigation confirm that, as result of Vestis' severe service issues, Defendants knew that the "in excess of 90%" retention rate that they repeatedly touted both prior to and after the Spinoff was materially false and misleading. These internal reports showed that Vestis lost a massive $147 million in recurring weekly revenue due to customer losses between August 21, 2023 and April 19, 2024, with a staggering $55 million of that amount

lost in the five weeks prior to the Spinoff. Furthermore, the FEs confirmed that these reports were provided to high-level executives, including direct reports of Defendant Scott. The FEs also corroborated that the Individual Defendants were well aware of these issues, as a retention rate below 90% in the uniforms services business—which was heavily reliant on high customer retention, with top competitors consistently boasting a retention rate of over 95%—represented a "DEFCON One" situation for the Company.

**Answer**: Allegations in Paragraph 115 reference internal documents generated by Vestis following the Spin, and Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 203, and on that basis deny those allegations.

204. *The visceral reaction of sophisticated analysts to Defendants' disclosures at the end of the Class Period wholly support Defendants' scienter.* When the full truth was revealed at the end of the Class Period, analysts reacted with astonishment, excoriating Defendants' credibility in an extraordinary rebuke for the management of a publicly-traded company. These sophisticated market participants highlighted the stark contrast from Defendants' prior representations, including as recently as the prior quarter. For example, Jefferies emphasized that Vestis suffered from a "significant mgmt. credibility issue," as it was "troubling" that "mgmt. never fully disclosed the fall off in retention on recurring revenue it started experiencing

2H23 or the true magnitude of customer losses to be expected…in FY24." Baird emphasized that Vestis' management' "credibility is low." Barclays wondered how there could be "this big of a revision" "in the last 90 days or 60 days or whatever," particularly given that Defendants "were at the company for almost 2 years, while under Aramark," had "presumably did all this work" in advance of the Spinoff and had continued to project "confidence the last 2 quarters" to the market. Wolfe Research similarly wondered: "why [didn't] [management] [catch] this before the [Spinoff]?" Defendants' severe loss of credibility with the market as a result of their misrepresentations is further indicative of their scienter.

**Answer**: No response is required as to the allegations in the first and last sentences of Paragraph 204 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in the first and last sentences of Paragraph 204.

The remaining allegations in Paragraph 204 appear to selectively quote from and/or mischaracterize selected excerpts from a Jeffries analyst report dated May 3, 2024, a Baird Equity Research analyst report dated May 2, 2024, and the transcript of Vestis's Q2 2024 earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source materials. The full documents speak for themselves and therefore the allegations do not require

a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 204.

The allegations in Paragraph 204 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events.  Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 204, and on that basis deny those allegations.

205.  *The Individual Defendants themselves admitted that they were fully knowledgeable about these facts*.  As Defendants Scott and Dillon continuously proclaimed, they were at the Company for over two years prior to the Spinoff, and their entire focus during that time was on implementing new "logistics" initiatives and improving operations in connection with the Spinoff.  For example, at Aramark Analyst Day on December 9, 2021—nearly <u>two years</u> before the Spinoff was completed—Scott emphasized that she "had the opportunity to go pretty deep" and had "immersed [herself] in this business over the last 60 days."  Scott further emphasized that she was "very, very, focused on logistics," and prioritized Vestis "<u>doing more sophisticated things around routing and scheduling and logistics</u>."

**Answer**: Aramark Defendants deny the allegations in the first and second sentences of Paragraph 205.

The remaining allegations in Paragraph 205 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Aramark's Analyst/Investor Day held on December 9, 2021. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 205.

206. Scott continued to emphasize how deeply she was involved in the Company during the Class Period. For example, when COO Synek departed, Scott strongly reassured investors that there would be no disruption to Vestis' business because Scott's "plan ha[d] been in motion for a very long time, for the 2.5 or 2 plus years that I've been here." Scott further emphasized that she "c[a]me from a route-based business previously so [she was] familiar with the [logistics] tools" and further stated that she personally had "spent time in the field riding along with [employees] and meeting our customers" to ensure the Company's systems were working.

215

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 206, and on that basis deny those allegations.

The allegations in the second sentence of Paragraph 206 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call held on February 7, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 206.

The allegations in Paragraph 206 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 206, and on that basis deny those allegations.

207. *The Individual Defendants' specific, regular public remarks to investors—including in response to direct analyst inquiries—about customer*

216

*retention and the associated growth in the Company's business are similarly demonstrative of their intimate knowledge about those subjects*. On numerous occasions, Defendant Scott was directly asked by analysts why the uniforms business' growth was more muted despite the Company's growth initiatives, and in each instance Scott either falsely proclaimed that this was due to strategic and "non-regrettable" terminations of customer relationships that were purportedly "very intentional" and "very purposeful" because they "didn't make sense for our portfolio," or to "business closures" that were outside the Company's control.

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 207, and on that basis deny those allegations.

Allegations in Paragraph 207 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 207, and on that basis deny those allegations.

The remaining allegations in Paragraph 207 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript from Vestis's September 13, 2023 Analyst Day and the transcript of Vestis's earnings call held on February 7, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further

misrepresent the substance of the source materials.  The full documents speak for themselves and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source materials.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 207.

208.   However, at the end of the Class Period, Scott starkly admitted that the exact opposite was true: the Company had in fact suffered very regrettable losses of major accounts that caused it to have a significant an insurmountable revenue growth deficit even before it spun off, and these customers had been lost due to issues that were completely within the Company's control, namely its abysmally bad service. Scott's specific, repeated responses to analyst questions in this regard are highly probative of her scienter.

**Answer**: Aramark Defendants deny the substantive allegations in the first sentence of Paragraph 208 relating to the pre-Spin period.  To the extent these allegations relate to the post-Spin period, Aramark Defendants lack knowledge or information sufficient to form a belief as to their truth, and on that basis deny those allegations.

No response is required as to the allegations in the second sentence of Paragraph 208 as they state legal conclusions.  To the extent any response is

required, Aramark Defendants deny any allegations in the second sentence of Paragraph 208.

209.    *The single most important task of a uniform services provider was providing uniform products and services on-time and accurately*.  As a B2B route-based uniforms and workplace supplies provider, it was absolutely critical for Vestis to deliver high quality products to customers accurately and on-time.  Indeed, delivering products and services on a consistent, timely basis was the core of what the Company provided.  As one former Aramark Regional VP explained, "inventory management" was the "biggest" issue for a uniforms provider—if the right number of uniforms were not timely delivered, customers were left with deficient uniforms and were often significantly impacted.  Defendant Scott herself emphasized the critical importance of logistics to Vestis' success on multiple occasions, averring that her management team was "very, very focused on logistics" and were "really, really expert at logistics because we're running a route-based business." Given the stated importance of on-time deliveries and logistics—Vestis' core business—Defendants knew or were severely reckless in not knowing about the fundamental service issues that had plagued the Company "for quite some time."

**Answer**: Aramark Defendants lack knowledge or information sufficient to form a belief as to whether the former AUS employee referenced made the statement quoted in Paragraph 209, and deny the allegation on that basis.  Aramark Defendants

deny the substantive allegations attributed to this former AUS employee in Paragraph 209.

The remaining allegations in Paragraph 209 appear to selectively quote from and/or mischaracterize selected excerpts from the transcript of Vestis's earnings call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 209.

The allegations in Paragraph 209 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of such allegations in Paragraph 209, and on that basis deny those allegations. Aramark Defendants deny the remaining substantive allegations in Paragraph 209 to the extent that they relate to the pre-Spin period.

210. *The abrupt and suspicious departure of COO Chris Synek supports a strong inference of scienter*. Synek, a former Cintas executive for fifteen years, left

Vestis after being with the Company for <u>less than five months</u>. Defendants announced Synek's departure in a February 6, 2024 Form 8-K filed with the SEC, one day prior to disclosing disappointing results for Q1 2024—Vestis' first full quarter as a standalone entity. Investors and analysts were concerned about the unexpected departure, questioning whether it was "related to an underlying issue with the business." While Vestis claimed he left for "personal reasons," Synek quickly pivoted to work for a different logistics company as CEO in August 2024. Significantly, Plaintiffs' FEs confirmed Synek left due to the Company's poor operations and Defendants' refusal to make any improvements. Synek's sudden departure at a critical time for Vestis as a new standalone company is highly probative of Defendants' scienter.

**Answer**: Aramark Defendants admit that Chris Synek joined Vestis in September 2023 after spending 16 years at Cintas, and was announced to be leaving Vestis on February 6, 2024 for personal reasons.

The allegations in Paragraph 210 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the fourth, fifth, and sixth sentences of Paragraph 210, and on that basis deny those allegations.

No response is required as to the allegations in the first and last sentences of Paragraph 210 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in the first and last sentences of Paragraph 210.

211. *The Individual Defendants had opportunity and motive*. Despite the fact that Defendants unequivocally knew that Vestis could not perform the most basic tasks required of a uniform services company, Defendants deliberately concealed these highly material facts from investors in order to complete the Spinoff and pocket the massive $1.5 billion payment for Aramark, which it badly needed to pay down its corporate debt. The Individual Defendants were each current or former executives of Aramark. Had Defendants revealed the truth about the Company's issues, the Spinoff would not have occurred, and Aramark would not have been able to meet its deleveraging plan and lower its astronomically high debt.

**Answer**: No response is required as to the allegations in the first sentence in Paragraph 211 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny all allegations in the first sentence of Paragraph 211.

Aramark Defendants admit that the Individual Defendants were each current or former executives of Aramark.

222

While Aramark Defendants admit that Aramark received approximately $1.457 billion from Vestis through the Spin, they deny Lead Plaintiffs' characterizations of this transaction, which misleadingly suggest that Aramark Defendants received a windfall when, in reality, Vestis simply paid Aramark its proportionate share of pre-Spin company debt, as is the case in most spin-off transactions.

Aramark Defendants deny all remaining allegations in Paragraph 211.

212. The foregoing facts, particularly when considered holistically and in the light most favorable to the Plaintiffs (as they must be), support a strong inference of Defendants' scienter.

**Answer**: No response is required as to the allegations in Paragraph 212 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 212.

## VII.    LOSS CAUSATION

213. As further described above, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated and/or maintained the price of Vestis shares at an artificially high level, and operated as a fraud or deceit on Class Period purchasers of Vestis common stock by failing to disclose and misrepresenting the adverse facts detailed herein.

**Answer**: No response is required as to the allegations in Paragraph 213 as

they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 213.

214.  As detailed below, the truth was revealed through two corrective disclosures, causing Lead Plaintiffs and the Class to suffer significant damages as a result.

**Answer**: No response is required as to the allegations in Paragraph 214 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 214.

215.  Lead Plaintiffs and members of the Class purchased Vestis common stock at artificially inflated prices during the Class Period.  But for Defendants' fraudulent scheme and material misrepresentations and omissions, Lead Plaintiffs and members of the Class would not have purchased Vestis common stock at artificially inflated prices.

**Answer**: No response is required as to the allegations in Paragraph 215 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 215.

216.  As Defendants' fraudulent scheme and material misrepresentations and omissions were gradually revealed to the market through two corrective disclosures, the price of Vestis common stock declined significantly.  The corrective impact of the initial partial disclosure alleged herein was tempered, however, by Defendants'

224

continued material misrepresentations and omissions, as detailed above.

**Answer**: No response is required as to the allegations in Paragraph 216 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 216.

217.   Lead Plaintiffs and the Class suffered economic losses as the price of Vestis common stock fell in response to the corrective disclosures, as demonstrated below.  The disclosures described below, however, do not necessarily represent an exhaustive list of all stock price declines attributable to Defendants' fraudulent conduct, given that fact and expert discovery in this case has not yet begun.  Lead Plaintiffs expressly reserve the right to identify additional relevant disclosures and price declines following an opportunity to conduct full fact and expert discovery in this case.

**Answer**: No response is required as to the allegations in Paragraph 217 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 217.

A.    **February 7, 2024 Corrective Disclosure**

218.   On February 7, 2024, prior to the markets opening, Vestis issued a press release disclosing disappointing results for the first quarter of 2024—Vestis' first quarter as a standalone entity—including revenue for the quarter of $717.9 million, or revenue growth of just 2.5%, a clear shortfall compared to analyst consensus

estimates of over $725 million.  Later on the accompanying conference call with analysts, CEO Scott revealed that Vestis had suffered a "regrettable loss" of a "national account" prior to the Spinoff that "wasn't part of our strategy."  In addition, the Company had also announced that COO Synek resigned effective immediately after just being hired in September 2023.  *See also infra,* ¶¶79-92.

**Answer**: Aramark Defendants admit that Vestis issued a press release on February 7, 2024 reporting its Q1 2024 results, including reported revenue of $718 million increased 2.5% year-over-year.  Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of any remaining allegations in the first sentence of Paragraph 218, and on that basis deny those allegations.

The allegations in the second sentence of Paragraph 218 appear to selectively quote from and/or mischaracterize selected excerpts from a transcript from Vestis's earnings call held on February 7, 2024, albeit with the noted alterations.  These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material.  The full document speaks for itself and therefore the allegations do not require a response.  To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material.  Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 218.

226

Aramark Defendants admit that in September 2023, Vestis announced that it hired Chris Synek as COO, and on February 6, 2024, announced that Synek resigned from the Company for personal reasons.

The allegations in Paragraph 218 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 218, and on that basis deny those allegations.

219. In response to these disclosures, Vestis stock price fell approximately 13% from a closing price of $22.30 per share on February 6, 2024, to a closing price of $19.42 on February 7, 2024.

**Answer**: Aramark Defendants admit that Vestis's stock price was $22.30 per share at the close of February 6, 2024, and $19.42 at the close of February 7, 2024.

Aramark Defendants deny any remaining allegations in Paragraph 219.

220. Notwithstanding the price decline following Defendants' February 7, 2024 disclosure, Vestis' stock price remained artificially inflated because Defendants continued to materially mislead the market regarding the true state of Vestis' business, including by concealing the full extent of the Company's revenue shortfall, the loss of national accounts, and the reasons why it happened.

**Answer**: No response is required as to the allegations in Paragraph 220 as

227

they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 220.

### B.   May 2, 2024 Corrective Disclosure

221. On May 2, 2024, prior to the markets opening, Vestis issued a press release disclosing disappointing results for the second quarter of 2024 and slashed its 2024 guidance. Specifically, the Company reported revenue of $705 million, a mere 0.9% year-over-year increase. In addition, Vestis announced that instead of achieving revenue growth of 4% to 4.5% for the year, it now expected revenue growth in the range of <u>negative 1%</u> to 0%, and an Adjusted EBITDA margin of 12.0% to 12.4%, versus 14.3% previously. Later on the accompanying earnings conference call, CEO Scott admitted that instead of providing "service excellence," Vestis was plagued by significant "service gaps" that had resulted in the Company suffering from serious customer retention problems. *See also infra,* ¶¶93-108.

**Answer**: Aramark Defendants admit that Vestis issued a press release on May 2, 2024 reporting its Q2 2024 results, including reported revenue of $705 million, increased 0.9% year-over-year.

Aramark Defendants admit that in this press release, Vestis also announced that it expected to deliver fiscal 2024 revenue growth in the range of (1)% to 0%, and an adjusted EBITDA margin expected to be between 12.0% and 12.4%.

Aramark Defendants also admit that in February 7, 2024, Vestis announced that it expected its adjusted EBITDA margin to be approximately 14.3% for fiscal year 2024.

The remaining allegations in Paragraph 221 appear to selectively quote from and/or mischaracterize selected excerpts from a transcript from Vestis's earning call held on May 2, 2024. These excerpts are presented in a manner that distorts their original meaning, omits critical context, and includes notable alterations that further misrepresent the substance of the source material. The full document speaks for itself and therefore the allegations do not require a response. To the extent a response is required, Aramark Defendants admit only that the allegations contain cherry-picked phrases from the source material. Aramark Defendants deny the characterizations and inferences Lead Plaintiffs seek to draw from these phrases in Paragraph 221.

The allegations in Paragraph 221 address conduct or events occurring after the Spin, and Aramark Defendants were in no way involved in such conduct or events. Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 221, and on that basis deny those allegations.

222. In response to Defendants' stark admissions, Vestis' share price plummeted 49% from a closing price of $18.47 per share on May 1, 2024, to a

229

closing price of $9.41 per share on May 3, 2024.

**Answer**: Aramark Defendants admit that Vestis's share price was $18.47 per share at the close of May 1, 2024, and $9.41 per share at the close of May 3, 2024.

Aramark Defendants deny any remaining allegations in Paragraph 222.

## VIII.    PRESUMPTION OF RELIANCE

223.   At all relevant times, the market for the Company's common stock was an open, efficient and well-developed market for the following reasons, among others:

a)    Vestis' common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

b)    As a regulated issuer, Vestis filed periodic reports with the SEC and the NYSE;

c)    Vestis regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services, and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

d)    Vestis was followed by several securities analysts employed by

major brokerage firms who wrote reports which were distributed to those brokerage firms' sales force and certain customers. Each of these reports was publicly available and entered the public marketplace.

**Answer**: Allegations in Paragraph 223 regarding market efficiency state legal conclusions, to which no response is required. Aramark Defendants admit that Vestis's common stock was listed and actively traded on the NYSE, and that Vestis filed periodic reports with the SEC and the NYSE, as required of a regulated issuer.

Aramark Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 223, and on that basis deny those allegations.

224. As a result of the foregoing, the market for Vestis' common stock reasonably and promptly digested current information regarding the Company from all publicly available sources and reflected such information in the price of the Company's common stock. All investors who purchased the Company's common stock during the Class Period suffered similar injury through their purchase of Vestis' common stock at artificially inflated prices, and a presumption of reliance applies.

**Answer**: No response is required as to the allegations in Paragraph 224 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 224.

225. A Class-wide presumption of reliance is also appropriate in this action under the U.S. Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants' material omissions. Because this action involves Defendants' failure to disclose material adverse information regarding Vestis' business and operations— information that Defendants were obligated to disclose— positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the material misstatements and omissions set forth above, that requirement is satisfied here.

**Answer**: No response is required as to the allegations in Paragraph 225 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 225.

## IX.  INAPPLICABILITY OF THE STATUTORY SAFE HARBOR AND THE BESPEAKS CAUTION DOCTRINE

226. The statutory safe harbor or bespeaks caution doctrine applicable to forward-looking statements under certain circumstances does not apply to any of the false and misleading statements pleaded in this Complaint. The statements alleged to be false or misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false or misleading may be characterized as forward-looking, they were not adequately identified as forward-

232

looking statements when made, and there were no meaningful cautionary statements identifying important facts that could cause actual results to differ materially from those in the purportedly forward-looking statements.

**Answer**: No response is required as to the allegations in Paragraph 226 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 226.

227. To the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, each of these Defendants had actual knowledge that the particular forward-looking statement was materially false or misleading. Defendants are liable for the statements pleaded because, at the time each of those statements was made, Defendants knew the statement was false, and the statement was authorized and/or approved by an executive officer and/or director of Vestis who knew that such statement was false when made.

**Answer**: No response is required as to the allegations in Paragraph 227 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 227.

## X.    CLASS ACTION ALLEGATIONS

228. Lead Plaintiffs bring this action as a class action pursuant to Rules 23(a)

233

and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons and entities who purchased Vestis common stock between October 2, 2023 and May 1, 2024, and were damaged thereby. Excluded from the Class are Defendants, the officers and directors of Vestis at all relevant times, members of their immediate families, and their legal representatives, heirs, agents, affiliates, successors or assigns, Defendants' liability insurance carriers, and any affiliates or subsidiaries thereof, and any entity in which Defendants or their immediate families have or had a controlling interest.

**Answer**: Aramark Defendants admit that Lead Plaintiffs brought this action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of persons and entities who purchased or otherwise acquired Vestis common stock between October 2, 2023 and May 1, 2024, and that Defendants, the officers and directors of Vestis at all relevant times, members of their immediate families, and their legal representatives, heirs, agents, affiliates, successors or assigns, Defendants' liability insurance carriers, and any affiliates or subsidiaries thereof, and any entity in which Defendants or their immediate families have or had a controlling interest, are all excluded from the putative class, as defined by Plaintiffs.

229. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Vestis' shares were actively traded

234

on the NYSE. As of July 26, 2024, the Company had more than 131 million shares outstanding. While the exact number of Class members is unknown to Lead Plaintiffs at this time, and can only be ascertained through appropriate discovery, Lead Plaintiffs believe that there are at least thousands of members of the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company, or its transfer agent(s), and may be notified of this class action using a form of notice similar to that customarily used in securities class actions.

**Answer**: No response is required as to the allegations in Paragraph 229 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 229.

230. Lead Plaintiffs' claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

**Answer**: No response is required as to the allegations in Paragraph 230 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 230.

231. Lead Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Lead Plaintiffs have no interests that conflict with those of

the Class.

**Answer**: No response is required as to the allegations in Paragraph 231 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 231.

232.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a)    whether Defendants violated the Exchange Act by the acts and omissions as alleged herein;

b)    whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

c)    whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders misrepresented material facts about the business, operations, and prospects of Vestis;

d)    whether statements made by Defendants to the investing public misrepresented and/or omitted to disclose material facts about the business, operations, and prospects of Vestis;

e)    whether the market price of Vestis shares during the Class Period was artificially inflated due to the material misrepresentations

and failures to correct the material misrepresentations complained of herein; and

f)      the extent to which the members of the Class have sustained damages and the proper measure of damages.

**Answer**: No response is required as to the allegations in Paragraph 232 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 232.

233.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

**Answer**: No response is required as to the allegations in Paragraph 233 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 233.

## XI.    CLAIMS FOR RELIEF

### COUNT I

**For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
Promulgated Thereunder Against All Defendants**

234.   Lead Plaintiffs repeat and reallege each and every allegation contained

above as if fully set forth herein.

**Answer**: Aramark Defendants repeat and incorporate by reference each of their prior responses to Paragraphs 1 through 233, as though set forth herein in their entirety.

235. This cause of action is brought pursuant to §10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5. Rule 10b-5(a) makes it unlawful for any person, directly or indirectly to employ any device, scheme, or artifice to defraud. Rule 10b-5(b) makes it unlawful for any person, directly or indirectly to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. Rule 10b-5(c) makes it unlawful for any person, directly or indirectly, to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

**Answer**: No response is required as to the allegations in Paragraph 235 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 235.

236. Lead Plaintiff asserts Section 10(b) and Rule 10b-5(a), (b) and (c) claims against all Defendants.

**Answer**: No response is required as to the allegations in Paragraph 236 as

they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 236.

237.  During the Class Period, Defendants carried out a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Lead Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of Vestis shares.  Such scheme was intended to, and did: (i) deceive the investing public, including Lead Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Vestis shares; and (iii) cause Lead Plaintiffs and other members of the Class to purchase Vestis shares at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

**Answer**: No response is required as to the allegations in Paragraph 237 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 237.

238.  Defendants participated directly or indirectly in the preparation and/or

239

issuance of the Information Statement, SEC filings, press releases, and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Vestis shares. Such reports, filings, releases, and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Vestis' finances and business prospects.

**Answer**: No response is required as to the allegations in Paragraph 238 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 238.

239.   Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Vestis' business, operations, and prospects, as specified herein.

**Answer**: No response is required as to the allegations in Paragraph 239 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 239.

240.   Defendants Aramark and Zillmer are liable under Section 10(b) and SEC Rule 10b-5(b) for all conduct and materially false and misleading statements and omissions made prior to and in connection with the Spinoff, as alleged herein. These materially false and misleading statements and omissions are actionable under

Section 10(b) because they were incorporated into Vestis' beginning stock price as of October 2, 2023. These misstatements were specifically directed towards investors in Vestis stock, and were in fact intended to, and did, inflate the stock price once the stock began trading. Such statements were made in the days and weeks leading up to the Spinoff, relied on by the market in determining the price of Vestis stock, and were not rendered stale or superseded by any later events or disclosures. Accordingly, investors who purchased Vestis stock during the Class Period relied on these misrepresentations at the time of purchase.

**Answer**: No response is required as to the allegations in Paragraph 240 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 240.

241. Defendants Scott and Dillon as executives of Aramark and then Vestis are liable under Section 10(b) and SEC Rule 10b-5(b) for all conduct and the materially false and misleading statements and omissions made before and after the Spinoff, as alleged herein.

**Answer**: No response is required as to the allegations in Paragraph 241 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 241.

242. Defendants made or were responsible for the materially false and misleading statements and omissions alleged herein, which they knew or severely

recklessly disregarded to be materially false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

**Answer**: No response is required as to the allegations in Paragraph 242 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 242.

243. Defendants had actual knowledge of the materially false and misleading statements and omissions alleged herein, or severely recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal Vestis' true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

**Answer**: No response is required as to the allegations in Paragraph 243 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 243.

244. Defendants are also liable under SEC Rules 10b-5(a) and 10b-5(c) for engaging in deceptive and manipulative acts in a scheme to defraud investors. As part of their scheme to defraud investors in violation of SEC Rules 10b-5(a) and (c), Defendants (i) disseminated materially misleading statements regarding Vestis' business prior to the Spinoff, including in the Information Statement for the Spinoff,

242

the contents of which Aramark's CEO, Defendant Zillmer, and Vestis' CEO, Defendant Scott, specifically endorsed and (ii) continued to conceal the truth about Vestis even after the Spinoff occurred. Defendants' did so in order to artificially inflate the perceived value of AUS and Vestis to ratings agencies, third party advisors, and lenders, effectuate the Spinoff, and cause nearly $1.5 billion in cash to be paid from Vestis to Aramark as part of the Spinoff.

**Answer**: No response is required as to the allegations in Paragraph 244 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 244.

245. Lead Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Vestis' common stock. Lead Plaintiff and the Class would not have purchased the Company's common stock at the prices they paid, or at all, had they been aware that the market prices for Vestis' common stock had been artificially inflated by Defendants' fraudulent course of conduct.

**Answer**: No response is required as to the allegations in Paragraph 245 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 245.

246. By virtue of the foregoing, Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

**Answer**: No response is required as to the allegations in Paragraph 246 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 246.

247.   As a direct and proximate result of Defendants' wrongful conduct, Lead Plaintiffs and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**Answer**: No response is required as to the allegations in Paragraph 247 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 247.

## <u>COUNT II</u>

### For Violations of Section 20(a) of the Exchange Act
### Against Aramark and the Individual Defendants

248.   Lead Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

**Answer**: Aramark Defendants repeat and incorporate by reference each of their prior responses to Paragraphs 1 through 247, as though set forth herein in their entirety.

249.   This Count is asserted on behalf of all members of the Class against Aramark and the Individual Defendants for violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

**Answer**: No response is required as to the allegations in Paragraph 249 as

they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 249.

## A.    Individual Defendants

250. The Individual Defendants participated in the operation and management of Aramark and Vestis, and conducted and participated, directly and indirectly, in the conduct of Aramark's and Vestis' business affairs.  Because of their senior positions, they knew the adverse non-public information about the AUS segment's and Vestis' business, operations, and financial results as specified herein.

**Answer**: No response is required as to the allegations in Paragraph 250 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 250.

251.  Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Aramark and Vestis disseminated in the marketplace concerning the AUS segment's and Vestis' business operations and results.  The Individual Defendants exercised their power and authority to cause Aramark and Vestis to engage in the wrongful acts complained of herein.  The Individual Defendants, therefore, were "controlling persons" of Aramark and Vestis within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market

245

price of Vestis shares.

**Answer**: No response is required as to the allegations in Paragraph 251 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 251.

252.   Each of the Individual Defendants, therefore, acted as a controlling person of Aramark and Vestis.  By reason of their control, senior management positions and/or being directors of Aramark and Vestis, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Aramark and Vestis to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Aramark and Vestis and possessed the power to control the specific activities which comprise the primary violations about which Lead Plaintiffs and the other members of the Class complain.

**Answer**: No response is required as to the allegations in Paragraph 252 as they state legal conclusions.  To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 252.

253.   By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Aramark and Vestis.

**Answer**: No response is required as to the allegations in Paragraph 253 as

246

they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 253.

### B.    Aramark

254.   Aramark participated in the operation and management of Vestis prior to the Spinoff, and conducted and participated, directly and indirectly, in the conduct of Vestis' business affairs. Because of its control over Vestis, Aramark knew the adverse non-public information about the AUS segment's and Vestis' business, operations, and financial results as specified herein.

**Answer**: No response is required as to the allegations in Paragraph 254 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 254.

255.   Because of its position of control and authority, Aramark was able to, and did, control the contents of the various reports, press releases and public filings which Vestis disseminated in the marketplace concerning the AUS segment's and Vestis' business operations and results prior to and in connection with the Spinoff. Aramark exercised its power and authority to cause Vestis to engage in the wrongful acts complained of herein. Aramark, therefore, was a "controlling person" of Vestis within the meaning of Section 20(a) of the Exchange Act. In this capacity, Aramark participated in the unlawful conduct alleged which artificially inflated the market price of Vestis shares.

**Answer**: No response is required as to the allegations in Paragraph 255 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 255.

256. By reason of its control, including overlapping senior management positions, including Defendants Scott and Dillon, and/or being the parent of Vestis, Aramark had the power to direct the actions of, and exercised the same to cause, Vestis to engage in the unlawful acts and conduct complained of herein. Aramark exercised control over the general operations of Vestis prior to and in connection with the Spinoff, and possessed the power to control the specific activities which comprise the primary violations about which Lead Plaintiffs and the other members of the Class complain.

**Answer**: No response is required as to the allegations in Paragraph 256 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 256.

257. By reason of the above conduct, Aramark is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Vestis.

**Answer**: No response is required as to the allegations in Paragraph 257 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 257.

## XII.   PRAYER FOR RELIEF

258. WHEREFORE, Lead Plaintiffs pray for relief and judgment as follows:

a) Declaring this action to be a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b) Awarding all damages and other remedies available under the Securities Exchange Act in favor of Lead Plaintiffs and all other members of the Class against Defendants in an amount to be proven at trial, including interest thereon;

c) Awarding Lead Plaintiffs and the other members of the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

d) Awarding such other and further relief as this Court deems appropriate.

**Answer**: No response is required as to the allegations in Paragraph 258 as they state legal conclusions. To the extent any response is required, Aramark Defendants deny any allegations in Paragraph 258 and deny that Plaintiffs are entitled to the relief requested.

## XIII. JURY DEMAND

259. Lead Plaintiffs demand a trial by jury.

**Answer**: Aramark Defendants lack knowledge or information sufficient to

form a belief as to the truth of the allegations in Paragraph 259 of the Amended Complaint. To the extent a response is required, Defendants deny that a trial by jury is necessary or appropriate in this suit.

## AFFIRMATIVE DEFENSES

Subject to the responses above, upon information and belief, Aramark Defendants allege and assert the following affirmative and other defenses in response to Lead Plaintiffs' allegations set forth in the Amended Complaint. Aramark Defendants expressly reserve the right to supplement, amend, or delete any or all of the following defenses, as warranted by discovery or other investigation or as justice may require. The statement of any defense does not alter the elements of Lead Plaintiffs' claims or assume the burden of proof on any issues as to which applicable law places the burden on Lead Plaintiffs. To the extent that any of the defenses asserted herein or to be asserted in the future is mutually exclusive with another defense asserted herein or to be asserted in the future, such defense is asserted in the alternative to the other.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because Lead Plaintiffs fail to state a claim upon

250

which relief can be granted on their own behalf or on behalf of the alleged putative class.

## SECOND AFFIRMATIVE DEFENSE

(Negative Causation)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, by the doctrine of "negative causation," because Lead Plaintiffs have not suffered any injury or damages as a result of the alleged misstatements and omissions, and Lead Plaintiffs' claimed loss was caused by factors other than any alleged misstatements or omissions by Aramark Defendants.

## THIRD AFFIRMATIVE DEFENSE

(Not False/Misleading; No Failure to Disclose)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because Aramark Defendants did not make a false or misleading statement or omission of material fact or omission of material fact and complied with all applicable disclosure requirements.

## FOURTH AFFIRMATIVE DEFENSE

(Knew or Should Have Known)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because Lead Plaintiffs knew of any alleged untruth or omission at the time they acquired Vestis stock, or had constructive knowledge of the same, because the allegedly omitted information was disclosed, otherwise

publicly available, or was widely known to the market and to the investing community.

## FIFTH AFFIRMATIVE DEFENSE

### (Assumption of the Risk)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because Lead Plaintiffs purchased shares in Vestis with actual or constructive knowledge of the risks involved and thus voluntarily assumed the risk of the losses alleged in the Amended Complaint.

## SIXTH AFFIRMATIVE DEFENSE

### (Scienter)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because Aramark Defendants did not act with scienter and did not act knowingly or recklessly as to any alleged misstatement or omission.

## SEVENTH AFFIRMATIVE DEFENSE

### (Good Faith)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because Aramark Defendants at all times, acted in good faith, including by acting in conformity with the law and rules and regulations of the SEC, exercised reasonable care, and did not know, and in the exercise of reasonable care could not have known, of the purported untruths, misstatements, and/or omissions alleged in the Amended Complaint. *See, e.g.*, 15 U.S.C. §78t.

## EIGHTH AFFIRMATIVE DEFENSE

### (Improper Class Action)

This action is not properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 because joinder of all of the purported class members is not impracticable, there are no questions of law or fact common to the purported class, the claims or defenses of the representative parties are not typical of the claims or defenses of the purported class, and/or Lead Plaintiffs will not fairly and adequately protect the interests of the purported class.

## NINTH AFFIRMATIVE DEFENSE

### (Materiality)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because any allegedly untrue statement of material fact, omissions of material fact, misleading statements, or other action allegedly taken by Aramark Defendants was not material, and/or was not material to the investment decisions of Lead Plaintiffs.

## TENTH AFFIRMATIVE DEFENSE

### (Share Price)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because the purported misrepresentations and omissions alleged in the Amended Complaint did not affect the market price of shares in Vestis.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Loss Causation)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because Lead Plaintiffs have not pleaded, and cannot prove, loss causation, and/or have not pleaded, and cannot prove, that Lead Plaintiffs suffered damages that can be attributed and/or causally related to the alleged misrepresentations or omissions.  Without limiting the foregoing, Lead Plaintiffs' claims are barred, in whole or in part, because any depreciation in the market price of shares in Vestis resulted from factors other than the purported misrepresentations and omissions alleged in the Amended Complaint.  *See* 15 U.S.C. § 78u-4(b)(4), (e).

## TWELFTH AFFIRMATIVE DEFENSE

### (Reliance)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because Lead Plaintiffs were not entitled to, and did not reasonably and/or justifiably rely, or did not in fact rely, on any of the statements or omissions alleged in the Amended Complaint in deciding to purchase shares in Vestis.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Fraud on the Market)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because the "fraud on the market" theory of reliance

254

is unavailable, and they will be otherwise unable to establish that they relied upon the purported misstatements and omissions alleged in the Amended Complaint.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (But-For Causation)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because Lead Plaintiffs will be unable to establish that the purported misstatements and omissions alleged in the Amended Complaint were the cause of Lead Plaintiffs' decisions to purchase shares in Vestis.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Proximate Causation)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because Lead Plaintiffs' losses, if any, were not actually or proximately caused by, and resulted from causes other than, the acts and occurrences alleged in the Amended Complaint.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Superseding Event)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because the injuries alleged by Lead Plaintiffs, to the extent any exist, were caused, in whole or in part, by intervening and/or superseding causes unrelated to the alleged conduct of Aramark Defendants, by the conduct of

255

third parties for whom Aramark Defendants were not responsible, or through forces in the marketplace over which Aramark Defendants had no control.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

Aramark Defendants are not liable because, to the extent that Lead Plaintiffs have been damaged, if at all, Lead Plaintiffs' failure to mitigate their damages bars recovery.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Comparative Fault)

Any damage, loss or liability sustained by Lead Plaintiffs must be reduced or eliminated in proportion to the wrongful or negligent conduct of entities or individuals other than Aramark Defendants under the principles of equitable allocation, recoupment, set-off, proportionate responsibility, and comparative fault, including under the proportionate liability provisions of the federal securities laws.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Reductions in Damages)

To the extent Lead Plaintiffs suffered damages, if at all, such damages must be offset by Lead Plaintiffs' gains, including subsequent gains in the Vestis share price, including gains arising after the putative class periods.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Damages Cap)

To the extent Lead Plaintiffs suffered damages, if at all, such damages must be capped pursuant to the PSLRA, 15 U.S.C. § 78u-4(e)(1), and the damages limitations of the Securities Exchange Act of 1934.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Publicly Available)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because the alleged facts which Lead Plaintiffs allege to have been misrepresented or omitted were in fact known to and entered the securities market through credible sources. Lead Plaintiffs are not entitled to any recovery from Aramark Defendants because the substance of the allegedly material information that Lead Plaintiffs allege to have been omitted or misrepresented was in fact publicly available or was widely known to the market and to the investing community.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Control Person Liability)

Each and every one of Aramark Defendants alleged to be a control person under Section 20(a) of the Securities Exchange Act of 1934 acted in good faith and did not directly or indirectly induce any acts constituting the alleged violations and causes of action.

257

## TWENTY-THIRD AFFIRMATIVE DEFENSE

(Attorney's Fees and Expenses)

Aramark Defendants deny that Lead Plaintiffs are entitled to recover attorneys' fees, expert fees, costs, or expenses.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

(Standing)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because Lead Plaintiffs lack standing to maintain this action under Article III or other applicable statute or common law.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

(Contribution)

Aramark Defendants are entitled to recover contribution from others for any liability they incur as a result of any of the purported misrepresentations, omissions, and conduct alleged in the claims against them.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

(Opinion Statements)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because the alleged misrepresentations are non-actionable statements that contain expressions of opinion that Lead Plaintiffs cannot prove were not truly held.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Estoppel, Unclean Hands, etc.)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, under the doctrines of acquiescence, unclean hands, estoppel, res judicata, waiver, ratification, laches and other related doctrines and principles, or any one of them.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Assent)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because at all times alleged in the Amended Complaint, Lead Plaintiffs expressly or impliedly assented to, ratified, or concurred with the conduct alleged to be unlawful.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (Would Have Acquired Regardless)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because Lead Plaintiffs would have acquired shares in Vestis even if, when acquired, Lead Plaintiffs had known of the allegedly untrue statements of material fact, omissions of material fact, misleading statements, or other wrongful conduct upon which Aramark Defendants' purported liability rests.

259

## THIRTIETH AFFIRMATIVE DEFENSE

### (Reliance on Investigations/Advisors)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because Lead Plaintiffs relied exclusively upon their own independent investigations, their own decisions, and the advice of their professional investment advisors.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### (Speculative / Remote)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because the damages sought are too speculative and/or remote.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

### (Other Parties)

Aramark Defendants are not liable for any alleged damages suffered by Lead Plaintiffs and other members of the putative class to the extent that their purported damages, if any, were caused or contributed, in whole or in part, by the policies, practices, acts, or omissions of independent persons or entities other than Aramark Defendants over which Aramark Defendants had no control. 15 U.S.C. § 78u-4(f)(3)(A).

## THIRTY-THIRD AFFIRMATIVE DEFENSE

### (Optimism/Puffery)

Lead Plaintiffs' claims and all claims on behalf of the alleged putative class are barred, in whole or in part, because some or all of the purported misstatements or omissions alleged in the Amended Complaint reflect or pertain to non-actionable statements of corporate optimism or puffery.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

### (Due Diligence)

Aramark Defendants had, after reasonable investigation, reasonable grounds to believe and did believe, at the time of the statements at issue, that their statements were true and that there was no omission of any required material fact necessary to make the statement not misleading.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

### (Bespeaks Caution)

Aramark Defendants are not liable because certain alleged misstatements were forward-looking statements and thus are immunized by the Safe Harbor provided by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-5(c)(1), and the bespeaks caution doctrine. The forward-looking statements were identified as forward-looking and were accompanied by meaningful cautionary

statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statements.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

### (Price Impact)

Lead Plaintiffs' claims are barred, in whole or in part, because of the lack of price impact.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

### (Failure to Make Statements)

Defendants are not liable for statements they did not make under *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).

Dated:  October 30, 2025

Respectfully submitted,

*/s/ Christopher S. Turner*

Christopher S. Turner
GA Bar No. 719102
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.,
Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
christopher.turner@lw.com

*Attorney for Defendants Aramark and*
*John J. Zillmer*

## CERTIFICATION OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned counsel hereby certifies that the foregoing document was prepared in 14-point Times New Roman font, pursuant to Local Rule 5.1(B).

Dated: October 30, 2025

/s/ Christopher S. Turner
Christopher S. Turner
GA Bar No. 719102
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.,
Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
christopher.turner@lw.com

*Attorney for Defendants Aramark and John J. Zillmer*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2025, a copy of the foregoing was filed with the Clerk of Court using CM/ECF which will send electronic notification of such filing to all counsel of record.

*/s/ Christopher S. Turner*
Christopher S. Turner
GA Bar No. 719102
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.,
Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
christopher.turner@lw.com

*Attorney for Defendants Aramark and John J. Zillmer*