**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| PLUMBERS, PIPEFITTERS AND APPRENTICES LOCAL NO. 112, *Individually and on Behalf of All Others Similarly Situated*,<br>          Plaintiff,<br><br>                              v.<br><br>VESTIS CORPORATION, ARAMARK, KIMBERLY SCOTT, RICK DILLON, and JOHN J. ZILLMER,<br>          Defendants. | Civil Action No.<br>1:24-cv-02175-SDG |

**STIPULATED ORDER RE DISCOVERY OF ELECTRONICALLY
STORED INFORMATION**

IT IS HEREBY STIPULATED AND AGREED, by and among Lead Plaintiffs the City of Atlanta General Employees' Pension Fund, the City of Atlanta Police Officers' Pension Fund, the City of Atlanta Firefighters' Pension Fund, the Employees' Retirement System of the City of Baltimore, and Norfolk County Retirement System (collectively, "Lead Plaintiffs") and Defendants Vestis Corporation, Kimberly Scott, Rick Dillon, Aramark, and John J. Zillmer (collectively, "Defendants," and together with Lead Plaintiffs, the "Parties"), by and through their undersigned counsel, that:

**I.     PURPOSE**

This Stipulated Order re Discovery of Electronically Stored Information (the

1

"ESI Discovery Protocol") will govern how the Parties manage electronic discovery in the above-captioned case (the "Action"). To the extent that this ESI Discovery Protocol identifies specific forms of production and/or processing specifications relating to the production of documents and electronically stored information ("ESI"), it shall govern such matters and supersedes any other instructions pertaining to document requests unless otherwise agreed to by the Parties or ordered by the Court.

## II.    PRESERVATION

The Parties have confirmed that they have taken reasonable measures to preserve potentially discoverable data from alteration or destruction in the ordinary course of business or otherwise. The Parties will meet and confer regarding the reasonable and proportional scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this Action. The Parties will, upon becoming aware of them, promptly disclose categories or sources of responsive information that they have reason to believe have not been preserved or should not be preserved and will explain the reasons to support such a belief. The Parties will also disclose and describe any document retention policies or practices (*e.g.*, retention schedules or policies, auto-delete functions, routine purging, or mailbox size limits), to the extent that the preservation of relevant information is affected.

The Parties agree there is no need to preserve data that is not reasonably accessible because of undue burden or cost, such as data on back-up systems duplicative of relevant information accessible via other sources, fragmented or in unallocated space and data stored in random access memory, temporary files, browser history files, cache files, and cookies.

## III.    IDENTIFICATION OF RESPONSIVE DOCUMENTS

### A.    Sources

Within twenty (20) days of serving their respective responses and objections to requests for the production of documents, the Parties shall meet and confer regarding the custodial and non-custodial data sources likely to contain responsive information, including any applicable electronic systems, software applications, and storage locations (*e.g.*, structured and unstructured data sources, backup systems or media, archival systems or storage, and cloud storage), custodians, their title(s) and length of employment, and their data sources (*e.g.*, mobile devices, tablets, and messaging or chat applications or programs), and any collaboration tools or platforms (*e.g.*, Slack, WhatsApp, iMessage, Snapchat, or Teams), as well as any third-party sources that are reasonably likely to contain relevant information, along with general information regarding each data source (*e.g.*, dates, organization, and format). The Parties will also meet and confer regarding any document retention policies or practices, (*e.g.*, retention schedules

or policies, auto-delete functions, routine purging, or mailbox size limits), bring your own device policies, archiving systems with size limitations on the number of emails that can be searched or exported (*e.g.*, Mimecast or Barracuda), and any other policies, practices or limitations, only to the extent that such policies and practices are likely to impact the existence, accessibility or ability to collect and produce relevant documents or ESI. The Parties reserve the right to seek discovery of additional sources likely to contain responsive information as the case develops.

B.    **Easily Segregable Documents**

Within twenty (20) days of serving their respective responses and objections to requests for the production of documents, the Parties shall meet and confer regarding responsive documents or categories of documents, within their respective possession, custody, or control, that are easily identifiable and segregable and those documents shall be collected without the use of search terms or other agreed-upon search methodology and promptly produced.

C.    **Search Proposal**

Within twenty (20) days of serving their respective responses and objections to requests for the production of documents, the Parties shall meet and confer regarding their respective search proposal(s) including, but not limited to, search terms, sources to be searched, search methodologies and tools, search term hit reports. To the extent reasonably practicable, search terms will be crafted with

input from current employees of the producing Party in a position to know the appropriate nomenclature, code words, etc. All proposed search terms may be subject to testing, sampling, or other methods of refinement, and the Parties agree to collaborate on the refinement of such terms, which may include the sharing of hit reports, testing, or samples as needed to reach agreement.

### D.    GenAI and Technology Assisted Review ("TAR")

Each Party has the right to decide on the appropriate use of technology to meet its discovery obligations. If a Party decides to use Generative AI, or TAR (collectively, "TAR") for the purpose of culling document collections, that Party shall notify the opposing Party and describe the general process and workflows, including a description of the data included and excluded from application of TAR and the validation of the results using statistical methods such as elusion sampling.

### E.    Acknowledgment

Notwithstanding Sections III.A through III.D above, and with due consideration to principles of proportionality, the Parties acknowledge their obligation to conduct a reasonable investigation and undertake reasonable efforts to produce all relevant, non-privileged materials responsive to agreed-upon discovery requests, irrespective of agreed-upon sources, custodians, easily segregable document populations, search terms, and culling or review

5

methodologies.

## IV.    PRODUCTION OF HARD COPY DOCUMENTS

All imaged hard copy documents shall reflect accurate document unitization including all attachments and container information. The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle (*e.g.*, staples, paperclips, rubber bands, Post-it notes, labels, folders, or tabs in a binder). Hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "Beg Bates," "End Bates," "Page Count," "Volume," "Custodian," and for unitization purposes also include "Parent ID," "Attach ID," "Beg Attach," "End Attach," and "Folder ID" metadata fields. If requested for specific documents by the opposing Party, an original document containing color, shall be produced or re-produced in color as single-page, 300 DPI JPG images with JPG compression and a high-quality setting so as to not degrade the original image. Multi-page OCR text for each document should also be

provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. Each text file shall be named with the beginning Bates number of the hard copy document to which the text file relates.

## V.    PRODUCTION OF ESI

### A.    Format

**1. Images.** Except as otherwise specified herein, all other documents and ESI shall be produced as single-page, black and white, TIFF Group IV, 300 DPI TIFF images. If requested for specific documents by the opposing Party, an original document containing color, then the document shall be produced or re-produced in color as single-page, 300 DPI JPG images with JPG compression and a high-quality setting so as to not degrade the original image. TIFFs/JPGs shall be processed to show any and all text and images that would be visible to the reader using the native software that created the document (*e.g.*, TIFFs of emails will include the BCC line). To the extent that Excel files and other spreadsheets, PowerPoints and other presentations, documents with track changes, and other files that would normally be produced in native format under this ESI Discovery Protocol, must be imaged to redact privileged information under the terms herein, they shall be processed in a manner that maintains and displays all hidden columns or rows, hidden text or worksheets, speaker notes, track changes, and

comments, where practicable. However, the Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. If the image does not accurately reflect the document as it was kept in the usual course of business, the Parties agree to meet and confer in good faith on production format options. Page orientation for TIFF/JPG images shall be the same as the underlying document from which the image is created.

**2.    Native Files.** Microsoft Excel and other spreadsheet file types, including comma or tab delimited text files, Microsoft Access files, and audio or video files, shall be produced in native format. For each document or ESI required to be produced in native format, the producing Party shall also provide a single-page Bates stamped image slip sheet stating the document has been "PRODUCED IN NATIVE FORMAT." PowerPoint and other presentation file types shall be produced with single- page, 300 DPI TIFF/JPG color-for-color images, as applicable, that displays both the slide and speaker notes. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the Native Link metadata field. In the event that any document or ESI produced in image format is: (i) unreadable or illegible; (ii) cuts off or is missing data or information; or (iii) cannot be utilized at a deposition, a receiving Party may request that such file be produced in native format in accordance with the procedures outlined in this paragraph, and

8

the producing Party shall promptly comply with all such reasonable requests. To the extent that either Party believes that specific documents or classes of documents, not already identified within this ESI Discovery Protocol, should be produced in native format, the Parties agree to meet and confer in good faith.

3.      **Electronic Messages.** Electronic messages (*e.g.*, iMessage, SMS, MMS, Snapchat messages, MS Teams Chat, WhatsApp, G-Chat, Instant Bloomberg, Slack, etc.) shall be produced in a searchable format that preserves, to the extent technically feasible with reasonable effort, the presentational features of the original message and shall be produced with its relevant conversation thread in 24-hour increments, where practicable. To the extent a Requesting Party believes that an electronic message was not produced in a searchable format that preserved the presentation features of the original message, the requesting Party shall identify the message by Bates number, and the producing Party will reproduce it in a searchable format that preserves the presentation features of the original message.

4.      **Structured Data.** To the extent a response to discovery requires production of electronic information stored in a database or otherwise accessible via software applications, including telematics systems (fleet management), Salesforce (customer relationship management software), ABS (route accounting system), Microsoft Power BI and Tableau (business intelligence platforms),

9

Spindle (utilized in commercial laundry plants), and Oracle (enterprise resource planning software), the Parties will meet and confer regarding which fields to export for production as a report. Neither Party shall be required to produce structured data sources natively unless, to the extent reasonably technically feasible, native production of such sources is the only format available for nonduplicative, responsive information.

5.     **Proprietary or Customized Software.** To the extent that relevant ESI cannot be rendered or reviewed in a reasonably useable form without the use of proprietary or customized software, the Parties will meet and confer to determine whether and to what extent producing such ESI is necessary and, if so, how that can be accomplished.

6.     **Attachments.** If any part of a document, particularly emails, or its attachments is responsive, the entire document and all attachments shall be produced, *i.e.*, the entire family of documents, except: (i) where an attachment is withheld pursuant to a valid claim of privilege, in which case that attachment will be replaced with a single-page TIFF image identifying the privilege or work product protection being claimed, and the rest of the family produced; and (ii) where the attachment is a non-substantive, automatically generated embedded file (*e.g.*, logos) or formatting file (*e.g.*, .ole or .dll). Attachments shall be produced sequentially after the parent email with the parent-child relationship preserved.

For such attachments, the "Beg Attach" and "End Attach" metadata fields shall be populated to show the family relationship.

7.      **Modern/Linked Attachments.** The Parties agree that regardless of whether a document is shared via link (e.g., SharePoint, Google Drive, etc.), the Parties will conduct a reasonable and proportional search of custodial and non-custodial sources likely to contain responsive information. If the receiving Party reasonably believes that prior versions of a responsive document exist and may contain additional responsive information, the Parties will meet and confer and, if reasonable, proportional, and feasible, the producing Party will locate and produce the prior versions for a reasonable number of specifically identified documents. To the extent that linked documents were used, and the receiving Party identifies a reasonable number of specific documents containing such links, the Parties will meet and confer and, if reasonable, proportional, and feasible, the producing Party will locate and produce the current version of any linked files, and, as necessary, the Parties also will meet and confer regarding the production of prior versions of the document that were contemporaneous or in existence at the time the email, message, or document referencing the link was written, sent, or received. The Parties further agree to meet and confer regarding a reasonable and proportional number of specific documents identified by the receiving Party as having been referenced by a link, for the purpose of identifying other custodians

or versions of the linked document. If the producing Party agrees to produce a document referenced by a link, the producing Party will provide information sufficient to identify the corresponding document in which the receiving Party identified the link.

8.    **Embedded Objects.** Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent-child relationship preserved. To the extent that the processing software extracts the information, and to the extent that such information is available, embedded files will be marked with a "Yes" in the load file under the "Embedded" metadata field. The Parties agree logos, or other obviously non-relevant objects, need not be extracted as separate documents.

9.    **Dynamic Fields.** All dynamic date and time fields, where such fields are processed to contain a value, shall, to the extent reasonably feasible, be processed with a single date and time setting that is consistent across each Party's productions, Coordinated Universal Time (UTC), and in a way that maintains the date/time shown in a document as it was last saved by the custodian or end user, not the date of collection or processing.

10.    **Hidden Content, Speaker Notes, Comments, and Tracked Changes.** To the extent that a document contains hidden content, tracked changes, comments, notes, or other similar information, it shall be imaged so that such

information is captured on the produced image file as it would appear in the native format of the document. Documents with track changes will be marked with a "Yes" in the load file under the "Track Changes" metadata field.

11.    **Compressed File Types.** Compressed file types (*e.g.*, .zip files) should be decompressed so that the lowest level document or file is extracted.

12.    **Encrypted Files.** To the extent reasonably feasible, any password protected or encrypted documents shall be processed to unlock any passwords or encryption, and the unlocked or decrypted document produced. If the Receiving Party identifies and requests locked or password-protected documents, and the document is likely to contain relevant information, the producing Party shall use proportional and reasonable efforts to provide an unlocked copy of the requested document. If that is not feasible, the producing Party shall provide: (i) information indicating that the document cannot be decrypted; (ii) available metadata for the document; and (iii) meet and confer regarding any other appropriate solution that may be required to access and produce the encrypted data.

13.    **Prior Productions.** To the extent a Party produces documents in this Action that were produced in prior or contemporaneous litigation, investigation, or other proceeding, such documents may initially be produced in the same format and order that they originally were produced, accompanied by the same metadata. The producing Party shall provide information sufficient to identify prior

productions by specifying the Bates range and source of the litigation, investigation, or other proceeding. Should the receiving Party believe there is a good faith basis to claim that the previous production format is not reasonably usable as originally produced, the Parties will meet and confer regarding the issue(s).

### B.    De-duplication

Each Party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. The Parties agree that an email that includes content in the "BCC" or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Removal of near-duplicate documents and email thread suppression is not acceptable. De-duplication will be done across the entire collection (global de-duplication) and the "All Custodian" field will list each custodian, separated by a semicolon, who was a source of that document and the "All File Path" field will list each file path, separated by a semicolon, which was a source of that document. The Parties acknowledge that "All Custodian" or "All File Path" metadata fields produced may become outdated due to rolling productions. To the extent this occurs, a producing Party shall provide an overlay file providing

all the custodians and file paths for the affected documents with, or promptly following, each rolling production.

The Parties agree to cull system and application files from production which have been identified by matching them to the National Software Reference Library database of the National Institute of Standards and Technology.

### C.    Metadata

ESI shall be processed in a manner that preserves the source native file and relevant metadata without modification, including, where applicable and to the extent possible, their existing time, date, and time zone metadata. All ESI will be produced with a delimited, database load file that contains the metadata fields, to the extent available, listed in Table 1, attached hereto. The metadata produced should have the correct encoding to enable preservation of the documents' original language.

### D.    Bates numbering

Each TIFF/JPG image produced shall be branded with a Bates number that (i) identifies the producing Party; (ii) maintains a constant length of nine numeric digits (including 0-padding) across the entire production; and (iii) is sequential, both within each document and across the production set, but should not include the Bates number in the extracted text of the ESI. Each TIFF/JPG image file shall be named with the same page-level Bates number branded on the underlying

15

image. For ESI that is produced subject to a claim of confidentiality pursuant to the Protective Order entered in this Action (the "Protective Order"), the producing Party shall electronically brand the appropriate confidentiality designation onto each page of the document, but should not include the confidentiality designation in the extracted text of the ESI.

### E.    Text Files and OCR

All documents and ESI shall be produced with a corresponding multipage searchable text file (*i.e.*, one .TXT file per electronic file as opposed to one text file per page). The text file for ESI shall contain full text extraction and be created by extracting text directly from the underlying native file, unless the ESI must be redacted prior to production, in which case the text file shall be generated by applying industry standard OCR technology to the redacted version of the ESI. Each text file shall be named with the beginning Bates number of the electronic file to which the text file relates.

### F.    Production Delivery

The Parties will deliver each production via an SFTP site or other reasonably secure method of transmittal. To maximize the security of information in transit, any media on which documents are produced must be encrypted. The producing Party shall transmit the encryption key to the receiving Party, under separate cover, contemporaneously with sending the encrypted media.

### G.    Redactions

No responsive, non-privileged document shall be withheld or redacted on any basis other than a claim of privilege, the attorney work product doctrine, HIPAA/HITECH or the presence of personal identifiable information (PII). For the avoidance of doubt, PII refers to a person's social security number, passport number, driver's license number, residential address, medical records, or information deemed private under applicable privacy laws or regulations. In all cases, any redactions and the basis upon which redactions were applied shall be clearly indicated on the face of the document where information has been redacted, and the metadata field Redacted shall be marked with a "Yes."

### H.    Phasing

To expedite production of responsive documents, the Parties agree to meet and confer regarding phasing the production of ESI from prioritized sources, custodians, and/or time periods. To the extent practicable, the Parties agree to complete the production of a deponent's custodial file at least fourteen (14) days prior to the scheduled deposition.

### I.    Privilege Log

The Parties agree to exchange privilege logs that comply with Rule 26(b)(5) of the Federal Rules of Civil Procedure on April 27, 2026 and within forty-five (45) days after the deadline for substantial completion of document discovery.

Privilege logs will be provided in a searchable and sortable spreadsheet format. Certain privileged communications or documents need not be included in a privilege log unless otherwise agreed to by the Parties or ordered by the Court: (a) communications to or from outside legal counsel after the commencement of, and related to, this Action; (b) work product of counsel and the Parties after the commencement of, and related to, this Action; (c) any communications regarding litigation holds or preservation, collection, or review of discoverable information in this Action, unless and until one or both Parties raise issues concerning the preservation, collection, or production efforts of the other Party, and (d) redacted documents where the basis for redaction is apparent on the document. The Parties will meet and confer in good faith regarding the scope of the privilege log should any issue arise.

In accordance with § III.d of the Court's Standing Order and in an effort to avoid unnecessary expense and burden, the Parties agree that, for documents withheld from production or redacted on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the producing Party will prepare a log containing, for each document (except those exempted above): (a) the privilege(s) claimed and basis for the claim; and when available (b) the date of the document; (c) the name, position, and email address or other data identifying the author(s)/addresser, including specifically identifying any person

18

who is an attorney or an employee of any legal department as such; (d) the name, position, and email address or other data identifying the addressee(s) and all recipients of the document, including specifically identifying any person who is an attorney or an employee of any legal department and their title; (e) a description of the purpose, title, and subject matter contained in the document and the type of document (*e.g.*, letter, memorandum, handwritten notes, etc.) sufficient to allow the receiving Party to assess the claimed privilege and/or to allow the Court to rule upon the applicability of the claimed protection; and (f) the custodian.

If the receiving Party reasonably requires further information, it shall explain the need for such information and identify in writing, by Bates number or other unique identifier where reasonably feasible and if not then by category, each document or category of documents for which it seeks this information. The producing Party will respond to any such reasonable request by providing in writing a more detailed description of the nature of the withheld information that will enable the receiving Party to assess the claim of privilege.

If the receiving Party contests a privilege claim, the receiving Party must notify the producing Party in writing. Pursuant to Civil Local Rule 37.1 and the Court's Standing Order, the Parties must attempt to confer in good faith to resolve any challenge. Thereafter, the Parties may seek judicial intervention if the challenge cannot be resolved.

## VI.    MISCELLANEOUS

### A.    Objections Preserved

The Parties do not waive their rights to object to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

### B.    Documents Protected from Discovery

The Protective Order entered in this Action will address the Parties' obligations with respect to the inadvertent production of privileged documents and ESI.

### C.    Modification

This ESI Discovery Protocol may be modified by order of the Court for good cause shown, or by stipulation of the Parties.

### D.    Non-Party Documents

A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this ESI Discovery Protocol with the subpoena and state that the Parties to the litigation have requested that non-parties produce documents in accordance with the specifications set forth herein.

The Issuing Party is responsible for producing any documents obtained under a subpoena to all other Parties no less than seven (7) days following receipt of such productions.

**STIPULATED AND AGREED:**

DATED: January 22, 2026

By: */s/ Lester R. Hooker*
Lester R. Hooker (PHV admitted)
Dianne M. Pitre (PHV admitted)
Jonathan Lamet (PHV admitted)
**SAXENA WHITE P.A.**
7777 Glades Road
Boca Raton, FL 33434
Telephone: (561) 394-3399
lhooker@saxenawhite.com
dpitre@saxenawhite.com
jlamet@saxenawhite.com

Steven B. Singer (PHV admitted)
**SAXENA WHITE P.A.**
10 Bank Street, Suite 882
White Plains, NY 10606
Telephone: (914) 437-8551
ssinger@saxenawhite.com

*Counsel for Lead Plaintiffs and the Class*

By: */s/ Simon R. Malko*
Simon R. Malko (GA Bar No. 467190)
Nathan R. Miles (GA Bar No. 829924)
**MORRIS, MANNING & MARTIN**
3343 Peachtree Road, NE
1600 Atlanta Financial Center
Atlanta, GA 30326
Telephone: (404) 504-5492
smalko@mmmlaw.com
nmiles@mmmlaw.com

*Counsel for Defendants Vestis Corporation, Rick Dillon and Kim Scott*

By: */s/ Joseph De Simone*
Joseph De Simone (PHV admitted)
Michelle Annunziata (PHV admitted)
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
jdesimone@mayerbrown.com
mannunziata@mayerbrown.com

Max Hirsch (PHV admitted)
**MAYER BROWN LLP**
333 S. Grand Avenue, 47th Floor
Los Angeles, CA 90071
Telephone: (213) 229-9500
mhirsch@mayerbrown.com

*Counsel for Defendants Vestis Corporation and Rick Dillon*

By: */s/ Matthew DiRisio*
Matthew L. DiRisio (PHV admitted)
Kerry C. Donovan (PHV admitted)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-2656
mdirisio@winston.com
kcdonovan@winston.com

*Counsel for Defendant Kimberly Scott*

By: */s/ Christopher S. Turner*
Christopher S. Turner (GA Bar No. 719102)
**LATHAM & WATKINS LLP**
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
christopher.turner@lw.com

*Counsel for Defendants Aramark and John J. Zillmer*

**SO ORDERED** this 26th day of January, 2026.

_____
Steven D. Grimberg
United States District Judge